| | |
|---|---|
| MORGAN, LEWIS & BOCKIUS LLP<br>Eric Meckley (Bar No. 168181)<br>eric.meckley@morganlewis.com<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1126<br>Tel: +1.415.442.1000<br><br>Jeremy P. Blumenfeld (admitted *pro hac vice*)<br>jeremy.blumenfeld@morganlewis.com<br>Brian W. Sullivan (admitted *pro hac vice*)<br>brian.sullivan@morganlewis.com<br>2222 Market Street<br>Philadelphia, PA 19103-3007<br>Tel: +1.215.963.5000<br><br>Attorneys for Defendants<br>ELON MUSK; X CORP.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA | MORGAN, LEWIS & BOCKIUS LLP<br>Christopher J. Boran (admitted *pro hac vice*)<br>christopher.boran@morganlewis.com<br>110 North Wacker Drive, Suite 2800<br>Chicago, IL 60606-1511<br>Tel: +1.312.324.1000<br><br>Abbey M. Glenn (Bar No. 267751)<br>abbey.glenn@morganlewis.com<br>1111 Pennsylvania Ave, NW<br>Washington, DC 20004-2541<br>Tel: +1.202.739.3000 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE, and SEAN EDGETT,<br><br>Plaintiffs,<br>vs.<br><br>ELON MUSK; X CORP., F/K/A TWITTER, INC.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA,<br><br>Defendants. | Case No. 3:24-cv-01304-MMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COUNT V OF THE COMPLAINT**<br><br>Hearing Date: July 19, 2024<br>Time: 9:00 AM<br>Location: Courtroom 7, 19th Floor<br>Hon. Maxine M. Chesney<br><br>Action Filed: March 4, 2024 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that on Friday, July 19, 2024 at 9:00 AM or as soon thereafter as counsel may be heard, before the Honorable Maxine Chesney of the San Francisco Courthouse of the above-captioned court, located at 450 Golden Gate Avenue, Courtroom 7 – 19th Floor, San Francisco, CA 94102, Defendants Elon Musk; X Corp.; Twitter, Inc. Change of Control and Involuntary Termination Protection Policy; Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy; Lindsay Chapman; Brian Bjelde; and Dhruv Batura (collectively, "Defendants") will, and hereby do, move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), for an order dismissing Count V of the Complaint for Severance Benefits, Equitable Relief, and Statutory Penalties (ERISA) (the "Complaint") filed by Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett (collectively, "Plaintiffs"), for failure to state a claim upon which relief can be granted. This motion is based on the following grounds:

1. The claims alleged in Count V of the Complaint against Defendants Musk and X Corp. under ERISA section 510, 29 U.S.C. § 1140, fail to state a claim because the only relief Plaintiffs seek—"equitable surcharge" and "front pay"—are not available to them on the facts alleged as a matter of law.

2. The claims alleged in Count V of the Complaint against Defendants Musk and X Corp. under ERISA section 510, 29 U.S.C. § 1140, also fail because they are foreclosed by Plaintiffs' claims in Counts I-IV for severance benefits under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Defendants request that the Court dismiss Count V without leave to amend. This Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities, Declaration of Eric Meckley, the pleadings on file herein, and such arguments and admissible evidence as may be presented at the time of the hearing.

Dated: May 20, 2024                          MORGAN, LEWIS & BOCKIUS LLP


By  */s/ Eric Meckley*
    Eric Meckley
    Jeremy Blumenfeld
    Chris Boran
    Brian Sullivan
    Abbey Glenn


Attorneys for Defendants
ELON MUSK; X CORP.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA

- 2 -    MOTION TO DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1
II. RELEVANT BACKGROUND ..................................................................................... 2
    A. The Plans ............................................................................................................ 2
    B. Plaintiffs, Their Administrative Claims and Appeals, and the Complaint ............. 3
II. LEGAL STANDARD .................................................................................................... 6
III. ARGUMENT ................................................................................................................. 6
    A. Count V Should Be Dismissed Because The Only Relief It Seeks Is Unavailable, As Supreme Court And Ninth Circuit Precedent Confirms. .............. 6
    B. Count V Fails Because It Is Unavoidably Foreclosed By Counts I-IV. .................. 9
IV. CONCLUSION ............................................................................................................ 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

