| | | |
|---|---|---|
| 1 | David L. Anderson (SBN 149604) | Mark B. Blocker (admitted pro hac vice) |
| | dlanderson@sidley.com | mblocker@sidley.com |
| 2 | Sheila A.G. Armbrust (SBN 265998) | SIDLEY AUSTIN LLP |
| | sarmbrust@sidley.com | One South Dearborn |
| 3 | Nicole M. Ryan (SBN 175980) | Chicago, IL 60603 |
| | nicole.ryan@sidley.com | Tel: (312) 853-7000 |
| 4 | Sarah E. Gallo (SBN 335544) | |
| | sgallo@sidley.com | |
| 5 | Chaddy Georges (SBN 335546) | |
| | cgeorges@sidley.com | |
| 6 | SIDLEY AUSTIN LLP | |
| | 555 California Street, Suite 2000 | |
| 7 | San Francisco, CA 94104 | |
| | Tel: (415) 772-1200 | |

*Attorneys for Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE, and SEAN EDGETT, | Case No. 3:24-cv-01304-MMC |
| Plaintiffs, | **JOINT CASE MANAGEMENT STATEMENT** |
| vs. | CMC Date: June 14, 2024 |
| ELON MUSK; X CORP., f/k/a TWITTER, INC.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA, | Time: 10:30 a.m. |
| | Judge: Hon. Maxine M. Chesney |
| | Location: Courtroom 7 (via Zoom) |
| Defendants. | |

Pursuant to the Court's March 13, 2024 Case Management Conference Order, the Standing Order for All Judges of the Northern District of California (the "Standing Order"), Civil Local Rule 16-9, and Rules 16 and 26(f) of the Federal Rules of Civil Procedure, the Parties to the above-captioned action hereby submit this Joint Case Management Statement.

**1.       Jurisdiction and Service**

Plaintiffs' claims arise under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). This Court has subject matter jurisdiction over the claims pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. All Defendants have been served (or waived service) and have appeared in the action.

**2.       Facts**

Plaintiffs' Brief Chronology of Facts Pursuant to the Standing Order

After Elon Musk agreed to buy Twitter for $44 billion, he tried to back out of the deal without justification. Twitter sued Musk to enforce the deal, and Musk was ultimately forced to close the deal at its original price. Musk vowed revenge, telling his biographer that he would "hunt every single one of" Twitter's executives and directors "till the day they die." Although he was aware that Plaintiffs were entitled to payments under Twitter's severance plans, Musk had no intention of making those payments. He hatched a plan to accelerate the closing and terminate Plaintiffs before they could resign and claim their benefits, bragging to his biographer that he planned to cheat Twitter's executives out of their severance benefits to save himself $200 million.

Before he even owned Twitter, Musk sent Plaintiffs letters claiming that they were being terminated "for cause." Musk did not identify any facts supporting "cause" in the letters but instead appointed employees of his various companies – Lindsay Chapman, Brian Bjelde, and Dhruv Batura – to uphold his decision as part of the ERISA administrative process. And uphold his decision they did: Chapman denied Plaintiffs' claims for benefits asserting a myriad of post-hoc justifications for Plaintiffs' terminations, and all three denied Plaintiffs' appeal, ignoring the voluminous evidence – including the words straight out of Musk's mouth – that Plaintiffs' terminations were a sham to prevent them from getting the money they were owed. Contrary to Defendants' assertions below, and as the evidence ignored by Defendants proves, Plaintiffs did not engage in gross negligence or willful

misconduct, and at all times acted in good faith and with due care, in what they believed to be Twitter's and its stockholders' best interests.

As their factual statement below makes clear, Defendants intend to re-litigate the merger litigation they lost and to argue that Musk's opinion of Plaintiffs as his merger adversaries justifies their denial of benefits under the Plans. Defendants' version of events is a self-serving narrative unsupported by the evidence in the administrative record, as Plaintiffs will clearly demonstrate at the proper time. Defendants also make a number of legal assertions below, none of which are properly included in their factual statement. Plaintiffs disagree with those legal assertions and will brief them at the appropriate time.

