David L. Anderson (SBN 149604)
dlanderson@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
Chaddy Georges (SBN 335546)
cgeorges@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Mark B. Blocker (Admitted *pro hac vice*)
mblocker@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000

*Attorneys for Plaintiffs Parag Agrawal,*
*Ned Segal, Vijaya Gadde, and Sean Edgett*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE, and SEAN EDGETT, <br><br> Plaintiffs, <br><br> vs. <br><br> ELON MUSK; X CORP., f/k/a TWITTER, INC.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA, <br><br> Defendants. | Case No. 3:24-cv-01304-MMC <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT V OF THE COMPLAINT** <br><br> Hearing Date: July 19, 2024 <br> Time: 9:00 a.m. <br> Location: Courtroom 7, 19th Floor <br> Judge: Hon. Maxine M. Chesney |

1

**TABLE OF CONTENTS**

2

**Page(s)**

3

I.    STATEMENT OF ISSUES TO BE DECIDED ..........................................................1

4

II.   INTRODUCTION ........................................................................................................1

5

III.  STATEMENT OF FACTS ..........................................................................................2

6

IV.   ARGUMENT ...............................................................................................................4

7

      A.    Legal Standard .................................................................................................4

8

      B.    The Complaint Properly Alleges a Section 510 Claim...................................4

9

            1.    The Complaint Pleads All the Elements of a
                Section 510 Claim.................................................................................4

10

            2.    Plaintiffs Are Not Required to Choose Between Benefits
11                Claims and a Section 510 Claim at the Pleadings Stage....................5

12

                a.    Each Claim Has a Distinct Focus and Purpose.....................6

13

                b.    Courts Routinely Allow Claims for Benefits
                     to Proceed Simultaneously with Section 510 Claims
14                    and Other Claims for Equitable Relief..................................6

15

                c.    Plaintiffs Could Prevail on Both Their Benefits
                    Claim and Their Section 510 Claim......................................7
16

                d.    Plaintiffs Could Prevail on Their Section 510 Claim
17                    Even if They Did Not Prevail on Their Benefits Claims ......8

18

            3.    The Complaint Alleges Remedies Available Under Section 510 ......9

19

V.    CONCLUSION...........................................................................................................13

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Acosta v. Brain*,

5
    910 F.3d 502 (9th Cir. 2018) ...................................................................................12

6

*Acosta v. FEC Benefit Adm'rs, Inc.*,
    2018 WL 11447534 (N.D. Cal. Jan. 22, 2018) ........................................................12

7

*Aguilar v. Nat'l Prod. Workers Union Severance Tr. Plan*,

8
    2018 WL 9543022 (C.D. Cal. Dec. 19, 2018) ..........................................................12

9

*Alexander v. Fujitsu Bus. Commc'ns Sys., Inc.*,

10
    818 F. Supp. 462 (D.N.H. 1993)...............................................................................11

11

*Allbaugh v. Cal. Field Ironworkers Pension Tr.*,
    2014 WL 2112934 (D. Nev. May 20, 2014) ...............................................................7

12

*Black v. Long Term Disability Ins.*,

13
    373 F. Supp. 2d 897 (E.D. Wis. 2005)...................................................................8, 9

14

*Bowen v. Nationwide Mut. Ins. Co.*,

15
    2019 WL 4412805 (M.D. Pa. Sept. 16, 2019) ...........................................................6

16

*Chambers v. Travelers Cos.*,
    668 F.3d 559 (8th Cir. 2012) .....................................................................................9

17

*CIGNA Corp. v. Amara*,

18
    563 U.S. 421 (2011)...........................................................................................7, 11

19

*Cockerill v. Corteva, Inc.*,

20
    2022 WL 3099771 (E.D. Pa. Aug. 4, 2022) ...............................................................6

21

*Day v. Humana Ins. Co.*,
    335 F.R.D. 181 (N.D. Ill. 2020).................................................................................11

22

*Felton v. Unisource Corp.*,

23
    940 F.2d 503 (9th Cir. 1991) .....................................................................................6

24

*Folz v. Marriott Corp.*,

25
    594 F. Supp. 1007 (W.D. Mo. 1984) .....................................................................9, 13

26

*Gavalik v. Cont'l Can Co.*,
    812 F.2d 834 (3d Cir. 1987)........................................................................................5

27

*Greenburg v. Life Ins. Co. of N. Am.*,

28
    2009 WL 1110331 (N.D. Cal. Apr. 23, 2009) ..........................................................12

ii

*Ingersoll–Rand Co. v. McClendon,*
    498 U.S. 133 (1990)...................................................................................................6

*Johns v. Ng,*
    2012 WL 4497770 (N.D. Cal. Sept. 28, 2012) .............................................6, 12

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ..................................................................................4

*La Fata v. Raytheon Co.,*
    223 F. Supp. 2d 668 (E.D. Pa. 2002) ....................................................................6

