1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3    Before The Honorable Maxine M. Chesney, District Judge

4

5  PARAG AGRAWAL, et al.,          )
                                   )
6          Plaintiffs,             )
                                   )
7  vs.                             )    No. C 24-01304-MMC
                                   )
8  ELON MUSK, et al.,              )
                                   )
9          Defendants.             )
   _____)
10

11                                 San Francisco, California
                                   Friday, June 14, 2024
12

13    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
             RECORDING 10:31 - 11:03 = 32 MINUTES
14

   APPEARANCES:
15

   For Plaintiffs:
16                                 Sidley Austin, LLP
                                   555 California Street
17                                 Suite 2000
                                   San Francisco, California
18                                   94104
                            BY:  DAVID L. ANDERSON, ESQ.
19                               SHEILA ANIL GOGATE ARMBRUST,
                                   ESQ.
20
   For Defendants:
21                                 Morgan, Lewis & Bockius, LLP
                                   One Market, Spear Street Tower
22                                 San Francisco, California
                                     94105
23                          BY:  ERIC MECKLEY, ESQ.

24
             (APPEARANCES CONTINUED ON NEXT PAGE)
25

2

1  <u>APPEARANCES</u>:  (Cont'd.)

2  For Defendants:

3                              Morgan, Lewis & Bockius, LLP
                               1111 Pennsylvania Avenue, NW
                               Washington, D.C. 20004
4                         BY:  ABBEY MCLEAN GLENN, ESQ.

5                              Morgan, Lewis & Bockius, LLP
                               110 North Wacker Drive
6                              Suite 2800
                               Chicago, Illinois 60606
7                         BY:  CHRISTOPHER J. BORAN, ESQ.

8  Transcribed by:             Echo Reporting, Inc.
                               Contracted Court Reporter/
9                              Transcriber
                               echoreporting@yahoo.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Friday, June 14, 2024</u>                                    <u>10:31 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4           THE CLERK:  Calling Civil Case Number 24-1304,

5  Parag Agrawal, et al. versus Elon Musk, et al.

6      Will counsel please state your appearances, starting

7  with the Plaintiffs' counsel.

8           MR. ANDERSON (via Zoom):  Good morning, your

9  Honor.  Dave Anderson, and with me is Sheila Armbrust, for

10  Plaintiffs.

11           THE COURT:  Okay.  Good morning.

12           MS. ARMBRUST (via Zoom):  Good morning, your

13  Honor.

14           MR. BOMBARD (via Zoom):  Good morning, your Honor.

15  Chris Boran, Abbey Glenn, and Eric Meckley, for the

16  Defendants.

17           THE COURT:  Good.

18      Okay.  I saw one of your number last night at the

19  Barrister's Club, the Judges' Reception.

20      Okay.  So, I've -- I've read your statement, which is

21  fine, and the made chamber's copy, which was good.

22  Sometimes people don't.  But I do have a question about how

23  we're going to handle the briefing on what would be in my

24  understanding cross-motions for judgment, not summary

25  judgment but judgment.  And ordinarily, yes, I would want to

4

1 resolve the standard of review first so that people aren't
2 arguing here's the standard review but even it's like the
3 other people are arguing, and we still win, and you go
4 through a lot of extra language that's unnecessary.

5      There is a -- what appears to be an otherwise
6 enforceable discretionary clause in -- in this plan that if
7 people can't get that language straight by now, they
8 probably shouldn't be drafting anything.  So, that seems to
9 give broad discretion to the administrator.

10      My understanding of the law in reading, for example,
11 the Abatie case, which I think you're aware of -- it's a
12 Ninth Circuit case -- essentially says if you got the
13 language, the standard of review is discretionary review,
14 but kind of with this question in your mind about what are
15 these people really doing, but it doesn't turn it into a --
16 a de novo review.

