1
2
3
4
5
6
7
8
9
10
11
12
13

MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (Bar No. 168181)
eric.meckley@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel: +1.415.442.1000

Jeremy P. Blumenfeld (admitted *pro hac vice*)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (admitted *pro hac vice*)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

Attorneys for Defendants
ELON MUSK; X CORP.; TWITTER, INC.
CHANGE OF CONTROL AND
INVOLUNTARY TERMINATION
PROTECTION POLICY; TWITTER, INC.
CHANGE OF CONTROL SEVERANCE
AND INVOLUNTARY TERMINATION
PROTECTION POLICY; LINDSAY
CHAPMAN; BRIAN BJELDE; and
DHRUV BATURA

MORGAN, LEWIS & BOCKIUS LLP
Christopher J. Boran (admitted *pro hac vice*)
christopher.boran@morganlewis.com
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000

Abbey M. Glenn (Bar No. 267751)
abbey.glenn@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

14
15
16

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

17
18
19
20
21
22
23
24
25
26
27
28

PARAG AGRAWAL, NED SEGAL, VIJAYA
GADDE, and SEAN EDGETT,

        Plaintiffs,

      vs.

ELON MUSK; X CORP., F/K/A TWITTER,
INC.; TWITTER, INC. CHANGE OF
CONTROL AND INVOLUNTARY
TERMINATION PROTECTION POLICY;
TWITTER, INC. CHANGE OF CONTROL
SEVERANCE AND INVOLUNTARY
TERMINATION PROTECTION POLICY;
LINDSAY CHAPMAN; BRIAN BJELDE;
AND DHRUV BATURA,

        Defendants.

Case No. 3:24-cv-01304-MMC

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
COUNT V OF THE COMPLAINT**

Hearing Date: July 19, 2024
Time: 9:00 AM
Location: Courtroom 7, 19th Floor
Hon. Maxine M. Chesney

Action Filed:  March 4, 2024

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 3

    A. Count V Does Not Seek Any Appropriate Equitable Relief Under ERISA. ............................................................................................................... 3

        1. Plaintiffs Cannot Recover Front Pay Or Backpay. ..................................... 3

        2. Plaintiffs Cannot Obtain An Equitable Surcharge. ..................................... 5

        3. The Court Should Reject Plaintiffs' Attempt To Avoid Dismissal By Identifying New Forms Of Purported Equitable Relief They Chose Not To Request In Their Complaint. ........................... 8

        4. The Newly Identified Relief Is Also Unavailable To Plaintiffs.................. 8

    B. Dismissal Is Also Appropriate Because Count V Is Foreclosed By Counts I-IV. ...................................................................................................... 11

III. CONCLUSION ............................................................................................................. 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acosta v. FCE Benefit Administrators, Inc.*,
2018 WL 11447534 (N.D. Cal. Jan. 22, 2018) ........................................................ 4

*Alexander v. Fujitsu Business Communication Systems, Inc.*,
818 F. Supp. 462 (D.N.H. 1993) ............................................................................... 7

*Allbaugh v. Cal. Field Ironworkers Pension Tr.*,
2014 WL 2112934 (D. Nev. May 20, 2014) ........................................................... 12

*BizCloud, Inc. v. Computer Scis. Corp.*,
2014 WL 1724762 (N.D. Cal. Apr. 29, 2014) .......................................................... 5

*Black v. Long Term Disability Insurance*,
373 F. Supp. 2d 897 (E.D. Wis. 2005) ................................................................... 12

*Blaj v. Stewart Enters.*,
2011 WL 669134 (S.D. Cal. Feb. 14, 2011) ............................................................. 4

*Bodine v. Emps. Cas. Co.*,
352 F.3d 245 (5th Cir. 2003) .................................................................................... 7

*Brooks v. Pactiv Corp.*,
729 F.3d 758 (7th Cir. 2013) .................................................................................... 7

*Cockerill v. Corteva, Inc.*,
2022 WL 3099771 (E.D. Pa. Aug. 4, 2022) ........................................................... 12

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) ......................................................... 8

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ................................................................................. 8, 9

*Duggan v. Hobbs*,
99 F.3d 307 (9th Cir. 1996) ...................................................................................... 6

*Ehrlich v. Hartford Life & Accident Ins. Co.*,
2021 WL 4472845 (N.D. Cal. May 7, 2021) .......................................................... 10

*Eichorn v. AT&T Corp.*,
484 F.3d 644 (3d Cir. 2007) ............................................................................. 1, 4, 9

*Gabriel v. Alaska Elec. Pension Fund*,
773 F.3d 945 (9th Cir. 2014) ............................................................................... 8, 12

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 n.4 (2002) .................................................................................. 1, 4, 8, 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ii -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

*Greenburg v. Life Insurance Co. of North America*,
2009 WL 1110331 (N.D. Cal. Apr. 23, 2009) ........................................................... 4

*Hicks-Wagner v. Qwest, Inc.*,
462 F. Supp. 2d 1163 (D.N.M. 2006) ...................................................................... 4

*Johns v. Ng*,
2012 WL 4497770 (N.D. Cal. Sept. 28, 2012) ....................................................... 11

*La Fata v. Raytheon Co.*,
223 F. Supp. 2d 668 (E.D. Pa. 2002) ..................................................................... 12

*Love v. Talbert House*,
2020 WL 6440256 (S.D. Ohio Nov. 3, 2020)........................................................ 12

*Montanile v. Bd. Of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
577 U.S. 136 (2016)................................................................................................ 9

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
823 F.3d 948 (9th Cir. 2016),
*as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) ...................... 12

