1   MORGAN, LEWIS & BOCKIUS LLP
    Eric Meckley (Bar No. 168181)
2   eric.meckley@morganlewis.com
    One Market, Spear Street Tower
3   San Francisco, CA  94105-1126
    Tel: +1.415.442.1000
4
5   Jeremy P. Blumenfeld (admitted *pro hac vice*)
    jeremy.blumenfeld@morganlewis.com
    Brian W. Sullivan (admitted *pro hac vice*)
6   brian.sullivan@morganlewis.com
    2222 Market Street
7   Philadelphia, PA 19103-3007
    Tel: +1.215.963.5000
8
    Attorneys for Defendants
9   ELON MUSK; X CORP.; TWITTER, INC.
    CHANGE OF CONTROL AND
10  INVOLUNTARY TERMINATION
    PROTECTION POLICY; TWITTER, INC.
11  CHANGE OF CONTROL SEVERANCE
    AND INVOLUNTARY TERMINATION
12  PROTECTION POLICY; LINDSAY
    CHAPMAN; BRIAN BJELDE; and
13  DHRUV BATURA

    MORGAN, LEWIS & BOCKIUS LLP
    Christopher J. Boran (admitted *pro hac vice*)
    christopher.boran@morganlewis.com
    110 North Wacker Drive, Suite 2800
    Chicago, IL 60606-1511
    Tel: +1.312.324.1000

    Abbey M. Glenn (Bar No. 267751)
    abbey.glenn@morganlewis.com
    1111 Pennsylvania Ave, NW
    Washington, DC 20004-2541
    Tel: +1.202.739.3000

14          **UNITED STATES DISTRICT COURT**

15          **NORTHERN DISTRICT OF CALIFORNIA**

16              **SAN FRANCISCO DIVISION**

17  PARAG AGRAWAL, NED SEGAL, VIJAYA
    GADDE, and SEAN EDGETT,
18
                    Plaintiffs,
19          vs.

20  ELON MUSK; X CORP., F/K/A TWITTER,
    INC.; TWITTER, INC. CHANGE OF
21  CONTROL AND INVOLUNTARY
    TERMINATION PROTECTION POLICY;
22  TWITTER, INC. CHANGE OF CONTROL
    SEVERANCE AND INVOLUNTARY
23  TERMINATION PROTECTION POLICY;
    LINDSAY CHAPMAN; BRIAN BJELDE;
24  AND DHRUV BATURA,

25              Defendants.

26

27

28

Case No. 3:24-cv-01304-MMC

**OPPOSITION TO PLAINTIFFS'
MOTION TO OPEN DISCOVERY**

Hearing Date: November 15, 2024
Time: 9:00 AM
Location: Courtroom 7, 19th Floor
Hon. Maxine M. Chesney

Action Filed:  March 4, 2024

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## I.     INTRODUCTION

2        On June 14, 2024, this Court stayed discovery pending the outcome of Defendants' Motion

3   to Dismiss.  Dkt. 60.  The Court did so over Plaintiffs' objection, in recognition that the Parties

4   would likely dispute the appropriate scope of discovery pending clarity on whether Plaintiffs'

5   ERISA Section 510 claim—the subject of Defendants' Motion to Dismiss—can proceed.  Dkt. 64

6   at 22:24-23:12.  Now, Plaintiffs ask the Court to reconsider its order staying discovery because

7   "significant time has now passed."  Dkt. 70 at 3.  But Plaintiffs' Motion to Open Discovery

8   ("Motion") violates the Local Rules for motions for reconsideration and should be denied on that

9   basis alone.  Regardless, Plaintiffs identify no material changed circumstances or serious risk of

10  prejudice supporting their request to commence discovery before the Court rules on Defendants'

11  Motion to Dismiss.  There are many months until the April 2025 deadline for Plaintiffs' Rule 52

12  motion, and discovery in ERISA denial-of-benefits cases rarely requires more than the several

13  months remaining before that deadline.  *See, e.g.*, *Rowell v. Aviza Tech. Health and Welfare Plan*,

14  2011 WL 5190172, at *2 (N.D. Cal. Oct. 31, 2011) ("Courts have historically limited discovery in

15  ERISA cases consistent with ERISA's goal to provide a method for workers and beneficiaries to

16  resolve disputes over benefits inexpensively and expeditiously.").  Besides, Plaintiffs can always

17  seek more time to complete discovery later, upon a showing of good cause, should it become

18  necessary.  Thus, their current claims of "changed circumstances" and "prejudice" ring hollow.

