IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAG AGRAWAL, et al.,<br><br>  Plaintiffs,<br><br>   v.<br><br>ELON MUSK, et al.,<br><br>  Defendants. | Case No. 24-cv-01304-MMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FIFTH CAUSE OF ACTION** |

Before the Court is the Motion to Dismiss, filed May 20, 2024, by defendants Elon Musk ("Musk"), X Corp. ("X"), formerly known as Twitter, Inc. ("Twitter"), Twitter, Inc. Change of Control and Involuntary Termination Protection Policy ("2014 Plan"), Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy ("2017 Plan"), Lindsay Chapman ("Chapman"), Brian Bjelde ("Bjelde"), and Dhruv Batura ("Batura"), whereby defendants seek dismissal of the Fifth Cause of Action asserted in plaintiffs' Complaint.  Plaintiffs Parag Agrawal ("Agrawal"), Neg Segal ("Segal"), Vijaya Gadde ("Gadde"), and Sean Edgett ("Edgett") have filed opposition, to which defendants have replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

The following factual allegations are contained in the Complaint and are assumed true for purposes of the instant Order.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986) (holding, for purposes of determining whether a plaintiff states a

---

[1] By order filed August 23, 2024, the Court took the matter under submission.

cognizable claim for relief, a district court "must accept as true all material allegations in the complaint and construe them in the light most favorable to [the plaintiff]").

Agrawal, Segal, Gadde, and Edgett were formerly employed by Twitter as, respectively, Chief Executive Officer, Chief Financial Officer, Chief Legal Officer, and General Counsel. (See Compl. ¶ 3.) Agrawal, Segal, and Gadde were participants in the 2014 Plan (see Compl. ¶¶ 10-12), a severance plan that "covered [Twitter's] most senior officers" (see Compl. ¶ 32), and Edgett was a participant in the 2017 Plan (see Compl. ¶ 13), a severance plan that "covered other key executives" (see Compl. ¶ 32). The 2014 Plan and the 2017 Plan (hereinafter, "the Plans") provide "senior executives with severance benefits equal to one year's salary plus unvested stock awards valued at the acquisition price in the event their employment [is] negatively affected by a change in control." (See Compl. ¶ 29.)

On April 25, 2022, Twitter and Musk, along with "Musk's wholly owned entities X Holdings I Inc. and X Holdings II, Inc.," entered into a merger agreement, under which Musk, acting through his above-referenced entities, "agreed to buy Twitter." (See Compl. ¶ 48.) Thereafter, Musk attempted to "back out of the deal" (see Compl. ¶ 49), Twitter filed a lawsuit "seeking to force him to proceed with the deal" (see Compl. ¶ 52), and, "just days before the trial date," Musk "agreed to close the deal on its original terms" (see Compl. ¶ 55).

"The merger transaction closed on October 27, 2022" (see Compl. ¶ 56), at which time Musk merged Twitter into X, the latter being a company of which he was, inter alia, the Chairman, Sole Director, and controlling shareholder; he also became the "Administrator of the Plans" (see Compl. ¶ 14). "In the days leading up the closing," Musk, who was "aware" plaintiffs and others "would be entitled to payments under the two Plans," decided, plaintiffs allege, to "accelerate the closing, manufacture fake 'cause' for [p]laintiffs' terminations, cut off [p]laintiffs' email access, and send [p]laintiffs' termination letters before they could resign and claim their benefits." (See Compl. ¶ 60.) On October 27, 2022, at approximately ten minutes after plaintiff Gadde "released her

signature on the certificate of merger to complete the transaction" (see Compl. ¶ 61),[2] each plaintiff received an email containing a "termination letter[ ]" signed by Musk; in the letters, Musk, according to plaintiffs, "falsely asserted" the terminations were "for cause" (see Compl. ¶ 62) and provided "no factual basis" for such assertion (see Compl. ¶ 63).

