MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley (Bar No. 168181)
eric.meckley@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: +1.415.442.1000

Jeremy P. Blumenfeld (pro hac vice)
jeremy.blumenfeld@morganlewis.com
Brian W. Sullivan (pro hac vice)
brian.sullivan@morganlewis.com
2222 Market Street
Philadelphia, PA 19103-3007
Tel: +1.215.963.5000

MORGAN, LEWIS & BOCKIUS LLP
Christopher Boran (pro hac vice)
christopher.boran@morganlewis.com
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000

Abbey M. Glenn (Bar No. 267751)
abbey.glenn@morganlewis.com
1111 Pennsylvania Ave, NW
Washington, DC 20004-2541
Tel: +1.202.739.3000

*Attorneys for Defendants*
ELON MUSK; X CORP.; TWITTER, INC.
CHANGE OF CONTROL AND
INVOLUNTARY TERMINATION
PROTECTION POLICY; TWITTER, INC.
CHANGE OF CONTROL SEVERANCE
AND INVOLUNTARY TERMINATION
PROTECTION POLICY; LINDSAY
CHAPMAN; BRIAN BJELDE; AND
DHRUV BATURA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO/OAKLAND DIVISION**

| | |
|---|---|
| PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE, and SEAN EDGETT,<br><br>Plaintiffs,<br><br>vs.<br><br>ELON MUSK; X CORP., f/k/a/ TWITTER, INC.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA,<br><br>Defendants. | Case 3:24-cv-01304-MMC<br><br>**DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT FOR SEVERANCE BENEFITS, EQUITABLE RELIEF, AND STATUTORY PENALTIES (ERISA)**<br><br>Complaint Filed:    March 4, 2024 |

Defendants Elon Musk, X Corp., the Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, the Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy, Lindsay Chapman, Brian Bjelde, and Dhruv Batura (collectively, "Defendants"), by and through their undersigned counsel, hereby answer the allegations in the Complaint for Severance Benefits, Equitable Relief, and Statutory Penalties (ERISA) ("Complaint") filed by Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett (collectively, "Plaintiffs"), and assert their defenses as follows.

All admissions made in Defendants' Answer to Plaintiffs' Complaint are made as of the date of this filing, unless otherwise stated.  Defendants reserve the right to amend and/or supplement their Answer and Defenses.

## **GENERAL DENIAL**

Defendants deny each and every allegation of the Complaint not specifically admitted herein.

## **ANSWERS TO PLAINTIFFS' SPECIFIC ALLEGATIONS:**

Subject to their Defenses, Defendants plead as follows to the specific allegations contained in the numbered paragraphs of the Complaint.[1]

## **INTRODUCTION**

1.    Defendants admit that Elon Musk entered into a merger agreement for the acquisition of Twitter, Inc. ("Twitter" or the "Company"), with an agreed price of $54.20 per share amounting to $44 billion.  Defendants further admit that the acquisition closed on October 27, 2022, at the same price.  Defendants admit that Twitter commenced legal action in June 2022, which was stayed and ultimately dismissed in light of the October 27, 2022 close of the acquisition.  Defendants deny the remaining allegations in Paragraph 1.

2.    Defendants deny the allegations in Paragraph 2.

---

[1] Defendants do not understand the headers or sub-headers in the Complaint to assert any substantive allegations.  Defendants therefore do not respond individually to the headers or sub-headers.  Defendants restate the headers and sub-headers for ease of reading and organization only.  To the extent the headers or sub-headers are construed to assert any allegations, Defendants deny those allegations.

3.      Defendants admit that Plaintiffs Agrawal, Segal, Gadde, and Edgett were Twitter executives and held the titles alleged in Paragraph 3, including at the time of their termination from Twitter on October 27, 2022.  Defendants deny the remaining allegations in Paragraph 3.

4.      Defendants admit that Paragraph 4 quotes portions of an excerpted passage in the Musk biography authored by Walter Isaacson.  Defendants otherwise deny the allegations contained in Paragraph 4 and its footnote.

5.      Paragraph 5 asserts legal conclusions and purports to characterize a statute and written benefit plan documents, which speaks for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of those documents and deny all remaining allegations in Paragraph 5.

6.      Paragraph 6 asserts argument to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the severance plans or benefits offered by other companies. Defendants further deny any allegation that the Plans at issue here were intended to provide Plaintiffs with benefits despite engaging in conduct constituting "Cause" under the Plan, or to allow Plaintiffs to collect benefits by resigning or otherwise attempting to force benefit payments before the full and detailed extent of their misconduct could be evaluated and documented.  The Plans were intended to incentivize sound management through a change in control, not provide a guaranteed multi-million-dollar payout so executives could waste corporate assets up until the moment of a change in control, and then walk away richer and without consequence.  Defendants deny the remaining allegations in Paragraph 6.

7.      Defendants admit the termination letters provided to Plaintiffs explained that their employment was terminated for "Cause," as defined in the Plans, including conduct that amounted to "gross negligence or willful misconduct in the performance of [his or her] duties."  Defendants deny the remaining allegations in Paragraph 7.

8.      Defendants admit that during the Plans' claims-and-appeal processes, it was determined, first, by the Plans' Administrator, and later, by the Committee appointed to decide appeals under the Plans, that Plaintiffs were terminated "for Cause" within the meaning of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Plans, because Plaintiffs had engaged in conduct constituting "gross negligence or willful misconduct in the performance of [their] duties" at the Company. Defendants further admit that one example of Plaintiffs' gross negligence or willful misconduct included their role in improperly forcing payments of gratuitous and unjustified "success" bonuses to law firms involved in the acquisition and related litigation, even though the exorbitant bonuses were not called for under the relevant service agreements, contrary to state law governing contingency-fee arrangements, and timely objected to by incoming Twitter management which was denied any meaningful opportunity to audit or otherwise evaluate the reasonableness of the bonuses or other legal fees that were hurriedly paid without meaningful review in the days before the October 27, 2022 close of the Twitter acquisition. Defendants deny the remaining allegations in Paragraph 8.

9.      Paragraph 9 asserts legal conclusions and purports to characterize written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that under the Plans at issue in this case, the appointed Plan "Administrator" has "full discretion to administer and interpret" the Plans and "[a]ny decision made or other action taken . . . and any interpretation by the Administrator of any term or condition" of the Plans shall "be given the maximum possible deference allowed by law." Defendants deny the remaining allegations in Paragraph 9.

