David L. Anderson (SBN 149604)
dlanderson@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
Chaddy Georges (SBN 335546)
cgeorges@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Caroline A. Wong (Admitted *pro hac vice*)
caroline.wong@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000

*Attorneys for Plaintiffs Parag Agrawal,
Ned Segal, Vijaya Gadde, and Sean Edgett*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE, and SEAN EDGETT,<br><br>Plaintiffs,<br><br>vs.<br><br>ELON MUSK; X CORP., f/k/a TWITTER, INC.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA,<br><br>Defendants. | Case No. 3:24-cv-01304-MMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY**<br><br>Hearing Date: April 4, 2025<br>Time: 9:00 AM<br>Location: Courtroom 7, 19th Floor<br>Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND ..................................................................................................................... 2

III. ARGUMENT ........................................................................................................................... 3

    A. Musk's Communications Regarding Plaintiffs Are Relevant To Plaintiffs' Claims. ........................................................................................................................ 4

    B. The Committee's Meeting Minutes And Materials Are Relevant To Plaintiffs' Claims. ........................................................................................................................ 8

    C. Documents Regarding Reasons Musk Has Given As Cause For Plaintiffs' Terminations Are Relevant To Plaintiffs' Claims. ...................................................... 10

    D. Materials From The Proceedings in *X Corp. v. Wachtell* Are Relevant To Plaintiffs' Claims. ...................................................................................................... 11

    E. Plaintiffs' Interrogatory Regarding The Alter Ego Allegations Seeks Information Relevant To Plaintiffs' Claims. ............................................................... 14

IV. CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
    458 F.3d 955 (9th Cir. 2006) ...................................................................................4, 6, 9

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975) ...........................................................................................3, 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    281 F.R.D. 531 (N.D. Cal. 2012)..........................................................................................3

*Dairy v. Harry Shelton Livestock, LLC*,
    No. 18-cv-6357-RMI, 2021 WL 4476778 (N.D. Cal. Sept. 30, 2021) ............................4

*Doe v. AT&T W. Disability Benefits Program*,
    No. 11-cv-4603-DMR, 2012 WL 1669882 (N.D. Cal. May 14, 2012) ..........................6

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
    No. 15-cv-1893-HRL, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016)................................8

*Fluence Energy, LLC v. M/V BBC Finland*,
    No. 21-cv-01239-BEN-JLB, 2023 WL 4142008 (S.D. Cal. June 22, 2023)................14

*Garneau v. City of Seattle*,
    147 F.3d 802 (9th Cir. 1998) ...........................................................................................3

*Gotham Holdings, LP v. Health Grades, Inc.*,
    580 F.3d 664 (7th Cir. 2009) ..........................................................................................13

*Khalilpour v. CELLCO P'ship*,
    No. C 09-2712 CW (MEJ), 2010 WL 1267749 (N.D. Cal. Apr. 1, 2010)....................10

*Lauter v. Rosenblatt*,
    No. 2:15-cv-08481-DDP, 2019 WL 4138020 (C.D. Cal July 1, 2019) .........................15

*Lessard v. Applied Risk Mgmt.*,
    307 F.3d 1020 (9th Cir. 2002) ..........................................................................................4

*Lineberry v. Addshoppers, Inc.*,
    No. 23-cv-1996-VC (PHK), 2024 WL 4707986 (N.D. Cal. Nov. 6, 2024)................3,4

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    328 F.R.D. 543 (N.D. Cal. 2018)........................................................................................8

*Proofpoint, Inc. v. Vade Secure, Inc.*,
    No. 19-cv-4238-MMC (RMI), 2020 WL 7398791 (N.D. Cal. Dec. 17, 2020) ........6, 11

*Raya v. Barka*,
   No. 3:19-cv-2295-WQH-AHG, 2022 WL 686460 (S.D. Cal. Mar. 8, 2022) ................................11

*Rowell v. Aviza Tech. Health & Welfare Plan*,
   No. 10-cv-5656 PSG, 2011 WL 5190172 (N.D. Cal. Oct. 31, 2011) ..............................................9

*Shoen v. Shoen*,
   5 F.3d 1289 (9th Cir. 1993) ...........................................................................................................3

*Skyline Advanced Tech. Servs. v. Shafer*,
   No. 18-cv-6641-CRB (RMI), 2020 WL 13093877 (N.D. Cal. Jul. 14, 2020) ...............................8

*Stephan v. Unum Life Ins. Co. of Am.*,
   697 F.3d 917 (9th Cir. 2012) ...................................................................................................6, 11

