# Exhibit E



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 312 853 7146
CAROLINE.WONG@SIDLEY.COM

January 2, 2025

**Via Email**

Christopher Boran
Morgan, Lewis & Bockius LLP
110 North Wacker Drive
Chicago, IL 60606
christopher.boran@morganlewis.com

      Re:    *Agrawal v. Musk*, No. 3:24-cv-1304 (N.D. Cal.) – Deficiency Letter Regarding Defendants' Discovery Responses

Dear Chris:

      Following up on our meet-and-confer on December 30, 2024, I write on behalf of our clients Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett regarding the deficiencies in Defendants' responses to Plaintiffs' First Request for Production of Documents to Defendants ("RFPs") and Plaintiffs' First Set of Interrogatories to Defendant X Corp. (the "Interrogatories").

      As you acknowledged during our meet-and-confer, Plaintiffs have a right to discovery beyond the administrative record. In particular, as to their claims under Section 502(a)(1)(B) of ERISA, Plaintiffs have a right to discovery regarding procedural irregularities and conflicts of interest in the claims administration process, including as described in the Complaint. *See, e.g.*, *Abatie v. Alta Health Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006). In addition, as to their claim under Section 510 of ERISA, Plaintiffs have a right to discovery on Defendant Elon Musk's and Defendant X Corp.'s intent and motivations in terminating Plaintiffs' employment, and on whether their stated bases for terminating Plaintiffs' employment were unfounded or were otherwise pretext for interfering with Plaintiffs' rights to attain benefits under the Plans.[1]

      Although Plaintiffs have a right to discovery on these matters, Defendants have responded to many of Plaintiffs' requests by proposing to provide discovery on an improperly narrow set of topics, by stating that they will not produce documents beyond the administrative record, or by refusing to provide any documents or information whatsoever. Those responses are unacceptable. Below we provide further detail regarding these deficiencies. We ask that Defendants amend their responses to remedy these deficiencies or otherwise provide their position on the below-referenced requests no later than January 10, 2025, including to allow

---

[1] Capitalized terms that are not defined in this letter have the meanings set forth in Plaintiffs' RFPs and Interrogatories.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships.

**SIDLEY**

January 2, 2025
Page 2 of 7

sufficient time for the parties to evaluate Defendants' proposed search terms and custodians in light of Defendants' position at that time.

**Requests For Production**

*RFP Nos. 1–6.* First, Defendants proposed producing only a subset of documents in response to RFP Nos. 1–6, limited to topics that are much narrower than those on which Plaintiffs have a right to take discovery. Indeed, those RFPs seek documents that are fundamental to the key issues in this case. Plaintiffs ask that Defendants reconsider their responses to these requests, as follows:

- **RFP No. 1** requests "Communications between or among Elon Musk and/or any member(s) of the Committee." In response, Defendants have offered to produce such communications only to the extent that they specifically concern Plaintiffs' terminations from Twitter, Plaintiffs' claims for benefits under the Plans, and Plaintiffs' appeal. That response is insufficient. At a minimum, all communications between Musk and the three Committee members are relevant to the Section 502(a)(1)(B) claims because they show whether the Committee members had a conflict of interest arising from their relationships with Musk. Nevertheless, Plaintiffs are willing to narrow RFP No. 1 in the interest of compromise to seek all Communications between or among Elon Musk and/or any member(s) of the Committee that relate to any Plaintiff, to either of the Plans, and/or to their service on the Committee. Please let us know if Defendants are amenable to this compromise.

- **RFP No. 2** seeks "Communications between Elon Musk and any other Defendant Concerning Plaintiffs." Those communications are relevant to the claims because they show Musk's views about Plaintiffs, including whether he had any bias toward them, whether he intended to interfere with their rights to attain benefits under the Plans, and whether his stated reasons for terminating their employment were legitimate or instead were pretextual. Thus, as with RFP No. 1, Defendants' offer to produce these communications only to the extent they specifically concern Plaintiffs' terminations from Twitter, Plaintiffs' claims for benefits under the Plans, and Plaintiffs' appeal is insufficient. We acknowledge that RFP No. 2 overlaps with RFP No. 1. If Defendants are amenable to the compromise proposed above with regard to RFP No. 1, Plaintiffs agree that the documents produced in response to RFP No. 1 will be sufficient to discharge Defendants' obligations to produce documents in response to RFP No. 2.

