# Exhibit F

# Morgan Lewis

January 21, 2025

**Christopher Boran**
Partner
+1.312.324.1146
christopher.boran@morganlewis.com

**VIA E-MAIL**

Caroline A. Wong
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
caroline.wong@sidley.com

Re:   *Agrawal v. Musk*, et al., Case No. 3:24-cv-1304 (N.D. Cal.)
      Response to Plaintiffs' Letter Regarding Defendants' Discovery Responses

Dear Caroline:

We write in response to your January 2, 2025, letter ("Letter") addressing Defendants' responses to Plaintiffs' First Requests for Production of Documents to Defendants ("RFPs"), Plaintiffs' First Set of Interrogatories to Defendant X Corp. ("Interrogatories"), and our December 30, 2024, conference regarding the same.

Plaintiffs served 34 RFPs and 10 Interrogatories, many of which were incredibly broad in scope. At issue in the Letter, however, are only 16 RFPs and 5 Interrogatories. Thus, despite Plaintiffs' suggestion that Defendants' responses were "improperly narrow" and "unacceptable," the parties appear to agree more often than not on the appropriate scope of discovery in this matter.

Defendants appreciate Plaintiffs' offers of compromise in the Letter. While there remain some points of disagreement, we are hopeful that we can reach agreement on these topics. To that end, Defendants respond below to the discrete points raised in the Letter.

Please note that all of Defendants' offers to produce documents below are subject to the parties reaching an agreement on reasonable and appropriate ESI custodians and search terms. To aid in that process, we attach a spreadsheet reflecting a "hit count" of the searches Defendants have proposed based on their application to email/Slack ESI for all custodians other than Mr. Musk, for whom the hits apply only to emails. We have also generated a similar "hit count" for the proposed search terms Plaintiffs provided on January 17 (also attached), which include many irrelevant and overbroad search terms. The hit count confirms that Plaintiffs' proposed search terms are overbroad, burdensome, and unworkable. They hit on approximately 82% of *all* custodial data (over 440,000 unique documents), and when accounting for families, increases to over 90% of *all* custodial data (over 485,000 unique documents). Plaintiffs' terms do not result in a reasonable review universe and are untenable. If Plaintiffs intend to propose revised search terms for our consideration, we ask that you send us such terms by January 27, 2025.

**Morgan, Lewis & Bockius LLP**

110 North Wacker Drive
Chicago, IL  60606-1511          +1.312.324.1000

Caroline A. Wong
January 21, 2025
Page 2

**Requests for Production**

***Time Period.***  Defendants agree to Plaintiffs' proposal of January 31, 2022 – February 28, 2024, as the relevant time period for producing documents in response to Plaintiffs' RFPs.

**Revised RFP No. 1:**  Plaintiffs propose narrowing RFP No. 1 to "all Communications between or among Elon Musk and/or any member(s) of the Committee that relate to any Plaintiff, to either of the Plans, and/or to their service on the Committee."

**Response:**  Defendants object to Revised RFP No. 1 as overbroad, unduly burdensome, disproportionate to the needs of this case, and seeking documents that are not relevant to any party's claims or defenses in this case.  Defendants also object to Revised RFP No. 1 to the extent it seeks documents protected from disclosure by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving our original objections and those above, Defendants agree to conduct a reasonable search for, and produce on a rolling basis, non-privileged documents responsive to Revised RFP No. 1.[1]

**Revised RFP No. 2:**  Plaintiffs propose that "[i]f Defendants are amenable to the compromise proposed above with regard to RFP No. 1, Plaintiffs agree that the documents produced in response to RFP No. 1 will be sufficient to discharge Defendants' obligations to produce documents in response to RFP No. 2."

**Response:**  Subject to and without waiving our original objections and those above, Defendants agree that their production of documents in Response to Revised RFP No. 1 will suffice to satisfy Plaintiffs' RFP No. 2.

**Revised RFP No. 3:**  Plaintiffs propose narrowing RFP No. 3 on temporal grounds only, such that it seeks "all communications from January 31, 2022 to October 27, 2022 between Elon Musk and any director or executive of Twitter relating to any Plaintiff."