MOTION TO DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
  458 F.3d 955 (9th Cir. 2006) .................................................................................................. 3

*Acosta v. Brain*,
  910 F.3d 502 (9th Cir. 2018) .................................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 6

*Berman v. Microchip Tech. Inc.*,
  2018 WL 732667 (N.D. Cal. Feb. 6, 2018), *rev'd* ................................................................. 7

*Chambers v. Travelers Cos., Inc.*,
  668 F.3d 559 (8th Cir. 2012) ............................................................................................ 2, 10

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) ............................................................................................................... 7

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) .................................................................................................. 6

*Dzinglski v. Weirton Steel Corp.*,
  875 F.2d 1075 (4th Cir. 1989) ................................................................................................ 8

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989) ............................................................................................................... 3

*Foster v. Adams & Assocs., Inc.*,
  2020 WL 3639648 (N.D. Cal. July 6, 2020) ...................................................................... 7, 8

*Gabriel v. Alaska Elec. Pension Fund*,
  773 F.3d 945 (9th Cir. 2014) ............................................................................................. 7, 8

*Jiaxing Super Lighting Elec. Appliance Co. v. Bruggeman*,
  2022 WL 17404300 (N.D. Cal. Dec. 2, 2022) ....................................................................... 4

*Lillywhite v. AECOM*,
  2020 WL 13628211 (W.D. Wash. Dec. 23, 2020) ............................................................... 10

*Pendelton v. QuickTrip Corp.*,
  567 F.3d 988 (8th Cir. 2009) .................................................................................................. 9

*Spinelli v. Gaughan*,
  12 F.3d 853 (9th Cir. 1993) .................................................................................................... 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

MOTION TO DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

*Teurner v. Gen. Motors Corp.*,
   34 F.3d 542 (7th Cir. 1994) .................................................................................................. 10

*Teutscher v. Woodson*,
   835 F.3d 936 (9th Cir. 2016) .................................................................................................. 8

**Statutes**

29 U.S.C. § 1001(21)(A) ................................................................................................................ 7

ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ..................................................... *passim*

ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) ............................................................. 2, 6, 7, 8

ERISA section 502(c) ..................................................................................................................... 5

ERISA section 510, 29 U.S.C. § 1140 ................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 2, 6, 7, 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

MOTION TO DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Despite the Complaint's rhetoric and tabloid-like telling of the supposed underlying events (with tabloid-like inaccuracy), this is just another ERISA case.  As is common in such cases, the Plaintiffs disagree with a plan administrator's decision to deny their claims for benefits under plans that conferred full discretion on the plan administrator to interpret the plans and decide claims for plan benefits.  Specifically, Plaintiffs disagree with two detailed and exhaustive decisions by plan administrators that they were terminated "for Cause," and thus ineligible for severance benefits, based on various misconduct.  To use just one example, the plan administrators determined that Plaintiffs engaged in efforts to saddle Twitter, and by extension the many investors who acquired it, with exorbitant legal expenses by forcing approximately $100 million in gratuitous payments to certain law firms in the final hours before the Twitter acquisition closed on October 27, 2022.  Just as in other benefit-denial cases, the central question here is whether the administrators' decisions were reasonable—as opposed to an abuse of discretion—based on the record before them.  Indeed, that is exactly what Counts I-IV of the Complaint concern, and those are the claims that *should be* the focus of this litigation.  To ensure that appropriate focus, this Motion asks the Court to dismiss Count V of the Complaint, because it seeks only "equitable relief" the law does not permit and is foreclosed by the claims in Counts I-IV, in any event.