<u>Defendants' Brief Chronology of the Facts</u>

On October 27, 2022, Twitter, Inc. (now X Corp.) terminated Plaintiffs for cause. This decision was based on Plaintiffs' misconduct dating back to Spring 2022, evidencing Plaintiffs' dishonesty, gross negligence, and willful misconduct in connection with their duties as Twitter executives. This conduct included, among other things, their gross mismanagement of the company's finances through wasteful spending generally and their efforts, more specifically, to plunder the company in the weeks and months before the Twitter merger closed in October 2022. In particular, Plaintiffs engaged in "gross negligence" or "willful misconduct" within the meaning of the Plans by, among other things:

- Causing the company to pay tens of millions of dollars in legal fees that were billed in violation of the Company's billing guidelines and relevant engagement letters, including payments for completely blank time entries.
- Causing the company to pay approximately $80 million in gratuitous and excessive success fees to law firms that were not required under the engagement letters (which provided for hourly billing rates) and in violation of applicable laws and ethics rules.
- Accelerating the payment of the above unlawful and improper fees hours before the Twitter merger closed over the objection of the merging entity, which prevented the company from auditing these fees to ensure that it paid only those amounts it was legally obligated to pay, and disabling the protective measures that the company had put in place to prevent the

payment of improper fees.

- Causing the company to violate the merger agreement in the months before the merger closed by dramatically increasing retention bonuses payable to members of their respective teams.

- Causing new participants to be added to the Plans and increasing the severance benefits available to these individuals by more than $50 million dollars, including one employee who the company had already decided to terminate and another who was allowed to add herself to the Plan, which was a naked conflict of interest that increased her potential compensation by approximately $15 million.[1]

Nevertheless, Plaintiffs sought to be richly rewarded despite their misconduct, filing claims under the 2014 Plan and 2017 Plan for more than $130 million in severance benefits. But severance benefits—particularly the extravagant sort Plaintiffs seek here—are not owed to former executives who have been terminated for cause. The 2014 Plan and the 2017 Plan make that clear. Those plans also make clear that a Plan Administrator is granted broad discretionary authority to interpret the Plans and decide claims for benefits under them: "The Administrator will have full discretion to administer and interpret the [Plan]. Any decision made or action taken by the Administrator with respect to the [Plan], and any interpretation by the Administrator of any term or condition of the [Plan], or any related document, will be conclusive and binding on all persons and be given the maximum possible deference allowed by the law." Compl., Ex. A at ECF page 5 of 7. The Plans also prescribed clear procedures for Plaintiffs to make claims under the Plans and to appeal any decision by the Administrator with respect to those claims. *Id.* at ECF page 6 of 7.

Plaintiffs were allowed to take full advantage of these procedures. They submitted their original claims for benefits, with the help of experienced legal counsel. And the Plan Administrator—who was an HR professional and not a Twitter or X Corp. employee—carefully considered those claims before issuing separate decisions thoroughly explaining, over more than 50 pages each, her reasons for denying each Plaintiff's claim. Next, Plaintiffs requested and received

---

[1] It is worth emphasizing that, contrary to Plaintiffs' assertion, their misconduct outlined here—and expounded on at length in the Plan Administrator's and Committee's decisions—was not at issue in the merger litigation, let alone is the merger litigation being "re-litigated" here. Indeed, it is telling that Plaintiffs' chronology of the facts focuses on the merger litigation and Musk, neither of which is at issue here, rather than on the Plan Administrator's and Committee's detailed findings as to Plaintiffs' own misconduct.