*Lessard v. Applied Risk Mgmt.,*
    307 F.3d 1020 (9th Cir. 2002) .....................................................................5, 6, 9

*Lillywhite v. AECOM,*
    2020 WL 13628211 (W.D. Wash. Dec. 23, 2020) ............................................9

*Love v. Talbert House,*
    2020 WL 6440256 (S.D. Ohio Nov. 3, 2020)....................................................6

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
    521 F.3d 1097 (9th Cir. 2008) ..............................................................................4

*Moyle v. Liberty Mut. Ret. Benefit Plan,*
    823 F.3d 948 (9th Cir. 2016) ..................................................................................7

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.,*
    380 F.3d 1226 (9th Cir. 2004) ..............................................................................4

*Pendleton v. QuickTrip Corp.,*
    567 F.3d 988, 993 (8th Cir. 2009) ........................................................................9

*Perez v. Brain,*
    2015 WL 3505249 (C.D. Cal. Jan. 30, 2015) ..................................................12

*In re Quality Sys., Inc. Sec. Litig.,*
    865 F.3d 1130 (9th Cir. 2017) ..............................................................................4

*Schwartz v. Gregori,*
    45 F.3d 1017 (6th Cir. 1995) ..............................................................................12

*Sconiers v. First Unum Life Ins. Co.,*
    2011 WL 5192862 (N.D. Cal. Nov. 1, 2011) ..................................................11

*Sias v. City Demonstration Agency,*
    588 F.2d 692 (9th Cir. 1978) ..............................................................................12

*Silva v. Metro. Life Ins. Co.,*
    762 F.3d 711 (8th Cir. 2014) ................................................................................7

iii

*Spinelli v. Gaughan*,
    12 F.3d 853 (9th Cir. 1993) ...................................................................................9, 12

*Teumer v. Gen. Motors Corp.*,
    34 F.3d 542 (7th Cir. 1994) ...........................................................................................9

*Teutscher v. Woodson*,
    835 F.3d 936 (9th Cir. 2016) ..........................................................................10, 12, 13

*Tolle v. Carroll Touch, Inc.*,
    977 F.2d 1129 (7th Cir. 1992) ....................................................................................5, 6

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)..............................................................................................9–10, 11

*Z Claimant Ltd. P'ship v. Home Box Office, Inc.*,
    931 F.2d 1338 (9th Cir. 1991) ....................................................................................12

*Zisk v. Gannett Co. Income Prot. Plan*,
    73 F. Supp. 3d 1115 (N.D. Cal. 2014) ......................................................................7, 11

**Statutes & Rules**

29 U.S.C. § 1132(a)(1)(B) (Emp. Ret. Income Sec. Act of 1974 § 502(a)(1)(B)) ............................6, 7

29 U.S.C. § 1132(a)(3) (Emp. Ret. Income Sec. Act of 1974 § 502(a)(3)) ......................7, 9, 11, 12

29 U.S.C. § 1140 (Emp. Ret. Income Sec. Act of 1974 § 510) ................................................. *passim*

Fed. R. Civ. P. 8(a)(3) .........................................................................................................8

Fed. R. Civ. P. 8(d)(2) .........................................................................................................8

Fed. R. Civ. P. 8(d)(3) .........................................................................................................8

Fed. R. Civ. P. 15 ..............................................................................................................13

Fed. R. Civ. P. 54(c) ..........................................................................................................12

Walter Isaacson, *Elon Musk* 493 (Simon & Schuster, 2023)............................................2, 3

Walter Isaacson, *The Real Story of Musk's Twitter Takeover*,
    Wall St. J. (Aug. 31, 2023), https://www.wsj.com/tech/elon-musk-x-twitter-
    takeover-5f553fa ..................................................................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs oppose Defendants' Motion to Dismiss Count V of the Complaint (Dkt. No. 46, "Mot." or the "Motion").

## I.      STATEMENT OF ISSUES TO BE DECIDED

Whether the Complaint alleges facts that state a claim under Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140.

## II.     INTRODUCTION

Plaintiffs assert three types of claims in this ERISA litigation: claims for the benefits they are owed under Twitter's severance plans (Counts I–IV), a claim under ERISA Section 510 against Defendants Elon Musk and X Corp. for terminating Plaintiffs' employment in an unlawful effort to prevent them from attaining their severance benefits (Count V), and a claim for statutory penalties for failure to provide statutorily-required documents (Count VI). Defendants' Motion to Dismiss is directed at only the Section 510 claim asserted in Count V.

Defendants' Motion concedes the factual adequacy of the Complaint on all claims. This concession is unavoidable. This is a highly unusual ERISA case with well-pleaded facts. Defendant Elon Musk vowed to "hunt" Plaintiffs and to use the ERISA administrative process to exact his revenge on Plaintiffs. Compl. ¶¶ 4, 102. Musk also improperly benefited by withholding the payment of $200 million of ERISA benefits at a time when he was cash poor. *See id.* ¶¶ 1, 4, 19. The Complaint alleges an egregious ERISA violation. As relevant to the Motion, Section 510 makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such a participant may become entitled under the plan." 29 U.S.C. § 1140. As properly alleged in the Complaint, Musk discharged Plaintiffs without cause for the specific purpose of interfering with their right to severance benefits under Twitter's ERISA plans.