17      So, if there really isn't any dispute except over how
18 much scrutiny I should apply to somebody's use of
19 discretion, with the idea are they really doing it in good
20 faith and what's going on here, then I don't think we need
21 separate briefing.  That can just be argued in the course of
22 briefing the actual substantive issues about whether they
23 did make a proper decision here, and there seems to be some
24 question of whether there was some material that was
25 excluded that someone offered.  If that's the case, by the

5

1  way, when one has review of an administrative record, if
2  someone can show they were entitled to present something and
3  were not allowed to do it, the Court ordinarily can consider
4  that to see if it makes any difference in what the Court
5  thinks the outcome would have been or should have been.

6         But does anybody want to just address this
7  particular question?  I don't want you going through
8  unnecessary initial briefing, particularly since you
9  disagree about when it should be -- when it should be filed
10 by about a year.  Okay.

11         MR. ANDERSON:  So, yes, your Honor.  I'll -- I'll
12 jump in on that and --

13         THE COURT:  Okay.

14         MR. ANDERSON:  -- we saw your practice in these
15 sorts of cases in -- in various other cases, the Abdulo
16 (phonetic) --

17         THE COURT:  Sure.

18         MR. ANDERSON:  -- that -- in which your Honor
19 issued a published decision.  We -- we felt it was very
20 instructive on how your Honor would want to handle things in
21 your courtroom.  And we like your normal practice here of
22 separately first briefing the appropriate standard.

23         And the reason we like that is because we've
24 alleged procedural irregularities and malice and a
25 parsimonious claims granting practice and a conflict, and we

6

1  read the _Abatie_ case to say that your Honor's going to take
2  those things into consideration just exactly as the Court
3  noted.  I'd like to make a run at convincing you that those
4  things rise to the level of triggering de novo review.  Even
5  if we don't get all the way to that level, of course, then
6  they inform the skepticism that the Court will -- will use
7  in reviewing what would then under that framework be
8  discretionary determination.  And we love the idea of
9  getting that settled before the -- the merits briefing.  Se
10 do want to take discovery on those issues, and, so, we think
11 that the right time to do this is after the close of
12 discovery and before then the merits briefing.  That's our
13 view.
14         THE COURT:  Yeah.  I mean, just looking at _Abatie_
15 right now and just quoting from it, this is -- I think you
16 all have this, but it's 458 F.3d 955, and I'm looking at
17 page 967.
18              "We read _Firestone_ to require abuse
19              of discretion review whenever an ERISA
20              plan grants discretion to the plan
21              administrator, but a review informed by
22              the nature, extent and effect of the
23              decision making process of any conflict
24              of interest that may appear in the
25              record."

7

1      So, if you're just looking for more pages to castigate

2  the plan administrator here, I don't know if we want to have

3  a whole separate briefing, and I'm not sure that it ought to

4  be done on separate discovery.  In other words, if you just

5  did your discovery and then made your motion on the merits,

6  you'd have all of the material that you think bears on this

7  question of how terrible they are, and we wouldn't be

8  involved in this fight about, We should do it right now.

9  No, we should do it after all the discovery, because I think

10  the law is pretty clear.  But I'm happy to hear from someone

11  from the Defense on this also just to -- to make sure I'm

12  not going off in some oddball direction.

13          MR. BORAN:  Thank you, your Honor.  I think you've

14  hit the nail on the head.  We read Abatie the same way.  We

15  think the Supreme Court essentially blessed that

16  interpretation of the law a few years later in Glenn, and we

17  think it's crystal clear based upon the language in the plan

18  document that this is an abusive of discretion case.

19  Certainly, Plaintiffs are entitled to take some discovery on

20  their allegation.  There's one allegation in the complaint

21  about conflict, and there's some allegations about

22  procedural irregularities related to when or if certain

23  documents were produced.  And they can take discovery on

24  those things, but it doesn't effect what standard of review

25  applies.  Rather, it affects the application of the abuse of

8

1  discretion review standard.  And we can argue about that

2  down the road at the merits briefing.  We don't really think

3  this preliminary briefing is necessary.  Our position in the

4  case management report was essentially that if we're going

5  to do this, we should do it right away and get out of the

6  way because, you know, it could theoretically affect the

7  scope of discovery, but we -- we agree with you that given

8  the plan language, this is an abuse of discretion case.  And

9  when we get to the merits, Plaintiffs can present their

10 evidence on conflict of interest and the like to try and

11 persuade the Court that in applying the abuse of discretion

12 review standard, there are other considerations that need to

13 be factored in.  But we would be fine with dispensing of

14 that preliminary briefing that we think is unnecessary.