*Neville v. Ariens Co.*,
2013 WL 6732123 (E.D. Wis. Dec. 19, 2013)......................................................... 7

*Oliver-Pullins v. Associated Material Handling Indus., Inc.*,
2003 WL 21696207 (S.D. Ind. May 20, 2003) ................................................. 5, 10

*Perez v. Brain*,
2015 WL 3505249 (C.D. Cal. Jan. 30, 2015) .......................................................... 5

*Reddinger v. SENA Severance Pay Plan*,
2010 WL 1836797 (E.D. Wis. May 6, 2010), aff'd, 707 F.3d 702 (7th Cir. 2013)................. 7

*Rois-Mendez v. Cal. Physicians' Serv.*,
2021 WL 242906 (N.D. Cal. Jan. 25, 2021) ........................................................ 4, 8

*Schwartz v. Gregori*,
45 F.3d 1017 (6th Cir. 1995)................................................................................... 4

*Silva v. Metro. Life Ins. Co.*,
762 F.3d 711 (8th Cir. 2014)................................................................................. 12

*Teets v. Great-W. Life & Annuity Ins. Co.*,
286 F. Supp. 3d 1192 (D. Colo. 2017) aff'd, 921 F.3d 1200 (10th Cir. 2019) ....................... 9

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016).............................................................................. 3, 4

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................. 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

*Tolle v. Carroll Touch, Inc.*,
  977 F.2d 1129 (7th Cir. 1992)............................................................................ 12

*US Airways, Inc. v. McCutchen*,
  569 U.S. 88 (2013) ............................................................................................ 12

*Wise v. Verizon Commc'ns, Inc.*,
  600 F.3d 1180 (9th Cir. 2010) ........................................................................... 10

*Zisk v. Gannett Co. Income Protection Plan*,
  73 F. Supp. 3d 1115 (N.D. Cal. 2014) ........................................................... 8, 12

**Statutes**

29 U.S.C. § 1001(21)(A) ........................................................................................ 7

29 U.S.C. § 1101(a)(1) ........................................................................................... 6

29 U.S.C. § 1104 .................................................................................................... 5

ERISA § 409, 29 U.S.C. § 1109 ............................................................................ 5

ERISA § 502(a)(1)(B) ............................................................................... 10, 12, 13

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ................................................. passim

ERISA § 510, 29 U.S.C. § 1140 ............................................................................ 5

**Rules**

Fed. R. Civ. P. 8(a)(1)(3) ....................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 13

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

- iv -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

1

## I.   INTRODUCTION

2       Rather than saving Count V from dismissal, the Opposition only further highlights its

3   shortcomings.

4       ***First***, with respect to equitable relief under section 502(a)(3) of ERISA, Plaintiffs offer only

5   vague and conclusory arguments to support their request for front pay, but they are unable to dispute

6   that they have not plausibly alleged a "reasonable certainty" that they would have remained

7   employed by Twitter (now X Corp.) beyond any trial in this case—as is necessary for an award of

8   front pay—because they admittedly intended to resign when the merger closed in October 2022 or

9   shortly thereafter.  While Plaintiffs imply that they should receive "front pay" as compensation for

10  the few weeks between their termination (October 2022) and the date they claim their attempted

11  resignations would have been effective (November 2022), such relief is not front pay at all—rather,

12  it is ***backpay***.  This is a problem for Plaintiffs because they did not request backpay in their

13  Complaint, and regardless, the Supreme Court has rejected the notion that backpay is a form of

14  equitable relief under ERISA.  *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204,

15  219 n.4 (2002); *see also Eichorn v. AT&T Corp.*, 484 F.3d 644, 656 (3d Cir. 2007); *Millsap v.*

16  *McDonnel Douglas Corp.*, 368 F.3d 1246, 1257-60 (10th Cir. 2004).

17      Plaintiffs also concede that the only other form of purported equitable relief alleged in the

18  Complaint—"equitable surcharge"—is available only for claims of breach of fiduciary duty.  But

19  the Complaint does not allege a breach-of-fiduciary-duty claim.  Undeterred, Plaintiffs resort to

20  arguing that they have nevertheless alleged a breach of fiduciary duty by asserting that Defendant

21  Musk, who allegedly made the decision to terminate their employment, was also an administrator

22  of the Plans.  Not only is this argument contrary to decades of settled law holding that employment

23  decisions—including employment termination—do not constitute fiduciary conduct, but Plaintiffs'

24  own allegations acknowledge that the termination decision came long before the designated Plan

25  Administrator and Committee undertook any discretionary review of their claims for Plan benefits.

26  The Court should reject Plaintiffs' attempt to upend decades of settled precedent by arguing that

27  the decision to terminate them was a breach of fiduciary duty within the meaning of ERISA—

28  especially where the Complaint does not even allege a claim for breach of fiduciary duty.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

Indeed, Plaintiffs tacitly concede the insufficiency of their allegations in Count V by arguing for other forms of relief—restitution, disgorgement, and reinstatement—they **chose not to assert** in the Complaint.  The Court should reject Plaintiffs' improper attempt to amend their Complaint by way of opposition briefing—especially considering that they could have amended their Complaint to request such relief in response to Defendants' motion to dismiss.  Regardless, none of the unpled relief is available to them—perhaps explaining why Plaintiffs never requested it in the first place.