19       To make matters worse, Plaintiffs refused to engage seriously in conferral efforts before

20  filing their Motion.  The process was entirely one-sided.  Specifically, Defendants proposed a

21  compromise whereby they would agree to produce the relevant administrative record—including

22  documents previously withheld on the basis of attorney-client privilege—if Plaintiffs would simply

23  agree that they would not argue that the production of privileged materials constituted any waiver

24  of privilege beyond those documents or this litigation.  *See* Dkt. 70-2 at 3.  Defendants even offered

25  to confer as to any further discovery Plaintiffs believed was necessary after the completion of this

26  production, assuming the Court had not ruled on the Motion to Dismiss.  *Id*.  Despite expressing

27  their appreciation of this "thoughtful" proposal, Plaintiffs summarily rejected it, made no

28  counterproposal, and filed their Motion.  *See id*. at 2.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -

OPPOSITION TO PLAINTIFFS'
MOTION TO OPEN DISCOVERY
CASE NO. 3:24-cv-01304-MMC

1    Ultimately, Defendants remain willing to negotiate a reasonable scope of discovery tailored

2 to Plaintiffs' specific allegations of conflicts of interest and/or procedural irregularities related to

3 their claims for benefits under ERISA § 502(a)(1)(B).  But, consistent with the wealth of case law

4 on appropriate discovery in such cases, Defendants have also maintained that any discovery "must

5 be narrowly tailored and cannot be a fishing expedition." *Walker v. Metro. Life Ins. Co.*, 2008 WL

6 426068, at *2 (N.D. Cal. Feb. 14, 2008) (internal citation omitted); *see also*, *e.g.*, *Zewdu v.*

7 *Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 626 (N.D. Cal. Feb. 12, 2010) ("Discovery

8 must be narrowly tailored to reveal the nature and extent of the conflict, and must not be a fishing

9 expedition.").  Plaintiffs disagree with that approach, signaling an intent to conduct wide-ranging

10 discovery on issues completely untethered from the administrative process, such as the Twitter

11 merger and related litigation.  *See* Dkt. 59 at 9 n.3 (describing the scope of Plaintiffs' initial

12 disclosures).  Rather than engage in any meaningful conferral efforts, Plaintiffs instead aim to throw

13 open the discovery floodgates and force the Court to resolve any disagreement about the appropriate

14 scope of discovery in this case—even while a Court-ordered stay is in place.  Contrary to Plaintiffs'

15 Motion, the Court's intervention is unnecessary at this stage.  Plaintiffs have articulated no

16 legitimate basis to support a finding of prejudice associated with the continuing stay of discovery,

17 and the Court's ruling on the Motion to Dismiss will help determine the scope of discovery and

18 limit potential discovery disputes.  Thus, the stay should remain in effect.

19    For these reasons and as discussed below, the Court should deny Plaintiffs' Motion.

20 **II.    ARGUMENT**

21    **A.    Plaintiffs' Motion Flunks The Requirements Of Local Rule 7-9.**

22    During the case management conference, Plaintiffs asked the Court to permit them to take

23 discovery during the pendency of Defendants' Motion to Dismiss.  Dkt. 64 at 22:24-23:2.  The

24 Court denied that request and issued an order staying discovery.  *Id*. at 23:17-18; *see also* Dkt. 60

25 ("Court orders stay of discovery in place until ruling on pending motion to dismiss.").  Plaintiffs'

26 Motion is nothing more than a mis-labeled motion for reconsideration of the Court's prior order.

27 For that reason, it should be denied under Local Rule 7-9(a), which states that "[n]o party may

28 notice a motion for reconsideration without first obtaining leave of Court to file the motion." *Austin*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

1    *v. Lyft, Inc.*, 2022 WL 395310, at *2 (N.D. Cal. Feb. 9, 2022) ("[B]y failing to seek leave of the

2    court before filing his motion for reconsideration, [plaintiff] has not complied with the Local Rules

3    of this district and, on that basis alone, the motion will be denied.") (Chesney, J.) (citing *Tri-Valley*

4    *CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012)).   Further, the Local Rule

5    requires Plaintiffs to demonstrate one of three factors to justify reconsideration: (1) that "a material

6    difference in fact or law exists from that which was presented to the Court," (2) "emergence of new

7    material facts or a change of law," or (3) "manifest failure by the Court to consider material facts

8    or dispositive legal arguments."  L.R. 7-9(b).  They have failed to do so.  Accordingly, the Court

9    should deny Plaintiffs' Motion because it flunks all the requirements of Local Rule 7-9.