On November 29, 2022, each plaintiff submitted a claim for benefits (see Compl. ¶ 66), each of which was denied by Chapman, Musk's appointed "Administrator of the Plans" (see Compl. ¶¶ 71, 156), on the asserted basis that each plaintiff had engaged in "gross negligence and willful misconduct" (see Compl. ¶ 73), grounds for which, plaintiffs allege, "there [was] no support" (see Compl. ¶ 89).  Thereafter, plaintiffs submitted appeals, supported by "extensive evidence," to the "Twitter Severance Administration Committee," a committee "created by Musk" and consisting of Chapman, Bjelde, and Batura (see Compl. ¶¶ 74, 76), which committee, according to plaintiffs, "ignored much of [p]laintiffs' evidence" and denied the appeal "on an entirely new and incorrect basis," which plaintiffs were not afforded a "chance to address" (see Compl. ¶ 95).  Defendants also failed to provide plaintiffs with all of the documents on which defendants relied in support of the denials.  (See Compl. ¶¶ 136-52.)

Based on the above, plaintiffs assert six Cause of Action, specifically, the First through Fourth Causes of Action, alleging, against all defendants pursuant to 29 U.S.C. § 1132(a)(1)(B), claims for severance benefits (see Compl. ¶¶ 159, 163, 167, 171), the Fifth Cause of Action, alleging, against Musk and X pursuant to 29 U.S.C. § 1140, a claim for unlawful discharge for the purpose of interfering with plaintiffs' rights to severance benefits (see Compl. ¶ 175), and the Sixth Cause of Action, alleging, against Musk and Chapman pursuant to 29 U.S.C. § 1132(c), a claim for failure to timely provide required materials (see Compl. ¶ 182).

**DISCUSSION**

By the instant motion, defendants seek dismissal of the Fifth Cause of Action only,

---

[2] As noted, Gadde was, at that time, Twitter's Chief Legal Officer.

1  i.e., plaintiffs' claim that Musk and X terminated plaintiffs' employment for the purpose of
2  interfering with their attainment of benefits under the Plans.
3    Under § 510 of ERISA, it is "unlawful for any person to discharge . . . a participant
4  or beneficiary . . . for the purpose of interfering with the attainment of any right to which
5  such participant may become entitled under [ERISA]." See 29 U.S.C. § 1140.
6  Defendants do not contend plaintiffs have failed to sufficiently allege they were
7  terminated by Musk and X for such purpose.  Rather, defendants argue, the claim is
8  "foreclosed" by plaintiffs' claims for severance benefits, namely, the First through Fourth
9  Causes of Action (see Defs.' Mot. at 2:4), and, in addition, that the claim is subject to
10 dismissal on the ground the relief plaintiffs seek is unavailable as a matter of law.  The
11 Court considers the two arguments, in turn.

**A.  Foreclosure of Fifth Cause of Action**

13   Defendants argue that plaintiffs are unable to obtain relief under § 510, for the
14 reason that, in the event plaintiffs establish they are entitled to benefits under the Plans,
15 they would be, according to the terms thereof, required to execute Twitter's "then-
16 standard separation agreement and release of claims" (see Compl. Ex. A at 3, Ex. B at
17 3),[3] at which point the Fifth Cause of Action would be barred, and, in the event plaintiffs
18 are unable to establish they are entitled to benefits, they would be unable to show they
19 had a right under the Plans with which defendants could have interfered.
20   The Court need not determine whether circumstances exist under which plaintiffs'
21 § 510 claim would not be foreclosed by the determination of their claims for benefits; at
22 the pleading stage, a plaintiff is allowed to plead inconsistent claims.  See Fed. R. Civ. P.
23 8(d)(3) (providing "[a] party may state as many claims  . . . as it has, regardless of
24 consistency"); Molsbergen v. United States, 757 F.2d 1016, 1018-19 (9th Cir. 1985)
25 (observing Rule 8 "explicitly authorizes litigants to present alternative and inconsistent

---

[3] In citing to the exhibits attached to the Complaint, the Court has used herein the page number affixed to the top of each page by this district's electronic filing program.