## **PARTIES**

10.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff Agrawal's residence; accordingly, Defendants deny those allegations. Defendants admit the second sentence of Paragraph 10. The third sentence of Paragraph 10 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff Agrawal was a participant in the 2014 Plan. Defendants deny the remaining allegations in Paragraph 10.

11.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff Segal's residence; accordingly, Defendants deny those allegations. Defendants admit that Plaintiff Segal was hired as Twitter's Chief Financial Officer from July 10, 2017, and he assumed the role of Vice President, CFO on January 1, 2022, until his

termination on October 27, 2022. The third sentence of Paragraph 11 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff Segal was a participant in the 2014 Plan. Defendants deny the remaining allegations in Paragraph 11.

12.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff Gadde's residence; accordingly, Defendants deny those allegations. Defendants admit that Plaintiff Gadde worked at Twitter from 2011 until her termination on October 27, 2022. Defendants further admit the second sentence of Paragraph 12. The fourth sentence of Paragraph 12 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff Gadde was a participant in the 2014 Plan. Defendants deny the remaining allegations in Paragraph 12.

13.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff Edgett's residence; accordingly, Defendants deny those allegations. Defendants further admit the second sentence of Paragraph 13 and that Plaintiff Edgett assumed the role of Staff VP, Chief Legal Officer, General Counsel on February 27, 2018, and assumed the position of SVP, General Counsel on January 1, 2020. The fourth sentence of Paragraph 13 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff Edgett was a participant in the 2017 Plan (together with the 2014 Plan, the "Plans"). Defendants deny the remaining allegations in Paragraph 13.

14.    Defendants admit that Mr. Musk is the owner, sole member of the Board of Directors, Chief Technology Officer, and Executive Chairman of X Corp., the successor-in-interest to Twitter, Inc., and that he served as CEO from the establishment of X Corp. until June 4, 2023. Defendants deny the remaining allegations in Paragraph 14.

15.    Defendants admit that X Corp. is incorporated in Nevada. Defendants further admit that X Corp. is the current Plan sponsor and the cost of the Plans is paid by X Corp. Defendants deny the remaining allegations in Paragraph 15.

16.    Defendants deny the allegations in Paragraph 16.

17.    Defendants admit that a small number of individuals employed at X Corp. are

friends or family members of Musk, and that certain investors provide services to X Corp. Defendants deny the remaining allegations in Paragraph 17.

18.    Defendants admit that a small number of individuals employed at X Corp. are friends or family members of Musk, and that certain investors provide services to X Corp.  The fourth sentence of Paragraph 18 purports to characterize an unspecified court document, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the document. Defendants deny the remaining allegations in Paragraph 18.

19.    Defendants deny the allegations in Paragraph 19.

20.    Paragraph 20 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 20.

21.    Paragraph 21 asserts legal conclusions and purports to characterize the Plans, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the Plans and deny the remaining allegations in Paragraph 21.

22.    Defendants admit that Lindsay Chapman is Senior Director, Human Resources at SpaceX, was delegated the authority to serve as the Administrator of the Plans, as defined by the Plans, and as the Plans' Administrator, determined Plaintiffs' administrative claims for benefits under the Plans. Defendants further admit that Ms. Chapman, Brian Bjelde, and Dhruv Batura served as members of the Twitter Severance Administration Committee ("Committee") at the time when the Committee determined Plaintiffs' appeal of the denial of their claims for benefits. Defendants further admit that Brian Bjelde is employed at SpaceX as Vice President of Human Resources. Defendants further admit that Dhruv Batura is employed at X Corp. and previously worked at Tesla. Defendants deny the remaining allegations in Paragraph 22.

## **JURISDICTION**

23.    Paragraph 23 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiffs purport to bring their claims under ERISA, including certain forms of relief the Court has held Plaintiff may not recover as a matter of

law, and further admit that this Court has subject-matter jurisdiction over this action based on their current understanding of Plaintiffs' claims. Defendants deny the remaining allegations in Paragraph 23.

### VENUE

24.    Paragraph 24 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants admit that venue is proper in this District. Defendants deny the remaining allegations in Paragraph 24.

### DIVISIONAL ASSIGNMENT

25.    Paragraph 25 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiffs allege that a substantial part of the events giving rise to their claims occurred in San Francisco County. Defendants deny the remaining allegations in Paragraph 25.

### GENERAL FACTS AND ALLEGATIONS

I.    **THE PLANS**

A.    **Twitter's Severance Plans**

26.    Paragraph 26 asserts argument to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that unidentified public companies provide "competitive pay packages" or severance benefits to their executives and their reasons for doing so.  Defendants therefore deny those allegations and all remaining allegations in Paragraph 26.

27.    Paragraph 26 asserts argument to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the broad allegations regarding in what form executive compensation at unidentified public companies "is typically provided" or whether unidentified public companies provide severance benefits to their executives or the contours of those benefits.  Defendants therefore deny those allegations and any remaining allegations in Paragraph 27.

28.    Paragraph 28 asserts argument and purports to characterize written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required,

Defendants deny any characterization contrary to the terms of the Plans and deny the remaining allegations in Paragraph 28.

29.    Paragraph 29 purports to characterize written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that, in certain circumstances not applicable to Plaintiffs, the Plans provided eligible participants with severance benefits based upon their salary and the value of unvested stock awards. Defendants deny the remaining allegations in Paragraph 29.

30.    Paragraph 30 purports to characterize a written proxy statement, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of that document and deny the remaining allegations in Paragraph 30.

31.    Paragraph 31 purports to characterize the substance and purported intent of written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Plans and deny the remaining allegations in Paragraph 31.

32.    Paragraph 32 purports to characterize the written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that Twitter sponsored both the 2014 Plan, applicable to certain senior officers of the company, and the 2017 Plan, applicable to certain executives of the company. Defendants admit that both Plans provided for the payment of severance benefits under circumstances defined therein. Defendants deny any characterization that is contrary to the terms of these Plans and deny the remaining allegations in Paragraph 32.