*Wagner Aeronautical, Inc. v. Dotzenroth*,
   No. 21-cv-0994-L-AGS, 2022 WL 198805 (S.D. Cal. Jan. 20, 2022) .........................................10

*Zewdu v. Citigroup Long Term Disability Plan*,
   264 F.R.D. 622 (N.D. Cal. 2010) ..................................................................................................9

**Statutes & Rules**

29 U.S. Code § 1132(a)(1)(B) (ERISA § 502(a)(1)(B)) ................................................................ *passim*

29 U.S. Code § 1140 (ERISA § 510) ........................................................................................ 2, 4, 6, 10

Fed. R. Civ. P. 26 ...................................................................................................................... 3, 5, 7

Fed. R. Civ. P. 33(a)(2) ...................................................................................................................3

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 4, 2025, at 9:00 a.m., or as soon thereafter as counsel may be heard, Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett (collectively, "Plaintiffs") will, and hereby do, bring this Motion to Compel Discovery before the Honorable Maxine M. Chesney of the San Francisco Courthouse located at 450 Golden Gate Avenue, Courtroom 7 – 19th Floor, San Francisco, CA 94102.

Plaintiffs' Motion is based on this Notice of Motion to Compel Discovery, the following Memorandum of Points and Authorities in support thereof, the Declaration of Sheila A.G. Armbrust and Exhibits A–J attached thereto, any additional briefing on this subject, and any evidence or arguments that will be presented to the Court at any hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

When Elon Musk bought Twitter in 2022, he immediately terminated Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett (Twitter's CEO, CFO, Chief Legal Officer, and General Counsel, respectively). Musk purportedly terminated them "for cause," enabling him to deprive them of their severance payments under Twitter's benefit plans. Of course, as Musk told his biographer while he hatched his plot, this was all a sham. Musk was angry that Plaintiffs had succeeded in litigation that forced him to honor his agreement to buy Twitter after he had so desperately sought to renege. Musk terminated Plaintiffs for the specific purpose of depriving them of their benefits, treating their severance like money in his "cookie jar." *See, e.g.*, Dkt. 58 ("Compl.") ¶¶ 4–7.

On November 29, 2022, Plaintiffs submitted claims for denial of benefits through the claims administration process. *Id.* ¶ 66. Despite Musk's admissions to his biographer that his real reason for terminating their employment was to avoid paying them severance benefits, their claims were denied. *Id.* ¶¶ 70–73. Plaintiffs then submitted an administrative appeal to the Twitter Severance Administration Committee (the "Committee"), whose members were appointed by Musk from his various other companies to evaluate Plaintiffs' claims. *Id.* ¶ 74. Of course, adjudicated in a kangaroo court, the appeal also was denied. *Id.* ¶¶ 92–100.

Having exhausted the claims administration process, Plaintiffs filed this case nearly one year ago, in March 2024. *See* Dkt. 1. In November 2024, following the Court's denial of Defendants' partial motion to dismiss, the Court permitted Plaintiffs to begin discovery. *See* Dkt. 73.

More than 100 days have passed since Plaintiffs served their first sets of discovery requests. And although the parties have engaged in months of an extensive meet-and-confer process, Defendants have refused to concede the relevance of certain basic discovery that is central to Plaintiffs' claims and allegations. That discovery includes:

- Musk's communications in the possession, custody, or control of Musk or the other individual defendants regarding Plaintiffs, Plaintiffs' job performance, or Plaintiffs' terminations from Twitter;
- Documents regarding reasons that Musk has given for terminating Plaintiffs' employment at Twitter;
- Committee meeting minutes and materials regarding the Committee's process for reviewing Plaintiffs' claims for benefits;
- Materials from the related proceeding *X Corp. v. Wachtell, Lipton, Rosen & Katz*, No. CGC-23-607461 (Cal. Super. Ct., S.F. Cty.); and
- X Corp.'s response to an interrogatory relating to Plaintiffs' alter ego allegations.

These categories of materials are critical to Plaintiffs' claims because they are relevant to Musk's subjective intent in terminating Plaintiffs' employment, to procedural irregularities and conflicts of interest in the claims administrative process, and to payment of monetary relief. Plaintiffs respectfully move for an order compelling Defendants to produce them.

## II.     BACKGROUND

Plaintiffs have alleged three types of claims in this case: (i) claims for denial of benefits under Section 502(a)(1)(B) of ERISA; (ii) a claim for termination of Plaintiffs' employment in an unlawful effort to interfere with their severance benefits under Section 510 of ERISA; and (iii) a claim for statutory penalties for failure to provide documents. Compl. ¶¶ 157–83. Defendants filed a partial motion to dismiss and the Court denied it on November 1, 2024, thus opening discovery into all of Plaintiffs' claims. *See* Dkt. 73.