- **RFP No. 3** seeks "Documents and Communications between Elon Musk and any director or executive of Twitter relating to any Plaintiff, at any time prior to October 27, 2022." In response, Defendants have proposed producing only "communications dated January 31, 2022-October 27, 2022 between Elon Musk and any individual who was a member of Twitter's Board of Directors or Staff (as that term was used by Twitter) as of October 26, 2022, concerning Plaintiffs' terminations from Twitter." Defendants' proposal is too narrow because it would exclude communications generally concerning Musk's views of

**SIDLEY**

January 2, 2025
Page 3 of 7

Plaintiffs. Such communications are relevant because they show whether Musk was biased against Plaintiffs, and whether he intended to interfere with their right to attain benefits under the Plans. In addition, Defendants' proposal would exclude communications concerning Plaintiffs' job performance at Twitter, which are relevant because they show whether the purported bases for Plaintiffs' terminations were pretextual. Accordingly, we ask Defendants to reconsider their response, and to at a minimum produce all communications from January 31, 2022 to October 27, 2022 between Elon Musk and any director or executive of Twitter relating to any Plaintiff.

- **RFP No. 4** seeks "Communications to or from Elon Musk regarding Plaintiffs' job performance at Twitter." Defendants have essentially refused to produce documents in response to this Request. They "refer Plaintiffs to the documents that will be produced in response to Requests No. 1 and 3"—yet Defendants have not proposed producing any documents relating to Plaintiffs' job performance in their responses to RFP Nos. 1 and 3. In addition, the documents that Defendants have proposed producing in response to RFP Nos. 1 and 3 are insufficient to respond to RFP No. 4 for the additional reason that they do not include communications between Musk and any individuals other than the Committee members and certain Twitter directors and personnel. Such documents are relevant because they show whether the purported bases for Plaintiffs' terminations were pretextual. We ask Defendants to reconsider their response to RFP No. 4 and produce all communications to or from Musk regarding Plaintiffs' job performance at Twitter.

- **RFP No. 5** seeks "Communications to or from Elon Musk regarding Plaintiffs' termination from Twitter." Defendants' response to this request is circular and nonsensical Defendants agreed only to produce communications concerning Plaintiffs' terminations "between Elon Musk and the individual(s) identified in Defendant X Corp.'s response to Interrogatory No. 2"—yet the only individual identified in response to that Interrogatory is Musk himself. In addition, the documents that Defendants have proposed producing in response to RFP Nos. 1 and 3 are insufficient to respond to RFP No. 5, as they do not include communications between Musk and any individuals other than the Committee members and certain Twitter directors and personnel. We ask Defendants to reconsider their response to RFP No. 5 and produce all communications to or from Musk regarding Plaintiffs' terminations from Twitter.

- **RFP No. 6** seeks "Communications of Elon Musk and/or his counsel with Plaintiffs regarding disclosure of his ownership stake in Twitter with the Securities and Exchange Commission." In response, Defendants stated that such documents are irrelevant and that they therefore will not produce any documents in response to this request. But the Complaint alleges that Musk has expressed animus toward Plaintiff Vijaya Gadde, including in connection with communications she had with Musk's counsel in March 2022 regarding Musk's failure to comply with SEC disclosure requirements regarding his ownership stake in Twitter. *See* Dkt. 58, Compl. ¶¶ 116–18. Musk's and his counsel's communications with Plaintiffs regarding this issue are therefore relevant to show Musk's bias toward Gadde, intent to deprive Gadde of her right to attain severance

# SIDLEY

January 2, 2025
Page 4 of 7

    benefits, and the pretextual nature of his stated reasons for terminating her employment at Twitter. We ask Defendants to reconsider their response and produce documents responsive to RFP No. 6.

    ***RFP Nos. 7–8.*** Defendants have objected to RFP Nos. 7–8 based in part of their assertion that the Plans are "top hat" plans. As discussed, Plaintiffs disagree. The Plans are not "top hat" plans, the fiduciary exception to the attorney-client privilege applies, and Plaintiffs are entitled to receive the documents responsive to their requests that fall within that exception – that is, documents reflecting requests for or provision of legal advice to Plan fiduciaries acting in their fiduciary capacities. *See, e.g.*, *Grigg v. Griffith Co.*, 2014 WL 109495, at *4 (E.D. Cal. Jan. 10, 2014) (noting that "'top hat plans' are a rare subspecies" and rejecting argument that plan was a "top hat plan").