**Response:**  Defendants object to Revised RFP No. 3 as overbroad, unduly burdensome, disproportionate to the needs of this case, and seeking documents that are not relevant to any party's claims or defenses in this case.  Defendants also object to Revised RFP No. 3 as vague and ambiguous in its use of the phrase "any director or executive of Twitter."  Defendants further object to Revised RFP No. 3 to the extent it seeks documents in Plaintiffs' possession, custody, or control.

Subject to and without waiving our original objections and those above, Defendants are open to producing documents responsive to Revised RFP No. 3, so long as doing so does not impose an undue burden and expense and the parties reach agreement on the specific individuals who will comprise the "director[s] or executive[s] of Twitter."  Defendants attempted to do that in their original Response to RFP No. 3, by agreeing to search for and produce responsive communications between Mr. Musk and "any individual who was a member of Twitter's Board of Directors or Staff (as that term was used by Twitter) as of October 26, 2022."  However, based on our December 30,

---

[1] Please see the below discussion regarding Revised RFP Nos. 7 and 8 for further explanation of Defendants' position as to privileged documents.

Caroline A. Wong
January 21, 2025
Page 3

2024 conference, we understand Plaintiffs believe the term Staff, as the term was used at Twitter, is too vague.

For clarity, Defendants construe this Request as seeking communications with the following Twitter directors and executives:

- Parag Agrawal
- Mimi Alemayehou
- Leslie Berland
- Dalana Brand
- Nick Caldwell
- Egon Durban
- Sean Edgett
- Vijaya Gadde
- Robert Kaiden
- Omid Kordestani
- Martha Lane Fox
- Fei-Fei Li
- Sarah Personette
- Patrick Pichette
- David Rosenblatt
- Ned Segal
- Jay Sullivan
- Bret Taylor

With this clarification, Defendants will agree to search for and produce, on a rolling basis, reasonably available communications dated January 31, 2022-October 27, 2022, between Mr. Musk and any of the above individuals concerning the quality of Plaintiffs' job performance at Twitter. Let us know if Plaintiffs agree to this proposal.

**RFP No. 4:** Plaintiffs do not propose narrowing RFP No. 4 in any way. Rather, Plaintiffs continue to seek "all communications to or from Musk regarding Plaintiffs' job performance at Twitter."

**Response:** RFP No. 4 is duplicative of Revised RFP Nos. 1, 2, and 3, except insofar as it seeks communications involving "individuals other than the Committee members and certain Twitter directors and personnel." This would render responsive *every* communication Mr. Musk ever received from *anyone* or sent to *anyone* that might bear on Plaintiffs' "job performance" at Twitter. This incredibly broad request conceivably encompasses wholly irrelevant communications including, for instance, uninvited communications Mr. Musk may have received from any individual regardless of their identity or the relevance of their knowledge or motivation.

For these reasons, and in light of Defendants' position as to Plaintiffs' Revised RFP Nos. 1, 2, and 3, Defendants cannot agree to search for and produce communications responsive to RFP No. 4 as currently drafted. In fact, Defendants believe that their agreement to Plaintiffs' Revised RFP Nos. 1 and 2 and their proposed agreement for RFP No. 3 should be sufficient to satisfy whatever inquiry Plaintiffs are attempting to undertake with RFP No. 4.

**RFP No. 5:** Plaintiffs do not propose narrowing RFP No. 5, continuing to request "all communications to or from Musk regarding Plaintiffs' terminations from Twitter."

Caroline A. Wong
January 21, 2025
Page 4

**Response:** RFP No. 5 seeks information that is largely, if not entirely, duplicative of Revised RFP Nos. 1, 2 and 3, except insofar as it seeks communications involving "individuals other than the Committee members and certain Twitter directors and personnel." Similar to RFP No. 4, RFP No. 5 is unreasonably broad in scope. Plaintiffs seek *every* communication that Mr. Musk ever received from *anyone* or ever sent to *anyone* that happens to reference (however obliquely) Plaintiffs' terminations from Twitter, regardless of whether such communication reflect Mr. Musk's opinions about Plaintiffs or the reasons for Plaintiffs' terminations. This overbroad request would encompass, for example, irrelevant and mundane communications such as a request to confirm the date of any Plaintiff's departure from Twitter or communications that even more obliquely reference a Plaintiff's termination.