Count V claims that Musk and X Corp. terminated Plaintiffs' employment on October 27, 2022, for the purpose of interfering with their alleged rights to benefits under two severance plans ("Plans") in violation of section 510 of ERISA, 29 U.S.C. § 1140.  For these claims, Plaintiffs request two types of purported equitable relief: an "equitable surcharge" and "front pay."  But neither is available, as a matter of law.  First, an equitable surcharge is available only to remedy breaches of fiduciary duty under ERISA, but the decision to terminate an employee is *not* fiduciary conduct under ERISA and thus cannot constitute a breach of fiduciary duty.  Second, Plaintiffs' claim to "front pay" fails because Plaintiffs insist that they not only intended to resign but supposedly did resign shortly after the Twitter acquisition closed.  These allegations foreclose any suggestion that Plaintiffs were *reasonably certain* to remain employed at Twitter for years into the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

MOTION TO DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

future and beyond any trial in this case, but for their allegedly unlawful termination—so "front pay" is a nonstarter.  Accordingly, because Count V does not seek any "appropriate equitable relief" under ERISA, it must be dismissed.  29 U.S.C. § 1132(a)(3).

Count V also fails because it is foreclosed by Plaintiffs' claims for severance benefits in Counts I-IV.  In those Counts, Plaintiffs bring claims under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and seek an award of severance benefits "in accordance with the terms of the Plans," based on allegations that the Plans' administrators wrongly determined that Plaintiffs were terminated "for Cause" and, thus, had no right to severance benefits under the Plans.  Even assuming Plaintiffs could prevail on this theory, it would necessarily result in the *release* of their section 510 claims in Count V—because the "terms of the Plans" expressly condition any payment of benefits on the participant executing a full "release of claims."  By the same token, if the Court ultimately agrees that the Plans' administrators properly concluded that Plaintiffs were terminated "for Cause" and thus had no right to severance benefits under the Plans, this too will foreclose their section 510 claims in Count V.  "In either event, no § 510 'interference' claim will lie." *Chambers v. Travelers Cos., Inc.*, 668 F.3d 559, 567 (8th Cir. 2012).

For these reasons and as discussed further below, the Court should dismiss Count V of the Complaint for failure to state a claim under Rule 12(b)(6).

## II.    RELEVANT BACKGROUND

### A.    The Plans

Two plans are at issue: (1) the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, attached as Exhibit A to the Complaint (the "2014 Plan"); and (2) the Twitter, Inc. Change of Control Severance and Involuntary Termination Policy, attached as Exhibit B to the Complaint (the "2017 Plan").  Both Plans provided potential "Severance Benefits" to a "select group of key Twitter" employees, in the "event their employment is negatively affected by a change of control at Twitter."  2014 Plan at 1; 2017 Plan at 1.  More specifically, the Plans provided the defined Severance Benefits to participants in the event their employment was "Involuntarily Terminated" during a "Change of Control Period," as defined in the Plans.  2014 Plan at 1; 2017 Plan at 1.  The payment of Severance Benefits under the Plans is always contingent on the

1  participant first signing a standard "separation agreement and release of claims." 2014 Plan at 1-2
2  (detailing the Release Requirement); 2017 Plan at 1-2 (same).

3  Under the Plans, participants are not eligible for Severance Benefits if their employment is
4  terminated "for Cause." 2014 Plan at 2; 2017 Plan at 2. As relevant here, Cause includes "gross
5  negligence or willful misconduct in the performance of [the employee's] duties[.]" 2014 Plan at 2;
6  2017 Plan at 2. Meanwhile, participants who resign during a Change of Control Period are still
7  eligible for benefits, so long as they provide at least 30-days' written notice that they are resigning
8  "for Good Reason," within the meaning of the Plans, and thereafter sign a "separation agreement
9  and release of claims." 2014 Plan at 1-2, 3; 2017 Plan at 1-2, 3.

10 The Plans expressly provide that any designated "Administrator will have full discretion to
11 administer and interpret the Plan[s]," and that "[a]ny decision made or action taken by the
12 Administrator with respect to the [Plans], and any interpretation by the Administrator of any term
13 or condition of the [Plans], or any related document, will be conclusive and binding on all persons
14 and be given the maximum possible deference allowed by law." 2014 Plan at 6; 2017 Plan at 6.
15 Thus, any decision by the Administrator is subject to abuse of discretion review in this Court. *See,*
16 *e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life*
17 *Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) ("We read *Firestone* to require abuse of discretion
18 review whenever an ERISA plan grants discretion to the plan administrator[.]")