relevant documents and submitted a consolidated appeal—again, through counsel—attaching various evidence, including expert opinions, unsigned "proffers" attributed to witnesses, deposition testimony, and other materials.  The appeal was considered and denied by a duly-appointed Committee—including a single X Corp. employee and two non-X Corp. employees—in a detailed 50-page opinion that thoroughly addressed Plaintiffs' various arguments and evidence offered in support.  In the end, the Committee unanimously agreed with the Plan Administrator that Plaintiffs were terminated for Cause based on three categories of gross negligence or willful misconduct:  (1) improperly permitting corporate assets to be wasted on exorbitant "bonuses" and other expedited payments to law firms in violation of applicable engagement letters, billing guidelines, and ethical rules, and in disregard of appropriate and timely objections; (2) improperly approving retention bonuses and other benefits for Twitter employees, in violation of the merger agreement; and (3) wasteful and grossly negligent spending.  *See* Dkt. 46-1, Defs.' Motion to Dismiss Count V, Ex. A, Appeal Decision at 26-45 (summarizing conduct constituting Cause for termination).

Although Plaintiffs disagree with these conclusions in Counts I-IV of the Complaint, they cannot dispute that the Plans expressly conferred discretionary authority on the Plan Administrator and Committee to interpret the Plans and decide claims for benefits under the Plans.  As a result, those determinations can be overturned only for an abuse of discretion.  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).

As for Plaintiffs' ERISA § 510 claim against Musk and X Corp. in Count V, it fails for reasons discussed in Defendants' motion to dismiss.  In any event, as discussed above, X Corp. decided to terminate Plaintiffs for cause based on an extensive history of dishonesty and misconduct.  That Plaintiffs were ultimately determined to be ineligible for severance benefits based upon an independent assessment of Plaintiffs' conduct by the Plan Administrator and Committee was merely a byproduct of the termination decision (as it is whenever any employee is terminated for cause and the employer has a severance plan)—not its motivating purpose.

Finally, in Count VI, Plaintiffs seek to recover a $110 per day statutory penalty for any delay in producing unspecified, ERISA-required documents.  Such statutory penalties are only available when certain governing plan documents are not timely produced to a plan participant. 29 U.S.C. §§

1024(b), 1132(c)(1). Plaintiffs received those documents long before they filed this action, and they are not entitled to any statutory penalties for any alleged delay in producing them. To the extent Plaintiffs seek penalties for documents they claim were not produced in violation of regulations concerning the claims and appeals process—*e.g.* Compl. ¶¶ 153, 154 (citing 29 C.F.R. § 2560.503-1(h)(2)(iii))—those documents are not subject to § 1024(b) or § 1132(c)(1), as a matter of law, so penalties are unavailable. *See, e.g.*, *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1162 (9th Cir. 2016) ("We now join our sister circuits and hold that a failure to follow claims procedures imposed on benefit plans, such as outlined in 29 C.F.R. § 2560.503-1(h)(2)(iii) does not give rise to penalties under 29 U.S.C. § 1132(c)(1).").

### 3. Legal Issues

The principal legal issues in dispute include: (1) the appropriate standard of review the Court should apply in resolving Plaintiffs' benefits claims; (2) the scope of the administrative record and materials the Court should consider in resolving the benefits claims; (3) whether Plaintiffs are entitled to benefits under ERISA Section 502(a)(1)(B); (4) whether Defendants Musk and X Corp. are liable for discharging Plaintiffs for the purpose of interfering with their attainment of severance benefits pursuant to ERISA Section 510; and (5) whether Defendants Chapman and Musk are liable for failing to timely provide Plaintiffs with required materials under ERISA Section 502(c).