Defendants' Motion is narrow, technical, and meritless. The Motion is predicated on two arguments: one, Defendants argue that Plaintiffs must choose at the pleading stage between asserting ERISA benefits claims and asserting a Section 510 claim and cannot assert both; two, Defendants

1

argue that Plaintiffs have not alleged an available remedy under Section 510. Neither of these arguments has merit.

Contrary to Defendants' first argument, Plaintiffs are not required to elect claims at the pleading stage. The interests served by the benefits claims and the Section 510 claim are distinct, and thus courts regularly allow plaintiffs to plead both claims. *See infra* Section IV.B.2.b. Defendants rely on cases from later stages of the proceedings, which do not support their argument. *See infra* Section IV.B.2.d.

Defendants' second argument is built primarily on a selective reading of the Complaint, which they interpret as asserting two specific equitable remedies and no others. In Paragraph 176, the Complaint asserts a right to "appropriate equitable relief to remedy Defendants' violation of Section 510." In their Motion, Defendants cite this allegation but ignore its language, which says nothing about the election of specific equitable remedies. Later, in the Prayer for Relief, the Complaint seeks an award of "equitable relief to Plaintiffs, including front pay and/or equitable surcharge." In their Motion, Defendants recast this allegation as "requesting 'equitable relief' *in the form of* 'front pay and/or equitable surcharge.'" Mot. at 7 n.2 (emphasis added). Defendants' change of the Complaint's language from "including" to "in the form of" is essential to their argument, which focuses entirely on those two particular forms of equitable relief – and is wrong as to those.

Plaintiffs' Section 510 claim is adequately pleaded, may be asserted along with their benefits claims, and draws upon the full equitable power of this Court to remedy Defendants' ERISA violation. Defendants' Motion to Dismiss this claim should be denied.

### III.    STATEMENT OF FACTS

Musk agreed to buy Twitter for $44 billion in April 2022, but shortly thereafter, the stock market declined, and Musk tried to back out of the deal. Compl. ¶ 1. Twitter sued Musk to enforce the deal, and after months of intensive litigation and on the eve of trial, Musk capitulated. *Id.* The deal closed on October 27, 2022 at its original price. *Id.* ¶¶ 1, 61. Musk vowed revenge, telling his official biographer, Walter Isaacson, that he would "hunt every single one of" Twitter's executives and directors "till the day they die." *Id.* ¶ 4 (quoting Walter Isaacson, *Elon Musk* 493 (Simon & Schuster, 2023)).

Musk's vengeance campaign began even before the deal closed. In the days leading up to the closing, Musk knew that Plaintiffs and several other Twitter executives would be entitled to payments under Twitter's severance plans[1] totaling around $200 million. *Id.* ¶ 59. Musk had no intention of paying those amounts. *Id*. Musk bragged to Isaacson how he planned to cheat Twitter's executives out of their severance benefits in order to save himself $200 million. *Id*. ¶ 4. Isaacson described the scene as follows:

> The closing of the Twitter deal had been scheduled for that Friday. An orderly transition had been scripted for the opening of the stock market that morning. The money would transfer, the stock would be delisted, and Musk would be in control. That would permit Agrawal and his top Twitter deputies to collect severance and have their stock options vest.
>
> But Musk decided that he did not want that. . . . He would force a fast close that night. If his lawyers and bankers timed everything right, he could fire Agrawal and other top Twitter executives "for cause" before their stock options could vest. . . .
>
> "There's a 200-million differential in the cookie jar between closing tonight and doing it tomorrow morning," he told me late Thursday afternoon in the war room as the plan unfolded.
>
> At 4:12 p.m. Pacific time, once they had confirmation that the money had transferred, Musk pulled the trigger to close the deal. At precisely that moment, his assistant delivered letters of dismissal to Agrawal and his top three officers. Six minutes later, Musk's top security officer came down to the second-floor conference room to say that all had been "exited" from the building and their access to email cut off.
>
> The instant email cutoff was part of the plan. Agrawal had his letter of resignation, citing the change of control, ready to send. But when his Twitter email was cut off, it took him a few minutes to get the document into a Gmail message. By that point, he had already been fired by Musk.
>
> "He tried to resign," Musk said.
>
> "But we beat him," his gunslinging lawyer Alex Spiro replied.

*Id.* (quoting Walter Isaacson, *The Real Story of Musk's Twitter Takeover*, Wall St. J. (Aug. 31, 2023), https://www.wsj.com/tech/elon-musk-x-twitter-takeover-5f553fa; *Elon Musk* 512–13).