15      As for discovery more generally, there's a bit of an

16 issue with this section 510 claim that's currently subject

17 to our motion to dismiss, and we do think a lot of the

18 discovery that this case might entail would be directed at

19 that claim.  So, we would prefer to defer discovery on that

20 issue until the Court decides our motion to dismiss because

21 it may in substantial part obviate the type of discovery we

22 understand Plaintiffs want to take in this case outside of

23 the conflict issue and procedural irregularity issue.

24           THE COURT:  What part of discovery do you think

25 would be affected by the Court's ruling on the one claim

9

1 that you're moving on -- and your position on that claim is

2 essentially that there's some kind of an equitable -- that

3 it's equitable and it's not legal and that there may be --

4 have claims that are going at cross purposes, though people

5 can sue in the alternative and sometimes say, Look, if you

6 don't find this, then how about this theory?  And they may

7 have that going with respect to this latter claim, although

8 if it's shown that there's -- there's no abuse of

9 discretion, of course, everything goes down the drain no

10 matter what title you put on it.  But in one instance,

11 they're looking to get their benefits.  That's the main

12 claim here.  They really want the benefits.  But they're

13 saying, Look, if for some reason we're not entitled to

14 benefits, we need to get like damages of some sort here and

15 front pay.  And then you say, Hey, you wanted to -- you

16 wanted to essentially resign.  Maybe you got a month of

17 front pay before all of this goes away again, and that may

18 be true.  There may be some practical aspects here, but I

19 don't see how it's necessarily going to affect discovery.

20     What kind of section or subject do you think would get

21 x'd out, if you will, if this claim didn't go forward?

22          MR. BORAN:  I think a significant amount of

23 discovery would be unnecessary because if we you look, for

24 example, at the Plaintiffs' initial disclosures -- and I

25 know you don't have those in front of you -- they list about

10

1   30 witnesses.  Presumably they would want declarations or

2   depositions of these individuals.

3            THE COURT:  Well, let me stop you for just a

4   second.  But they may be overdoing it all the way around.

5   That is nothing I can decide right now.  But this is not

6   their main claim, okay.  It's kind of a backup from what I

7   can see.  In other words, to say, Look, if we don't get --

8   if we don't get the kind of benefits we get when we -- when

9   we quit, then we get the benefits if you say we couldn't

10  quit or we didn't quit, then we get whatever benefits an

11  active employee would get.  And just leaving that out for a

12  second as to how small that is versus their real claim here

13  for severance benefits that can be substantially greater,

14  what particular subject is tied exclusively to the claim

15  number five --

16           MR. BORAN:  So --

17           THE COURT:  -- the (Zoom glitch)?

18           MR. BORAN:  So, first of all, I think -- I agree

19  that it's a backup claim.  There's no real -- they don't

20  identify the monetary relief they seek other than to say

21  surcharge and -- and front pay, and we've explained why we

22  don't think as a matter of law either of those are available

23  to them.

24       So, if that claim goes away, any discovery about the

25  510 claim goes away, and the --

11

1          THE COURT:  Yes.  What is the discovery about that

2    claim?

3          MR. BORAN:  So, the discovery goes to the intent

4    behind the termination decision that happens on October

5    27th, 2022.  Now, that happens long before the claim

6    process, and that happens long before the claim

7    administrative decision and the appeal decision, and that's

8    by folks that are not involved in the claim process.

9          So, the subjective intent behind the termination

10   decision in October 2022 is in a totally different ballpark

11   than the claim process itself.  And the claim process

12   itself, the discovery we need for that is the administrative

13   record and whatever discovery is necessary on conflict of

14   interest or procedural irregularities.  It's really a

15   different animal in terms of discovery if the 510 claim is

16   not in the case because we're not getting into, Well, what

17   conversation did so and so have with somebody else during

18   the merger agreement that suggests the motivation for the

19   termination decision was to deprive these people of

20   benefits?  That's a whole area of discovery that's just off

21   the table if the 510 claim is there.  And, frankly, your

22   Honor, we think that's why the 510 claim is in the case, to

23   make this a bigger case, to make this a bigger discovery

24   mess.