***Second***, with respect to the merits, Plaintiffs merely sidestep Defendants' argument that their severance claims in Counts I-IV foreclose Count V.  Plaintiffs belabor the unremarkable point that, in some cases, plaintiffs may plausibly allege claims under multiple sections of ERISA.  But their lengthy discussion largely ignores the critical point that even if Plaintiffs were to prevail on their claims for severance benefits, the release they would have to sign as a condition of payment would dispose of their unlawful termination claims in Count V—a unique circumstance that was not present in *any* of the cases Plaintiffs cite.  As a result, Plaintiffs are forced to make the awkward argument that they are unsure whether the "standard release" used by the company they claim to have dutifully operated for years covers claims arising from employment termination—the very event that would trigger the release requirement and potentially entitle covered employees to millions in severance benefits.  Even if the Court credits Plaintiffs' professed ignorance, Plaintiffs have not alleged, and there is no plausible basis for concluding, that the release the Plans require would not actually release the claims arising from Plaintiffs' termination.  After all, a principal purpose of requiring a release in exchange for the payment of severance is to release potential claims relating to the termination.  This is common sense the Court may apply under Rule 12.

Equally meritless is Plaintiffs' argument that if the Court agrees that their benefit claims were properly denied by the Claims Administrator and Committee, they can still recover on their claim that Defendants Musk and X Corp. interfered with their non-existent rights to those benefits.  One cannot interfere with rights that do not exist.  The lone case Plaintiffs cite did not involve a section 510 claim, and Plaintiffs do not meaningfully dispute the on-point cases Defendants cited.

For these reasons and those discussed in Defendants' opening brief, the Court should dismiss Count V of Plaintiffs' Complaint with prejudice.

## II.     ARGUMENT

### A.     Count V Does Not Seek Any Appropriate Equitable Relief Under ERISA.

#### 1.     Plaintiffs Cannot Recover Front Pay Or Backpay.

Plaintiffs argue that the Complaint properly pleads front pay.  Dkt. 61, Pls.' Opp. to Defs.' Mot. to Dismiss Count V of the Compl. ("Opp."), at 10.  Not so.  As the Ninth Circuit has explained, front pay is an award of salary that a plaintiff would have earned from employment **after** trial. *Teutscher v. Woodson*, 835 F.3d 936, 946 (9th Cir. 2016).  In other words, lost future earnings **beyond the date of judgment**.  *Id*.  The Ninth Circuit has therefore assumed, without deciding, that front pay may constitute equitable relief when it is awarded "as a substitute [because] the preferred remedy of reinstatement is unavailable or imprudent."  *Id*. at 946-47.[1]  Not only does the Complaint here not seek reinstatement, but it instead pleads that Plaintiffs intended to resign in October 2022 and thus were not "reasonably certain" to remain employed beyond the trial in this case.  *Id.* at 948; Dkt. 46 ("Motion") at 1-2, 8-9.  Both points confirm front pay (or reinstatement) is a nonstarter.

Plaintiffs' arguments in response are meritless.  They first argue that their attempt to resign was unsuccessful.  Opp. at 10.[2]  But this does not change the indisputable fact that they did not intend to remain employed, but rather intended to resign upon or shortly after the close of the Twitter merger in October 2022.  Simply put, if they had not been terminated on October 27, 2022, Plaintiffs admit they would have resigned—meaning they were not "reasonably certain" to remain employed "but for" their termination.  *Teutscher*, 835 F.3d at 946.  That admission forecloses an award of front pay, even assuming it were equitable in nature.

Unable to argue otherwise, Plaintiffs suggest they should receive "front pay" in the form of compensation for the time between their for-cause termination (October 27, 2022) and the 30-day "cure" period after they gave notice of their resignation (November 2022).  Opp. 10.  But of course

---

[1] The Ninth Circuit has not decided whether front pay is an equitable remedy, but has noted that courts have treated it as such when awarded in lieu of reinstatement. *See Teutscher*, 835 F.3d at 946 n.4 ("Neither party to this action contests that front pay is an available remedy for a violation of section 510 in a case asserting only such a violation, and we therefore assume without deciding that front pay is an equitable remedy authorized under section 502(a)(3).").

[2] Plaintiffs note that, unlike his fellow Plaintiffs, Plaintiff Segal did not provide written notice of his resignation on October 27, 2022.  Opp. at 10.  But they acknowledge that he did so on November 29, 2022.  Motion at 3; Compl. ¶ 69.  Thus, even if Plaintiff Segal had not been terminated, he too would not have remained employed through 2022, let alone the final judgment in this case.

such ***compensatory*** relief would, at most, constitute ***backpay***, not front pay, because, as noted, front pay refers only to pay that would have been earned after judgment. *Teutscher*, 835 F.3d at 946.[3] This is an insurmountable problem for Plaintiffs for two reasons. First, they chose not to request backpay in the Complaint, and they cannot do so now by way of their Opposition. *Rois-Mendez v. Cal. Physicians' Serv.*, 2021 WL 242906, at *3 (N.D. Cal. Jan. 25, 2021) (Chesney, J.). And second, even if they had requested it, backpay is simply not "equitable relief" within the meaning of ERISA. *See, e.g.*, *Great-West*, 534 U.S. at 219 n.4 (holding that requested monetary relief was not "equitable" restitution available under ERISA, and expressly rejecting the dissent's suggestion that "backpay" is a form of equitable relief based on its unique treatment under Title VII and its similarity to restitution); *Eichorn*, 484 F.3d at 656 ("The remedy they seek is thus akin to 'back pay,' which is not an equitable remedy within the meaning of [ERISA]." (citing *Great-West*, 534 U.S. at 218 n.4)); *Millsap*, 368 F.3d at 1257-60 (holding that backpay is not appropriate equitable relief under ERISA based on *Great-West*); *Blaj v. Stewart Enters.*, 2011 WL 669134, at *2 (S.D. Cal. Feb. 14, 2011) (dismissing claims for past wages because backpay does not constitute equitable relief); *Hicks-Wagner v. Qwest, Inc.*, 462 F. Supp. 2d 1163, 1171 (D.N.M. 2006) (same).[4]