10          **B.      No Circumstances Have Changed Since The Court Stayed Discovery.**

11          Plaintiffs' Motion also fails on its own terms.  Their first argument is that "circumstances

12    have changed since the Court stayed discovery."  Dkt. 70 at 2.  But the only "changed circumstance"

13    is Plaintiffs' apparent displeasure that the Court has not ruled more quickly on the Motion to

14    Dismiss. *Id*. at 2-3.  This is no reason to open discovery, and Plaintiffs cite no case law supporting

15    their position.  Plaintiffs rely on *In re Google Location History Litig.*, 514 F. Supp. 3d 1147 (N.D.

16    Cal. 2021), for the general principle that "[c]ourts have 'traditionally looked unfavorably upon

17    blanket stays of discovery while Rule 12 motions are pending.'"  Dkt. 70 at 3.  But *Google* was not

18    an ERISA denial-of-benefits case grounded in an administrative record, and it does not stand for

19    the proposition—as Plaintiffs suggest—that a court must always open discovery when a party

20    requests it.  Indeed, the *Google* court denied the plaintiffs' motion to reopen discovery.  514 F.

21    Supp. 3d at 1166. And it did so despite the plaintiffs' professed concern—like the concern Plaintiffs

22    (inaccurately) voice here—that discovery was proceeding against the defendant in "similar

23    proceedings" brought by a different plaintiff. *Id*. at 1165.  Clearly, then, *Google* does not support

24    Plaintiffs' request.

25          "A district court has broad discretion to stay discovery pending the disposition of a

26    dispositive motion." *Hall v. Tilton*, 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010).  This Court

27    appropriately exercised that discretion here.  While Plaintiffs might disagree with that decision,

28    they provide no good cause for the Court to reconsider it.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO PLAINTIFFS'
MOTION TO OPEN DISCOVERY
CASE NO. 3:24-cv-01304-MMC

**C.    There Is No Prejudice To Plaintiffs.**

Next, Plaintiffs assert they will be prejudiced by the continuing stay of discovery because (1) the "value of X Corp. has plummeted precipitously since the acquisition of Twitter" and (2) it is "unfair" that two related cases may proceed to discovery first.  Dkt. 70 at 3.  Plaintiffs' assertions are meritless and, in any event, conclusory assertions such as these are insufficient to demonstrate prejudice as a matter of law.  *E.g.*, *Sylabs, Inc. v. Rose*, 2024 WL 4312719, at *6 (N.D. Cal. Sept. 26, 2024) ("the Court requires more than conclusory averments of prejudice"); *Nagle v. York*, 2021 WL 5012173, at *2 (N.D. Cal. Oct. 28, 2021) (no "sufficient showing of prejudice" where plaintiff "relies on conclusory assertions").

Plaintiffs cite a news article reporting that a recent valuation places the value of X Corp. at $9.4 billion.  From there, Plaintiffs speculate that this valuation could "compromise" their claims.  Dkt. 70-4 at 2.  Putting aside the accuracy of that reported valuation, Plaintiffs' claims are a drop in the bucket compared to the purportedly reduced valuation of X Corp.  Plaintiffs seek to recover approximately $128.6 million in severance benefits, Compl. ¶¶ 159, 163, 167, 171, which would represent less than 1.5% of the $9.4 billion valuation on which they base their cryptic claims of prejudice.  Moreover, Plaintiffs seek to recover individually from Defendant Musk, who both the Complaint and the cited article identify as the world's wealthiest person.  In short, Plaintiffs' apparent contention that by temporarily staying discovery this Court has compromised their ability to collect on some future judgment is entirely groundless.