4

1  pleading in the same case"; holding, at pleading stage, district court "examine[s]"
2  assertedly inconsistent claims "independently" to determine cognizability of challenged
3  claim)
4        Accordingly, to the extent defendants seek dismissal of the Fifth Cause of Action
5  for the asserted reason said claim would be foreclosed by resolution of the First through
6  Fourth Causes of Action, the motion will be denied.

**B.  Failure to State a Claim**

      A plaintiff asserting a violation of § 510 may "bring a civil action (A) to enjoin any violative act or practice, or (B) to obtain other appropriate equitable relief."  See Spinelli v. Gaughan, 12 F.3d 853, 856 (9th Cir. 1993) (internal quotation, alterations, and citation omitted).  In their Complaint, plaintiffs seek, as a remedy for the alleged violation of § 510, "appropriate equitable relief" (see Compl. ¶ 176), and, in their Prayer for Relief, request the Court grant "equitable relief to [p]laintiffs, including front pay and/or equitable surcharge" (see Compl., Prayer ¶ C).

      Defendants argue plaintiffs fail to plead facts to show that either of the two forms of equitable relief identified in the Prayer for Relief could be awarded upon a finding of liability, and, consequently, that the Complaint is, pursuant to Rule 12(b)6) of the Federal Rules of Civil Procedure, subject to dismissal.  See Depot, Inc. v. Caring For Montanans, Inc., 915 F.3d 643, 652, 661-65 (9th Cir. 2019) (affirming dismissal of ERISA claim where plaintiffs failed to allege facts to support finding they were entitled to forms of equitable relief they sought).

      Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party.  See NL Indus., 792 F.2d at 898.  "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

The Court first considers whether plaintiffs have alleged sufficient facts to show they are entitled to front pay.

"Reinstatement" to an employment position and "front pay" are "alternative remedies" for wrongful termination, including wrongful termination established under § 510. See Teutscher v. Woodson, 835 F.3d 936, 954 (9th Cir. 2016). "'[F]ront pay' may be awarded in equity as a substitute when the preferred remedy of reinstatement is unavailable or imprudent." Id. at 946. When appropriate, front pay is "an award of the salary and benefits a wrongfully demoted or discharged plaintiff would have earned from employment after the trial." See id. (internal quotation and citation omitted).[4] To establish entitlement to front pay, a plaintiff must show "the salary [he] was reasonably certain to have earned but for his wrongful discharge [and] the period over which he would have earned that salary." See id. at 948.

Here, plaintiffs do not allege that, had they not been terminated by Musk, they would have continued to work for X after it merged with Twitter,[5] a threshold showing they must make. See id. at 949 (finding wrongfully terminated plaintiff submitted sufficient evidence to "prove up his front pay damages," specifically, his testimony "he would have continued working at [defendant's business] at [a specific] salary until retiring at around

---

[4] By contrast, "backpay" is "an award of lost-wages damages through the time of trial." See id. (internal quotation and citation omitted).

[5] Indeed, as to Agrawal, plaintiffs quote a passage from a book allegedly written by Musk's "official biographer," which passage includes a statement that, on the date the merger occurred, "Agrawal had his letter of resignation, citing the change of control, ready to send," but learned "he had already been fired by Musk" before he could send it. (See Compl. ¶ 4.) Nothing in the Complaint suggests any of the other three plaintiffs was differently situated.

6

1  age sixty-seven"); Wooten v. BNSF Ry. Co., 387 F. Supp. 3d 1078, 1101-02 (D. Mont.
2  2019) (finding front pay award supported by evidence where plaintiff testified he "loved
3  the job and had ambitions within the company" and "expressed [an] intent of working for
4  [defendant] until retiring between the ages of 60 and 67").  Consequently, at the pleading
5  stage, facts to support such a finding must be alleged.  See Depot, 915 F.3d at 665
6  (stating "facts and allegations" to support finding plaintiff is entitled to equitable relief
7  under ERISA must "appear in plaintiff's complaint") (internal quotation, alteration and
8  citation omitted).