**B.    The 2014 Plan (Plaintiffs Agrawal, Segal, and Gadde)**

33.    Paragraph 33 purports to characterize and quote the written 2014 Plan document, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that the first sentence of Paragraph 33 quotes language in the 2014 Plan document and that the 2014 Plan further states "it will be construed, administered and enforced in accordance with ERISA[.]" Defendants deny any characterizations that are contrary to the 2014 Plan and

otherwise deny the remaining allegations in Paragraph 33.

34.    Paragraph 34 purports to characterize and quote the written 2014 Plan document, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that the second sentence of Paragraph 34 accurately quotes selected excerpts of the 2014 Plan. Defendants further admit that the 2014 Plan describes the circumstances in which a participant is entitled to benefits.  Defendants deny any characterization contrary to the terms of the 2014 Plan and deny the remaining allegations in Paragraph 34.

35.    Paragraph 35 purports to characterize the 2014 Plan document, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that the 2014 Plan contains provisions defining "Involuntary Termination," "Good Reason," and other terms related to a participant's eligibility or ineligibility for Plan benefits.  Defendants deny any characterization contrary to the terms of the 2014 Plan and deny the remaining allegations in Paragraph 35.

36.    Defendants deny the allegations in Paragraph 36.

**C.    The 2017 Plan (Plaintiff Edgett)**

37.    Paragraph 37 asserts legal conclusions and purports to characterize and quote the 2017 Plan document, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that the 2017 Plan contains the language quoted in Paragraph 37. Defendants deny any remaining allegations in Paragraph 37.

38.    Paragraph 38 asserts legal conclusions and purports to characterize and quote the 2017 Plan document, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that the second sentence of Paragraph 38 accurately quotes terms and phrases from the 2017 Plan. Defendants further admit that the 2017 Plan, like the 2014 Plan, describes the circumstances in which a participant is entitled to benefits under the 2017 Plan. Defendants deny any characterization contrary to the terms of the 2017 Plan and deny the remaining allegations in Paragraph 38.

39.    The first sentence of Paragraph 39 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiff Edgett was a

participant in the 2017 Plan. Defendants deny the remaining allegations in Paragraph 39.

### D. Exhaustion of Administrative Remedies

40.     Paragraph 40 asserts legal conclusions and purports to characterize the written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that the Plans contain an administrative claim and appeal process that must be exhausted before filing suit.  Defendants deny the remaining allegations in Paragraph 40.

41.     Paragraph 41 purports to characterize the written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that the Plans prescribe procedures related to the submission of claims and appeals of denied claims under the Plans and that the Plan Administrator decides claims for benefits under the Plans in a neutral and objective fashion.  Defendants deny any characterization contrary to the terms of the Plans and deny the remaining allegations in Paragraph 41.

42.     Defendants admit that Plaintiffs' initial claims for benefits under the Plans were denied as were Plaintiffs' appeals of the denial of their claims for benefits. Defendants deny the remaining allegations in Paragraph 42.

## II. MUSK'S ACQUISITION OF TWITTER

### A. Musk's Agreement to Purchase Twitter

43.     Defendants admit that Musk purchased shares of Twitter common stock on January 31, 2022. Defendants further admit that a Schedule 13G was filed on behalf of Musk on March 14, 2022, and that a Schedule 13D was filed on behalf of Musk on April 4, 2022. Defendants further admit that in early April 2022, Musk was considering an offer from Twitter to join its Board of Directors. The third sentence of Paragraph 43 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in the third sentence. The seventh, eighth and ninth sentences of Paragraph 43 purport to characterize documents or data, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to those documents or data. Defendants deny the remaining allegations in Paragraph 43.

44.     Defendants admit that on April 9, 2022, Musk rejected an offer to join Twitter's

Board of Directors, and instead notified Twitter's CEO, Agrawal, of his intent to submit an offer to acquire Twitter. Defendants deny the remaining allegations in Paragraph 44.

45.     Defendants admit that on April 13, 2022, Musk sent Twitter's Board of Directors an offer to purchase all outstanding shares of the company for $54.20 per share—a total acquisition price of $44 billion.  Defendants admit that the offer reflected a premium over Twitter's share price. Defendants deny the remaining allegations in Paragraph 45.

46.     Defendants admit that on or about April 14, 2022, Twitter's Board established a Transactions Committee composed of the Independent Chair of the Board, the Chair of the Audit Committee, and the Chair of the Nominating and Corporate Governance Committee, which promptly adopted a "poison pill" on April 15, 2022, to try to prevent Musk's acquisition of Twitter. The remainder of Paragraph 46 purports to characterize and quote an email, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the document and deny the remaining allegations in Paragraph 46.

47.     Paragraph 47 purports to characterize and quote written documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents and deny the remaining allegations in Paragraph 47.

48.     Defendants admit that on April 25, 2022, Twitter entered into a Merger Agreement through which Twitter would be purchased by X Holdings I, Inc. and X Holdings II, Inc. (collectively, "Buyer"), entities associated with Musk. Defendants admit that the agreed upon price was $54.20 per share for a total of $44 billion.  The additional allegations in Paragraph 48 purport to characterize the Merger Agreement, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Merger Agreement and deny the remaining allegations in Paragraph 48.

**B.     After Multiple Attempts to Back Out of the Deal, Musk Was Forced to Purchase Twitter Through the Efforts of Twitter's Board, Officers, and Outside Counsel.**

49.     Defendants deny the allegations in Paragraph 49.

50.     Paragraph 50 purports to characterize and quote selected excerpts of a tweet, a book, and a letter, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of those documents and deny the remaining allegations in Paragraph 50.

51.     Defendants admit that in June 2022, Twitter retained Wachtell, Lipton, Rosen & Katz to provide certain litigation services in connection with the acquisition. Defendants deny the remaining allegations in Paragraph 51.

52.     Defendants admit that on July 8, 2022, through correspondence, Twitter was advised that Musk was terminating the Merger Agreement. Defendants further admit that Twitter filed suit to enforce the Merger Agreement in the Delaware Court of Chancery on July 12, 2022. Paragraph 52 purports to characterize the correspondence and court filings, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents and deny the remaining allegations in Paragraph 52.

53.     Defendants admit that Skadden, Arps, Slate, Meagher & Flom LLP and Quinn Emanuel Urquhart & Sullivan, LLP represented Musk and Buyer in the Merger Litigation. Defendants deny the remaining allegations in Paragraph 53.

54.     Paragraph 50 purports to characterize and quote written documents and a court docket, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents and court docket and deny the remaining allegations in Paragraph 54.