1    Plaintiffs served their First Request for Production of Documents to all Defendants ("RFPs")
2    and their First Set of Interrogatories to Defendant X Corp. on November 8, 2024. *See* Declaration of
3    Sheila A.G. Armbrust in Support of Motion to Compel Discovery, filed herewith ("Armbrust
4    Decl."), Ex. A–B. Defendants served written objections and responses on December 9, 2024. *See id.*,
5    Ex. C–D. Since then, the parties conducted a telephonic meet-and-confer on December 30, 2024, and
6    exchanged letters on January 2, January 21, January 27, and February 4, 2025. *See id.*, Ex. E–H.

7    In parallel with their discussions regarding the scope of Plaintiffs' discovery requests, the
8    parties continue to meet-and-confer on other issues, including Defendants' search methodology,
9    search terms, and sources that Defendants have preserved, collected, and intend to search.
10   Meanwhile, the parties have reached an impasse regarding whether certain of Plaintiffs' requests
11   seek documents or information that are within the scope of discovery at all. Though Defendants have
12   claimed that disputes about these requests are intertwined with ongoing negotiation of ESI search
13   terms, Plaintiffs believe the Court's intervention is necessary now because Defendants will not agree
14   about what counts as relevant material that is appropriately within the scope of discovery. Those
15   threshold disputes about the proper scope of discovery are the subject of this motion.

16   **III.   ARGUMENT**

17   Rule 26 of the Federal Rules of Civil Procedure allows discovery into "any nonprivileged
18   matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed.
19   R. Civ. P. 26(b)(1). This "broad right of discovery" is based on the general principle that "wide
20   access to relevant facts serves the integrity and fairness of the judicial process by promoting the
21   search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). Interrogatories may "relate
22   to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

23   Relevance is "broadly construed" under these rules. *In re Cathode Ray Tube (CRT) Antitrust*
24   *Litig.*, 281 F.R.D. 531, 532–33 (N.D. Cal. 2012) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437
25   U.S. 340, 351 (1978)); *see also, e.g.*, *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998)
26   ("Relevance for purposes of discovery is defined very broadly."). Under the "liberal discovery
27   principles of the Federal Rules," Defendants must "carry a heavy burden" to show why discovery
28   should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *see also, e.g.*,

1  *Lineberry v. Addshoppers, Inc.*, No. 23-cv-1996-VC (PHK), 2024 WL 4707986, at *2 (N.D. Cal.
2  Nov. 6, 2024) (same). To meet this burden, Defendants must "specifically detail the reasons why
3  each request is improper." *Dairy v. Harry Shelton Livestock, LLC*, No. 18-cv-6357-RMI, 2021 WL
4  4476778, at *1 (N.D. Cal. Sept. 30, 2021) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d
5  470, 476 (9th Cir. 1992)).

6       For claims under Section 510 of ERISA, the scope of discovery includes documents and
7  information regarding defendants' intent to interfere with plaintiffs' right to benefits. *See Lessard v.*
8  *Applied Risk Mgmt.*, 307 F.3d 1020, 1024 (9th Cir. 2002). For denial-of-benefits claims under
9  Section 502(a)(1)(B) of ERISA, the scope of discovery includes the administrative record, as well as
10 discovery regarding procedural irregularities and any conflicts of interest in the benefits decision.
11 *See, e.g.*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006). Courts may also
12 consider evidence "of malice, of self-dealing, or of a parsimonious claims-granting history" when
13 evaluating a plan administrator's decision. *Id.* at 968.

14      Here, Defendants have refused to provide discovery in response to multiple requests that cut
15 to the heart of Plaintiffs' ERISA claims – specifically, discovery in responses to Plaintiffs' RFPs
16 Nos. 3–5, 15, 24, and 31 and Interrogatory No. 4. For the following reasons, the Court should require
17 Defendants to provide that discovery.

     **A.**    **Musk's Communications Regarding Plaintiffs Are Relevant To Plaintiffs' Claims.**

20      Plaintiffs served three requests for production (RFPs No. 3, 4, and 5) that seek various
21 communications to or from Musk relating to Plaintiffs. The original requests, Plaintiffs' offered
22 compromises, and Defendants' most recent position are as follows:

| RFP | Original Request | Plaintiffs' Compromise | Defendants' Position |
|---|---|---|---|
| 3 | Documents and Communications at any time prior to 10/27/22 between Elon Musk and any director or executive of Twitter relating to any Plaintiff. | Documents and Communications from 1/31/22 to 10/27/22 between Elon Musk and any of the specific directors and executives set forth in Defendants' 1/21/25 letter[1] that refer to any of the Plaintiffs. | ***Reasonably available communications within X Corp.'s possession, custody, and control*** from 1/31/22 to 10/27/22 between Elon Musk and any of the specific directors and executives set forth in Defendants' 1/21/25 letter that refer to any of the Plaintiffs. |
| 4 | All Communications to or from Elon Musk from 11/1/21 to 2/28/24 regarding Plaintiffs' job performance at Twitter. | All Communications to or from Elon Musk from 1/31/22 to 2/28/24 regarding Plaintiffs' job performance at Twitter. | ***Reasonably available communications within X Corp.'s possession, custody, and control*** from 1/31/22 to 2/28/24 between Musk and ***Walter Isaacson, Alex Spiro, Antonio Gracias, Jared Birchall, Jehn Balajadia, and/or Jack Dorsey*** relating to Plaintiffs' job performance at Twitter. |
| 5 | All Communications to or from Elon Musk from 11/1/21 to 2/28/24 regarding Plaintiffs' termination from Twitter. | All Communications to or from Elon Musk from 1/31/22 to 2/28/24 regarding Plaintiffs' terminations from Twitter. | ***Reasonably available communications within X Corp.'s possession, custody, and control*** from 1/31/22 to 2/28/24 between Musk and ***Walter Isaacson, Alex Spiro, Antonio Gracias, Jared Birchall, Jehn Balajadia, and/or Jack Dorsey*** relating to Plaintiffs' terminations from Twitter. |

There are three critical problems with Defendants' position: (i) they refuse to provide responsive documents from any Defendant other than X Corp., (ii) their proposal to limit any productions in response to RFP Nos. 4–5 to communications between Musk and six individuals is unduly narrow, and (iii) their proposal to produce only "reasonably available" communications is inconsistent with their obligations to preserve and produce documents under Rule 26.

---

[1] These individuals are Parag Agrawal, Mimi Alemayehou, Leslie Berland, Dalana Brand, Nick Caldwell, Egon Durban, Sean Edgett, Vijaya Gadde, Robert Kaiden, Omid Kordestani, Martha Lane Fox, Fei-Fei Li, Sarah Personette, Patrick Pichette, David Rosenblatt, Ned Segal, Jay Sullivan, and Bret Taylor. *See* Armbrust Decl., Ex. F at 3.

***First***, Defendants cannot refuse to produce documents outside of "X Corp.'s possession, custody, and control." X Corp. is just one defendant; documents from ***every*** defendant are relevant to Plaintiffs' claims. All Defendants must undertake a reasonable search for responsive documents in their respective possession, custody, or control, and must produce those documents. *See, e.g.*, *Doe v. AT&T W. Disability Benefits Program*, No. 11-cv-4603-DMR, 2012 WL 1669882, at *4 (N.D. Cal. May 14, 2012) (granting motion to compel production of documents in ERISA Section 502(a)(1)(B) case because the documents related to plaintiff's claim or appeal and were in the defendant's "control").

These requested communications are relevant – indeed, critical – to Plaintiffs' claims. They are critical to the Section 510 claim because Musk's communications relating to Plaintiffs, including Plaintiffs' job performance and terminations, shed light on Musk's subjective motivations and intent in terminating their employment. They are critical to the Section 502(a)(1)(B) claims because they shed light on conflicts of interest or bias that Musk had against Plaintiffs in appointing Committee members to evaluate their claims and otherwise influencing the claims administration process. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (holding that district court abused its discretion in denying ERISA plaintiff's motion to compel discovery of defendant's internal memoranda because they were relevant to potential conflicts of interest as to Section 502(a)(1)(B) claim); *see also, e.g.*, *Abatie*, 458 F.3d at 970 (evidence of "malice" or "self-dealing" is discoverable as to Section 502(a)(1)(B) claims).

Defendants cannot meet their "heavy burden" to show why they should not have to produce documents from all Defendants – rather than solely from X Corp. *Blankenship*, 519 F.2d at 429 (reversing and remanding with instructions for plaintiff to receive the discovery he had requested, because defendants had not carried their "heavy burden" to show it should be denied); *see also, e.g.*, *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-4238-MMC (RMI), 2020 WL 7398791, at *3 (N.D. Cal. Dec. 17, 2020) ("[O]nce a moving party establishes that the information sought through a motion to compel is within the scope of permissible discovery, the burden shifts to the party resisting discovery.").