    During our meet-and-confer, you said that Defendants may be open to considering a potential compromise with regard to the fiduciary exception to the attorney-client privilege, similar to the compromise that the parties have reached regarding documents from the administrative record that Defendants had previously withheld or redacted on the basis of attorney-client privilege. To that end, Plaintiffs propose the following compromise with regard to the documents requested in RFP Nos. 7–8:

- Defendants will produce all documents that are responsive to RFP Nos. 7–8, including any documents reflecting requests for or provision of legal advice to Musk or to any Committee member in connection with any authority, control, or responsibility that Musk or any Committee member has with regard to management, administration, or assets of either Plan.

- By January 31, 2025, Defendants will provide a complete privilege log of documents responsive to any of Plaintiffs' RFPs that Defendants are withholding based on a claim of privilege.

- In exchange, Plaintiffs will agree that they will not argue in this case or in any other proceeding that Defendants' production of these documents effects any waiver of privilege beyond the particular documents themselves for use in this litigation only.

- Plaintiffs' agreement under this proposal shall not be deemed a waiver or other limitation of their ability to later challenge any other claims of privilege that any Defendant may assert in this case, and Defendants will not argue that Plaintiffs' agreement creates any such waiver or limitation.

Please let us know whether Defendants are amenable to this proposal.

    ***RFP Nos. 11, 14, 15, 23, 24, 27, 29.*** In response to many other RFPs, Defendants have objected on the grounds that the RFP "seeks documents that are not relevant to any party's claims or defenses to the extent it seeks documents beyond the administrative record," and Defendants have stated that they will produce documents only from the administrative record.

# SIDLEY

January 2, 2025
Page 5 of 7

Those responses are improper. As you acknowledged during our meet-and-confer, as well as in the joint case management statement (*see* Dkt. 59 at 10), Defendants must produce at least some documents outside the administrative record in this case, including documents relevant to procedural irregularities, conflicts of interests, and the Section 510 claim. In particular, the RFPs for which Defendants provided such a response are relevant as follows:

- **RFP No. 11** seeks "Documents and Communications relied upon by experts retained by the Committee (Including Steven Tasher and Jonathan Foster) in forming their expert opinions." These documents are relevant to the Committee's process and any procedural irregularities in their consideration of Plaintiffs' claims for benefits and their appeal, and not all of them are included in the administrative record. For example, we understand that Tasher relied upon his review of invoices in forming his opinions, yet the invoices have not been produced; Defendants have produced a summary of invoices that Tasher created and attached as an exhibit to his report, but not all of the invoices themselves.

- **RFP No. 14** seeks "Documents and Communications regarding Plaintiffs' claims or claim appeal." Such documents are relevant to procedural irregularities and conflicts of interests in the claims administration process.

- **RFP No. 15** seeks "agendas, minutes, and materials for each meeting of the Committee during the Relevant Period." Such documents are relevant to procedural irregularities and conflicts of interest in the claims administration process. To the extent that Defendants are concerned about privacy, confidentiality, or proprietary interests of third parties implicated by production of these documents, those matters can be addressed through a protective order.

- **RFP No. 23** seeks "[a]ll Documents Plaintiffs requested from X Corp. on June 28, 2023," including invoices and other specific documents or categories of documents relating to legal services fees in connection with the negotiation, litigation, and close of Musk's acquisition of Twitter. Those documents are relevant because Defendants have claimed that Plaintiffs' terminations were justified by their approval of such fees. Nevertheless, Defendants have yet to offer to produce any documents in response to this request.

- **RFP No. 24** seeks "Documents and Communications Concerning any reason Elon Musk, or the Committee, has given as cause for Plaintiffs' terminations from Twitter." Such documents are relevant to procedural irregularities and conflicts of interest in the claims administration process. In addition, they are relevant to the Section 510 claim, which turns on Musk's and X Corp.'s intent in terminating Plaintiffs' employment from Twitter, and on whether their asserted reasons for the terminations are pretextual.