If Plaintiffs are willing to narrow RFP No. 5 to more obviously relevant communications, then Defendants would be willing to consider such a request. But, as currently written, Defendants cannot agree to produce documents in response to RFP No. 5 beyond those that will be produced in response to Revised RFP Nos. 1, 2, and 3.

**RFP No. 6:** Plaintiffs appear unwilling to narrow RFP No. 6, continuing to request "all communications of Elon Musk and/or his counsel with Plaintiffs regarding disclosure of his ownership stake in Twitter with the Securities and Exchange Commission ('SEC')."

**Response:** Defendants maintain that RFP No. 6 seeks documents that are irrelevant to any party's claims or defenses in this action. Moreover, any communications with Plaintiffs would already be in Plaintiffs' possession, custody, or control. Accordingly, Defendants will not agree to produce documents in response to RFP No. 6.

**RFP Nos. 7 and 8:** The parties disagree on whether the Plan is a "top hat" plan exempt from ERISA's fiduciary provisions and, accordingly, exempt from the fiduciary exception to the attorney-client privilege. Plaintiffs propose that Defendants "produce all documents that are responsive to RFP Nos. 7-8" and Plaintiffs "will not argue in this case or in any other proceeding that Defendants' production of these documents effects any waiver of privilege beyond the particular documents themselves for use in this litigation only." Plaintiffs further propose that Defendants provide by January 31, 2025, "a complete privilege log of documents responsive to any of Plaintiffs' RFPs that Defendants are withholding based on a claim of privilege."

**Response:** Although Defendants are amenable to reaching agreement on this issue, we cannot agree to Plaintiffs' blanket proposal to produce "all documents that are responsive to RFP Nos. 7-8" regardless of privileged status and without reviewing each document for context, privilege, or work product protection. The evaluation of privilege and the potential applicability of the fiduciary exception (if it applies here) must be made on a document-by-document basis. Even if the fiduciary exception generally applies here (which it does not), that does not mean that every privileged document is subject to the fiduciary exception. Nor does Plaintiffs' proposal expressly include any agreement concerning the redaction or sealing of any disputed-privilege documents that are filed in the case (or otherwise shared with those other than Plaintiffs' counsel).

As for Plaintiffs' request for a "complete privilege log" by January 31, just three days ago Plaintiffs responded to Defendants' requests to provide proposed ESI custodians and ESI search terms. Given that, Defendants are unable to complete the ESI collection, search, review, and production process by January 31 or to provide a "complete privilege log of documents responsive to any of Plaintiffs' RFPs that Defendants are withholding based on a claim of privilege" by that date.

Caroline A. Wong
January 21, 2025
Page 5

Defendants will produce a privilege log within a reasonable time after we complete our ESI collection, review, and production process.

**RFP No. 11:** Plaintiffs reiterate their request for "all Documents and Communications relied upon by experts retained by the Committee (including Steven Tasher and Jonathan Foster) in forming their expert opinions," contending that "not all of them are included in the administrative record."

**Response:** Plaintiffs' contention is incorrect. As Defendants explained in their Response to RFP No. 11, "all of the documents listed in the 'Materials Relied Upon' section of Jonathan F. Foster's expert report and in the 'Documentation Reviewed and Relied Upon' section of the Steven A. Tasher expert report were included in the administrative record and produced to Plaintiffs during the administrative process." Those documents were again produced to Plaintiffs during the course of this litigation on December 9, 2024.

The only outstanding documents identified in the Letter are the "invoices" Plaintiffs claim Tasher relied on in forming his expert opinion. But Tasher's Report explicitly states that he relied on "[a]ll hourly and success fee invoices, *as set forth in Exhibit D*." Defendants produced Tasher's Exhibit D, and Plaintiffs have not identified any information missing from it.

Nevertheless, subject to and without waiving our original objections and those above, Defendants agree to produce copies of the invoices that form the basis of Tasher's Exhibit D.