19 **B.   Plaintiffs, Their Administrative Claims and Appeals, and the Complaint**

20 Plaintiffs are four former executives at Twitter, including the former CEO (Parag Agrawal),
21 former CFO (Ned Segal), former Chief Legal Officer (Vijaya Gadde), and former Senior Vice
22 President & General Counsel (Sean Edgett). Plaintiffs were terminated for Cause on October 27,
23 2022, after the Twitter acquisition closed. Compl. ¶¶ 62-63, 121-22. However, Plaintiffs allege
24 that they voluntarily resigned for Good Reason on or around the same date. *Id.* ¶ 65.

25 On November 29, 2022, Plaintiffs submitted, through counsel (Sidley Austin), formal
26 claims for benefits under the Plans. Compl. ¶ 66. In these submissions, Plaintiffs "represented that
27 their Claims [also] served as resignation letters." *Id.* ¶ 69. The Plan's designated Claims
28 Administrator, Lindsay Chapman ("Claims Administrator"), denied the claims in four, separate 55-

page letters dated May 26, 2023.  *See* Compl. ¶ 72.  On September 15, 2023, Plaintiffs submitted a consolidated appeal, arguing that the Claims Administrator erred in concluding that they were terminated for Cause, and that they had in fact voluntarily resigned their employment for Good Reason.  *See* Compl. ¶¶ 74, 76-77.  The appeal was reviewed by the Twitter Severance Administration Committee ("Committee").

On January 12, 2024, the Committee issued a detailed, fifty-page opinion addressing Plaintiffs' arguments and the evidence they offered in support.  Compl. ¶ 94; Declaration of Eric Meckley ("Meckley Decl."), Ex. A, Appeal Denial Letter.[1]  In that opinion, the Committee denied Plaintiffs' appeal and agreed with the Claims Administrator that Plaintiffs were terminated for Cause within the meaning of the Plans.  Among other findings, the Committee concluded that Plaintiffs had engaged in "gross negligence" or "willful misconduct" within the meaning of the Plans by, among other things:

- Causing "the Company to pay tens of millions of dollars in legal fees that were billed in clear violation of the Company's 2022 Outside Counsel Billing Guidelines . . . and relevant engagement letters."  *Id.* at 2; *see also id.* at 33.

- Causing "the Company to pay approximately $80 million . . . in gratuitous and excessive success fees [to firms] that were not required under the terms of the relevant engagement letters" and "in violation of applicable laws and/or rules of ethics."  Plaintiffs also "accelerated the payment of these fees" in the hours before the Twitter acquisition closed "over Mr. Musk's objections, which prevented [X Corp.] . . . from auditing these fees to ensure the Company had paid only those amounts it was legally obligated to pay," and in doing so "failed to engage in any meaningful review of [the] fees prior to

---

[1] Because the Complaint relies on and makes extensive reference to the January 12, 2024 Appeal Denial Letter (Compl. ¶¶ 94-100, 149), the Court may properly consider it in connection with this Motion.  *See Jiaxing Super Lighting Elec. Appliance Co. v. Bruggeman*, 2022 WL 17404300, at *2 (N.D. Cal. Dec. 2, 2022) (Chesney, J.) (on Rule 12(b)(6) motion, court may consider "[d]ocuments whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading") (citing *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) ("A court may . . . consider certain materials," including "documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment")).

payment and disabled the protective measures that the Company had put in place to prevent the payment of improper fees." *Id.* at 2; *see also id.* at 31, 33, 36, 37.

- Causing the Company to violate the Merger Agreement in the months before the acquisition closed by approving "a dramatic increase in retention bonuses payable to members of their respective teams," after Musk exercised his right not to consent to such increases. *Id.* at 2-3; *see also id.* at 40-41.

- Causing "new participants to be added to the Plan[s], generally increasing the severance benefits available to these individuals by more than $50 million dollars," including one employee who Twitter had already decided to terminate and another who was allowed to add herself to one of the Plans—a naked conflict of interest that increased her potential compensation by approximately $15 million. *Id.* at 3; *see also id.* at 41-43.