### 4. Motions

  A. Pending Motions

- Defendants' Motion to Dismiss Count V of the Complaint (Dkt. No. 46) – noticed for hearing July 19, 2024; opposition due June 14, 2024; reply due June 28, 2024

  B. Anticipated Motions

- *Discovery motions*

Plaintiffs' Position

Plaintiffs anticipate filing motions to compel the production of materials that were wrongfully withheld during the administrative appeal process. In their position below, Defendants do not anticipate bringing any discovery motions, but instead attempt to minimize their failures in the administrative process and characterize as privileged the entirety of the materials they withheld. As the briefing on Plaintiffs' anticipated motions will show, Defendants improperly withheld materials

that they considered and relied upon in making their claim determinations and over which they have no colorable claim of privilege. Defendants' failure to provide these materials violates 29 C.F.R. § 2560.503-1. Plaintiffs anticipate that they may also need to file motions to compel to enforce discovery propounded in this action.

Defendants' Position

Certain documents produced to Plaintiffs during the administrative process that preceded this action were partially redacted with respect to attorney-client privileged information. In addition, a limited number of documents were withheld entirely on the basis of attorney-client privilege. Any document that was redacted or withheld on the basis of privilege was disclosed in a privilege log. Since filing this action, Plaintiffs have contended that none of these documents is privileged due to waiver or the fiduciary exception to privilege that applies to some ERISA plans. Defendants disagree on both points and maintain that the fiduciary exception to attorney-client privilege is inapplicable here because the plans at issue are ERISA "top-hat" plans, which are exempt from ERISA's fiduciary responsibility provisions and, in turn, the fiduciary exception to attorney-client privilege. *See, e.g.*, *Kramer v. Am. Elec. Power Exec Severance Plan*, 2023 WL 2925117, at *2, 7 (S.D. Ohio Apr. 13, 2023) (because the plan was an ERISA top hat plan "the fiduciary exception to attorney-client privilege does not apply"); *Tolbert v. RBC Cap. Mkts., Corp.*, 2012 WL 1067629, at *5 (S.D. Tex. Mar. 28, 2012) ("[T]he WAP is a top hat ERISA plan. Thus, the fiduciary exception does not apply."). Defendants intend to meet and confer regarding the above issue.

- *Motion practice regarding the standard of review and scope of materials to be considered by the Court on the benefits claims*

The Parties dispute the applicable standard of review for Plaintiffs' benefits claims in Counts I-IV. Thus, in accordance with the Court's standard practice, the Parties propose briefing the standard of review in advance of briefing on the merits. Plaintiffs also propose briefing the scope of materials to be considered by the Court on the benefits claims. Plaintiffs propose that the briefing shall occur following the completion of fact discovery, so that Plaintiffs can obtain sufficient discovery regarding bias, conflicts of interest, and irregularities in the administrative process as relevant to the Court's determination of the appropriate standard of review. Defendants propose that the briefing shall occur at the beginning of fact discovery.

Plaintiffs may also move to supplement the record with evidence they were precluded from obtaining during the administrative process. *See, e.g.*, *Abatie*, 458 F.3d at 974. Plaintiffs further contend that Defendants wrongfully relied on new bases and materials in denying Plaintiffs' appeal, in violation of ERISA's procedures, and thus (among other things) the Court should not consider those new bases and materials in evaluating the benefits claims. *See, e.g., id.*; *Wolf v. Life Ins. Co. of N. Am.*, 46 F.4th 979, 985–87 (9th Cir. 2022).[2] In addition, Plaintiffs expect to present evidence of conflict of interest, pretext, and other procedural irregularities by Defendants, which are appropriately considered by the Court. *See, e.g., Abatie*, 458 F.3d at 960, 967, 972–74. Defendants disagree with Plaintiffs' statements above, including that the Committee responsible for deciding Plaintiffs' appeal of the denial of their benefits claims acted in violation of ERISA procedures, but will confer in good faith with Plaintiffs about these issues at the appropriate time.

- *Dispositive motions*

The Parties anticipate filing cross-motions addressing the merits of Plaintiffs' benefits claims and, potentially, Plaintiffs' records claim.

**5. Amendment of Pleadings**

The Parties currently do not anticipate the addition of any new parties, claims, counter-claims, or defenses but reserve their respective rights.