---

[1] The Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, as amended and restated effective August 8, 2014 (the "2014 Plan") and the Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy, as amended and restated, effective February 22, 2017 (the "2017 Plan," and together with the 2014 Plan, the "Plans"). The Plans are employee welfare benefit plans under ERISA Section 3(1). Compl. Ex. A at 1, Ex. B at 1.

Just before the closing, Musk sent each Plaintiff a letter claiming that they were being terminated "for cause." *Id.* ¶ 62. Musk did not explain what actions constituted "cause," but he pointed to sections of the Plans, making clear that his purpose in terminating them was to deprive them their severance benefits. *Id.* ¶¶ 62–63. Musk then appointed employees of his various companies – Defendants Lindsay Chapman, Brian Bjelde, and Dhruv Batura – to rubber-stamp his wishes through the ERISA administrative process. *Id.* ¶ 74. Those Defendants then manipulated the ERISA administrative process and eventually denied Plaintiffs' ERISA claims as alleged in the Complaint, leading to the filing of this lawsuit. *Id.* ¶¶ 7–9, 70–100, 136–156.

## IV.   ARGUMENT

### A.   Legal Standard

Courts evaluating motions to dismiss "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017) (citation omitted). Defendants may not "present their own version of the facts at the pleading stage" through documents incorporated by reference or judicially noticed. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999, 1014 (9th Cir. 2018). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him or her to relief." *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1229 (9th Cir. 2004). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

### B.   The Complaint Properly Alleges a Section 510 Claim

#### 1.   The Complaint Pleads All the Elements of a Section 510 Claim

Count V alleges a textbook example of the sort of conduct prohibited by Section 510 of ERISA. Section 510 provides that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

4

1   29 U.S.C. § 1140. "The purpose of section 510 is to 'prevent persons and entities from taking actions

2   which might cut off or interfere with a participant's ability to collect present or future benefits or

3   which punish a participant for exercising his or her rights under an employee benefit plan." *Lessard*

4   *v. Applied Risk Mgmt.*, 307 F.3d 1020, 1024 (9th Cir. 2002) (quoting *Tolle v. Carroll Touch, Inc.*,

5   977 F.2d 1129, 1134 (7th Cir. 1992)).

6          As courts have made clear, "the essential element of proof under § 510 is specific intent to

7   engage in proscribed activity. Proof of specific intent to interfere with the attainment of [benefits]

8   eligibility, then, regardless of whether the interference is successful and regardless of whether the

9   participant would actually have received the benefits absent the interference, will ordinarily

10  constitute a violation of § 510 of ERISA." *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 851–52 (3d Cir.

11  1987) (internal citations and quotation marks omitted). In most Section 510 cases, "specific intent to

12  discriminate will not be demonstrated by 'smoking gun' evidence [and thus] the evidentiary burden

13  . . . may also be satisfied by the introduction of circumstantial evidence." *Id.* at 852. Here, unlike

14  most Section 510 cases, Plaintiffs have direct, smoking gun evidence of Defendants' wrongful intent

15  to interfere with Plaintiffs' benefits rights in the form of Musk's own admissions. *See, e.g.*, Compl.

16  ¶¶ 4, 102. *Accord Lessard*, 307 F.3d at 1025–26 (directing the district court to grant judgment in

17  favor of plaintiff on her Section 510 claim where plaintiff presented direct evidence of defendants'

18  "specific intent to interfere with [her] benefit rights") (citation omitted).

19         The Motion does not and cannot contend that the Complaint fails to plead facts establishing a

20  Section 510 violation. Instead, Defendants make two other arguments, neither of which has merit.

21         **2.    Plaintiffs Are Not Required to Choose Between Benefits Claims and a
22               Section 510 Claim at the Pleadings Stage**

23         Defendants first argue that Plaintiffs cannot plead both a claim for benefits and a claim under

24  Section 510 because the outcome of the benefits claim will extinguish the Section 510 claim. Mot. at

25  9–10. This argument fails for two reasons: (1) each claim is directed at addressing distinct conduct,

26  and courts have repeatedly held that both claims can proceed past the motion to dismiss stage; and

27  (2) the outcome of one claim will not necessarily determine the other. Each of these points is

28  explained below.

### a.    Each Claim Has a Distinct Focus and Purpose

Defendants' argument that the Section 510 claim is "unavoidably foreclosed" by Plaintiffs'

claims for severance benefits under ERISA Section 502(a)(1)(B), Mot. at 9, is inconsistent with the

fact that each claim has a distinct focus and purpose. In *Tolle*, the Seventh Circuit explained:

> Section 510, unlike Section 502(a)(1)(B), is not concerned with whether
> a defendant complied with the contractual terms of an employee benefit
> plan. Rather, the emphasis of a Section 510 action is to prevent persons
> and entities from taking actions which might cut off or interfere with a
> participant's ability to collect present or future benefits or which punish
> a participant for exercising his or her rights under an employee benefit
> plan. The difference between enforcing the terms of a plan and assuring
> that parties do not somehow impinge on current or future rights under
> employee benefit plans may seem subtle at first glance, but upon a close
> examination it becomes clear that the distinction is great. In order to
> enforce the terms of a plan under Section 502, the participant must first
> qualify for the benefits provided in that plan. Rather than concerning
> itself with these qualifications, one of the actions which Section 510
> makes unlawful is the interference with a participant's ability to meet
> these qualifications in the first instance.