25          THE COURT:  Okay.

12

1          MR. BORAN:  And --

2          THE COURT:  You may be right that that's why it's

3  there, but I don't know that they need it to get what they

4  want.  Okay.  Their whole position is that this -- this

5  administrative determination is tainted.  It's tainted by

6  malice and sort of a retaliatory idea, and -- I don't know.

7      Do you want to weigh in on this, Mr. Anderson, in some

8  way?

9          MR. ANDERSON:  Yes.  Thank you, your Honor.  I

10  think -- I think your Honor's got it exactly right.  We

11  don't view this discovery as a different ballpark or a

12  different animal, to use Mr. Boran's metaphors.  We think

13  that the same body of discovery will go to that termination

14  decision which we consider to have been quite improper but

15  also to the conflict and the bias and the taint of the

16  process that -- that followed it.

17      And, so, I think that's exactly right.  And I would say

18  also that my understanding is that Defendants aren't

19  supposed to just decide that they like their motion and

20  they're not going to give discovery.  The proper procedure

21  would have been for them to file a motion for a protective

22  order at the same time they file their motion to dismiss.

23  It's -- it's commonplace that Defendants like their motion,

24  but that doesn't mean that they get to delay discovery.

25      So, one -- one way or another, if we're going to finish

1 this case on the time table that the parties generally have

2 agreed to here, we need to get going on this, and we can't

3 just have this occur piecemeal or have to do it twice or

4 delay or what have you.

5          THE COURT:  Okay.  Well, I think you both may have

6 some things that you've argued adopted by me on everything.

7 So, my thought is that we don't need multiple briefing on

8 the question of the standard of review.  I also think that

9 to the extent that there is a motion being made on the face

10 of the complaint with respect to count five, that you don't

11 need discovery on that and that we can, if necessary, stay

12 discovery.

13     Let me see.  The hearing is practically here.  Oh, no.

14 Wait.  It's July 19, so about a month off.  But let me just

15 look at the motion again.  I have it here because I knew it

16 was going to come up, you know, in today's discussion.  And

17 I didn't necessarily think that the idea that you've got two

18 essentially in conflict theories necessarily causes one to

19 dismiss one or the other of the two causes of action, one

20 based on we quit and one based on if you think we didn't

21 quit, then we're entitled.

22     And, so, but I'm a little curious.  Is there any length

23 of time of any significance between when I guess if they

24 didn't quit, they were still working there and when they

25 then I guess couldn't really quit, I don't know?

14

1          MR. ANDERSON:  It's -- it's very significant, your

2    Honor.  It's very significant, and --

3          THE COURT:  How -- how long?  That's all I'm

4    asking.

5          MR. ANDERSON:  Yes.  Well, the -- the -- the way

6    it plays out is that the Plaintiffs submit their -- their

7    good cause, good reason letters -- good reason letters, and

8    that's also a triggering event for benefits, and -- and --

9          THE COURT:  They're not claiming benefits in this

10   cause of action.  They're giving them up.  They're going

11   with a different theory.

12         MR. ANDERSON:  Understood.  Understood.  But --

13   but, as you'll -- you'll hear in -- in our opposition when

14   we file it later today, the -- the -- in the 510 claim, what

15   we allege is that Musk raced to terminate our clients before

16   they could send their Good Reason Letters.  And their Good

17   Reason Letters would then culminate in a resignation I

18   believe it's 30 days later.

19         THE COURT:  Are we talking about a month's worth

20   of front pay?

21         MR. ANDERSON:  We're talking about much more than

22   that because if your Honor finds that that termination was

23   unlawful, then your Honor would have the power, equitable

24   power to order that those Good Reason Letters be placed into

25   effect, and that would trigger the benefits regardless of

15

1 this cause determination that was the subject matter of this

2 administrative process.