Plaintiffs' contrary citations are unpersuasive because the decisions did not address—let alone reconcile—the Supreme Court's statement about backpay in *Great-West*. Opp. at 12. In *Acosta v. FCE Benefit Administrators, Inc.*, 2018 WL 11447534 (N.D. Cal. Jan. 22, 2018), the defendant did not address whether backpay is equitable relief under ERISA. *Id.* at *10 (finding the parties' briefing on the question "woefully inadequate"). In *Greenburg v. Life Insurance Co. of North America*, 2009 WL 1110331 (N.D. Cal. Apr. 23, 2009), the court said only that "[r]einstatement of employment, front pay and back pay ***may*** be an appropriate remedy." *Id.* at *3

---

[3] At any rate, this remedy is encompassed in the benefits provided for under the Plans. *See* Dkt. 1-1 at ECF Page 2 of 7 & Dkt. 1-2 at ECF Page 2 of 8 ("Cash Severance" constitutes a percentage of the participant's base salary).

[4] In *Teutscher*, the Ninth Circuit stated that there was, at the time, a "circuit split" on whether backpay is an available equitable remedy under section 502(a)(3) of ERISA. 835 F.3d at 946 n.3. This appears to have been an overstatement. The only decision the court cited for the proposition that backpay is equitable relief under ERISA was decided in 1995, *see id.* (citing *Schwartz v. Gregori*, 45 F.3d 1017, 1022-23 (6th Cir. 1995)—nearly a decade *before* the Supreme Court expressed the opposite view in *Great-West*. Nor do Plaintiffs cite any circuit-court decisions after *Great-West* holding that backpay is appropriate equitable relief under ERISA.

1    (emphasis added).  And in *Perez v. Brain*, 2015 WL 3505249, at *11 (C.D. Cal. Jan. 30, 2015), the

2    court relied exclusively on authority finding that backpay is treated as equitable relief under Title

3    VII, which is the same rationale the Supreme Court squarely rejected in *Great-West*, explaining

4    that "Congress treated backpay as equitable in Title VII only in the narrow sense that it allowed

5    backpay to be awarded *together with* equitable relief."  534 U.S. at 218 n.4.

6         In short, neither Plaintiffs' request for front pay nor their unpled request for backpay can

7    sustain their claims for equitable relief in Count V of the Complaint.  *See, e.g.*, *BizCloud, Inc. v.

8    *Computer Scis. Corp.*, 2014 WL 1724762, at *5 (N.D. Cal. Apr. 29, 2014) (dismissing claim to the

9    extent it sought to recover non-restitutionary disgorgement of profits, which were not available as

10   a matter of law); *Oliver-Pullins v. Associated Material Handling Indus., Inc*., 2003 WL 21696207,

11   at *3 (S.D. Ind. May 20, 2003) (dismissing ERISA § 510 claim where the complaint did not

12   expressly request the relief the plaintiff claimed she sought).

13                      **2.    Plaintiffs Cannot Obtain An Equitable Surcharge.**

14        Plaintiffs concede that an equitable surcharge is only available for claims of breach of

15   fiduciary duty—a claim that appears nowhere in the Complaint.  Opp. at 11.  Plaintiffs therefore

16   contort the Complaint's allegations through their Opposition to suggest that Defendant Musk

17   breached ERISA fiduciary duties by terminating Plaintiffs' employment.  *Id*.  Not only is this theory

18   unsupported by the allegations in the Complaint, but it is foreclosed by settled precedent holding

19   that personnel decisions are not fiduciary conduct that can support a claim for breach of fiduciary

20   duty under ERISA.  *See* Motion at 7-8.

21        Although the Complaint contains multiple counts, none asserts a claim for breach of

22   fiduciary duty under ERISA section 409, 29 U.S.C. § 1109, the statutory provision giving rise to

23   liability for fiduciary breach.  That statutory provision is not referenced anywhere in the Complaint.

24   Nor is the statutory provision prescribing ERISA's fiduciary duties, 29 U.S.C. § 1104.  Indeed, the

25   Complaint does not even use the word "breach."  Clearly, the Complaint does not assert a fiduciary

26   breach claim, so an equitable surcharge is unavailable.  Motion at 7-8.[5]

27

28   ───────────────
     [5] That the Complaint lacks fiduciary-breach allegations is unsurprising, even apart from the fact
     that personnel decisions do not constitute fiduciary acts of plan administration.  The Plans here
     were indisputably unfunded and limited to a select group of management or highly-compensated

1       Nevertheless, Plaintiffs try to graft a fiduciary breach claim onto the Complaint's lone

2  allegation that Musk was the Plan Administrator. Opp. at 11. But that does not work, either. The

3  Complaint never alleges that, in terminating Plaintiffs' employment, Musk acted on behalf of the

4  Plans or in the capacity of Plan Administrator. *See* Motion at 7-8 (officers may wear different

5  "hats" at different times, and personnel decisions are made wearing the non-fiduciary, corporate

6  "hat"). And it is well-settled by decades of case law that terminating an employee does not confer

7  fiduciary status or give rise to a claim for breach of fiduciary duty, even when that decision has an

8  adverse impact on the employee's plan benefits. *Id.*[6] This settled principle—which Plaintiffs,

9  tellingly, do not contest—exists for good reason. Without it, all sorts of employment decisions—

10  whether to terminate an employee, reduce an employee's pay, or deny a promotion—could be

11  characterized as a breach of fiduciary duty as long as they have some impact on potential benefits

12  under an ERISA plan. Indeed, if such decisions were "fiduciary" conduct, every section 510 claim

13  would also be accompanied by a breach of fiduciary duty claim arising from the same underlying

14  employment decision. But that is not the reality, because that is not the law.