Nor does the possibility that two other similar cases against Defendants might proceed to discovery prejudice Plaintiffs, although they complain it seems "unfair."  Different cases against the same defendants—including related cases—routinely proceed on different schedules. Moreover, Plaintiffs ignore that, in *Kaiden*, the plaintiff did not assert a claim under ERISA § 510, and thus Defendants have not filed a motion to dismiss in that case.  *See Kaiden v. Musk, et al.*, Compl., No. 4:24-cv-03554-MMC, Dkt. 1 (N.D. Cal. June 27, 2024).  In *Caldwell*, where a motion to dismiss is pending before this same Court, Defendants have asserted that a stay of discovery is appropriate pending the outcome of that motion to dismiss, "which will clarify what claims remain at issue in the case and the scope of discovery."  *See Caldwell v. Musk, et al.*, No. 3:24-cv-02022-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -

OPPOSITION TO PLAINTIFFS'
MOTION TO OPEN DISCOVERY
CASE NO. 3:24-cv-01304-MMC

1   MMC, Dkt. 39 at 10 of 13 (N.D. Cal. July 3, 2024).[1]  Although the Court has not formally granted

2   or denied a stay in *Caldwell*, Defendants' position is that discovery should be stayed pending

3   resolution of the motion to dismiss, consistent with the stay the Court entered here. Regardless,

4   Plaintiffs here still have approximately six months before their deadline to move under Rule 52,

5   *see Srigley v. Monterey Peninsula Yacht Club, Inc.*, --- F. Supp. 3d ----, 2024 WL 4143590, at *3

6   (N.D. Cal. Sept. 11, 2024) (finding no prejudice where plaintiff "offers only conclusory arguments"

7   and had "nearly two months to conduct any necessary additional discovery"), and if they need more

8   time to complete discovery, they can always seek an extension of that and other deadlines upon a

9   showing of good cause.  Plaintiffs can also help themselves by appropriately calibrating the scope

10  of discovery they seek and taking seriously their duty to confer with Defendants.

11  **D.      Plaintiffs Continue To Misrepresent Defendants' Position On Discovery.**

12          Finally, Plaintiffs argue that Defendants "agreed" that discovery could proceed pending an

13  outcome on the Motion to Dismiss and, thus, there can be no prejudice to Defendants by opening

14  discovery now.  Dkt. 70 at 4.  This is inaccurate.  As Defendants explained during the pre-Motion

15  conferral process in which Plaintiffs barely engaged, Defendants "never agreed that full discovery

16  on the 502(a)(1)(B) claims should proceed pending a ruling on [the] motion to dismiss, particularly

17  given the parties' divergent views on the scope of discovery."  Dkt. 70-2 at 1.  To the contrary,

18  Defendants proposed in the Joint Case Management Statement a far more limited scope of

19  discovery, which both Plaintiffs and this Court rejected, albeit for entirely different reasons.  *See*

20  Dkt. 59 at 9-10; Dkt. 64 at 23:17-20 ("[N]o, I'm going to deny that request and just make it a clean

21  no discovery until I rule.").  Accordingly, the Court should see through Plaintiffs' misguided efforts

22  to claim prejudice resulting from their own decision to refuse any reasonable limit on discovery.

23          Consider Defendants' most recent compromise offer during the decidedly one-sided, pre-

24  Motion conferral process.  That proposal addressed Plaintiffs' primary procedural irregularity

25  allegation in this case: that Defendants "withheld documents," on grounds of attorney-client

26

27

28

---

[1] At the time Plaintiffs filed their Motion, no discovery had been served in *Caldwell*, although the plaintiff there very recently served discovery requests.  Those discovery requests are premature for the reasons noted above.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -

OPPOSITION TO PLAINTIFFS'
MOTION TO OPEN DISCOVERY
CASE NO. 3:24-cv-01304-MMC

privilege, during the administrative claims process.  Compl. ¶ 136.[2]  Specifically, during their

conferral efforts, Defendants offered to produce the administrative record for each Plaintiff,

including the documents withheld on privilege grounds, subject to some reasonable restrictions to

maintain the privilege for other purposes.  Dkt. 70-2 at 3.[3]  Not only would this have provided

appropriate discovery relevant to Plaintiffs' claims, but it would have obviated the motion practice

Plaintiffs have previously signaled.  *See* Dkt. 59 at 5 ("Plaintiffs anticipate filing motions to compel

the production of materials that were wrongfully withheld during the administrative appeal

process."). Additionally, Defendants proposed further conferral about additional discovery after

completion of the proposed administrative-record production, if the Court had not yet ruled on

Defendants' Motion to Dismiss.  Plaintiffs rejected that offer and refused to provide any

counterproposal before filing their Motion.