9  Under such circumstances, plaintiffs have failed to plead their entitlement to front
10 pay, and the Court next considers whether plaintiffs have sufficiently pleaded entitlement
11 to a surcharge.

12 A "surcharge" is "exclusively equitable" and is imposed to remedy "a breach of
13 trust committed by [a] fiduciary encompassing any violation of a duty imposed upon that
14 fiduciary."  See Cigna Corp. v. Amara, 563 U.S. 421, 442 (2011).  Where an ERISA
15 fiduciary has breached a fiduciary duty, he can be required to "return" to the beneficiary
16 any "benefit" the fiduciary gains by the breach or, alternatively, to pay "damages" to the
17 beneficiary for "actual harm," i.e., the amount necessary to "put the beneficiary in the
18 position he or she would have attained but for the trustee's breach."  See Skinner v.
19 Northrop Grumman Retirement Plan, 673 F.3d 1162, 1167 (9th Cir. 2012).

20 Here, plaintiffs allege that Musk failed to comply with a fiduciary duty by not
21 making "objective benefits decisions according to a recognized framework."  (See Compl.
22 ¶ 9.)  As plaintiffs observe, "a plan administrator engages in a fiduciary act when making
23 a discretionary determination about whether a claimant is entitled to benefits under the
24 terms of the plan documents."  See Varity v Howe, 516 U.S. 489, 511 (1996); see also id.
25 at 513 (holding ERISA fiduciaries must "discharge their duties 'solely in the interest of the
26 participants and beneficiaries'") (quoting ERISA § 404(a), 29 U.S.C. § 1104(a)).

27 The "fiduciary duties [specified in ERISA] draw much of their content from the
28 common law of trusts."  See id. at 496.  As explained by the Supreme Court, a "traditional

trustee" is "not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." See Pegram v. Herdrich, 530 U.S. 211, 225 (2000) (internal quotation and citation omitted). "Under ERISA, however," as the Supreme Court further explained, fiduciaries "may have financial interests adverse to beneficiaries," such as when employers that are fiduciaries "act as employers (e.g., firing a beneficiary for reasons unrelated to the ERISA plan)", and, where such an ERISA fiduciary has "two hats," the "threshold question" is whether the fiduciary, "when taking the action subject to complaint," was "wear[ing] the fiduciary hat." See id. at 225-26.

Here, defendants argue, Musk was acting as an employer, not a fiduciary, when he terminated plaintiffs.[6] To the extent defendants argue that, in all instances, a termination by an employer/fiduciary is an action taken as an employer, the Court disagrees. See id. at 225 (stating employer/fiduciary acts as employer when "firing a beneficiary for reasons unrelated to [an] ERISA plan]"). Although, as noted, a showing that Musk terminated plaintiffs for "reasons unrelated to the ERISA plan[s]" would be a non-fiduciary act, see id., the factual allegations in the Complaint, assumed true, support a finding that Musk fired plaintiffs for reasons related to the Plans. Plaintiffs allege, for example, their respective termination letters stated they were being terminated for "cause" under subsections "e" and/or "g" of the Plans (see Compl. ¶ 63) and that Musk had the letters sent "to avoid paying [plaintiffs] benefits they are owed under the Plans" (see Compl. ¶ 102).

Accordingly, the Court finds the Fifth Cause of Action is not subject to dismissal for failure to state a claim.[7]

//

---

[6] The Court does not address herein defendants' argument, made for the first time in a footnote in their reply, that the Plans are exempt from compliance with ERISA's fiduciary duty provisions, plaintiffs not having had an opportunity to respond thereto.

[7] In light of this finding, the Court does not address herein plaintiffs' argument that they can demonstrate entitlement to other equitable remedies not identified in the Complaint.

8

**CONCLUSION**

For the reasons stated above, the motion to dismiss the Fifth Cause of Action is hereby DENIED.

**IT IS SO ORDERED.**

Dated: November 1, 2024

MAXINE M. CHESNEY
United States District Judge