55.     Defendants admit that on October 3, 2022, Buyer notified Twitter that Buyer intended to proceed to closing as contemplated in the Merger Agreement. Defendants further admit that the litigation was stayed on October 6, 2022, and that Musk was not deposed. To the extent the remaining allegations in Paragraph 55 purport to characterize written documents, those documents speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents.  Defendants deny the remaining allegations in Paragraph 55.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT

56.     Defendants admit that the transaction closed on October 27, 2022, at the agreed upon price of $54.20 per share amounting to $44 billion. Defendants deny the remaining allegations in Paragraph 56.

57.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the "most common outcome" in "deals challenged by litigation." Defendants admit that Twitter's stock price traded below $54.20 per share during the summer and fall of 2022 prior to the acquisition close on October 27, 2022.  Defendants deny the remaining allegations in Paragraph 57.

58.     Paragraph 58 purports to characterize and quote an interview and a book, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the interview or the terms of the book. Defendants deny the remaining allegations in Paragraph 58.

### III.    MUSK'S MANUFACTURED TERMINATIONS OF PLAINTIFFS

59.     Defendants deny the allegations in Paragraph 59.

60.     Defendants deny the allegations in Paragraph 60.

61.     Defendants admit that on October 27, 2022, each Plaintiff was provided with a letter terminating his or her employment effective immediately as of the closing of the acquisition. Defendants deny the remaining allegations in Paragraph 61.

62.     Paragraph 62 purports to characterize written letters, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit the termination letters informed Plaintiffs that they were being terminated for cause but deny the remaining allegations in Paragraph 62.

63.     Paragraph 63 purports to characterize and quote letters, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the letters and deny the remaining allegations in Paragraph 63.

64.     Paragraph 64 asserts legal conclusions and purports to characterize the written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Plans and otherwise

deny the remaining allegations in Paragraph 64.

65.    Defendants admit that Plaintiffs Agrawal, Gadde, and Segal sent letters to Twitter dated October 27, 2022. Paragraph 65 asserts legal conclusions and purports to characterize those letters and the 2014 Plan, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to those letters and the 2014 Plan and otherwise deny the remaining allegations in Paragraph 65.

**IV.    PLAINTIFFS SUBMIT CLAIMS FOR BENEFITS**

66.    Defendants admit that each Plaintiff submitted to the Plan Administrator a letter dated November 29, 2022. Paragraph 66 purports to characterize those letters, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to those letters and deny the remaining allegations in Paragraph 66.

67.    Defendants deny the allegations in Paragraph 67.

68.    Defendants deny the allegations in Paragraph 68.

69.    Paragraph 69 asserts legal conclusions and purports to characterize Plaintiffs' letters and the 2014 Plan, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to those letters and the 2014 Plan and otherwise deny the remaining allegations in Paragraph 69.

**V.    THE DENIALS OF PLAINTIFFS' CLAIMS**

70.    Paragraph 70 asserts legal conclusions and purports to characterize and quote the written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Plans and otherwise deny the remaining allegations in Paragraph 70.

71.    Paragraph 71 purports to characterize letters, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that by letters dated February 16, 2023, Lindsay Chapman as Plan Administrator explained to Plaintiffs that the period for responding to their claims was being extended by 90 days due to special circumstances, as permitted under the Plans and applicable law. Defendants deny any characterization contrary to those letters and deny the remaining allegations in Paragraph 71.

72.     Defendants admit that Ms. Chapman, as the Plan Administrator, sent letters to each Plaintiff dated May 26, 2023. Paragraph 72 purports to characterize letters, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to those letters and deny the remaining allegations in Paragraph 72.

73.     Paragraph 73 purports to characterize the Plan Administrator's May 26, 2023 letters to Plaintiffs, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to those letters and deny the remaining allegations in Paragraph 73.

## VI.    PLAINTIFFS SUBMIT THEIR ADMINISTRATIVE APPEAL

74.     The first sentence of Paragraph 74 purports to describe an email, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that Chapman sent an email dated September 15, 2023 to Plaintiffs' counsel explaining that an email address had been established for the Committee and providing that email address but deny any characterization contrary to the email. The second sentence of Paragraph 74 asserts legal conclusions and purports to describe a letter to the Committee, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that Plaintiffs sent a letter dated September 15, 2023 to the Committee, but deny any characterization contrary to the letter. Defendants admit that the Committee determined Plaintiffs' appeal of the denial of their claims for benefits under the Plans, and that the members of the Committee at the time were Lindsay Chapman, Senior Director, Human Resources at SpaceX, Brian Bjelde, Vice President of Human Resources at SpaceX, and Dhruv Batura, who is currently employed at X Corp. Defendants deny the remaining allegations in Paragraph 74.

75.     Defendants deny the allegations in Paragraph 75.

76.     Paragraph 76 asserts legal conclusions and purports to characterize a letter and its attachments, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that Plaintiffs submitted a consolidated appeal of the Administrator's decision under the Plan, which included purported evidence in support of the appeal, but otherwise deny the allegations in Paragraph 76.

77.    Defendants deny the allegations in Paragraph 77.

78.    Defendants deny the allegations in Paragraph 78.

79.    Defendants admit that Twitter's Board of Directors met on October 27, 2022 at approximately 7 a.m. Pacific Time. The remaining allegations in Paragraph 79 purport to characterize Board meeting minutes and materials, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents and deny the remaining allegations in Paragraph 79.

80.    The first sentence of Paragraph 80 purports to characterize minutes and materials from a Twitter Board of Directors meetings, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents. The remaining allegations in Paragraph 80 assert legal conclusions and argument to which no response is required. To the extent a response is required, Defendants deny those allegations and deny any remaining allegations in Paragraph 80.

81.    Defendants admit that, after repeated requests from Buyer, Twitter shared with Buyer a list of "expected transaction fee[s]" just a few days before October 27, 2022, and that Buyer requested on the day of closing that the Company immediately discontinue all outbound payments and other disbursements to third parties. The second sentence of Paragraph 81 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 81.

82.    Defendants admit that Musk and Buyer agreed to buy Twitter. The second and third sentences of Paragraph 82 assert legal conclusions and purport to characterize the Merger Agreement, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Merger Agreement and deny the remaining allegations in Paragraph 82.