1   Defendants' position is especially indefensible as to Musk. Musk is a defendant in this
2   litigation. Musk made the decision to terminate Plaintiffs' employment. Musk therefore must
3   produce his communications about Plaintiffs. Yet Defendants fight even that basic proposition. Their
4   proposal to produce documents in the possession, custody, or control of X Corp. is no answer.
5   Because Musk terminated Plaintiffs on October 27, 2022, the same day he acquired X Corp. (then
6   known as Twitter), Defendants' insistence that they will produce documents only in the possession,
7   custody, or control of X Corp. appears calculated to cut off the production of documents before that
8   date. Defendants' proposal would mean that even the emails terminating Plaintiffs' employment
9   would be excluded from production, because those emails were sent by an employee of Musk's
10  home office, Excession, LLC, from an Excession email address. Although it is unclear when Musk
11  acquired an X Corp. email address, it could not have been before he acquired Twitter on October 27,
12  2022. Defendants' position that they will produce documents only in the possession, custody, or
13  control of one Defendant, X Corp., thus carries with it a date cutoff in the heart of the events at issue
14  in this case.

*Second*, as to RFP Nos. 4 and 5, Defendants have improperly narrowed the set of communications that X Corp. has proposed producing to communications between Musk and just six individuals. In meet-and-confer, Plaintiffs identified those six individuals as illustrative examples of people with whom Musk communicated or may have communicated regarding Plaintiffs' job performance or terminations. *See* Armbrust Decl., Ex. G at 2. But Musk likely had communications with other individuals on those topics, too. Plaintiffs' original requests were already narrowed to communications to and from a specific Defendant (Musk) regarding specific, highly relevant topics (Plaintiffs' job performance and terminations) over a discrete time period. Those communications are highly probative of the claims, and Defendants have not demonstrated that further narrowing is appropriate.

*Third*, Defendants' position is inappropriately confined to communications that are "reasonably available." That is not the standard under Rule 26. Plaintiffs are concerned that Defendants have inserted that qualifier because they have not adequately preserved their documents. In another matter, a court has found that Musk failed to preserve responsive communications. *See,*

*e.g.*, *Twitter, Inc. v. Musk*, No. 2022-0613-KSJM, Letter at *7–11 (Del. Ch. Ct. Oct. 5, 2022) (noting that "Musk has stated publicly that he uses iMessage and Signal," and concluding it was "likely" that automatic deletion of Musk's "responsive Signal communications" had occurred) (quotation marks omitted). The duty to preserve arises "[a]s soon as a potential claim is identified" and "extends to the period before litigation." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) (citations omitted). It requires *all* defendants to take reasonable steps to preserve *all* potentially relevant materials, including cellphone data, text messages, and other communications. *See, e.g.*, *Skyline Advanced Tech. Servs. v. Shafer*, No. 18-cv-6641-CRB (RMI), 2020 WL 13093877, at *10–12 (N.D. Cal. Jul. 14, 2020) (recommending dismissal and granting sanctions after defendant failed to preserve relevant laptop, emails, and cellphone data), *report and recommendation adopted by* 2020 WL 13093878 (N.D. Cal. Jul. 30, 2020); *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-cv-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (granting sanctions after defendant deleted potentially relevant text messages). Defendants cannot evade the consequences of any deficiencies in their preservation efforts by purporting to limit their production obligations to documents that still happen to be "reasonably available."

For these reasons, the Court should order Defendants to produce communications responsive to RFP No. 3–5, as modified by Plaintiffs' proposed compromises set forth in the table above.

### B. The Committee's Meeting Minutes And Materials Are Relevant To Plaintiffs' Claims.

Plaintiffs' RFP No. 15 requests "agendas, minutes, and materials for each meeting of the Committee during the Relevant Period," which Plaintiffs have agreed to narrow to January 31, 2022 through February 28, 2024. The following table summarizes the parties' dispute:

| RFP | Original Request | Plaintiffs' Compromise | Defendants' Position |
| --- | --- | --- | --- |
| 15 | The agendas, minutes, and materials for each meeting of the Committee from 11/1/21 to 2/28/24. | The agendas, minutes, and materials for each meeting of the Committee from 1/31/22 to 2/28/24. | Minutes and materials for Committee meetings in which Plaintiffs' appeals were specifically discussed. |

Defendants object that "minutes and materials from Committee meetings where Plaintiffs were not discussed and their appeals were not at issue" are not "relevant." Armbrust Decl., Ex. F at

8

6–7 (emphasis omitted). That objection is insufficient to meet Defendants' burden to avoid producing these materials, for two reasons.