- **RFP No. 27** seeks "Documents and Communications relating to the decision of the Compensation Committee of the Twitter Board of Directors in or around May 2022 to add participants to the 2014 Plan, the 2017 Plan, or any other plan." These are relevant because the Committee asserted in denying Plaintiffs' appeal that one basis for the denial

was Plaintiffs' purported failure to "stop other executives from urging the Compensation Committee [of the Twitter Board] to add new participants to the Plan" in May 2022. Compl. ¶ 95. Plaintiffs had no opportunity to address this issue during the claims administration process because no Defendant ever raised it as a basis for Plaintiffs' terminations or denial of their claims until the Committee issued its denial of Plaintiffs' appeal—one of many examples of procedural irregularities in the claims administration process. Plaintiffs have a right to take discovery on this issue. *See, e.g.*, *Abatie*, 458 F.3d at 973 (finding that plan administrators violate ERISA when they "tack[] on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level").

- **RFP No. 29** seeks "Documents or Communications relating to the decisions of the Transactions Committee or the Twitter Board of Directors to retain and/or remit payment to counsel to represent Twitter in matters related to the acquisition of Twitter by Elon Musk." These documents are relevant because Defendants have cited the approval of these payments as a basis for Plaintiffs' terminations.

We ask Defendants to reconsider their position on these RFPs and to produce documents outside the administrative record in response to them.

*RFP No. 31.* Defendants have refused to produce any documents in response to RFP No. 31, which seeks testimony and documents produced by any Defendant in connection with *X Corp. v. Wachtell, Lipton, Rosen & Katz*, No. CGC-23-607461 (Cal. Super. Ct., S.F. Cty.) (the "*Wachtell* Proceedings"). As discussed during our meet-and-confer, the issues in the *Wachtell* Proceedings overlap substantially with the issues in this case, as is evident from the face of the complaint in those proceedings. We ask Defendants to reconsider their position and produce documents in response to RFP No. 31. We understand that Defendants are evaluating their position on this request, including in light of potential confidentiality considerations.

*Time period.* As we have explained, the relevant period for Plaintiffs' RFPs is the period beginning November 1, 2021, which is approximately one month before Plaintiff Parag Agrawal became the CEO of Twitter, and ending February 28, 2024, which is the date of the Committee's last production to Plaintiffs in connection with the claims administration process. We understand that Defendants object to both the start and end dates of that period. In the interest of compromise, Plaintiffs are willing to treat the relevant period as beginning on January 31, 2022, if Defendants agree to treat the relevant period as ending on February 28, 2024. Please let us know whether Defendants are amenable to that compromise.

**Interrogatories**

Defendant X Corp. has not provided any response to Interrogatory Nos. 4, 6, or 9, each of which seeks information relevant to Plaintiffs' claims. In particular, Interrogatory No. 4 seeks certain information regarding individuals associated with Twitter who also had associations with other companies founded or operated by Musk, which is relevant to Plaintiffs' alter ego allegations; Interrogatory No. 6 seeks information regarding professional services provided to the

**SIDLEY**

January 2, 2025
Page 7 of 7

Plans, which in turn is relevant to the Committee's process in evaluating Plaintiffs' claims for benefits and appeal; and Interrogatory No. 9 seeks certain information regarding hours billed, number of timekeepers, and total costs billed for certain legal services received by Musk and X Corp., which is relevant to the reasonableness of legal services fees and thus relates to one of the purported grounds for termination of Plaintiffs' employment from Twitter.

  In addition, Defendant X Corp.'s responses to Interrogatory Nos. 2 and 3 are inadequate. Interrogatory No. 2 requests information about individuals "who were *involved* in the decision to terminate any Plaintiffs' employment from Twitter"—yet X Corp. responded narrowly only with information regarding who the ultimate decisionmaker was. Likewise, Interrogatory No. 3 requests information regarding individuals "who were *involved* in the review or denial of any Plaintiffs' claims for benefits"—yet X Corp. responded narrowly only with information about who had responsibility for deciding Plaintiffs' claims or their appeal.

  Plaintiffs ask Defendant X Corp. to address these deficiencies by responding to Interrogatory Nos. 4, 6, and 9, and amending its responses to Interrogatory Nos. 2 and 3, no later than January 10, 2025.

              Best regards,

              */s/ Caroline A. Wong*

              Caroline A. Wong