**RFP No. 14:** Plaintiffs reiterate their request for "all Documents and Communications regarding Plaintiffs' claims or claim appeal," asserting that "such documents are relevant to procedural irregularities and conflicts of interests in the claims administration process."

**Response:** As a threshold matter, RFP No. 14 is largely (if not completely) duplicative of RFP Nos. 1, 7, and 8, which seek, respectively, all communications between or among Mr. Musk and/or the Committee "that relate to any Plaintiff," all communications to or from Mr. Musk "concerning Plaintiffs' benefits," and all communications to or from the Committee "concerning Plaintiffs' benefits." It is unclear what documents RFP No. 14 seeks beyond those that Defendants have agreed to produce in response to RFP Nos. 1, 7, and 8.

Further, merely asserting "procedural irregularities and conflicts of interests in the claims administration process" does not give Plaintiffs a right to obtain "all Documents and Communications regarding Plaintiffs' claim or claim appeal." *See, e.g., DelDebbio v. Walgreens Co.*, 2012 WL 707155, at *2 (N.D. Cal. Mar. 5, 2012) (discovery into alleged procedural irregularities is only permitted to the extent such irregularities "prevented the full development of the administrative record"); *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 626 (N.D. Cal. Feb. 12, 2010) ("Discovery must be narrowly tailored to reveal the nature and extent of the conflict, and must not be a fishing expedition."); *Walker v. Metro. Life Ins. Co.*, 2008 WL 426068, at *2 (N.D. Cal. Feb. 14, 2008) (discovery "must be narrowly tailored and cannot be a fishing expedition").

With respect to any alleged conflict, Revised RFP No. 1 appears to relate to Plaintiffs' theory that Mr. Musk exerted influence over the Committee members' process for evaluating and deciding Plaintiffs' appeals. *See* Letter at 2 ("[A]ll communications between Musk and the three Committee members are relevant to the Section 502(a)(1)(B) claims because they show whether the Committee members had a conflict of interest arising from their relationships with Musk"). RFP Nos. 7 and 8 similarly appear to encompass this theory. Plaintiffs have identified no other theory of conflict or explained

Caroline A. Wong
January 21, 2025
Page 6

why the production of documents responsive to Revised RFP Nos. 1, 7, and 8 does not thoroughly respond to Plaintiffs' alleged conflict.

With respect to procedural irregularities, Plaintiffs have not specifically identified or articulated how any alleged irregularity purportedly "prevented the full development of the administrative record." *DelDebbio*, 2012 WL 707155, at *2. In the Complaint, Plaintiffs allege two procedural irregularities.

First, Plaintiffs contend that the denial of the appeal based on their allowing the addition of new Plan participants during the standstill period under the Merger Agreement was "an entirely new and incorrect basis which Plaintiffs never had the chance to address." Compl. ¶ 95. That allegation is inaccurate. The claim denial letters clearly identified allowing for "the payment of excessive compensation outside of the ordinary course in apparent violation of the merger agreement" as a basis for denying Plaintiffs' claims. This conduct was not raised for the first time in response to Plaintiffs' appeals. Nor have Plaintiffs articulated what supposedly is missing from the administrative record concerning their conduct.

Second, Plaintiffs observe that the Committee relied on expert reports obtained to assist the Committee in evaluating expert reports Plaintiffs submitted in support of their appeals. Compl. ¶ 97. But this was hardly a procedural irregularity. It is entirely appropriate under ERISA for a plan administrator to obtain expert reports when evaluating claims or appeals, particularly when doing so is necessary to evaluate expert reports submitted in support of such claims or appeals. Had the Committee *not* done so, Plaintiffs would no doubt contend that the Committee did not reasonably evaluate their appeals by failing to appropriately consider their expert submissions with the aid of an appropriate expert in the field. In any event, as already discussed, the expert reports obtained by the Committee were fully disclosed, along with the materials the experts relied upon in preparing them, as part of the administrative record. Thus, even if Plaintiffs believe it is somehow "irregular" to utilize experts to help evaluate expert opinions, this is not an "irregularity" that prevented development of the administrative record.