On March 4, 2024, Plaintiffs filed their Complaint for Severance Benefits, Equitable Relief, and Statutory Penalties (ERISA) ("Complaint") in this Court. Compl. at p. 1. As the Complaint's title indicates, Plaintiffs' claims fall into three buckets:

- **Claims for Severance Benefits.** First, in Counts I-IV, Plaintiffs assert four separate claims for Severance Benefits (one Count per Plaintiff) under section 502(a)(1)(B) of ERISA. Compl. ¶¶ 157-172. Through these claims, Plaintiffs seek an order declaring that the denial of Plaintiffs' claims for benefits under the Plans was contrary to the terms of the Plans, and further ordering that Plaintiffs be paid Severance Benefits, in accordance with the terms of the Plans. *Id.*, Prayer for Relief ¶¶ A-B.

- **Claims for Equitable Relief.** Second, in Count V, Plaintiffs bring claims under section 510 of ERISA, to recover from Musk and X Corp. "appropriate equitable relief" based on Musk's alleged decision to terminate their employment. Compl. ¶¶ 175-176.

- **Claims for Statutory Penalties.** Third, in Count VI, Plaintiffs seek to recover statutory penalties from Musk and the Claims Administrator under section 502(c) of ERISA, based on their alleged failure timely to provide Plaintiffs with certain documents in connection with Plaintiffs' claims for benefits and related appeals. Compl. ¶¶ 177-183.

This Motion concerns Plaintiffs' claims in the second bucket: Count V. These claims do not concern the Claims Administrator or the Committee. Rather, they allege that Musk and X Corp. terminated Plaintiffs' employment not "for Cause," within the meaning of the Plans, but rather "for the specific purpose of interfering with their attainment of Severance Benefits under the Plan[s]" in violation of section 510 of ERISA. Compl. ¶¶ 101, 175. Based on these claims, Plaintiffs request two forms of purported "equitable relief," including an unspecified "equitable surcharge" and "front pay." *Id.*, Prayer for Relief ¶ C.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, claims seeking "equitable relief" that is not properly awarded under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), must be dismissed. *See, e.g.*, *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019) (affirming dismissal because "plaintiffs [were] not seeking 'appropriate equitable relief' under 29 U.S.C. § 1132(a)(3)").

## III.   ARGUMENT

### A.   Count V Should Be Dismissed Because The Only Relief It Seeks Is Unavailable, As Supreme Court And Ninth Circuit Precedent Confirms.

Section 510 of ERISA makes it unlawful to terminate the employment of a plan participant for "the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140. A terminated participant can seek "redress" for an alleged violation of section 510 through the enforcement provision prescribed in section 502(a)(3) of ERISA, which provides "appropriate equitable relief" to "redress such violations[.]" 29 U.S.C. § 1132(a)(3); *Spinelli v. Gaughan*, 12 F.3d 853, 856 (9th Cir. 1993) ("[S]ection 510 incorporates the remedies of section 502, which in turn authorizes an aggrieved participant . . . to bring a civil action . . . to obtain . . . appropriate equitable relief[.]").

Here, Plaintiffs seek two forms of purported equitable relief: "surcharge" and "front pay." Compl. ¶¶ 173-176, Prayer for Relief ¶ C.[2] But as their own allegations demonstrate, neither is available to them, as a matter of law. Thus, Plaintiffs' section 510 claims in Count V necessarily fail to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

To start, although the Ninth Circuit has recognized that "surcharge" is a form of equitable relief that may properly be awarded in certain ERISA cases, this is not one of them. Under binding precedent, an "equitable surcharge" is properly awarded only to remedy a breach of fiduciary duty. *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) (explaining that a "surcharge" is monetary relief that might be "equitable" within the meaning of ERISA, but only when awarded to remedy "a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary."); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2014) (same). Accordingly, claims seeking to impose an equitable surcharge for ERISA violations that do *not* constitute a breach of fiduciary duty are properly dismissed because they do not seek "appropriate equitable relief" under section 502(a)(3). *See, e.g.*, *id.*; *Foster v. Adams & Assocs., Inc.*, 2020 WL 3639648, at *8 (N.D. Cal. July 6, 2020) (dismissing claims seeking an equitable "surcharge" award under section 502(a)(3) against *non-fiduciary* defendants, because surcharge is "appropriate equitable relief" only for a breach of fiduciary duty).