**6. Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. Defendants have instructed and will instruct their agents to preserve documents relevant to Plaintiffs' claims. Defendants have been instructed to preserve potentially relevant documents and relevant third parties have been notified of the litigation.

---

[2] If, however, the Court were to allow Defendants to rely on these new bases and materials, which Plaintiffs were precluded from responding to at the administrative level, Plaintiffs would be entitled to present additional arguments and evidence in response in court. *See Wolf*, 46 F.4th at 985–87.

7. **Disclosures**

The Parties exchanged initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure on June 6, 2024. Plaintiffs dispute that Defendants' initial disclosures, which do not name any witnesses or identify any categories of documents outside of the administrative record, are sufficient, and disagree with Defendants' contentions that benefits claims are exempt from Rule 26(a)(1) disclosure requirements and that Defendants need not disclose witnesses relevant to Count V of the Complaint simply because they have filed a motion to dismiss that count. Defendants disagree.  Plaintiffs' statement mischaracterizes Defendants' initial disclosures and simply reflects Plaintiffs' attempt to shift the focus from Plaintiffs' claims for benefits.  Defendants' initial disclosures comply with the Rule 26 requirements by identifying information they may use to support their claims or defenses.

8. **Discovery**

The Parties dispute the sufficiency of the documents and information produced during the administrative process preceding this action. To date, no discovery has been taken in this action, apart from the exchange of initial disclosures. Subject to their respective positions below, the Parties propose completing fact discovery within approximately the next eight-and-a-half months. The Parties are considering entering into a stipulated e-discovery order.

Plaintiffs' Position

Plaintiffs intend to take discovery concerning issues related to Defendants' conflict of interest, bias, pretext (i.e., improper motivation), and procedural irregularities, Plaintiffs' alter ego allegations against Musk, and to obtain information that Defendants prevented Plaintiffs from obtaining during the administrative process. Such information includes copies of materials that Defendants reviewed, considered, or relied upon in making their claim determinations, including emails sent and received by Plaintiffs when they worked at Twitter and memoranda prepared by outside counsel and provided to the committee to assist it in its appeal determination.

Defendants argue that Plaintiffs are not entitled to discovery relevant to bias or pretext while their motion to dismiss the Section 510 claim is pending, which may take a significant portion of the eight-and-a-half months the Parties have designated for discovery. Plaintiffs submit that Defendants'

1   bias and pretext are central to both their benefits claims and their Section 510 claim, and in any
2   event, are entitled to conduct discovery on all claims whether or not a motion to dismiss is pending.
3   *See, e.g.*, *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

    Defendants' Position

    Pending the Court's ruling on (1) Defendants' motion to dismiss Plaintiffs' ERISA § 510 claim in Count V of the Complaint, and (2) any motion practice concerning the applicable standard of review for Plaintiffs benefit claims in Counts I-IV, discovery should be limited to the Plan Administrator's and Committee's alleged "conflict of interest in adjudicating Plaintiffs' claims for benefits." Compl. ¶ 156. Discovery concerning Musk's and X Corp.'s alleged bias or pretext in connection with the decision in October 2022 to terminate Plaintiffs is relevant only to Plaintiffs' section 510 claim in Count V and may be obviated by the Court's ruling on Defendants' pending motion to dismiss that claim.[3] Further, the appropriate scope of discovery beyond the administrative record for Plaintiffs' benefit claims in Counts I-IV will be informed by the Court's determination whether the Plan Administrator's and Committee's decisions are subject an abuse of discretion review standard. *See, e.g.*, *Hoskins v. Bayer Corp. & Bus. Servs. Long Term Disability Plan*, 564 F. Supp. 2d 1097, 1102 (N.D. Cal. 2008) (Chesney, J.).