977 F.2d at 1133–34 (citing *Felton v. Unisource Corp.*, 940 F.2d 503, 512 (9th Cir. 1991) and

*Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142–43 (1990)). The Ninth Circuit later adopted

*Tolle*'s reasoning in *Lessard*, 307 F.3d at 1024. As such, a plaintiff could prevail on a claim for

benefits, a claim for wrongful interference, or both.

### b.    Courts Routinely Allow Claims for Benefits to Proceed Simultaneously with Section 510 Claims and Other Claims for Equitable Relief

Defendants argue that the Section 510 claim becomes redundant if Plaintiffs prevail on their

benefits claim, and unavailable if their claim for benefits fails. Mot. at 9–10. If Defendants'

argument had merit, one would expect to see a slew of decisions dismissing Section 510 claims for

that reason, but the opposite is true. Defendants do not cite a single case granting a motion to dismiss

a Section 510 claim on this basis. Instead, courts routinely allow Section 510 claims and Section

502(a)(1)(B) benefits claims to proceed in parallel. *See, e.g.*, *Tolle*, 977 F.2d at 1133–35; *Johns v.

Ng*, 2012 WL 4497770, at *1–3 (N.D. Cal. Sept. 28, 2012); *La Fata v. Raytheon Co.*, 223 F. Supp.

2d 668, 671–75 (E.D. Pa. 2002); *Cockerill v. Corteva, Inc.*, 2022 WL 3099771, at *7–8 (E.D. Pa.

Aug. 4, 2022); *Love v. Talbert House*, 2020 WL 6440256, at *2–3 (S.D. Ohio Nov. 3, 2020); *Bowen

v. Nationwide Mut. Ins. Co.*, 2019 WL 4412805, at *1, *4–5 (M.D. Pa. Sept. 16, 2019).

1    Similarly, courts allow claimants to plead both benefits claims and claims seeking equitable

2    relief under Section 502(a)(3), the enforcement provision for Section 510. In *Moyle v. Liberty*

3    *Mutual Retirement Benefit Plan*, 823 F.3d 948, 959–62 (9th Cir. 2016), the Ninth Circuit held that

4    plaintiffs could pursue both a benefits claim and a claim for equitable relief under Section 502(a)(3).

5    The Court explained that this conclusion not only comports with the Supreme Court's decision in

6    *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), but also adheres to the Federal Rules of Civil

7    Procedure, which allow pleading alternative forms of relief, and "is consistent with ERISA's

8    intended purpose of protecting participants' and beneficiaries' interests." 823 F.3d at 962. *See also*

9    *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) (allowing Section 502(a)(1)(B) and

10   Section 502(a)(3) claims to proceed in parallel); *Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp.

11   3d 1115, 1121 (N.D. Cal. 2014) (same); *Allbaugh v. Cal. Field Ironworkers Pension Tr.*, 2014 WL

12   2112934, at *6 (D. Nev. May 20, 2014) (same).

13            c.      **Plaintiffs Could Prevail on Both Their Benefits Claim and Their
14                    Section 510 Claim**

15   Defendants' suggestion that the Section 510 claim would somehow be extinguished if

16   Plaintiffs win on the benefits claim is meritless. Defendants theorize that, if Plaintiffs win, Plaintiffs

17   would be required as part of a judgment to sign the Company's standard release which would cover

18   their Section 510 claims. Mot. at 3, 9. This argument fails for several reasons.

19   First, Defendants do not provide the terms of the Company's "standard release" so there is no

20   way to know if it would cover a Section 510 claim. *See* Compl. Ex. A at 2, Ex. B at 2. Moreover,

21   Defendants cannot present the release at this stage because it is outside the pleadings. Thus, the

22   notion that the Section 510 claim is automatically extinguished by the unknown release simply

23   cannot be determined at the pleadings stage.

24   Second, even if the Court were to assume that the standard release covered a Section 510

25   claim, there is no basis to conclude that Plaintiffs would be required to sign it if they prevailed on

26   their benefits claim. The Plans contemplate that the release would be contained in a separation

27   agreement and signed as part of Twitter's decision to approve a claim for benefits, not that claimants

28   would be required to sign it after a successful lawsuit to recover benefits. *Id.* This is why the Plans

1   provide that the release must be signed and "become effective and irrevocable no later than the

2   sixtieth day following your Qualified Termination." *Id.* But the 60-day period already passed

3   because of Defendants' wrongful denial of benefits, and the Plans do not provide or contemplate that

4   such a release would be given at the end of litigation over a claimant's entitlement to benefits.