3      So, I -- I didn't comment earlier to the idea that it

4 was a backup claim, but I will say that Musk's wrongful

5 intent in effecting this termination we think is -- is

6 definitely part and parcel of this and we think would take

7 the Court -- give the Court the power to restore to

8 Plaintiffs the benefits that they are due.  So --

9           THE COURT:  But you're claiming benefits in four

10 other causes of action.  You're not claiming benefits in the

11 fifth cause of action.

12           MR. ANDERSON:  We are not.  We are not.  But we --

13           THE COURT:  So, you're not going to get them on

14 the fifth cause of action.

15           MR. ANDERSON:  Well, but what -- what we -- what

16 we can -- what we can get is we can get an equitable order

17 from the Court that does just --

18           THE COURT:  Ordering benefits?  That's --

19           MR. ANDERSON:  Not ordering benefits.  Not

20 ordering benefits.

21           THE COURT:  No.

22           MR. ANDERSON:  No, no, no.  No, no.

23           THE COURT:  Okay.

24           MR. ANDERSON:  Ordering that the Good Reason

25 Letters be given effect.

16

1        THE COURT:  Well, can't you make that same

2   argument on your other claims?

3        MR. ANDERSON:  Well, we make it in the section 510

4   claim because it was Musk's intent to defeat those Good

5   Reason Letters.  That was the whole point of his -- his plan

6   to fire them before he even owned the company.

7        THE COURT:  I don't know that you can say that a

8   finding of fact that comes up on one claim that could never

9   be made on the other claims, I don't think that's

10  necessarily correct.  If you're just trying to find a way to

11  shoehorn evidence in, again, I don't think that that's the

12  issue.  We're only talking about what relief you're --

13  you're requesting and whether there is any here that could

14  be found.  It looked like a very short period.  But, you

15  know, if it's a week, a month, a day or a year, if you're

16  entitled to it, you may be able to bring the claim as an

17  alternative claim, but the other arguments that are being

18  made we can look at and discuss as one sees fit.  I don't

19  think that this is going to change the course of the case

20  just in general.

21      All right.  But I will say that the stay of discovery

22  can stand in place until I rule on this motion.  And once I

23  do, then discovery is open in whatever way you feel it's

24  appropriate, given there are limitations since it is an

25  administrative review, but whatever you think might be

17

1  appropriate that could be looked into.  If you get into a

2  fight, in all likelihood, if I get a motion to compel, I'm

3  going to refer it to a Magistrate Judge, but I'm not going

4  to do it in advance, and I won't pick a Magistrate Judge.

5  This will go on the wheel.

6      So, what we're looking at -- and let me go back to your

7  joint statement for a moment, which was very thorough.  Oh,

8  and just about ADR, it says Plaintiffs have offered to

9  participate in the settlement conference with a Magistrate

10 Judge or other judicial officer, and then I -- I really

11 didn't know what the Defendants' position was.

12     Mr. Boran, do you want to hit that particular subject?

13         MR. BORAN:  Well, I think maybe there's just a

14 miscommunication during our initial conference with

15 Plaintiffs.  We would be willing to participate in -- in

16 that exercise, but we think it's a little early to do that,

17 and --

18         THE COURT:  Sure.

19         MR. BORAN:  -- we think it would be more

20 appropriate to sort of readdress the issue down the road to

21 see where things are at.  We're not saying we would never be

22 willing to do it by any stretch.

23         THE COURT:  Well, my thought might be because

24 we're not going to have like a real trial in this case in

25 all likelihood -- it is going to be a trial so to speak on

1 the papers, not summary judgment but judgment, and it's

2 unlikely that we're going to end up with like witnesses if

3 -- it's possible, but it hasn't happened yet.  There's

4 always a first time.  But, given that, it's unlikely that

5 I'm going to have a traditional pretrial order for sometime

6 at least.  And, so, I would think that I might want to put

7 something into place for ADR but not as to the timing, just,

8 you know, as to a modality or at least to get some idea.

9      Did -- were you in accord that at some point a

10 Magistrate Judge might be the best way to go or were you

11 thinking of something different?

12          MR. BORAN:  It's -- I think a Magistrate could be

13 the way to go.  I think it's a little early to know even

14 that, but we're comfortable putting that down for now if it

15 would please the Court.