15       To be sure, the Opposition also observes that making benefit determinations is a fiduciary

16  function. Opp. at 11. True, but irrelevant because, as the Complaint here readily acknowledges,

17  Plaintiffs' benefit claims were subject to an administrative process whereby Lindsay Chapman and

18  the Twitter Severance Administration Committee exercised their broad, discretionary authority to

19  decide both Plaintiffs' initial claim for benefits and their related appeal, respectively. *See* Compl.

20  ¶¶ 22, 71-74, 94-95; Dkt. 1, Ex. A ("The Administrator will have full discretion to administer and

21  interpret the [Plans]. Any decision made or other action taken by the Administrator with respect to

22  the [Plans], and any interpretation by the Administrator of any term or condition of the [Plans], or

23  any related document, will be conclusive and binding on all persons and be given the maximum

24  possible deference allowed by law."). That is why Plaintiffs have sued them alongside Musk, but

25

26  employees, like Plaintiffs. The Plans are therefore "top hat" plans, exempt from ERISA's fiduciary

27  duty provisions. *See Duggan v. Hobbs*, 99 F.3d 307, 310-13 (9th Cir. 1996) (holding that severance
plan was an unfunded plan of deferred compensation for high-ranking executive and was therefore
a "top hat" plan exempt from ERISA fiduciary duty provisions); 29 U.S.C. § 1101(a)(1).

28  [6] Plaintiffs do not contest Defendants' authority holding that employment decisions are not
fiduciary conduct, Motion at 8, thereby conceding that general principle.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

1  again, not for any purported breach of fiduciary duty.[7]

2        The only other point the Opposition makes is that their October 27, 2022 termination letters

3  reference the Plan's terms.  Opp. at 11.  But that does not transform the employment decisions into

4  fiduciary conduct.  Preparing or approving a termination letter that notifies an employee of their

5  termination and its implications on applicable ERISA plans is not an exercise of control over plan

6  administration or assets—particularly where, as here, it is undisputed that relevant benefits

7  determinations did not occur until months later.  *See, e.g.*, *Brooks v. Pactiv Corp.*, 729 F.3d 758,

8  766 (7th Cir. 2013) ("Although the decision to fire an employee obviously affects the employee's

9  benefits, the act is inherently not fiduciary in nature.") (quotation marks and citations omitted);

10 *Bodine v. Emps. Cas. Co.*, 352 F.3d 245, 252 (5th Cir. 2003) (rejecting the "untenable conclusion

11 that the existence of a severance plan makes any termination decision a fiduciary activity"); *Neville*

12 *v. Ariens Co.*, 2013 WL 6732123, at *4 (E.D. Wis. Dec. 19, 2013) ("Even if the termination of

13 benefits is a direct and even intentional result of the termination, it cannot be separated from the

14 termination itself, which is not a fiduciary action.") (quotation marks and citation omitted);

15 *Reddinger v. SENA Severance Pay Plan*, 2010 WL 1836797, at *6 (E.D. Wis. May 6, 2010), *aff'd*,

16 707 F.3d 702 (7th Cir. 2013) ("Countless business decisions, such as terminating an employee for

17 cause . . . have collateral effects on ERISA plans—an employee fired for cause would no longer be

18 eligible for the severance plan, for example—but obviously these kinds of decisions are not

19 governed by fiduciary standards.").  Here again, Plaintiffs' position proves too much, as it would

20 mean that any time an employer notifies an employee that she is being terminated for cause within

21 the meaning of an ERISA plan, the employer is acting in a fiduciary capacity—despite that no claim

22 under the plan has been asserted and no determination of that claim by the designated administrator

23 has been made.  This is not the law, and Plaintiffs cite no authority suggesting otherwise.[8]

24

25 [7] The Opposition appears to contend that Musk's selection of Ms. Chapman and the Committee
   members somehow confers a fiduciary duty relating to the determination of Plaintiffs' benefit
26 claims.  Opp. at 11.  Even assuming Musk had a fiduciary duty in appointing them, the duty ends
   with appointment and does not embrace the termination decision.  29 U.S.C. § 1001(21)(A) (one is
27 a fiduciary only *to the extent* he is engaged in fiduciary conduct).  Nor does the Complaint ever
   allege that Musk breached his fiduciary duty in exercising the power of appointment.
28 [8] Plaintiffs' reliance on *Alexander v. Fujitsu Business Communication Systems, Inc.*, 818 F. Supp.
   462, 476 (D.N.H. 1993) and *Zisk v. Gannett Co. Income Protection Plan*, 73 F. Supp. 3d 1115,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                    - 7 -                    REPLY IN SUPPORT OF MOTION TO
                                                                         DISMISS COUNT V OF COMPLAINT
                                                                         CASE NO. 3:24-cv-01304-MMC

1

2

**3.      The Court Should Reject Plaintiffs' Attempt To Avoid Dismissal By Identifying New Forms Of Purported Equitable Relief They Chose Not To Request In Their Complaint.**

3      Next, Plaintiffs argue about three other forms of purported equitable relief (restitution,

4    disgorgement, and reinstatement) they chose ***not*** to request in the Complaint, and fault Defendants

5    for not moving to dismiss those unpled forms of relief as well.  Opp. at 11-13.  That is not how

6    Rule 8 or Rule 12 works.  It is Plaintiffs' job to allege their claims and identify the relief sought,

7    Fed. R. Civ. P. 8(a)(1)(3); it is not Defendants' job to rule out all relief Plaintiffs might seek or

8    choose not to seek.  The Court should reject Plaintiffs' improper attempt to avoid dismissal by using

9    their Opposition to invoke relief requested nowhere in the Complaint.  *See, e.g.*, *Tietsworth v. Sears*,

10   720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010); *Rois-Mendez*, 2021 WL 242906, at \*3.  Moreover,

11   dismissal is particularly appropriate here because Plaintiffs could have amended their Complaint,

12   but chose not to in favor of sandbagging Defendants' ability to squarely address these additional

13   forms of relief in their Motion.