Finally, Plaintiffs are wrong:  Defendants *would be* prejudiced by the opening of discovery.

Plaintiffs have already indicated that they believe discovery specific to the ERISA § 510 claims—

the subject of Defendants' Motion to Dismiss—is equally relevant to their section 502(a)(1)(B)

claims, because they have alleged that the Plan Administrator operated under a conflict of interest.

*See* Dkt. 64 at 12:12-16 ("We think that the same body of discovery will go to that termination

---

[2] To the extent Plaintiffs assert other procedural irregularities for which they claim entitlement to take discovery, they have not conveyed their position.  In response to Defendants' specific inquiry, Plaintiffs responded only that they intend to "seek discovery on (i) the administrative record, (ii) conflicts of interest, and (iii) procedural irregularities in the claims administration process."  Dkt. 70-2 at 5-6.  Plaintiffs' response is plainly insufficient to constitute any reasonable compromise or even for Defendants to meaningfully evaluate.  Moreover, with respect to procedural irregularities in particular, discovery is only permitted to the extent such irregularities "prevented the full development of the administrative record."  *DelDebbio v. Walgreens Co.*, 2012 WL 707155, at *2 (N.D. Cal. Mar. 5, 2012).  Thus, Plaintiffs must identify specific alleged procedural irregularities and explain how the supposed irregularities "prevented the full development of the administrative record" before they are entitled to conduct discovery.  *Id*. (rejecting plaintiff's request for discovery into "alleged procedural violations of ERISA").  Plaintiffs have so far failed to do so.

[3] Defendants maintain it was reasonable to withhold these privileged documents during the claims administration process because the plans at issue are ERISA "top-hat" plans, which are exempt from ERISA's fiduciary responsibility provisions and, in turn, the fiduciary exception to the attorney-client privilege.  *See, e.g.*, *Kramer v. Am. Elec. Power Exec. Severance Plan*, 2023 WL 2925117, at *2, 7 (S.D. Ohio Apr. 13, 2023) (because the plan was an ERISA top hat plan, "the fiduciary exception to attorney-client privilege does not apply"); *Tolbert v. RBC Cap. Mkts. Corp.*, 2012 WL 1067629, at *5 (S.D. Tex. Mar. 28, 2012) ("[T]he WAP is a top hat ERISA plan. Thus, the fiduciary exception does not apply.").  Nonetheless, Defendants were willing to produce these materials as a compromise, with appropriate safeguards in place, in the hopes of avoiding a discovery dispute.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -

OPPOSITION TO PLAINTIFFS'
MOTION TO OPEN DISCOVERY
CASE NO. 3:24-cv-01304-MMC

1   decision which we consider to have been quite improper but also to the conflict and the bias and

2   the taint of the process—that followed it."). Defendants disagree. While evidence concerning the

3   subjective motivation for Plaintiffs' terminations may be relevant to their section 510 claims, it is

4   not relevant to Plaintiffs' allegation (in support of their section 502(a)(1)(B) claims) that the Plan

5   Administrator operated under a conflict of interest based solely on X Corp.'s financial obligation

6   to pay severance benefits awarded under the plans. Compl. ¶ 156. Regardless, despite the parties'

7   disagreement on this issue, there is no serious question that the Court's resolution of Defendants'

8   Motion to Dismiss will impact the scope of discovery and, equally important, the scope of potential

9   discovery disputes in this action. As a result, both the parties and the Court will be better served

10  by addressing these issues with a full understanding of the claims that remain at issue. That was

11  the conclusion this Court reached at the start of this case, and nothing in Plaintiffs' Motion warrants

12  reconsidering that conclusion at this stage.

13  **III.    CONCLUSION**

14          For the foregoing reasons, the Court should deny Plaintiffs' Motion to Open Discovery.

15

16   Dated:    October 24, 2024                          MORGAN, LEWIS & BOCKIUS LLP

17                                                       By  */s/ Christopher J. Boran*
                                                            Christopher J. Boran
18                                                          Eric Meckley
                                                            Jeremy P. Blumenfeld
19                                                          Abbey M. Glenn
                                                            Brian Sullivan
20
                                                         *Attorneys for Defendants*
21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO PLAINTIFFS'
MOTION TO OPEN DISCOVERY
CASE NO. 3:24-cv-01304-MMC