83.    Paragraph 83 asserts legal conclusions and purports to characterize the Merger Agreement, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Merger Agreement and deny the remaining allegations in Paragraph 83.

84. Defendants admit that Buyer and Musk repeatedly objected to improper payments before closing. Paragraph 84 otherwise asserts legal conclusions and purports to characterize the Merger Agreement, which speaks for itself; thus no further response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Merger Agreement and otherwise deny the remaining allegations in Paragraph 84.

85. Paragraph 85 asserts legal conclusions and purports to characterize or quote at least two different documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents and deny the remaining allegations in Paragraph 85.

86. Paragraph 86 asserts legal conclusions and purports to characterize written documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents and deny the remaining allegations in Paragraph 86.

87. Paragraph 87 asserts legal conclusions and argument and purports to characterize and quote the Merger Agreement, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Merger Agreement and deny the remaining allegations in Paragraph 87.

88. Paragraph 88 asserts legal conclusions and purports to characterize written documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the documents and deny the remaining allegations in Paragraph 88.

89. Defendants deny the allegations in Paragraph 89.

90. Paragraph 90 purports to characterize unidentified documents and articles published by media, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the unidentified documents and articles and deny the remaining allegations in Paragraph 90.

91. Defendants deny the allegations in Paragraph 91.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**VII.    THE DENIAL OF PLAINTIFFS' ADMINISTRATIVE APPEALS**

92.    Paragraph 92 asserts legal conclusions and purports to characterize and quote the written Plan documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the terms of the Plans and deny the remaining allegations in Paragraph 92.

93.    Paragraph 93 purports to characterize a letter, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that by letter dated November 13, 2023, the Committee informed Plaintiffs' counsel that it was extending the time for the Committee to respond to Plaintiffs' appeals by 60 days due to special circumstances, as permitted by the Plans and applicable law.  Defendants deny any characterization contrary to the letter and deny the remaining allegations in Paragraph 93.

94.    Paragraph 94 purports to characterize a letter, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that the Committee sent Plaintiffs a detailed, 50-page letter (plus appendix) dated January 12, 2024, explaining the bases for the Committee's decision rejecting Plaintiffs' consolidated appeal of the denial of their claims for benefits, but deny any characterization contrary to that letter. Defendants deny the remaining allegations in Paragraph 94.

95.    Paragraph 95 purports to characterize and quote a written document, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that the January 12, 2024 letter contains the modified phrase quoted in the second sentence of Paragraph 95 but otherwise deny the allegations in Paragraph 95.

96.    Paragraph 96 purports to characterize a declaration and letters from Ms. Chapman as Plan Administrator and the Committee, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that the Committee's appeal decision referenced a sworn declaration from Musk but otherwise deny any characterization contrary to terms of that declaration or other documents referenced in Paragraph 96.  Defendants deny the remaining allegations in Paragraph 96.

97.    Defendants admit that the January 12, 2024 letter denying Plaintiffs' appeal

addressed in detail opinions contained in an expert report submitted with Plaintiffs' appeal, including by reference to another expert report that evaluated Plaintiffs' claims about the purported appropriateness of attorney fees Plaintiffs had approved in 2022. Defendants deny the remainder of the allegations in Paragraph 97.

98.    Defendants deny the allegations in Paragraph 98.

99.    Paragraph 99 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 99.

100.    Defendants deny that Plaintiffs are entitled to benefits under the Plans or to recover attorneys' fees and costs. Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations about fees they have incurred or may incur in the future, and therefore deny any remaining allegations in Paragraph 100.

## VIII.    DEFENDANTS TERMINATED PLAINTIFFS AND MANUFACTURED CAUSE FOR THE PURPOSE OF INTERFERING WITH THEIR ERISA RIGHTS.

101.    Defendants deny the allegations in Paragraph 101.

### A.    Musk Admitted that He Terminated Plaintiffs for the Purpose of Interfering with Their Right to Benefits Under the ERISA Plans.

102.    Defendants deny the allegations in Paragraph 102.

### B.    Musk Denied Plaintiffs Their Contractually-Entitled Benefits as Retaliation for the Company Enforcing the Merger Agreement.

103.    Defendants deny the allegations in Paragraph 103.

104.    Defendants admit that on September 11, 2022, lawyers for the parties to the acquisition discussed the per-share price of the acquisition, among other things. Defendants deny the remaining allegations in Paragraph 104.

105.    Defendants admit that another call among these lawyers took place on September 12, 2022. The second sentence of Paragraph 105 asserts legal conclusions and argument to which no response is required. To the extent a response is required, Defendants deny those allegations and deny the remaining allegations in Paragraph 105.

106.    Defendants admit that additional calls among the lawyers took place on September

12 and 16, 2022.  Defendants deny the remaining allegations in Paragraph 106.

107.    Defendants deny the allegations in Paragraph 107.

108.    Defendants deny the allegations in Paragraph 108.

**C.    Musk Wanted Plaintiffs Fired Long Before They Paid the Law Firms' Fees in October 2022, Confirming that the Board's Decision to Authorize Payment of Those Fees Was Not the Reason for Their Termination.**

109.    Defendants deny the allegations in Paragraph 109.

110.    Defendants admit that Musk, Agrawal, and former Twitter CEO Jack Dorsey participated in a FaceTime call on or about April 27, 2022.  Defendants deny the remaining allegations in Paragraph 110.

111.    Defendants deny the allegations in Paragraph 111.

112.    Paragraph 112 purports to characterize and quote written text messages, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the text messages and deny the remaining allegations in Paragraph 112.

113.    Paragraph 113 purports to characterize a written text message, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the text message and deny the remaining allegations in Paragraph 113.

114.    Paragraph 114 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 114.

115.    Defendants admit that Ms. Gadde formerly led Twitter's Trust and Safety team, which was involved with content moderation for the platform.  The remaining allegations in the second sentence of Paragraph 115 characterize tweets, which speak for themselves; thus no response is required.  To the extent a response is required, Defendants deny any characterization contrary to the tweets and deny the remaining allegations in Paragraph 115.

116.    Defendants admit that the Securities and Exchange Commission and the Federal Trade Commission opened inquiries relating to Musk's disclosures of his ownership of shares of Twitter common stock before the acquisition closed. Defendants deny the remaining allegations in Paragraph 116.