*First*, Committee agendas, minutes, and materials reflecting the Committee's overall processes and procedures for evaluating benefits claims are discoverable because documents about the Committee's processes and procedures are relevant to Plaintiffs' allegations regarding irregularities in those processes and procedures. *See, e.g.*, *Abatie*, 458 F.3d at 968–69 (discovery relevant to Section 502(a)(1)(B) claims includes evidence that a plan administrator or committee "has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record"). These documents are relevant regardless of whether Plaintiffs or their appeals are specifically discussed in those materials. Notably, Defendants have never disclaimed that such documents exist. To the extent they exist, they are relevant, and Defendants should produce them. *See, e.g.*, *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 628 (N.D. Cal. 2010) (granting plaintiff's requests for documents "relevant to the procedure utilized by [defendant] in evaluating claims" generally, beyond plaintiff's specific ERISA benefits claim).

*Second*, minutes and materials regarding other former Twitter executives' claims for benefits are also relevant. Plaintiffs have alleged that Musk's refusal to pay them their severance benefits is part of a larger pattern of wrongfully refusing to pay benefits to Twitter's former executives and employees. Compl. ¶¶ 127–29. Indeed, X Corp. admitted that "no claim for benefits under the [relevant benefit plans] has been granted since entities associated with Elon Musk purchased Twitter on October 27, 2022." Armbrust Decl., Ex. D at 9. X Corp.'s admission supports Plaintiffs' allegation of a larger pattern of wrongful claim denials. Defendants cannot meet their heavy burden to object to discovery into minutes and materials from Committee meetings discussing appeals of these other claimants because these bear on the procedural irregularities and conflicts of interest in the Committee's process overall. *See, e.g.*, *Rowell v. Aviza Tech. Health & Welfare Plan*, No. 10-cv-5656 PSG, 2011 WL 5190172, at *5 (N.D. Cal. Oct. 31, 2011) (citing *Abatie*, 458 F.3d at 967) (granting motion to compel discovery regarding defendant's claims history in ERISA Section 502(a)(1)(B) case because it was relevant to whether defendant had a "history of parsimonious

claims granting"); *see also Khalilpour v. CELLCO P'ship*, No. C 09-2712 CW (MEJ), 2010 WL 1267749, at *2–4 (N.D. Cal. Apr. 1, 2010) (granting plaintiff's motion to compel information from defendants regarding non-parties). Defendants cannot limit discovery only to matters that they deem relevant. Plaintiffs are "entitled to seek discovery on [their] theory of the facts and the law" and are "not limited in discovery by the[ir] opponent's theory." *Wagner Aeronautical, Inc. v. Dotzenroth*, No. 21-cv-0994-L-AGS, 2022 WL 198805, at *2 (S.D. Cal. Jan. 20, 2022) (citations omitted).

### C. Documents Regarding Reasons Musk Has Given As Cause For Plaintiffs' Terminations Are Relevant To Plaintiffs' Claims.

RFP No. 24 seeks documents regarding any reason Musk or the Committee has given as cause for Plaintiffs' terminations from Twitter. Plaintiffs have agreed to narrow this request to documents about reasons Musk has given (rather than both Musk and the Committee). The following table summarizes the parties' positions:

| RFP | Original Request | Plaintiffs' Compromise | Defendants' Position |
|---|---|---|---|
| 24 | All Documents and Communications Concerning any reason Elon Musk, or the Committee, has given as cause for Plaintiffs' terminations from Twitter, Including but not limited to payment of legal fees, payment of retention bonuses, and management of Twitter's expenses from January 1, 2018 to the Present. | All Documents and Communications Concerning any reason Elon Musk has given as cause for Plaintiffs' terminations from Twitter, Including but not limited to payment of legal fees, payment of retention bonuses, and management of Twitter's expenses from January 1, 2018 to the Present. | Documents relating to Plaintiffs' actions leading to their terminations for cause. |

Defendants describe their proposal as a "compromise." *Id.* But it is a rewrite, not a compromise. They propose to produce documents that are non-responsive to the request. The request seeks documents about ***reasons Musk has given*** as cause for Plaintiffs' termination—*e.g.*, communications or other documents in which Musk or others discussed the reasons, whether actual or pretextual, that Musk stated he had for terminating Plaintiffs' employment. Such documents about Musk's stated reasons are different from documents regarding Plaintiffs' actions.

RFP No. 24 plainly seeks discovery about Plaintiffs' terminations that is relevant to their claims. They are central to the Section 510 claim because they directly relate to the reasons (whether

10

genuine or pretextual) that Musk gave for terminating Plaintiffs' employment. They are also relevant to the Section 502(a)(1)(B) claims because they relate to Musk's conflicts of interest or bias against Plaintiffs in appointing Committee members to evaluate their claims and otherwise influencing the claims administration process. *See Stephan*, 697 F.3d at 929. These documents are "within the scope of permissible discovery," so the "burden shifts" to Defendants to show why this discovery "should not be permitted." *Proofpoint*, 2020 WL 7398791, at *3. Defendants cannot meet that burden.