Ultimately, it is Plaintiffs' burden to reasonably identify the procedural irregularities they seek to explore through discovery, which, in all events, "must be narrowly tailored." *Walker*, 2008 WL 426068, at *2. If Plaintiffs more appropriately tailor RFP No. 14 to the Complaint's alleged procedural irregularities, then Defendants will give further consideration to RFP No. 14. But, as currently written, Defendants cannot agree to search for and produce additional documents in response to RFP No. 14 beyond those necessary to respond to RFP Nos. 1, 7, and 8.

**RFP No. 15:** Plaintiffs reiterate their request for "the agendas, minutes, and materials for each meeting of the Committee during the Relevant Period" asserting that "such documents are relevant to procedural irregularities and conflicts of interests in the claims administration process."

**Response:** To be clear, Defendants have already produced documents responsive to RFP No. 15. Minutes and materials from the Committee meetings in which Plaintiffs' appeals were discussed—and which are part of the administrative record—were produced (again) on December 9, 2024. What remains are minutes and materials from Committee meetings where Plaintiffs *were not discussed and their appeals were not at issue*. Defendants do not understand how documents relating to Committee meetings involving different claimants are relevant to Plaintiffs' claims here. Nor is Plaintiffs' generic assertion that such materials are relevant to unidentified "procedural irregularities and conflicts of interests in the claims administration process" sufficient to justify the production of materials relating to other claimants.

Caroline A. Wong
January 21, 2025
Page 7

Accordingly, Defendants stand on their General and Specific Objections asserted in Defendants' Response to Plaintiffs' RFP No. 15, and cannot agree to produce any additional documents in response to RFP No. 15.

**RFP No. 23:** Plaintiffs reiterate their request for "all Documents Plaintiffs requested from X Corp. on June 28, 2023," asserting that "those documents are relevant because Defendants have claimed that Plaintiffs' terminations were justified by their approval of such [legal] fees."

**Response:** Plaintiffs' assertion that "Defendants have yet to offer to produce any documents in response to this request" is inaccurate. As Defendants explained, the "final transaction expenses spreadsheet" requested in RFP No. 23(a) was already produced to Plaintiffs as part of the administrative record. Additionally, the information contained in the law firm invoices requested in RFP No. 23(c) – (f) was produced in the form of Exhibit D to Tasher's Report. As noted in Defendants' Response to RFP No. 11 above, although duplicative, Defendants agree to produce copies of the invoices that form the basis of Tasher's Exhibit D, which satisfies RFP No. 23(c) – (f).

Thus, the only subparts in dispute are RFP No. 23(b) and (g) – (i), addressed in turn below.

> **Subpart 23(b):** Plaintiffs seek an "October 2022 email from Ms. Gadde to outside counsel forwarding Elon Musk's demand of nonpayment letter for advice; and counsel's response."
>
> **Response:** In our Response, Defendants explained that this Request is vague and ambiguous and fails to identify the date of the requested email or its intended recipients. Based on the vague description provided in RFP 23(b), Defendants have been unable to locate any responsive email. Although Defendants "invite[d] Plaintiffs to meet and confer regarding this Request," Plaintiffs have not provided any additional information concerning the email sought and, instead, merely reiterated the Request without further explanation. Defendants remain open to meeting and conferring regarding subpart (b) to better understand what, specifically, Plaintiffs are seeking and whether that purported email actually exists.
>
> **Subpart 23(g):** Plaintiffs seek "emails between Martin Korman and/or Twitter's outside counsel at Wilson Sonsini Goodrich & Rosati and Mr. Edgett regarding success fees for comparable deals from April 2022 through October 2022."
>
> **Response:** Again, Defendants invited Plaintiffs to meet and confer regarding this Request, which is vague and ambiguous in its use of the phrase "regarding success fees for comparable deals" and seeks information that is likely protected from disclosure by the attorney-client privilege and/or work product doctrine. At the parties' meet and confer, Plaintiffs did not raise this subpart or provide any additional context. Defendants remain open to meeting and conferring regarding subpart (g) to better understand what, specifically, Plaintiffs are seeking.
>
> **Subpart (h):** Plaintiffs seek "2015 and 2016 emails from Martin Korman and/or Twitter's outside counsel Wilson Sonsini Goodrich & Rosati regarding success fees for deal counsel in potential sale of Twitter."
>
> **Response:** Among other objections, Defendants objected to subpart (h) on the grounds that it is "temporally overbroad to the extent it seeks documents from 2015 and 2016 that bear no meaningful connection to Plaintiffs' claims in this matter." Defendants do not understand how documents pre-dating the transaction by 6 to 7 years that related to a completely different