That is the correct result here. The Complaint never alleges that Musk or X Corp. acted in a fiduciary capacity when terminating Plaintiffs' employment. For good reason. Under ERISA, one is a fiduciary only "*to the extent*" he is engaged in fiduciary conduct—that is, exercising discretionary "control" or "authority" over plan "assets" or "administration." 29 U.S.C. § 1001(21)(A) (emphasis added). Under this "functional" definition, courts recognize that even

---

[2] While Plaintiffs seek a declaration that they are entitled to benefits under the Plans, this is not a request for equitable relief under section 502(a)(3) of ERISA, and Plaintiffs do not appear to allege otherwise. *Compare* Compl., Prayer for Relief ¶ A (requesting the above "[d]eclaration") *with id.* ¶ C (requesting "equitable relief" in the form of "front pay and/or equitable surcharge"). Rather, the requested declaration "is nothing more than a request for the Court to 'clarify [Plaintiffs'] rights to . . . benefits under the terms of plan'—relief for which ERISA provides under section 502(a)(1)(B)," *Berman v. Microchip Tech. Inc.*, 2018 WL 732667, at *11 (N.D. Cal. Feb. 6, 2018), *rev'd* on unrelated grounds, 838 F. App'x 292 (9th Cir. 2021), and which Plaintiffs seek through Counts I-IV of the Complaint (¶¶ 157-172).

where (unlike here) the defendant is a fiduciary for some purposes, he wears a "fiduciary hat" only when making discretionary decisions concerning ERISA plan management, and otherwise wears a non-fiduciary "corporate hat" when making personnel and other business decisions—even when those decisions adversely impact plan participants or plan benefits. *Acosta v. Brain*, 910 F.3d 502, 518-20 (9th Cir. 2018). Thus, when an officer or employer (like Musk or X Corp.) makes an employment decision (like hiring or firing employees) they are not engaged in fiduciary conduct as defined in ERISA. *See id.* at 514, 518-20 (placing employee on "administrative leave," allegedly in violation of section 510, was an employment decision not fiduciary conduct); *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1080 (4th Cir. 1989) ("[Defendant] was acting in its capacity as [the plaintiff's] employer, not as a fiduciary, when it decided to discharge him," and thereby precluded recovery or early-retirement benefits under the plan's terms). That is why Plaintiffs have not alleged—*and cannot allege*—that the decision to terminate them constituted a breach of fiduciary duty. Accordingly, their request for an equitable surcharge is not appropriate equitable relief under ERISA. *See Gabriel*, 773 F.3d at 957 (equitable surcharges is available only for breaches of fiduciary duty); *Foster*, 2020 WL 3639648, at *9 (dismissing claims for equitable surcharge because defendants were not fiduciaries).

Plaintiffs cannot recover front pay, either. Even assuming that front pay may constitute "appropriate equitable relief" under section 502(a)(3) in some cases, Plaintiffs' own allegations confirm this is not one of them. Front pay is a forward-looking remedy, measured by the amount the plaintiff was "reasonably certain" to earn through continued employment with the employer beyond the trial date, "but for his wrongful discharge" (minus earnings he could have obtained through alternative employment). *Teutscher v. Woodson*, 835 F.3d 936, 948 (9th Cir. 2016). But here, Plaintiffs are adamant that they had *no expectation* of remaining employed at Twitter—let alone for years into the future and beyond any trial in this case. Instead, Plaintiffs insist that they *intended to resign* once the Twitter acquisition closed on October 27, 2022, and that they supposedly did resign on or around that date. Compl. ¶¶ 64, 69. Plaintiffs even represented in their November 29, 2022 submissions to the Claims Administrator that the claims "served as resignation

letters." *Id.* ¶ 69. Thus, Plaintiffs' own allegations refute any suggestion that they could be entitled to front pay as appropriate equitable relief for their section 510 claims in this case.