    Accordingly, Defendants propose that pending a ruling on the above motions, discovery be limited to the administrative record and Plaintiffs' allegations that "by virtue of their dual roles in evaluating and funding the claims," the Plan Administrator and Committee "operated under a conflict of interest in adjudicating Plaintiffs' claims for benefits," which was "exacerbated by the fact that Musk appointed" the Plan Administrator and Committee. Compl. ¶ 156. Such discovery would include the following subjects: (1) the appointment of the Plan Administrator and members of the Committee; (2) any role the Plan Administrator or Committee had in "funding" severance benefits; (3) actions taken to insulate the Plan Administrator and Committee from any potential

---

[3] Plaintiffs' Rule 26 initial disclosures signaled that they seek to throw open the doors to expansive and overly-broad discovery, including from third-party law firms and other individuals and entities involved in the Twitter merger and related litigation, and the provenance of statements attributed to Musk and others in the Musk biography. Defendants' position is that such discovery has nothing to do with the decisions by the Plan Administrator and Committee, both of which were appointed and made decisions on a clearly identified administrative record long after the events Plaintiffs seek to explore in Count V.

conflict; (4) communications to, from, and among the Plan Administrator and Committee members regarding Plaintiffs' benefit claims and appeals. Defendants anticipate that this will require only written discovery and potentially limited deposition testimony.

**9.  Class Actions**

Not applicable.

**10.  Related Cases**

The Parties are not aware of any cases that are "related" within the meaning of Civil Local Rule 3-12(a) that are pending before another judge of this court, or before another court or administrative body. However, at least one related case is currently pending before this Court – *Caldwell v. Musk*, Case No. 3:24-cv-02022-MMC (filed April 3, 2024), brought by another former Twitter executive asserting claims for recovery of severance benefits under the 2014 Plan and unlawful discharge in violation of Section 510. In addition, Plaintiffs state that thousands of former non-executive Twitter employees have asserted claims against Musk and X Corp., which are pending before multiple judges in the Northern District of California, other courts, and arbitrators, and for which subpoenas for documents and testimony have been issued to at least one Plaintiff, including by Defendant X Corp., and may continue to be so issued. Defendants observe that Plaintiffs, in an apparent attempt to smear the Defendants, improperly raise in this section irrelevant cases involving non-executives asserting entirely different claims, which have nothing to do with the Plans or Plaintiffs' claims for benefits, and which are not at all "related" as defined by Local Rule 3-12(a). Plaintiffs' statement is also factually inaccurate as to Musk.

**11.  Relief**

Plaintiffs seek the following amounts in severance benefits due to them under the Plans, representing a mix of one-year's salary, the value of certain unvested equity at the acquisition price of $54.20 per share, and COBRA health insurance premiums:

- Plaintiff Agrawal: $57,361,399.80
- Plaintiff Segal: $44,468,148.00
- Plaintiff Gadde: $20,012,782.80
- Plaintiff Edgett: $6,765,356.68

1  All Plaintiffs seek appropriate equitable relief, including but not limited to front pay and
2  equitable surcharge, to remedy Defendants Musk and X Corp.'s violation of ERISA Section 510,
3  a penalty of $110 per day from December 29, 2022 to the day that Defendants provide Plaintiffs with
4  all documents required to be provided under ERISA Sections 104(b) and 502(c) and 29 C.F.R. §
5  2560.503-1(m)(8), and pre-judgment and post-judgment interest and attorneys' fees and costs.

6  Defendants reserve their right to recover attorneys' fees in costs in the event they prevail on
7  Plaintiffs' claims in this action, and further reserve their rights to seek relief with respect to any
8  claims or counter-claims they may later assert in this action.

**12.  Settlement and ADR**

On May 23, 2024, counsel for the Parties met and conferred about ADR. Plaintiffs have offered to participate in a settlement conference before a magistrate judge or other judicial officer pursuant to ADR Local Rule 7. While Plaintiffs contend that during the May 23 conference they offered to participate in a settlement conference, Plaintiffs never made such an offer.  Rather, the Parties discussed the various ADR procedures and agreed to give the topic further consideration and confer at a later time.  No settlement discussions have taken place.