5         Third, even if Defendants' argument about the release were correct, that would not support

6   dismissal of the Section 510 claim. Under Federal Rule of Civil Procedure 8, Plaintiffs are entitled to

7   plead claims and remedies in the alternative. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more

8   statements of a claim or defense alternatively or hypothetically, either in a single count or defense or

9   in separate ones."); Fed. R. Civ. P. 8(a)(3) (demand for relief "may include relief in the alternative or

10  different types of relief"); *see also* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate

11  claims or defenses as it has . . . ."). Should recovery on one claim ultimately preclude recovery on

12  another claim, Plaintiffs would have the right to elect relief at that time. That is not a basis to dismiss

13  one of the claims now.

14                    **d.    Plaintiffs Could Prevail on Their Section 510 Claim Even if They**
                             **Did Not Prevail on Their Benefits Claims**
15

16        Defendants also argue that the reverse is true: that if Plaintiffs lose their benefits claims, they

17  automatically lose their Section 510 claim. Defendants contend that, if Plaintiffs lose, it means that

18  they were not entitled to benefits in the first place, so Defendants could not have interfered with

19  attainment of those benefits. But this argument is mistaken because, as noted above, the key to a

20  Section 510 claim is intent. If Musk and X Corp. intended to interfere with Plaintiffs' attainment of

21  benefits, they cannot hide behind the eventual outcome of the ERISA process as Defendants played

22  it out after the Section 510 violation already occurred.

23        This is precisely the point that the court made in *Black v. Long Term Disability Insurance*,

24  373 F. Supp. 2d 897 (E.D. Wis. 2005). The court explained that even a plausible interpretation for

25  the benefits denial would not excuse the defendant's wrongful intent. "If, for example, a fiduciary

26  denied a claim for benefits because of a personal animus toward the plaintiff or for some other

27  improper reason but used a plausible interpretation to justify its action, the plaintiff should not be

28  barred from bringing a [breach of fiduciary duty claim seeking equitable relief] under § 1132(a)(3)."

8

1    *Id.* at 902. Similarly here, even if the Court were to uphold Defendants' after-the-fact "cause"

2    determination, Plaintiffs would not be barred from bringing a claim for equitable relief under Section

3    510 to redress Musk and X Corp.'s wrongful intent to interfere with Plaintiffs' attainment of

4    benefits.

5          The only cases Defendants cite in support of their argument are readily distinguishable.

6    Defendants cite several decisions granting summary judgment (not a motion to dismiss) on Section

7    510 claims after courts determined on a full record that plaintiffs failed to present sufficient evidence

8    to support their claim. Mot. at 9–10 (citing *Pendleton v. QuickTrip Corp.*, 567 F.3d 988, 993 (8th

9    Cir. 2009); *Chambers v. Travelers Cos.*, 668 F.3d 559, 567 (8th Cir. 2012); *Teumer v. Gen. Motors

10   Corp.*, 34 F.3d 542, 545 (7th Cir. 1994)). The only other case Defendants cite is a decision on a

11   motion to amend the judgment based on clear error or newly discovered evidence. *Lillywhite v.

12   AECOM*, 2020 WL 13628211, at *1 (W.D. Wash. Dec. 23, 2020). In *Lillywhite*, the court reaffirmed

13   its prior summary judgment ruling because it found that the defendants "provided uncontroverted

14   evidence that Plaintiff was terminated for cause." *Id.* at *2. Of course, that is not the case here,

15   where Plaintiffs' allegations must be taken as true and Plaintiffs most assuredly contend that

16   Defendants did not have cause to justify their terminations.

17          **3.      The Complaint Alleges Remedies Available Under Section 510**

18          ERISA provides a broad grant of equitable relief to remedy a violation of Section 510.

19   Section 510 is enforceable under Section 502(a)(3), which authorizes injunctive relief and "other

20   appropriate equitable relief" to redress the violation. 29 U.S.C. § 1140; 29 U.S.C. § 1132(a)(3);

21   *Lessard*, 307 F.3d at 1024. Section 510 claimants may obtain "those more flexible and discretionary

22   remedies available to a court of equity." *Spinelli v. Gaughan*, 12 F.3d 853, 858 (9th Cir. 1993);

23   *accord Folz v. Marriott Corp.*, 594 F. Supp. 1007, 1014 (W.D. Mo. 1984) ("ERISA is a broad

24   remedial statute and is entitled to a liberal construction. Accordingly, the discretion of the trial court

25   in awarding equitable relief under ERISA, although not unlimited, must be exercised consistently

26   with the strong remedial aims of ERISA.") (internal citations omitted); *Varity Corp. v. Howe*, 516

27   U.S. 489, 513 (1996) ("ERISA's basic purposes favor a reading . . . that provides the plaintiffs with

28

9

1    a remedy."). Consistent with these principles, the Complaint seeks appropriate equitable relief to

2    remedy Defendants' violation of Section 510.