16          THE COURT:  No.  I don't have to do it.  I'm just,

17 you know, thinking about where to go with this.  I was

18 trying to follow that last part.  You're scheduling

19 paragraph 16 where you had the dispute about if there was

20 briefing, like when would we have it.  Then I gather you're

21 -- for discovery, you are agreeing with respect to expert

22 discovery?  You think it's -- it's ultimately probably going

23 to be unnecessary.  It seems like it would be, but

24 nonetheless, you have a designation date, but you don't have

25 anything else concerning it like when is expert discovery

19

1  over.  Is there anything there along those lines or -- it

2  seemed like there was just partial discovery dates, but I

3  may be missing something.

4        MR. ANDERSON:  No.  Your Honor's quite right that

5  we just agreed on the date on which we would designate

6  experts if that became necessary, and the rest of the

7  schedule as to experts hasn't been fleshed out.  There is --

8  there is some room there in the schedule that we built in,

9  but we didn't specify the dates.

10        THE COURT:  Well, let's take a look just at if we

11  get past this standard of review idea and just get to the

12  cross-motions incorporating castigation (indiscernible)

13  discretionary use, you had, I believe, agreed then that

14  you're looking at about -- let's see -- oh, I don't know,

15  about 15 months off or so for filing motions.

16     Now, I don't know that I want to have cross-motions

17  quite the way you've done it here.  I'm not sure when you

18  were looking at my other orders how far along you went with

19  that, but ordinarily, I'm not crazy about cross-motions

20  where people are sort of firing off and maybe not crossing

21  and you just get a lot of parallel kind of things, and the

22  Plaintiff has the burden here.  And my thought is maybe the

23  Plaintiff ought to go first.  Then we would have the

24  Defendants' opposition/cross-motion, Plaintiffs'

25  opposition/reply and even a reply by the Defendant if you

20

1 want to build that in. It would be four briefs, but at
2 least they would be engaged so to speak, and I -- I do
3 prefer that in most instances to cross-motions.
4      Any thoughts then about whether you want to go back and
5 stipulate based on that model and then give me a stipulation
6 rather than trying to adjust the three briefs -- well, it's
7 not three, but you know what I mean.
8           MR. ANDERSON:  Yeah, six.  Yes, we will meet and
9 confer, your Honor, and come back with a suggested briefing
10 schedule on -- on those motions.
11           THE COURT:  Okay.  Just so that I don't lose track
12 of you, what do you want to do, 10 days, a week, two weeks I
13 don't case.
14           MR. ANDERSON:  I should think we could have it
15 into you in 10 days.
16           THE COURT:  All right.  Well --
17           MR. BORAN:  Ten days sounds good.
18           THE COURT:  Is that -- does the Defendant agree
19 that that's a reasonable --
20           MR. BORAN:  Yes, your Honor.
21           THE COURT:  Doesn't matter to me.  All right.
22 Well, if we're at the 14th, you'd be looking at Monday, the
23 24th.  Let's just give you to the 26th, you know, so that
24 you have enough time.  So, we'll say that the parties'
25 stipulation re briefing Rule, I guess, 52 motion due by June

21

1 26.  Okay.

2    And then, you know, if that looks reasonable, and

3 probably will, then I would approve it.  You can build a

4 hearing date into that, by the way.  If you're going to give

5 yourself lots of time, don't give me the, you know,

6 mandatory two-week minimum.  I love it when people go now

7 motion, opposition a month later, reply three weeks after

8 that.  Court, you know, 14 days later, tell us what you

9 think.

10    So, okay.  And as far as ADR, be thinking a little bit

11 about the idea of possibly getting in before everybody opens

12 up a vein and bleeds lots of fees and costs and everything.

13 You know, it's a newsworthy kind of case.  So, it depends

14 how much y'all want to be in the news about this and people

15 following it and what have you.

16    I was thinking about could I recuse myself because

17 Judge Donato talked me into getting a Tesla, but no.  I

18 guess that's not grounds for recusal.  So, we're stuck with

19 each other, and that's fine.  I will take a look at your

20 opposition, which you're planning on filing today, Mr.