14        **4.      The Newly Identified Relief Is Also Unavailable To Plaintiffs.**

15        The new forms of relief identified in the Opposition are unavailable, in any event.

16        ***Restitution is unavailable.***  Restitution in equity is available only "where money or property

17   identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds

18   or property in the defendant's possession."  *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945,

19   954-55 (9th Cir. 2014) (quoting *Great-West*, 534 U.S. at 213); *Depot, Inc. v. Caring for Montanans,*

20   *Inc.*, 915 F.3d 643, 663 (9th Cir. 2019).  But the Complaint is devoid of such allegations.  *See*

21   *Depot*, 915 F.3d at 661 (dismissal appropriate where plaintiffs failed to allege "a specific,

22   identifiable fund to which they were entitled"); *Del Castillo v. Cmty. Child Care Council of Santa*

23   *Clara Cnty., Inc*., 2019 WL 6841222, at \*8 (N.D. Cal. Dec. 16, 2019) (same where the plaintiffs

24   "failed to specifically identify any funds within [defendant]'s control").  At most, the Complaint

25   alleges that Musk and X Corp. acted "to deprive Plaintiffs of their severance benefits."  Compl. ¶

26   123.  But severance benefits under the Plan are not "particular funds or property."  The Plan is

27

28   1116 (N.D. Cal. 2014) (cited at Opp. at 11), is misplaced.  In both, the complaints clearly alleged breach of fiduciary duty claims, and neither involved an ERISA section 510 claim.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

1   unfunded, and severance benefits are paid from the company's general assets.  Dkt. 1, Ex. A at ECF

2   Page 7 of 7 ("The cost of the [Plan] is paid by the Company"); Ex. B at ECF Page 7 of 8 (same).

3   Thus, the restitution Plaintiffs declined to seek in the Complaint is a form of *legal* restitution, not

4   *equitable* restitution.  *E.g.*, *Montanile v. Bd. Of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,

5   577 U.S. 136, 145 (2016) (recovering from defendant's general assets "is a legal remedy, not an

6   equitable one" under ERISA).

7          While the Opposition suggests the Court should "award restitution for the value of restricted

8   stock units that would have vested[,]" Opp. at 13, that is not alleged anywhere in the Complaint.

9   Rather, the Complaint alleges the RSUs are part of the severance benefits.  *See* Compl. ¶¶ 159, 163,

10  167, 171.  Regardless, this form of restitution smacks of a legal remedy—namely, compensatory

11  damages equal to the value of certain benefits sought under the plan.  *See Eichorn*, 484 F.3d at 655

12  (finding requested decree to require employer to adjust its pension records retroactively to create

13  an obligation to pay the plaintiffs more money was a request "for compensatory damages merely

14  framed as an 'equitable' injunction" and affirming decision that such "requested relief is not

15  available under § 502(a)(3)").  Thus, it is not equitable relief.

16         ***Disgorgement is unavailable***.  Disgorgement is a form of restitution "measured by the

17  defendant's wrongful gain rather than by the plaintiff's loss."  *Depot*, 915 F.3d at 663 (quotation

18  marks and citation omitted).  Thus, Plaintiffs cannot recover it for the same reasons they cannot

19  recover equitable restitution.  As with restitution, equitable disgorgement is available only "when

20  the plaintiff is entitled to a constructive trust on *particular property* held by the defendant — that

21  allows the plaintiff to recover profits produced by the defendant's use of *that property*."  *Id.*

22  (quoting *Great-West*, 534 U.S. at 214 n.2) (quotations omitted; emphases added).  Because the

23  Complaint does not allege any "particular property" held by Musk or X Corp. that belongs to

24  Plaintiffs, any "request for disgorgement is not equitable in nature."  *Id*. at 664.[9]

25

26  ────────────────

[9] Plaintiffs should know better.  Their same counsel has argued successfully in other courts that
27  equitable restitution and disgorgement both require the plaintiff to identify specific property or
    funds in the defendants' possession, as opposed to seeking an award of monetary relief from the
28  defendants' general assets.  *E.g.*, *Teets v. Great-W. Life & Annuity Ins. Co*., 286 F. Supp. 3d 1192,
    1207 (D. Colo. 2017) (representing the defendants who argued a plaintiff seeking equitable
    restitution "must identify a specific *res* that a defendant wrongfully holds"), *aff'd*, 921 F.3d 1200,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

1       ***Reinstatement is unavailable***.  Not only did Plaintiffs choose not to request reinstatement

2   in the Complaint, *see Oliver-Pullins*, 2003 WL 21696207, at *3 (dismissing ERISA § 510 claim

3   even though the plaintiff argued she sought restitution, including reinstatement with backpay,

4   because "the Complaint does not seek reinstatement"), but they affirmatively seek front pay which

5   is only awarded in lieu of reinstatement.  Regardless, as with the front pay allegations, any request

6   for reinstatement is at odds with Plaintiffs' admission that, if they had not been terminated, they

7   would have resigned their employment for purposes of obtaining the severance benefits available

8   to them under the Plans.  Compl. ¶¶ 65, 66, 69.  Plaintiffs have no equitable basis for seeking

9   reinstatement to a job they admittedly planned to quit.