117.    Defendants admit that a Schedule 13D filing was made on April 4, 2022, on behalf of Musk disclosing the percentage of Twitter's common stock that he owned.  Defendants admit that the SEC sent a letter dated April 4, 2022, relating to Musk's Schedule 13G filing.  Defendants further admit that, in May 2022, the SEC publicly stated it was investigating Musk in connection with disclosures made regarding purchases of shares of Twitter and the SEC issued a subpoena to Twitter.  The remainder of Paragraph 117 purports to characterize certain filings, the letter, and other written documents, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to those documents. Defendants deny the remaining allegations in Paragraph 117.

118.    Defendants deny the allegations in Paragraph 118.

119.    Defendants deny the allegations in Paragraph 119.

**D.    The Circumstances of Plaintiffs' Terminations Further Show that Defendants' Post Hoc Justifications Are Not the Reason Plaintiffs Were Fired.**

120.    Defendants deny the allegations in Paragraph 120.

121.    Defendants admit that Plaintiffs' employment with the Company was terminated effective on October 27, 2022 as of the close of the acquisition. Defendants deny the remaining allegations in Paragraph 121.

122.    Paragraph 122 asserts legal conclusions and purports to characterize the letters provided to Plaintiffs, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 122.

123.    Paragraph 123 asserts legal conclusions and purports to characterize letters provided to Plaintiffs, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the letters and deny the remaining allegations in Paragraph 123.

124.    Paragraph 124 purports to characterize various letters provided to Plaintiffs, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the letters. Defendants deny the remaining allegations in Paragraph 124.

125.    The first sentence of Paragraph 125 purports to characterize and quote a selected excerpt of a litigation filing, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny the allegations in the first sentence of Paragraph 125. Defendants also deny the remaining allegations in Paragraph 125.

126.    Defendants admit that Plaintiffs' claim letters were three pages in length, excluding enclosures. The second sentence of Paragraph 126 purports to characterize the written Plan documents and communications, which speak for themselves; thus no response is required. To the extent a response is required, Defendants admit that Plaintiffs were informed that an additional 90 days would be needed to determine their claims due to special circumstances but deny any characterization contrary to the terms of the Plans or other documents referenced in Paragraph 126. Defendants deny all remaining allegations in Paragraph 126.

**E.    Musk's Denial of Plaintiffs' Benefits Is Part of a Pattern of Refusing to Pay Severance and Other Compensation to Eligible Employees.**

127.    Defendants deny the allegations in Paragraph 127.

128.    Defendants admit that Plaintiffs' claims for benefits were denied because they were terminated for "Cause" as defined by the Plans. Defendants deny the remaining allegations in Paragraph 128.

129.    Defendants deny the allegations in Paragraph 129.

130.    Defendants admit that there is pending litigation brought by former employees against the Company and Musk relating to the termination of their employment. Defendants deny the remaining allegations in Paragraph 130.

**F.    Musk's Refusal to Pay Plaintiffs Their Severance Benefits Is Part of a Pattern and Practice of Refusing to Pay His Bills.**

131.    Defendants deny the allegations in Paragraph 131.

132.    Defendants admit that there is litigation pending against the Company. Defendants deny the remaining allegations in Paragraph 132.

133.    Defendants admit that Plaintiffs Agrawal, Gadde, and Segal filed suit in Delaware Chancery Court alleging the Company did not pay certain legal bills. Paragraph 133 purports to

characterize court filings from this litigation, which speak for themselves; thus no response is required. To the extent a response is required, Defendants deny any characterization contrary to the court filings. Defendants deny the remaining allegations in Paragraph 133.

134.    Defendants admit that the accounts of @PlainSite and PlainSite founder Aaron Greenspan were suspended for violation of X Rules. Paragraph 134 purports to characterize the contents of a website, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 134.

135.    Defendants deny the allegations in Paragraph 135.

## IX.    DEFENDANTS' FAILURE TO PRODUCE DOCUMENTS AND OTHER ATTEMPTS TO DEPRIVE PLAINTIFFS OF A FULL AND FAIR OPPORTUNITY TO PRESENT THEIR CLAIMS

136.    Defendants deny the allegations in Paragraph 136.

137.    Defendants deny the allegations in Paragraph 137.

138.    Defendants admit the allegations in Paragraph 138.

139.    Defendants admit that by letter dated May 30, 2023, counsel for Plaintiffs sought to receive within one day "copies of all the documents listed in Appendix A to each of the May 26, 2023 letters" and sought to receive within three days certain categories of documents purportedly pursuant to 29 C.F.R. § 2560.503-l(m)(8). Defendants deny the remaining allegations in Paragraph 139.

140.    Defendants admit that they negotiated in good faith a confidentiality agreement governing the protection and disclosure of confidential materials that was agreed to by Plaintiffs' counsel. Defendants further admit that Plaintiffs' counsel and Defendants' counsel spoke by phone on June 12, 2023 regarding the confidentiality agreement and forthcoming production of documents, including Defendants' counsel's proposal to give Plaintiffs additional time to review the documents and an extension of time to appeal the denial of their claims for benefits. Defendants deny the remaining allegations in Paragraph 140.

141.    Defendants admit that they produced documents to Plaintiffs on June 22, 2023. Defendants deny the remaining allegations in Paragraph 141.

142.    Defendants deny the allegations in Paragraph 142.

143.    Defendants admit that, once the parties agreed to and executed a confidentiality agreement, additional confidential documents and partially privileged confidential documents were provided to Plaintiffs on July 20, 2023. Defendants deny the remaining allegations in Paragraph 143.

144.    Defendants admit that the Plan Administrator produced a small number of the documents listed in Appendix A with redactions for privilege, withheld a small number of documents on privilege grounds, and provided to Plaintiffs' counsel a privilege log describing such documents.  Defendants deny the remaining allegations in Paragraph 144.

145.    Defendants admit that the October 23, 2022 email was not produced because of its privileged nature.  Defendants deny the remaining allegations in Paragraph 145.

146.    Defendants admit that an October 27, 2022 email from Edgett to the Twitter Board of Directors was produced to Plaintiffs. Defendants deny the remaining allegations in Paragraph 146.

147.    Paragraph 147 asserts legal conclusions and purports to characterize an email, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that Plaintiffs' counsel sent an email on June 28, 2023 requesting certain documents relating to law firm invoices, which were not required to be provided under ERISA's attendant regulation. Defendants deny the remaining allegations in Paragraph 147.