In the meet-and-confer process, Defendants' counsel claimed that Defendants should not be required to produce documents about Musk's reasons for terminating Plaintiffs for cause because counsel is "aware of no additional reasons beyond those identified in Mr. Musk's declaration" dated January 10, 2024, which Musk submitted to the Committee during the claims administration process. Armbrust Decl., Ex. H at 6. But Defendants cannot evade their obligation to produce responsive documents by refusing to search for them and then claiming they do not know whether responsive documents exist. Whether such documents exist or are ultimately useful to Plaintiffs in this litigation is "not a matter for opposing counsel to decide," and certainly is not a reason to refuse to produce responsive documents. *See Raya v. Barka*, No. 3:19-cv-2295-WQH-AHG, 2022 WL 686460, at *8 n.4 (S.D. Cal. Mar. 8, 2022) (rejecting defendant's objections to plaintiff's document requests).

### D. Materials From The Proceedings in *X Corp. v. Wachtell* Are Relevant To Plaintiffs' Claims.

Plaintiffs' RFP No. 31 seeks certain documents and testimony from the proceedings in *X Corp. v. Wachtell, Lipton, Rosen & Katz*, No. CGC-23-607461 (Cal. Super. Ct., S.F. Cty.) (the "*Wachtell* Proceedings"). The parties' current positions are as follows:

| RFP | Original Request | Plaintiffs' Compromise | Defendants' Position |
|---|---|---|---|
| 31 | All Documents produced by any Defendant, and all deposition and arbitration testimony, in connection with the proceedings in *X Corp. v. Wachtell, Lipton, Rosen & Katz*, No. CGC-23-607461 (Cal. Super. Ct., S.F. Cty.), Including arbitration proceedings for JAMS Arbitration Ref. No 5100001599, from July 5, 2023 to the Present. | N/A | Defendants do not intend to produce any documents in response to this Request. |

Defendants raise two, weak objections to producing these materials.

***First***, Defendants claim that these documents are irrelevant. *See* Armbrust Decl., Ex. H at 6. Not so. The allegations in the *Wachtell* Proceedings overlap substantially with the issues in this case. *See id.*, Ex. I (highlighted to show key allegations overlapping with issues in this case).

Here, Plaintiffs seek documents relevant to Musk's decision to terminate them for "cause" based in part on Twitter's decision to pay success fees to Wachtell, a matter that is also central to the *Wachtell* Proceedings. Defendant Lindsay Chapman and the Committee justified their decisions to ratify Musk's terminations of Plaintiffs for "cause" because Plaintiffs helped carry out the directives of the Twitter Board to pay Wachtell and other law firms' Board-approved fees for their work in defeating Musk's unlawful bid to renege on his agreement to buy Twitter. *See, e.g.*, Compl. ¶ 73 ("The sole basis for Chapman's 'cause' finding was that Plaintiffs purportedly committed 'gross negligence and willful misconduct' within the meaning of subsection (e), primarily because Twitter paid success fees to Wachtell [and other law firms] for their work in negotiating, litigating, and closing the acquisition."). The *Wachtell* Proceedings addressed the Twitter Board's decision to pay fees to Wachtell in connection with its work on the merger litigation, including X Corp.'s allegations in those proceedings that Plaintiffs engaged in a "spending spree" and violated their "fiduciary duties" in order to unjustly enrich Wachtell. Armbrust Decl., Ex. I at 1–2. In fact, X Corp. conceded in its complaint that it learned of the Wachtell fee and Plaintiffs' alleged conduct only "[f]ollowing the closing of the merger" and only after "initiat[ing] an investigation at Twitter." *Id.* at 19. X Corp.'s admissions in the *Wachtell* Proceedings bear directly on Plaintiffs' allegations here that