Caroline A. Wong
January 21, 2025
Page 8

potential sale of Twitter could possibly be relevant here. Nor have Plaintiffs ever attempted to explain the relevance of these old emails. And Plaintiffs have already agreed that their RFPs are limited to January 31, 2022, to February 28, 2024. Defendants stand on their General and Specific Objections asserted in Defendants' Response to Plaintiffs' RFP No. 23.

**Subpart (i):** Plaintiffs seek "Mr. Edgett's notes from meetings with Elon Musk, Antonio Gracias, and others regarding Twitter's financials and technology on or around October 20, 2022."

**Response:** Subject to and without waiving our original objections, Defendants will agree to produce non-privileged documents that we understand to be responsive to this subpart.

**RFP No. 24:** Plaintiffs reiterate their request for "all Documents and Communications concerning any reason Elon Musk, or the Committee, has given as cause for Plaintiffs' terminations from Twitter," asserting that such documents "are relevant to procedural irregularities and conflicts of interest in the claims administration process" as well as "to the Section 510 claim."

**Response:** RFP No. 24 essentially seeks two tranches of documents and communications: (i) "all documents and communications concerning any reason [the Committee] has given as cause for Plaintiffs' terminations from Twitter," and (ii) "all documents and communications concerning any reason [Elon Musk] has given as cause for Plaintiffs' terminations from Twitter." Defendants address each in turn:

**Documents Concerning the Committee:** To start, the Committee members are not named defendants with respect to Plaintiffs' ERISA section 510 claim challenging their terminations. As for the ERISA section 502(a)(1)(B) claims, Plaintiffs contend that such materials "are relevant to procedural irregularities and conflicts of interests in the claims administration process." But, as explained above in Defendants' Response to RFP No. 14, conclusory assertions do not justify a fishing expedition into "all documents and communications concerning any reason [the Committee] has given as cause for Plaintiffs' terminations from Twitter," beyond those materials included in the administrative record. If Plaintiffs better tailor RFP No. 24 to the Complaint's alleged procedural irregularities or conflicts, then Defendants will give it further consideration.

**Documents Concerning Elon Musk:** With respect to "all documents and communications concerning any reason [Elon Musk] has given as cause for Plaintiffs' terminations from Twitter," Plaintiffs' conclusory assertion of conflict and procedural irregularities falls short for the reasons explained above. That said, Defendants understand Plaintiffs' position that documents and communications concerning the bases upon which Mr. Musk terminated Plaintiffs are relevant to their Section 510 claim.

Accordingly, subject to and without waiving our original objections and those above, Defendants agree to conduct a reasonable search for, and produce on a rolling basis, non-privileged documents relating to Plaintiffs' actions leading to their terminations for cause, as explained in Mr. Musk's January 10, 2024 declaration submitted during the administrative claim process.

**RFP No. 27:** Plaintiffs reiterate their request for "all Documents and Communications relating to the decision of the Compensation Committee of the Twitter Board of Directors in or around May 2022 to add participants to the 2014 Plan, the 2017 Plan, or any other plan." Plaintiffs contend such documents are relevant because "Plaintiffs had no opportunity to address this issue during the claims administration process."

Caroline A. Wong
January 21, 2025
Page 9

**Response:** At the outset, Plaintiffs' contention is inaccurate. The claim denial letters clearly identified allowing "the payment of excessive compensation outside of the ordinary course in apparent violation of the merger agreement" as a basis for denying Plaintiffs' claims. This conduct was not raised for the first time in response to Plaintiffs' appeals.

Regardless, Defendants have already produced the Twitter Compensation Committee meeting minutes (with attachments) and consent emails during the period in and around May 2022, which is part of the administrative record. We do not see a justification for searching for and producing additional documents beyond the administrative record, as any suggestion that Plaintiffs' conduct above was only raised in response to Plaintiffs' appeals is incorrect and does not suggest any "procedural irregularity" in the Plan's administrative process.

**RFP No. 29:** Plaintiffs reiterate their request for "all Documents or Communications relating to the decisions of the Transactions Committee or the Twitter Board of Directors to retain and/or remit payment to counsel to represent Twitter in matters related to the acquisition of Twitter by Elon Musk," asserting these documents "are relevant because Defendants have cited the approval of these payments as a basis for Plaintiffs' terminations."

**Response:** The actions of the Transactions Committee and/or the Twitter Board of Directors as they relate to the retention and/or payment of legal fees are irrelevant to the claims and defenses at issue in this case. Contrary to Plaintiffs' representation, it was not the Transactions Committee's or the Twitter Board's "approval of these payments" that served as a "basis for Plaintiffs' terminations." Rather, it was Plaintiffs' actions (or failures) in negotiating the excessive fees, approving invoices that failed to comply with Twitter's Billing Guidelines and/or firm-specific retention agreements, and accelerating payment of those excessive fees that led to their terminations.

Subject to and without waiving our original objections or those above, Defendants agree to search for and produce, on a rolling basis, documents responsive to RFP No. 29.

**RFP No. 31:** Plaintiffs reiterate their request for "all documents produced by any Defendant, and all deposition and arbitration testimony, in connection with the proceedings in *X Corp. v. Wachtell, Lipton, Rosen & Katz*, No. CGC-23-607461 (Cal. Super. Ct., S.F. Cty.), including arbitration proceedings for JAMS Arbitration Ref. No. 5100001599, from July 5, 2023, to the Present." Plaintiffs attempt to justify this overbroad and irrelevant request by claiming that "the issues in the *Wachtell* Proceedings overlap substantially with the issues in this case."

**Response:** This Request is overly broad insofar as it seeks "all documents produced by any Defendant" in the *Wachtell* arbitration, regardless of whether such documents are relevant to or relate at all to the parties, claims, or defenses in this case. X sued to recover the egregious fees that Plaintiffs paid Wachtell. Just because Plaintiffs were terminated for cause for allowing such payments to Wachtell does not render all documents in the *Wachtell* arbitration relevant here, much less justify requiring Defendants to reproduce the entire discovery record from the *Wachtell* arbitration, which involved different parties, legal claims, and theories. Defendants therefore cannot agree to produce "all documents produced by any Defendant" in the *Wachtell* arbitration at this time.

Subject to and without waiving our original objections or those above, Defendants agree to evaluate whether and to what extent documents and testimony from the confidential *Wachtel* arbitration may properly be produced in this case. After completing that analysis, we will be willing to meet and confer further on this topic.

Caroline A. Wong
January 21, 2025
Page 10

**Interrogatories**

**Interrogatory No. 2:**  Plaintiffs contend that Defendant X Corp.'s response to Interrogatory No. 2, which asks X Corp. to "identify any and all individuals. . . who were involved in the decision to terminate any Plaintiff's employment from Twitter," is deficient because "X Corp. responded narrowly only with information regarding who the ultimate decisionmaker was."

**Response:**  As previously objected, Interrogatory No. 2 is vague and overly broad (among other things).  The term "involved" in particular is subject to interpretation.  The response to this Interrogatory was therefore intended to convey that, other than legal counsel, Mr. Musk was the only person involved in making the decision to terminate Plaintiffs' employment from Twitter.  As Plaintiffs already know from documents in their possession, others may have been involved in ways that were immaterial to the decision, including for example in the transmission of termination letters.  With this clarification and in light of our prior objections, we do not see any reason for Plaintiffs' demand for an additional response to Interrogatory No. 2.

**Interrogatory No. 3:**  Plaintiffs contend that the response to Interrogatory No. 3, which asks X Corp. to "identify any and all individuals. . . who were involved in the review and/or denial of any Plaintiff's claims for benefits under the 2014 Plan or 2017 Plan," is deficient because "X Corp. responded narrowly only with information regarding who had responsibility for deciding Plaintiffs' claims or their appeal."

**Response:**  Here again, and as previously objected, Interrogatory No. 3 is vague and overly broad (among other things). The terms "involved" and "review" in particular are vague and subject to interpretation that only underscore the unnecessary breadth of this Interrogatory.  The response to this Interrogatory was therefore intended to convey that, other than counsel, only the Plan Administrator and the Committee were involved in reviewing and deciding Plaintiffs' benefits claims/appeals in this matter.  We also refer you to the administrative record, which reflects Morgan Lewis & Bockius LLP's role in assisting the Plan Administrator and Committee in its process for deciding Plaintiffs' claims and appeals.  With this clarification and in light of our prior objections, we do not see any reason for Plaintiffs' demand for an additional response to Interrogatory No. 3.

**Interrogatory No. 4:**  Plaintiffs maintain that Interrogatory No. 4, which asks X Corp. to "identify any and all individuals who were granted access to the headquarters of Twitter, received a Twitter or X Corp. email address, or received Twitter server credentials at any time between October 25, 2022 and December 31, 2022 who were concurrently employees of Tesla; X Corp.; The Boring Company; Excession, LLC; Neuralink Corp.; Space Exploration Technologies Corp. ('SpaceX'); X.AI Corp.; or any other company founded and/or operated by Elon Musk," is "relevant to Plaintiffs' alter ego allegations."

**Response:**   Defendant X Corp. is unclear which of Plaintiffs' allegations this Interrogatory purportedly relates to, much less the basis for its purported relevance to Plaintiffs' claims.  The phrase "alter ego" does not appear in Plaintiffs' Complaint, nor is it clear what, if any, allegations relate to this unspecified "alter ego" theory.  It is also  unclear what Plaintiffs mean by "alter ego" theory. Plaintiffs must provide further explanation to demonstrate the relevance of this Interrogatory.

**Interrogatory No. 6:**  Plaintiffs maintain that Interrogatory No. 6, which asks X Corp. to "identify any and all Persons who provided professional services to the 2014 Plan and/or 2017 Plan during

Caroline A. Wong
January 21, 2025
Page 11

the Relevant Time Period," is "relevant to the Committee's process in evaluating Plaintiffs' claims for benefits and appeal."

**Response:** It is unclear how the Plan's service providers are relevant to the claims and defenses at issue in this case, especially as service providers are without decision-making authority under the Plan and were not involved in the determination of Plaintiffs' claims and/or appeals. Regardless, subject to and without waiving our original objections and those above, Defendant refers Plaintiffs to the administrative record, which shows that Morgan Lewis provided legal services in connection with the Plan Administrator's and Committee's review and determination of Plaintiffs' claims for benefits.

**Interrogatory No. 9:** Plaintiffs maintain that Interrogatory No. 4, which asks X Corp. to "identify the hours billed, number of timekeepers, and total costs billed for each month from April through October 2022, inclusive, for services rendered to Elon Musk and/or X Corp. by outside law firms, including Skadden, Arps, Slate, Meagher & Flom and Quinn, Emanuel, Urquhart & Sullivan, related to the merger and acquisition of Twitter by X Corp.," is "relevant to the reasonableness of legal services fees and thus relates to one of the purported grounds for termination of Plaintiffs' employment from Twitter."

**Response:** Defendant X Corp. disagrees with Plaintiffs' contention. The legal fees incurred by Mr. Musk and/or X Corp. in connection with the merger and acquisition of Twitter are irrelevant to Plaintiffs' claims. Moreover, such information is protected from disclosure by the attorney-client privilege and/or work product doctrine. Even so, subject to and without waiving our original objections and those above, Defendant X Corp. will amend its response to this Interrogatory.

Regards,

*/s/ Christopher Boran*

Christopher Boran


c:	Sheila A.G. Armbrust (sarmbrust@sidley.com)
	David L. Anderson (dlanderson@sidley.com)
	Nicole M. Ryan (nicole.ryan@sidley.com)
	Sarah E. Gallo (sgallo@sidley.com)
	Chaddy Georges (cgeorges@sidley.com)