### B. Count V Fails Because It Is Unavoidably Foreclosed By Counts I-IV.

Not only do Plaintiffs' section 510 claims in Count V fail because they do not seek any legally-permissible relief, but they also fail because they are unavoidably foreclosed by Plaintiffs' claims for Severance Benefits in Counts I-IV.

The central question in this case is whether the Claims Administrator and Committee properly denied Plaintiffs' claims for benefits based on their determinations that Plaintiffs were terminated "for Cause" within the meaning of the Plans, such that Plaintiffs had no right to Severance Benefits under the Plans. That is the focus of Counts I-IV of the Complaint, which are properly asserted under section 502(a)(1)(B) of ERISA. In those Counts, Plaintiffs disagree with the Claims Administrator and Committee by alleging that they were not terminated "for Cause" as defined in the Plans, and thus argue that they are entitled to Severance Benefits under the Plans. Based on these claims, Plaintiffs seek an order requiring that they be paid Severance Benefits "in accordance with the terms of the Plans." Compl., Prayer ¶¶ A-B. If Plaintiffs prevail, then they may recover Severance Benefits, but only after executing a "separation agreement and release of claims," in "accordance with the terms of the Plans." *See supra* at 6-7. In other words, if Plaintiffs prevail on their claims for Severance Benefits in Counts I-IV, then their section 510 claims in Count V will necessarily be extinguished by the required release of claims.

Alternatively, if the Court agrees with the Claims Administrator and Committee that Plaintiffs were terminated "for Cause" within the meaning of the Plans—and thus had no right to Severance Benefits under the Plans—then Plaintiffs' section 510 claim will fail, too. That is because when a plan bars employees terminated for cause from receiving severance benefits, and the administrator properly determines the employee's termination was for cause, then the employee had no "right" under the plan with which to "interfer[e]." 29 U.S.C. § 1140; *see, e.g.*, *Pendleton v. QuickTrip Corp.*, 567 F.3d 988, 993 (8th Cir. 2009) (affirming dismissal of section 510 claim because "severance plan clearly states that employees terminated for cause will not receive severance," and plaintiff "was terminated for cause, and he was therefore fully excluded from

severance benefits"); *Lillywhite v. AECOM*, 2020 WL 13628211, at *1 (W.D. Wash. Dec. 23, 2020) ("Plaintiff's failure to refute Defendants' allegation that he was terminated for cause forecloses a claim based on an alleged violation of § 510.").

In sum, whether or not Plaintiffs prevail on Counts I-IV, their claim in Count V is subject to dismissal either way. Courts have rejected section 510 claims for these reasons. *See Chambers*, 668 F.3d at 567 ("[I]f [plaintiff] was terminated for cause, she had no further rights under the plan. If she was not validly terminated for cause, she had a claim for severance benefits under the plan. In either event, no § 510 'interference' claim will lie."); *cf. Teurner v. Gen. Motors Corp.*, 34 F.3d 542, 545 (7th Cir. 1994) (holding that defendant's alleged intentional mischaracterization of the cause of plaintiff's termination could not support a section 510 claim because the challenged characterization did not "itself" change plaintiff's employment status—i.e., terminated—and any claim that the termination was misclassified was properly asserted as a claim for benefits under the plan pursuant to section 502(a)(1)(B) of ERISA).

This makes sense. Allowing Plaintiffs to assert a section 510 claim here would create the absurd result that every decision to designate a termination "for cause" under a severance plan is challenged not just as a claim for plan benefits under section 502(a)(1)(B) of ERISA, but also as a section 510 violation. The Court should dismiss Count V on this additional basis.

## IV.  CONCLUSION

For these reasons, the Court should dismiss Count V of the Complaint under Rule 12(b)(6).

Dated: May 20, 2024

MORGAN, LEWIS & BOCKIUS LLP

By  /s/ Eric Meckley
    Eric Meckley
    Jeremy Blumenfeld
    Chris Boran
    Brian Sullivan
    Abbey Glenn

*Attorneys for Defendants*