**13.  Other References**

The Parties do not believe the case is suitable for reference to binding arbitration, a special mater, or the Judicial Panel on Multidistrict Litigation.

**14.  Narrowing of Issues**

The Parties have not to date identified any stipulations or other means by which the issues before the Court might be narrowed. The Parties have expressed their willingness to meet and confer on ways to streamline the presentation of evidence, including through stipulations to admissibility of documents and witness statements and stipulated facts.

**15.  Expedited Trial Procedure**

The Parties do not believe that this is the type of case that can be handled under the Expedited Trial Procedures of General Order 64 Attachment A.

**16.  Scheduling**

The Parties have conferred and propose the following schedule:

- Fact discovery cut-off: February 21, 2025
- Plaintiffs' motion on the standard of review and scope of the administrative record/materials to be considered by the Court on the benefits claims:
    - Plaintiffs propose filing their motion after the completion of fact discovery on the following scheduling, so that Plaintiffs can obtain discovery on issues of bias and procedural irregularities relevant to the appropriate standard of review: Motion due March 21, 2025; Defendants' opposition due April 18, 2025; Plaintiffs' reply due May 9, 2025; hearing May 30, 2025
    - Defendants' position is that the plan language makes clear that the abuse of discretion standard of review applies here. If Plaintiffs contend briefing is needed to determine the standard of review, then such briefing should take place at the beginning of discovery, as the Court's ruling may impact the scope of discovery: Motion due July 19, 2024; Defendants' opposition due August 16, 2024; Plaintiffs' Reply due September 6, 2024; hearing September 27, 2024
- Expert designations:[4] July 3, 2025
- Cross-motions under Rule 56 or Rule 52: Motions due September 5, 2025; oppositions due October 3, 2025; replies due October 24, 2025
- Pretrial status conference:
    - Plaintiffs propose October 28, 2025
- Trial date (bench trial)/Hearing on cross-motions for judgment:
    - Plaintiffs propose November 17, 2025

17. **Trial**

The Parties agree that if the claims asserted in the Complaint are tried, they will be tried to the Court.

Plaintiffs estimate that the trial will last approximately one week.

---

[4] The Parties anticipate that expert discovery may ultimately be unnecessary, depending on the Court's resolution of contested issues prior to the proposed expert-designation deadline.

Defendants believe that most if not all of this case should be adjudicated through cross motions under Rule 56 or Rule 52, and that a separate bench trial will be unnecessary. If the case does proceed to trial in any respect, Defendants estimate that the trial would take up to one week.

**18.   Disclosure of Non-party Interested Entities or Persons**

Plaintiffs filed their Certification of Conflicts and Interested Entities or Persons on March 4, 2024, stating that there is no conflict or interest (other than the named parties) to report.

Defendants filed their Rule 7.1 Corporate Disclosure Statement and Civil L.R. 3-15 Certification of Conflicts and Interested Entities or Persons on May 20, 2024, stating that there is no conflict or interest (other than the named parties) to report.

**19.   Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: June 7, 2024        **SIDLEY AUSTIN LLP**

By */s/  David L. Anderson*
    David L. Anderson

*Attorneys for Plaintiffs Parag Agrawal,
Ned Segal, Vijaya Gadde, and Sean Edgett*

Dated: June 7, 2024        **MORGAN, LEWIS & BOCKIUS LLP**

By */s/  Christopher Boran*
    Christopher Boran

*Attorneys for Defendants Elon Musk, X Corp., Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy, Lindsay Chapman, Brian Bjelde, and Dhruv Batura*

**CIVIL L.R. 5-1(h)(3) ATTESTATION**

I, David L. Anderson, am the ECF user whose ID and password are being used to file this JOINT CASE MANAGEMENT STATEMENT. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that counsel for all parties have concurred in this filing.

Dated: June 7, 2024                                          By: */s/ David L. Anderson*
                                                                            David L. Anderson