3          Defendants argue that the Section 510 claim should be dismissed because the only relief it

4    seeks is not available. Mot. at 6–9. This argument fails for multiple reasons. First, Defendants

5    mischaracterize the relief that the Complaint seeks as limited to "front pay" and "equitable

6    surcharge," *id.* at 1, even though the Complaint seeks all "appropriate equitable relief." *See* Compl.

7    ¶ 176 ("Plaintiffs are entitled to appropriate equitable relief to remedy Defendants' violation of

8    Section 510."). Defendants misdescribe Plaintiffs' later request in the Prayer for Relief for an award

9    of "equitable relief to Plaintiffs, *including* front pay and/or equitable surcharge," *id.* at 38 (emphasis

10   added), as "requesting 'equitable relief' *in the form of* 'front pay and/or equitable surcharge,'" Mot.

11   at 7 n.2 (emphasis added). The Complaint's request for equitable relief encompasses, but is not

12   limited to, front pay or equitable surcharge.

13          Second, the Complaint properly pleads an entitlement to front pay. Defendants cannot

14   dispute that front pay is an available remedy for a Section 510 claim. *See Teutscher v. Woodson*, 835

15   F.3d 936, 946–47 (9th Cir. 2016). Defendants nevertheless argue that it cannot be awarded here

16   because Plaintiffs sent Good Reason letters seeking to resign and allegedly did resign. Mot. at 8

17   (citing Compl. ¶¶ 64, 69); *see also* Mot. at 3 (asserting that "Plaintiffs allege that they voluntarily

18   resigned for Good Reason" on or around October 27, 2022). But Defendants' argument misconstrues

19   the Complaint's allegations. For starters, this argument does not even apply to plaintiff Sean Edgett

20   because Edgett never sent a Good Reason letter. *See* Compl. ¶¶ 64, 65, 69. As to the other three

21   plaintiffs, the Complaint does not allege they resigned on October 27, 2022. Rather, they sent Good

22   Reason letters on that date, giving the Company 30 days to cure the circumstances identified in the

23   letters. *See id.* ¶ 65. Because the Company did not cure, these three plaintiffs had the right to resign

24   at the end of the cure period and receive benefits under the Plans. *Id.* ¶¶ 64, 69. But Defendants

25   contend that these plaintiffs' Good Reason letters are ineffective and that they "would not have been

26   capable of resigning for Good Reason at the end of the 30-day cure period." Dkt. No. 46-1 (appeal

27   denial letter) at 45–46.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT V OF THE COMPLAINT
CASE NO. 3:24-CV-01304-MMC

Thus, whether Plaintiffs are entitled to front pay or other remedies is a matter for the Court to decide on the facts based on a full record, not on the pleadings. *See Sconiers v. First Unum Life Ins. Co.*, 2011 WL 5192862, at *3 (N.D. Cal. Nov. 1, 2011) (where a plaintiff seeks appropriate remedies under ERISA, it is improper to strike any remedies "before the evidence has shown to what remedy, if any, plaintiff may be entitled"); *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 196 (N.D. Ill. 2020) (even if Plaintiff may not ultimately obtain relief sought under Section 502(a)(3), the claim should not be dismissed at the pleadings stage as "the court is unable to make that determination without a more complete record").

Third, Defendants' argument about equitable surcharge fails for similar reasons. Defendants concede that such a remedy can be available but contend it is not available here because such relief is limited to claims against fiduciaries and Musk was not acting as a fiduciary when he terminated Plaintiffs. Mot. at 7–8. But the Complaint alleges that Musk was the Administrator of the Plans and, as such, he had fiduciary duties. *See* Compl. ¶¶ 9, 14; *see also Amara*, 563 U.S. at 437 (plan administrator is "a trustee-like fiduciary"). Making benefits determinations is a fiduciary function. *Varity*, 516 U.S. at 511–12. Musk breached these duties through his scheme to deny Plaintiffs their severance benefits by terminating them, manufacturing fake "cause," and appointing employees of his companies to uphold his benefits denials. Compl. ¶¶ 1, 4, 7, 9, 59–63. *See, e.g.*, *Alexander v. Fujitsu Bus. Commc'ns Sys., Inc.*, 818 F. Supp. 462, 476 (D.N.H. 1993) (holding that plaintiff adequately alleged that defendants acted as fiduciaries by discharging him and "backdating [his] termination letter with intent to deprive him of benefits"); *Zisk*, 73 F. Supp. 3d at 1121 (holding that plaintiff could bring a claim for breach of fiduciary duty seeking equitable relief under Section 502(a)(3), including equitable surcharge, based on allegations that administrator "offered untrue reasons for terminating his benefits," "failed to investigate adequately," and "made false representations in connection with its refusal to reinstate his benefits"). Musk even cited Plan provisions in his termination letters and appointed handpicked people beholden to him to deny the benefits claims to carry out his scheme. *See* Compl. ¶¶ 7, 62–63, 71, 74, 98.

Fourth, the Court has "flexible and discretionary" authority to award such equitable relief that it determines is proper to remedy Defendants' Section 510 violation after full development of

the evidence. *See Spinelli*, 12 F.3d at 858.[2] Such relief is possible in a variety of ways beyond an award of front pay or equitable surcharge. For instance, the Court could provide Plaintiffs with equitable relief in the form of back pay. The Ninth Circuit has expressly left open the question whether back pay is an available remedy under Section 510 and has noted that there is a circuit split on the issue. *See Teutscher*, 835 F.3d at 946 n.3. The better view, consistent with Section 510's broad remedial purpose, is that back pay is available equitable relief for a violation of Section 510. *See, e.g.*, *Schwartz v. Gregori*, 45 F.3d 1017, 1021–23 (6th Cir. 1995) (holding that, as a form of restitution that operates to restore the plaintiff to what she would have enjoyed but for the employer's unlawful conduct, back pay is an available remedy for violations of Section 510); *Perez v. Brain*, 2015 WL 3505249, at *11 (C.D. Cal. Jan. 30, 2015) ("[b]ack pay, as restitutionary relief, is an equitable remedy" available under Section 510); *Greenburg v. Life Ins. Co. of N. Am.*, 2009 WL 1110331, at *3 (N.D. Cal. Apr. 23, 2009) ("Reinstatement of employment, front pay and back pay may be an appropriate remedy under § 1132(a)(3) if an employer discharges or otherwise discriminates against an employee to avoid paying benefits or in relation for exercising rights under a benefit plan."); *Acosta v. FEC Benefit Adm'rs, Inc.*, 2018 WL 11447534, at *10 (N.D. Cal. Jan. 22, 2018) (denying defendant's motion to dismiss back pay as a remedy for Section 510 claim).

Restitution and disgorgement are also available to Plaintiffs under Section 510. *See Acosta v. Brain*, 910 F.3d 502, 523 n.8 (9th Cir. 2018) ("[T]he district court properly ordered the Cook Defendants to disgorge $61,480.62 they received in connection with their section 510 violation.

---

[2] Plaintiffs need not specify in the Complaint all the ways in which equitable relief may be awarded. Indeed, courts may award relief even where the plaintiff has not demanded it, and should not dismiss a claim where any relief is possible. *See* Fed. R. Civ. P. 54(c) (every nondefault judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); *Z Claimant Ltd. P'ship v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (9th Cir. 1991) (reversing summary judgment in favor of defendant because plaintiff could recover damages even though its complaint sought only equitable and injunctive relief); *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978) (holding district court erred in concluding that it could not grant reinstatement because plaintiff failed to request such remedy); *Aguilar v. Nat'l Prod. Work*ers *Union Severance Tr. Plan*, 2018 WL 9543022, at *4 (C.D. Cal. Dec. 19, 2018) ("A claim should not be dismissed merely because of the type of relief requested, so long as some type of relief is possible."). Moreover, the Court need not determine the sufficiency of all requested remedies. *See, e.g.*, *Johns*, 2012 WL 4497770, at *4 ("[P]laintiff has alleged certain damages that are equitable. For example, plaintiff seeks an order enjoining defendants from interfering with plaintiff's rights to pension benefits and reinstatement for being improperly terminated, which are both equitable remedies. As a result, this order need not determine whether *all* requested damages are equitable and declines to do so at this time. Plaintiff's claim under Section 510 is sufficiently pled.") (citation omitted).

1  ERISA permits equitable relief against nonfiduciaries in the form of restitution or disgorgement.").

2  The Court could, for instance, award restitution for the value of Plaintiffs' restricted stock units that

3  would have vested on November 1, 2022 if not for their wrongful termination by Musk five days

4  earlier. *See Folz*, 594 F. Supp. at 1019 ("One benefit lost" due to plaintiff's wrongful termination in

5  violation of Section 510 was stock options that would have been exercisable if he not been fired;

6  "[a]ccordingly, these lost stock option opportunities were a substantial part of plaintiff's

7  compensation and will be restored to him."). Reinstatement is also an available remedy under

8  Section 510, *see Teutscher*, 835 F.3d at 946, and the Court could, for example, reinstate plaintiffs

9  Agrawal, Segal, and Gadde to allow them to effectuate their Good Reason letters to the extent

10  necessary to perfect their right to benefits under the 2014 Plan. Plaintiffs are not required to elect

11  their remedies at this stage of the case. There are numerous types of equitable relief the Court could

12  award to remedy Defendants' Section 510 violation, precluding dismissal of the claim.

13  **V.    CONCLUSION**

14       For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss.[3]

15

16  Date:  June 14, 2024                                SIDLEY AUSTIN LLP

17

18                                                       By: */s/ David L. Anderson*
                                                          David L. Anderson

19

20                                                       *Attorneys for Plaintiffs Parag Agrawal,*
                                                         *Ned Segal, Vijaya Gadde, and Sean Edgett*

21

22

23

24

25

26

27

28  [3] If the Court grants any part of the Motion, Plaintiffs request leave to amend under Federal Rule of Civil Procedure 15.