21 Anderson, on that one cause of action.

22    I don't mean to denigrate it by saying it's a backup,

23 but, you know, after devoting four causes of action trying

24 to get severance benefits, that one trailing matter just

25 seemed like there wasn't as much heft to it as -- as the

22

1  other claims.  But, anyway -- and I'm not making any ruling

2  on how far you can go with discovery, whether that's in our

3  out.  If -- you know, I'm just sort of talking off the top

4  of my head and haven't really had any briefing on that.

5      So, anything else that we ought to take up?  You ended

6  up being our only case, which I told Mr. Meckley at the --

7  the event because -- I also told him it wasn't at 1:30,

8  which I think he thought that you may be coming in at 1:30.

9  I said, no, it's at 10:30.  That was the extent of our

10  conversation.  We didn't really discuss any other aspects

11  obviously ex parte.

12      So, what -- what do you think?  Anything further here?

13          MR. ANDERSON:  I have -- I have one suggestion,

14  your Honor.  I -- I think people sometimes say

15  clarification, but I just -- I think it's just a suggestion.

16  As to the starting of discovery, after your Honor rules on

17  the pending motion to dismiss --

18          THE COURT:  Right.

19          MR. ANDERSON:  -- I am worried -- I'm worried

20  because I -- I anticipate that the parties have very

21  different visions of what the discovery should look like in

22  this case, and --

23          THE COURT:  Yeah.

24          MR. ANDERSON:  -- I think we're going to need to

25  probably hash that out.  So, my suggestion is if we could

23

 1 start serving our discovery and then get their written

 2 objections and start the process not of producing anything,

 3 I understand, but so that we can be using the time

 4 productively between now and your Honor's ruling on that

 5 motion to dismiss, and I -- that's -- that's my idea because

 6 I think February 1, 2025 is going to come up on us awfully

 7 quick, and I want to use the time productively.

 8          THE COURT:  Well, you know, you're going to get

 9 Mr. Boran coming back if we do that and saying, Oh, the

10 motion is going to affect whether you can get these people

11 or not.  I don't know if he's right about that, but why get

12 into a whole side argument that you may not have to address?

13 Furthermore, I might suggest that if you want to cool him

14 off a little bit, that you pare down those 30 people at

15 least at the beginning, you know, just to start with, and

16 then as it develops, you can add more people.

17      Anyway, okay.  So, no, I'm going to deny that request

18 and just make it a clean no discovery until I rule.  Anybody

19 wants to do anything mutually, of course, I'm not stopping

20 you from doing that.  If you want to feel each other out on

21 that point, that's fine.  Okay.

22          MR. ANDERSON:  Okay.

23          THE COURT:  All right.  Anything else?

24      (No response.)

25          THE COURT:  Okay.  Silence.  All right.

24

1          MR. BORAN:  No, your Honor.

2          THE COURT:  That's fine.  Okay.  Now, so, we have

3 a date for you just to give me a stipulation on the all-

4 encompassing briefing and no discovery unless you jointly

5 want to do something, until I rule.  Maybe I can rule on

6 this before the hearing or at least no later than the

7 hearing date itself and get you rolling.  So, I don't want

8 you to think -- since we'd be under submission for months

9 where you don't know what's going on.  And that -- that may

10 be it then for this morning.

11     So, okay.  Thank you very much.  Along the lines of

12 what these cases usually are, this seems like a lot more

13 interesting than most.  So, we'll see where it comes out,

14 and I hope you all have a nice weekend, and I guess that's

15 it.  Thank you.

16     Ms. Geiger, are you around?  Oh, there you are.  Yeah.

17 Do you want to take it away for the weekend here?

18          THE CLERK:  Court is in recess.

19          THE COURT:  Yes, we are.  Thank you.

20          ALL:  Thank you, your Honor.

21     (Proceedings adjourned at 11:03 a.m.)

22

23

24

25

25

<u>CERTIFICATE OF TRANSCRIBER</u>

1

2

3     I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9     I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16

17         Echo Reporting, Inc., Transcriber

18             Wednesday, June 26, 2024

19

20

21

22

23

24

25