10       Moreover, Plaintiffs prove the absurdity of their unpled reinstatement relief by making the

11   bizarre argument that reinstatement would allow them to *resign* for "Good Reason" and thereby

12   "perfect their right to benefits" under the Plans.  Opp. at 13.  Not only does this unpled theory seek

13   improperly to duplicate their claims for severance benefits in Counts I-IV,[10] but it is self-defeating.

14   Under the Plans, Plaintiffs can only resign for "Good Reason" and obtain severance benefits if their

15   resignation occurs "during the Change of Control Period." Compl. ¶¶ 34, 38.  ***But that period is***

16   ***long-since expired***.  *See* Dkt. 1, Ex. A at ECF Page 4 of 7 ("Change of Control Period" ended 12

17   months after the October 2022 Twitter acquisition); *id.* Ex. B at ECF Page 4 of 8.  In other words,

18   Plaintiffs' unpled suggestion that the Court could reinstate them for purposes of resigning thereafter

19   would not allow them to "perfect" anything other than the determination that they are not entitled

20   to severance benefits under the Plans' express terms.

21       Finally, Plaintiffs go even further by arguing that they "need not specify . . . all the ways in

22   which equitable relief may be awarded" because equitable relief may be awarded "even where a

23

24   1230 (10th Cir. 2019) (plaintiff's request for equitable disgorgement was legal in nature because he failed to identify any "particular property").

25   [10] Plaintiffs cannot seek duplicative recoveries through claims under section 502(a)(1)(B) and section (a)(3) of ERISA.  *See, e.g.*, *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir.

26   2010) (affirming dismissal of Section 502(a)(3) claim for equitable relief as duplicative of claim for benefits); *Schuman v. Microchip Tech. Inc.*, 302 F. Supp. 3d 1101, 1118 (N.D. Cal. 2018)

27   (dismissing three forms of injunctive relief under Section 502(a)(3) because they were "improperly duplicative" of relief available under Section 502(a)(1)(B)); *Ehrlich v. Hartford Life & Accident*

28   *Ins. Co.*, 2021 WL 4472845, at *5 (N.D. Cal. May 7, 2021) (concluding relief sought as "equitable surcharge" was duplicative of relief sought under § 502(a)(1)(B) claim).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

- 10 -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

1    plaintiff has not demanded it."  Opp. at 12, n.2.  This argument—which Plaintiffs support with

2    citations to inapposite, non-ERISA cases[11]—misses the point.  Section 502(a)(3) permits a cause

3    of action only where "appropriate equitable relief" is sought.  29 U.S.C. § 1132(a)(3).  And here,

4    the relief Plaintiffs seek (in the Complaint or otherwise) does not fit within that statutory definition,

5    meaning Count V fails as a matter of law.  The Court should therefore reject Plaintiffs' self-serving

6    argument that claims for equitable relief are effectively immune to Rule 12 challenge, so long as

7    the plaintiffs choose not to plead all equitable relief they seek.

8    **B.    Dismissal Is Also Appropriate Because Count V Is Foreclosed By Counts I-IV.**

9          Plaintiffs devote most of their Opposition to Defendants' alternate ground for dismissal:

10   that Count V is unavoidably foreclosed by their claims in Counts I-IV.  Most of their ink is spilled

11   to support the unremarkable proposition that claims brought under different sections of ERISA can,

12   in theory, proceed simultaneously.  Opp. at 6-9.[12]  While that may be true, it misses the point of

13   Defendants' argument.  Defendants' argument turns on the Plans' unique language mandating that,

14   to obtain severance benefits, a participant must first execute a release of claims, which would

15   extinguish any ERISA section 510 claim arising from Plaintiffs' termination.  Motion at 9.[13]  Thus,

16   if Plaintiffs prevail on Counts I-IV, it will dispose of Count V.

17         Plaintiffs try to dodge this reality through two arguments, both meritless.  First, they claim

18   "there is no way to know" whether Twitter's standard release covers a section 510 claim.  Opp. at

19   7.  This rings hollow.  Plaintiffs were the highest executives in the company, including the CEO,

20   Chief Legal Officer, and General Counsel.  Compl. ¶¶ 10, 12-13.  To feign ignorance of the

21   company's "standard release" is disingenuous.  It is also implausible to suggest that any "standard

22   release" would not cover termination-related claims, particularly where that same termination

23   entitles the employee to potentially millions of dollars in severance benefits.

---

24   [11] Only one case Plaintiffs cite, *Johns v. Ng*, 2012 WL 4497770 (N.D. Cal. Sept. 28, 2012), involved

25   ERISA section 502(a)(3).  There, the court rejected the defendants' argument that the plaintiff
     improperly sought monetary relief because she specifically requested reinstatement—*i.e.*, non-

26   monetary equitable relief—in her complaint.  *Id.* at *4.  Here, in contrast, the Complaint does not
     seek reinstatement and, instead, acknowledges that Plaintiffs sought to resign.

27   [12] While Plaintiffs claim they have pled Count V in the alternative, Opp. at 8, that is not expressly
     stated in the Complaint.

28   [13] The Plans' release language is appropriately considered because Plaintiffs attached the Plans as
     exhibits to their Complaint.  *E.g.*, *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                            - 11 -                    REPLY IN SUPPORT OF MOTION TO
                                                                                  DISMISS COUNT V OF COMPLAINT
                                                                                  CASE NO. 3:24-cv-01304-MMC

1    Second, Plaintiffs argue that if they prevail on Counts I-IV, they would not be required to

2    execute the release, as the Plans expressly require.  Opp. at 7.  But this just ignores that Plaintiffs

3    ask the Court to issue an order requiring that severance benefits be paid in accordance with the

4    terms of the Plans.  *See* Compl., Prayer for Relief ¶ B.  And in any event, the Court cannot award

5    relief that is different than or goes beyond the terms of the Plans.  *See US Airways, Inc. v.*

6    *McCutchen*, 569 U.S. 88, 98 (2013) (holding that equitable principles cannot override clear plan

7    terms); *Gabriel*, 773 F.3d at 956 ("a plaintiff may not bring an equitable estoppel claim that would

8    result in a payment of benefits that would be inconsistent with the written plan") (quotation marks

9    and citation omitted).  If the Plaintiffs are to receive severance benefits under the terms of the Plans,

10   they will need to release their claims in Count V.

11   Plaintiffs otherwise resort to general principles and inapt case law.  Arguing that courts

12   "routinely allow Section 510 claims and Section 502(a)(1)(B) claims to proceed in parallel,"

13   Plaintiffs cite inapposite cases that did not involve severance plans or releases.  Opp. at 6.[14]  They

14   further point to decisions allowing plaintiffs to plead both a benefits claim and claims for equitable

15   relief under Section 502(a)(3).  Opp. at 7.  Those cases are even further afield, as none involved a

16   section 510 claim, much less a release.  Rather, they asserted fiduciary breach claims, which the

17   Complaint does not do here.[15]  Plaintiffs' cited authority is simply irrelevant.

18   Last, Plaintiffs argue half-heartedly that they can prevail on their section 510 claim even if

19   the Court agrees they were terminated for cause and thus had no right to severance benefits in the

20   first place.  Opp. at 8; Motion at 9-10.  But the lone case Plaintiffs cite, *Black v. Long Term*

21   *Disability Insurance*, 373 F. Supp. 2d 897 (E.D. Wis. 2005), did not even involve a claim under

22

23   [14] *Tolle v. Carroll Touch, Inc*., 977 F.2d 1129, 1133 (7th Cir. 1992), does not support Plaintiffs'
     position because the Seventh Circuit affirmed dismissal of a Section 510 claim.  The remaining

24   cited cases simply analyzed whether the plaintiffs had sufficiently pleaded the elements of their
     claims.  *See La Fata v. Raytheon Co*., 223 F. Supp. 2d 668, 672-74 (E.D. Pa. 2002); *Cockerill v.*

25   *Corteva, Inc.*, 2022 WL 3099771, at *7 (E.D. Pa. Aug. 4, 2022) (no analysis of the plaintiff's
     Section 502(a)(1)(B) claim); *Love v. Talbert House*, 2020 WL 6440256, at *3 (S.D. Ohio Nov. 3,

26   2020); *Bowen v. Nationwide Mut. Ins. Co.*, 2019 WL 4412805, at *4 (M.D. Pa. Sept. 16, 2019) (no
     discussion of the relationship between the plaintiff's Section 502(a)(1)(B) and 510 claims).

27   [15] Opp. at 7 (citing *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 959 (9th Cir. 2016), *as*
     *amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016); *Silva v. Metro. Life Ins. Co*., 762

28   F.3d 711, 727 (8th Cir. 2014); *Zisk*, 73 F. Supp. 3d at 1119; *Allbaugh v. Cal. Field Ironworkers*
     *Pension Tr*., 2014 WL 2112934, at *6 (D. Nev. May 20, 2014)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC

section 510.  Rather, the plaintiff in *Black* asserted a fiduciary-breach claim alleging that the defendant insurance company breached its fiduciary duty "by failing to fully and fairly review" her claim for disability benefits and those of putative class members by misclassifying occupations, failing to obtain independent medical examinations, and misconstruing doctors' reports, among other things.  *Id*. at 900.  In allowing that claim to proceed, the court rejected the defendants' argument that section 502(a)(1)(B) was the "exclusive remedy" for the plaintiff.  *Id*. at 901.  No such claim or argument is at issue here, and thus *Black* is irrelevant.

Meanwhile, in cases like this one involving tandem claims under sections 502(a)(1)(B) and 510, courts have repeatedly held that a plaintiff who is properly determined to have no right to benefits under a plan cannot recover based on an "interference" theory under section 510.  Motion at 9-10 (collecting cases).  While Plaintiffs do not contest these holdings, they nevertheless argue that the cases are "distinguishable" because they came after the court's determination that the plan administrator properly denied the plaintiffs' claims for plan benefits.  Opp. at 9.  But that is a distinction without a difference here, because Plaintiffs' section 510 claim fails regardless of whether they win or lose their claims for benefits.  *See supra* pp. 11-12.  Stated differently, the Court need not wait to rule on Plaintiffs' benefit claims because *any* judgment on those claims— win or lose—will foreclose Plaintiffs' interference claims under section 510.

## III.    CONCLUSION

For these reasons, and those stated in Defendants' Motion, the Court should dismiss Count V of Plaintiffs' Complaint under Rule 12(b)(6).

Dated:    June 28, 2024                              MORGAN, LEWIS & BOCKIUS LLP

By   */s/ Christopher J. Boran*
Christopher J. Boran
Eric Meckley
Jeremy P. Blumenfeld
Abbey M. Glenn
Brian Sullivan

*Attorneys for Defendants*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

REPLY IN SUPPORT OF MOTION TO
DISMISS COUNT V OF COMPLAINT
CASE NO. 3:24-cv-01304-MMC