148.    Paragraph 148 asserts legal conclusions and purports to characterize an email, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that a letter dated July 21, 2023 addressed to Plaintiffs' counsel explained that the Plans' administrator had already furnished to Plaintiffs the documents that are "relevant to" the Plaintiffs' claims for benefits under the Plans, as defined by 29 C.F.R. § 2560.503-1(m)(8). Defendants deny the remaining allegations in Paragraph 148.

149.    Paragraph 149 purports to characterize a letter, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that the Committee denied Plaintiffs' appeal of the denial of their claim for benefits under the Plans by letter dated January 12, 2024. While the documents listed in Appendix B were not produced on the very same

date as the denial letter, that is not required by ERISA's attendant regulations, and such documents were produced to Plaintiffs soon thereafter. Defendants deny the remaining allegations in Paragraph 149.

150.    Paragraph 150 purports to characterize a letter, which speaks for itself; thus no response is required. To the extent a response is required, Defendants admit that Plaintiffs' counsel sent a letter to the Committee dated January 16, 2024 demanding that the Committee provide "by tomorrow, January 17, 2024, copies of all the documents listed in Appendix B to your January 12, 2024 letter that have not yet been produced to us" and "any other documents . . . pursuant to 29 C.F.R. § 2560.503-1(m)(8)." Defendants deny any remaining allegations in Paragraph 150.

151.    Defendants admit that additional documents, some marked confidential, from Appendix B of the Committee's January 12, 2024 letter were produced to Plaintiffs on January 26, 2024. Additional documents were produced to Plaintiffs on February 7, 9 and 28, 2024.  Defendants deny the remaining allegations in Paragraph 151.

152.    Defendants admit that additional documents were produced to Plaintiffs on February 7, 2024, at which time all non-privileged documents identified in Appendix B had been furnished to Plaintiffs. Defendants deny the remaining allegations in Paragraph 152.

153.    Paragraph 153 asserts legal conclusions and purports to characterize and quote a regulation, which speaks for itself; thus no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 153.

154.    Paragraph 154 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 154.

155.    Defendants deny the allegations in Paragraph 155.

156.    Paragraph 156 asserts legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 156.

## **FIRST CAUSE OF ACTION**

**Claim for Benefits**
**Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**
**by Plaintiff Parag Agrawal Against All Defendants**

157.    Defendants incorporate their responses to Paragraphs 1 through 156 as though fully

1    set forth herein.

2         158.    Paragraph 158 asserts legal conclusions to which no response is required. To the

3    extent a response is required, Defendants admit that 29 U.S.C. § 1132(a)(1)(B) sets forth certain

4    circumstances under which a civil action may be brought "to recover benefits due to him under the

5    terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

6    benefits under the terms of the plan." Defendants deny the remaining allegations in Paragraph 158.

7         159.    Defendants deny the allegations in Paragraph 159.

8         160.    Defendants deny the allegations in Paragraph 160.

9                          **SECOND CAUSE OF ACTION**

10                               **Claim for Benefits**
11    **Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**
      **by Plaintiff Ned Segal Against All Defendants**

12        161.    Defendants incorporate their responses to Paragraphs 1 through 160 as though fully

13    set forth herein.

14        162.    Paragraph 162 asserts legal conclusions to which no response is required. To the

15    extent a response is required, Defendants admit that 29 U.S.C. § 1132(a)(1)(B) sets forth certain

16    circumstances under which a civil action may be brought "to recover benefits due to him under the

17    terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

18    benefits under the terms of the plan." Defendants deny the remaining allegations in Paragraph 162.

19        163.    Defendants deny the allegations in Paragraph 163.

20        164.    Defendants deny the allegations in Paragraph 164.

21                           **THIRD CAUSE OF ACTION**

22                               **Claim for Benefits**
      **Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**
23    **by Plaintiff Vijaya Gadde Against All Defendants**

24        165.    Defendants incorporate their responses to Paragraphs 1 through 164 as though fully

25    set forth herein.

26        166.    Paragraph 166 asserts legal conclusions to which no response is required. To the

27    extent a response is required, Defendants admit that 29 U.S.C. § 1132(a)(1)(B) sets forth certain

28    circumstances under which a civil action may be brought "to recover benefits due to him under the

1    terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

2    benefits under the terms of the plan." Defendants deny the remaining allegations in Paragraph 166.

3        167.    Defendants deny the allegations in Paragraph 167.

4        168.    Defendants deny the allegations in Paragraph 168.

5                            **FOURTH CAUSE OF ACTION**

6                                **Claim for Benefits**
        **Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**
7                   **by Plaintiff Sean Edgett Against All Defendants**

8        169.    Defendants incorporate their responses to Paragraphs 1 through 168 as though fully

9    set forth herein.

10       170.    Paragraph 170 asserts legal conclusions to which no response is required. To the

11   extent a response is required, Defendants admit that 29 U.S.C. § 1132(a)(1)(B) sets forth certain

12   circumstances under which a civil action may be brought "to recover benefits due to him under the

13   terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

14   benefits under the terms of the plan." Defendants deny the remaining allegations in Paragraph 170.

15       171.    Defendants deny the allegations in Paragraph 171.

16       172.    Defendants deny the allegations in Paragraph 172.

17                            **FIFTH CAUSE OF ACTION**

18           **Unlawful Discharge to Interfere with Right to Benefits**
                **Pursuant to ERISA Section 510, 29 U.S.C. § 1140**
19          **by All Plaintiffs Against Defendants Elon Musk and X Corp.**

20       173.    Defendants incorporate their responses to Paragraphs 1 through 172 as though fully

21   set forth herein.

22       174.    Paragraph 174 asserts legal conclusions and purports to characterize a statute, which

23   speaks for itself; thus no response is required. To the extent a response is required, Defendants

24   admit that Paragraph 174 quotes part of section 29 U.S.C. § 1140. Defendants deny the remaining

25   allegations in Paragraph 174.

26       175.    Defendants deny the allegations in Paragraph 175.

27       176.    Defendants deny the allegations in Paragraph 176.

28

1

## SIXTH CAUSE OF ACTION

2

3

**Failure to Timely Provide Required Materials
Pursuant to ERISA Section 502(c), 29 U.S.C. § 1132(c)
by All Plaintiffs Against Defendants Elon Musk and Lindsay Chapman**

4      177.    Defendants incorporate their responses to Paragraphs 1 through 176 as though fully

5    set forth herein.

6      178.    Defendants admit that via letter dated November 29, 2022, counsel for Plaintiffs

7    requested certain categories of documents from the Plans' Administrator, purportedly pursuant to

8    29 U.S.C. § 1024(b)(4).

9      179.    Paragraph 179 asserts legal conclusions and purports to characterize a statute, which

10    speaks for itself; thus no response is required. To the extent a response is required, Defendants

11    admit that 29 U.S.C. § 1132(c) provides that in certain circumstances a plan administrator shall

12    furnish certain requested documents within 30 days of such request. Defendants deny the remaining

13    allegations in Paragraph 179.

14      180.    Defendants admit that, on April 11, 2023, the Plan administrator responded to

15    Plaintiffs' November 29, 2022 letter and, after the execution of a confidentiality agreement,

16    furnished certain confidential and partially-privileged documents to Plaintiffs on June 22, 2023 and

17    July 20, 2023. Defendants further admit that additional documents were furnished after that date.

18    Defendants deny the remaining allegations in Paragraph 180.

19      181.    Defendants deny the allegations in Paragraph 181.

20      182.    Defendants deny the allegations in Paragraph 182.

21      183.    Defendants deny the allegations in Paragraph 183.

22                              ## PRAYER FOR RELIEF

23      Defendants admit that Plaintiffs seek the relief identified in the Prayer for Relief, including

24    certain forms of relief the Court has held Plaintiffs may not recover as a matter of law.  Defendants

25    deny that Plaintiffs are entitled to any type of remedy, relief, or damages whatsoever, including the

26    relief requested in Plaintiffs' Prayer for Relief, and, further, deny all remaining allegations

27    contained within these paragraphs of the Complaint.

28                          ## DEFENDANTS' ADDITIONAL DEFENSES

Without assuming the burden of proof on any matters that would otherwise rest with Plaintiffs, and expressly denying any and all wrongdoing, Defendants allege the following defenses to the Complaint. Defendants have not knowingly or intentionally waived any applicable defenses or affirmative defenses. Defendants explicitly reserve the right to assert and rely upon such other defenses to the extent that additional information becomes available. Defendants further reserve the right to amend their Answer and/or defenses accordingly, and/or to delete defenses that they determine are not applicable, as to the extent that additional information becomes available.

WHEREFORE, Defendants assert the following defenses and pray for judgment as set forth below.

### FIRST DEFENSE

Plaintiffs are not entitled to the benefits they seek under the terms of the Plans.

### SECOND DEFENSE

Plaintiffs' ERISA § 502(a)(1)(B) claims for benefits under the Plans are barred because the Plans were administered in accordance with their terms.

### THIRD DEFENSE

The Plans' Administrator has discretionary authority to interpret the Plans, and it exercised its discretion in interpreting the Plans' terms fairly, reasonably, and in good faith, and its interpretation is entitled to deference.

### FOURTH DEFENSE

The decision to deny Plaintiffs' claims for benefits under the Plans was legally correct, was not arbitrary and capricious, and did not result from an abuse of discretion.

### FIFTH DEFENSE

Defendants have not violated any legal duty owed to Plaintiffs; therefore, Plaintiffs are not entitled to recovery against Defendants.

### SIXTH DEFENSE

Elon Musk and X Corp. are not proper defendants to some of the claims asserted against them by Plaintiffs.

### SEVENTH DEFENSE

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT

Plaintiffs' ERISA § 510 claims fail because no Defendant acted for the purpose of interfering with the attainment of any right to benefits Plaintiffs had under the Plans.

### EIGHTH DEFENSE

Plaintiffs' right to relief is barred, in whole or in part, by the doctrine of unclean hands.

### NINTH DEFENSE

Recovery on Plaintiffs' causes of action is limited or subject to an absolute bar as to recoverable damages based on after-acquired evidence.

### TENTH DEFENSE

Plaintiffs' ERISA § 510 claims do not seek any relief that may properly be awarded against Defendants under 29 U.S.C. § 1132(a)(3).

### ELEVENTH DEFENSE

Because the Plan is a "top hat" plan exempt from ERISA's fiduciary duty and other relevant provisions, Plaintiffs may not seek any form of relief, including equitable relief, that might otherwise be available for conduct constituting a breach of fiduciary duty.

### TWELFTH DEFENSE

Plaintiffs' claims fail to the extent they have failed to exhaust administrative remedies prior to bringing their claims or portions thereof.

### THIRTEENTH DEFENSE

Defendants provided to Plaintiffs all of the documents required to be furnished under ERISA and related regulations, including 29 U.S.C. § 1024(b)(4) and 29 C.F.R. § 2560.503-1(m).

### FOURTEENTH DEFENSE

The documents requested by Plaintiffs were not limited to those to which a claim for penalties under 29 U.S.C. § 1132(c) attaches.

### FIFTEENTH DEFENSE

The claims of any Plaintiff who executed a waiver or release of claims against any Defendant are barred.

### SIXTEENTH DEFENSE

1    Plaintiffs' claims are barred to the extent he or she failed to exhaust the administrative

2    remedies prescribed in the Plans.

3

4    WHEREFORE, having fully answered, Defendants deny that Plaintiffs are entitled to the

5    relief requested or any other relief.

6    Defendants deny each and every allegation of the Complaint not heretofore specifically

7    admitted.

8    WHEREFORE, Defendants pray that all of Plaintiffs' claims be dismissed with prejudice;

9    that the Court enter judgment against Plaintiffs and in favor of Defendants on all causes of action;

10   that all of Defendants' costs and fees, including attorneys' fees, be awarded to Defendants; and

11   that the Court grant such other relief as the Court may deem just and proper.

12

13

14   Dated:  November 15, 2024                  MORGAN, LEWIS & BOCKIUS LLP

15                                              By   *Christopher Boran*
                                                      Eric Meckley
16                                                    Jeremy Blumenfeld (pro hac vice)
                                                      Christopher Boran (pro hac vice)
17                                                    Abbey Glenn
                                                      Brian Sullivan (pro hac vice)

18                                              *Attorneys for Defendants*

19

20

21

22

23

24

25

26

27

28