1  Musk, Chapman, and the Committee's purported reasons for "cause" are pretextual, and that Musk's
2  subjective intent in terminating Plaintiffs was unrelated to the primary reason that he now claims and
3  has enlisted the other individual Defendants to defend.
4        Given these significant overlaps between the *Wachtell* Proceedings and this action, it is
5  indisputable that the documents produced in that matter are highly likely to be relevant here.
6  Moreover, to the extent Defendants object based on relevance, the appropriate course of action is to
7  review the requested documents and produce the ones that are relevant to issues in this case – not to
8  categorically refuse to produce any of the requested materials.
9        ***Second***, Defendants object to production on the ground that the requested materials are
10 subject to a confidentiality order in the *Wachtell* Proceedings. *See* Armbrust Decl., Ex. H at 6. That
11 confidentiality order does not categorically bar production of those documents, nor could it. *See*
12 *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) (affirming decision
13 compelling production of confidential documents from a related arbitration, and noting that parties to
14 an arbitration cannot "'agree' that a stranger's resort to discovery under the Federal Rules of Civil
15 Procedure will be cut off"). Rather, the confidentiality order sets forth procedures for production: it
16 provides that if Defendants here are compelled to produce materials governed by the confidentiality
17 order, then Defendants must promptly notify the party to the *Wachtell* Proceedings who designated
18 the materials as confidential, notify this Court that the materials are subject to the confidentiality
19 order, and cooperate with the designating party whose materials may be affected. Armbrust Decl.,
20 Ex. J at 9. The designating party from the *Wachtell* Proceedings may also seek a protective order in
21 this case. *Id.* To the extent Defendants had a legitimate concern about that confidentiality order,
22 Defendants could have followed the procedures in that order. And while Defendants just recently
23 provided a copy of the confidentiality order to Plaintiffs' counsel, Wachtell informed Plaintiffs that
24 they do not object to the production of deposition and arbitration hearing testimony from the
25 *Wachtell* Proceedings subject to certain conditions which Plaintiffs would accept and agree to. *See*
26 Armbrust Decl. ¶ 10. Defendants' confidentiality objections thus are baseless and serve only to delay
27 production of relevant documents to which Plaintiffs are entitled. They come nowhere close to
28 carrying Defendants' burden to show a basis to withhold these documents.

### E. Plaintiffs' Interrogatory Regarding The Alter Ego Allegations Seeks Information Relevant To Plaintiffs' Claims.

Plaintiffs' Interrogatory No. 4 asked X Corp. to identify "individuals who were granted access to the headquarters of Twitter, received a Twitter or X Corp. email address, or received Twitter server credentials at any time between October 25, 2022 and December 31, 2022," to the extent those individuals were concurrently employees of other companies founded or operated by Musk, such as Tesla, SpaceX, X.AI Corp., The Boring Company, Neuralink Corp., or Excession, LLC. *See* Armbrust Decl., Ex. B at 5.

X Corp. has refused to provide a response, taking the position that it is the arbiter of what is relevant in discovery. *See, e.g.*, Armbrust Decl., Ex. H at 7. Despite Plaintiffs' repeated explanations why Interrogatory No. 4 is relevant to Plaintiffs' alter ego allegations, Defendants have insisted that they "see no reason for Plaintiffs' bizarre demand." *Id.* Nevertheless, Defendants claim they already provided information responsive to this interrogatory by identifying the "relevant witnesses in their Amended Initial Disclosures" and identifying "who was involved in the decision to terminate Plaintiffs' employment." *Id.*

Defendants' objections are insufficient to satisfy their heavy burden. Plaintiffs' Complaint contains detailed alter ego allegations, including that "[u]pon Musk's acquisition of Twitter, there was and continues to be such unity of interest and ownership between Twitter and Musk that there is no longer a separate corporate status among Musk, Twitter, and Twitter's successor X Corp.," and that "Musk regularly uses employees of his other companies to conduct Twitter business and has granted them access to Twitter's systems and records." Compl. ¶¶ 14–20. The alter ego allegations will ultimately matter for payment of any monetary relief: given Musk's role in acting as an alter ego for X Corp., just like he does for his other companies, it would be "inequitable and unjust to prevent Plaintiffs from recovering benefits and other remedies from Musk." *Id.* ¶ 20.

Given the relevance of this information to Plaintiffs' alter ego allegations and ultimately to the award of damages and the enforceability of that award, the Court should require X Corp. to respond to this interrogatory. *See, e.g.*, *Fluence Energy, LLC v. M/V BBC Finland*, No. 21-cv-01239-BEN-JLB, 2023 WL 4142008, at *4–6 (S.D. Cal. June 22, 2023) (compelling defendant's response

to interrogatory relevant to alter ego allegations, including allegations about "overlapping personnel," despite defendant's relevancy objection); *Lauter v. Rosenblatt*, No. 2:15-cv-08481-DDP (KSx), 2019 WL 4138020, at *15 (C.D. Cal July 1, 2019) (compelling response to plaintiff's alter ego discovery requests because the requests were relevant and proportionate to case and defendants demonstrated no "basis for precluding this discovery based on burden or expense").

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and issue an order compelling the above-requested discovery from Defendants.

Date: February 25, 2025

SIDLEY AUSTIN LLP

By: */s/ Sheila A.G. Armbrust*
    Sheila A.G. Armbrust

*Attorneys for Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett*