# Exhibit G

**SIDLEY**

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
+1 312 853 7000
+1 312 853 7036 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 312 853 7146
CAROLINE.WONG@SIDLEY.COM

January 27, 2025

**Via Email**

Christopher Boran
Morgan, Lewis & Bockius LLP
110 North Wacker Drive
Chicago, IL 60606
christopher.boran@morganlewis.com

Re:  *Agrawal v. Musk*, No. 3:24-cv-1304 (N.D. Cal.) – Defendants' Discovery Responses

Dear Chris:

We write in response to your January 21, 2025 letter regarding Defendants' responses to Plaintiffs' First Request for Production of Documents to Defendants ("RFPs") and Plaintiffs' First Set of Interrogatories to Defendant X Corp. (the "Interrogatories"), and in follow-up to my January 2, 2025 meet-and-confer letter and our December 30, 2024 meet-and-confer discussion regarding the deficiencies in Defendants' responses to the RFPs and Interrogatories.

It has been 80 days since Plaintiffs propounded discovery, and Defendants have yet to produce a single document outside the administrative record – despite having acknowledged that they are obligated to produce such documents. This is unacceptable delay. Please provide your final positions on the items discussed below by January 31, 2025, including confirming whether Defendants will produce the documents and answer the interrogatories at issue, so that we can promptly bring to the Court's attention any disputes that require judicial intervention.

**Requests for Production**

- **RFP No. 3** seeks "Documents and Communications between Elon Musk and any director or executive of Twitter *relating to any Plaintiff*, at any time prior to October 26, 2022." In their RFP response, Defendants proposed producing only "communications dated January 1, 2022-October 27, 2022 between Elon Musk and any individual who was a member of Twitter's Board of Directors or Staff . . . *concerning Plaintiffs' terminations from Twitter.*" In my January 2 letter, I explained that Plaintiffs were willing to narrow the time frame to January 1, 2022 – October 27, 2022 as Defendants proposed, but that Defendants' proposal was otherwise too narrow because it sought to limit the request to only communications specifically about *Plaintiffs' terminations from Twitter*. Thus, we asked that Defendants reconsider their response and, at a minimum "produce all communications from January 21, 2022 to October 27, 2022 between Elon Musk and any director or executive of Twitter *relating to any Plaintiff*."

# SIDLEY

January 27, 2025
Page 2 of 9

Your January 21 letter does not address this point. It says that Defendants are "open" to Plaintiffs' proposal so long as the parties reach agreement on the specific individuals who comprise the "director[s] and executive[s]" of Twitter; it then construes the Request as seeking communications with eighteen listed directors and executives. With this clarification, Defendants agree to produce "communications dated January 31, 2022 – October 27, 2022, between Mr. Musk and any of the above individuals *concerning the quality of Plaintiffs' job performance at Twitter.*" We agree that Defendants may construe the request as seeking communications with the directors and executives listed in your letter. However, Defendants may not limit their production to only communications concerning the quality of Plaintiffs' job performance.

Please confirm whether Defendants agree to produce all communications from January 21, 2022 to October 27, 2022 between Elon Musk and any of the listed directors and officers relating to any Plaintiff (including, but not limited to, communications concerning Plaintiffs' terminations or the quality of their job performance).

- **RFP Nos. 4 and 5.** RFP No. 4 seeks "Communications to or from Elon Musk regarding Plaintiffs' job performance at Twitter." RFP No. 5 seeks "Communications to or from Elon Musk regarding Plaintiffs' termination from Twitter." In their RFP responses, Defendants refused to produce any documents in response to these RFPs, instead referring to their responses to other RFPs. My January 2 letter explained the relevance of the requests and asked Defendants to reconsider their response.

   In your January 21 letter, Defendants continue to refuse to produce documents in response to RFP Nos. 4 and 5. However, these documents are relevant – indeed, they are central – to the claims in this case. Plaintiffs allege that Musk discharged them and falsely claimed that the termination was for "cause" for the specific purpose of interfering with their attainment of severance benefits, in violation of ERISA Section 510. Musk's communications regarding Plaintiffs' job performance and their termination from Twitter, including communications on these topics with his biographer Walter Isaacson, his attorney and associate Alex Spiro, his associate Antonio Gracias, employees of his family office Jared Birchall and Jenn Balajadia, and former Twitter CEO Jack Dorsey, go directly to this issue. Indeed, Isaacson, Musk's biographer, has publicly reported that Musk and Spiro bragged about terminating Plaintiffs for the specific purpose of interfering with their right to benefits, demonstrating Musk's wrongful intent. *See* Dkt. 58, Compl. ¶ 4.

   Your letter contends these RFPs are overbroad. They are not. The RFPs seek communications by and to a single person – Musk, one of the named defendants – on two issues that are central to Plaintiffs' claims. Your letter also contends that the production of documents in response to RFP Nos. 1 and 3 should suffice to excuse production here. Not so. Those requests are distinct – they seek communications between Musk and the severance committee members and Twitter's then-current directors and executives. They do not encompass Musk's communications with Isaacson, Spiro, Gracias, Birchall,

**SIDLEY**

January 27, 2025
Page 3 of 9

> Balajadia, Dorsey, or others regarding Plaintiffs' job performance or their termination from Twitter, which are highly relevant to Plaintiffs' claims.
>
> Please confirm whether Defendants maintain their refusal to produce documents in response to these requests or whether Defendants will produce the requested documents.

- **RFP No. 6** seeks "Communications of Elon Musk and/or his counsel with Plaintiffs regarding disclosure of his ownership stake in Twitter with the Securities and Exchange Commission." In response, Defendants claimed that the documents were irrelevant and said they would therefore not produce any documents in response to this request. My January 2 letter explained the relevance of the documents and asked Defendants to reconsider their response:

  > [T]he Complaint alleges that Musk has expressed animus toward Plaintiff Vijaya Gadde, including in connection with communications she had with Musk's counsel in March 2022 regarding Musk's failure to comply with SEC disclosure requirements regarding his ownership stake in Twitter. *See* Dkt. 58, Compl. ¶¶ 116–18. Musk's and his counsel's communications with Plaintiffs regarding this issue are therefore relevant to show Musk's bias toward Gadde, intent to deprive Gadde of her right to attain severance benefits, and the pretextual nature of his stated reasons for terminating her employment at Twitter.

  In your January 21 letter, Defendants continue to refuse to produce any documents in response to this request. Defendants reiterate their claim that the documents are irrelevant, but provide no explanation why and ignore Plaintiffs' detailed showing of relevance. Defendants also assert that "any communications with Plaintiffs would already be in Plaintiffs' possession, custody, or control," but this is not true. When Plaintiffs were terminated from Twitter on October 27, 2022, they lost access to all their Twitter email accounts and other Twitter documents. Thus, it is *Defendants* who have possession, custody, and control of Plaintiffs' communications.

  Please confirm whether Defendants maintain their refusal to produce documents in response to this request or whether Defendants will produce the requested documents.

- **RFP Nos. 7 and 8** seek "Communications to or from Elon Musk Concerning Plaintiffs' benefits under the 2014 Plan and/or the 2017 Plan, Including Communications with Alex Spiro of Emanuel Urquhart & Sullivan, LLP" and "Communications to or from any member(s) of the Committee Concerning Plaintiffs' benefits under the 2014 Plan and/or the 2017 Plan, Including Communications with Alex Spiro." In their RFP responses, Defendants agreed to produce responsive, non-privileged documents, but asserted that the Plans are "top hat" plans and that certain documents are privileged on that basis. As discussed during the parties' meet-and-confer on December 30 and in my January 2 letter, we disagree. The Plans are not "top hat" plans, the fiduciary exception to the

**SIDLEY**

January 27, 2025
Page 4 of 9

attorney-client privilege applies, and Plaintiffs are entitled to receive the documents responsive to their requests that fall within that exception – that is, documents reflecting requests for or provision of legal advice to Plan fiduciaries acting in their fiduciary capacities. We nevertheless proposed a compromise by which Defendants could produce any responsive documents that they claim would otherwise be protected from disclosure on the ground that the Plans are "top hot" plans without a waiver of privilege, comparable to the agreement the parties made with respect to the documents from the administrative record that Defendants had previously withheld or redacted on this basis.

In your January 21 letter, Defendants say that they are "amenable to reaching agreement on this issue," but cannot agree to "Plaintiffs' blanket proposal" to produce responsive documents without reviewing for privilege or work product. That was not the intent of our proposal; we recognized that Defendants might claim privilege over certain responsive documents irrespective of the "top hat" issue, in which case they must promptly list those documents on a privilege log.

To confirm, Plaintiffs will agree that Defendants may produce responsive documents they claim would otherwise be protected from disclosure on the ground that the Plans are "top hot" plans without a waiver of privilege, under the same conditions as the parties' prior agreement with respect to the administrative record, including that Plaintiffs will not argue that the production effects any waiver of privilege beyond the particular documents themselves for use in this litigation only and that the documents will be filed under seal. Please confirm whether Defendants agree to this proposal.

- **RFP No. 14** seeks "Documents and Communications regarding Plaintiffs' claims or claim appeal." In their response, Defendants said that they would produce only "the administrative records for Plaintiffs' Claims and Appeal." My January 2 letter explained why this was insufficient, as all documents sought by RFP No. 14 are relevant to procedural irregularities and conflicts of interest in the claims administration process, not only those reflected in the administrative record.

    Your January 21 letter does not dispute the relevance of the requested documents, or the fact that evidence outside the administrative record may be introduced to show conflicts of interest and procedural irregularities. Your letter nevertheless argues that the requests are not sufficiently narrowly tailored, and it points to two procedural irregularities alleged in the Complaint. While Defendants may dispute the number, scope, and gravity of procedural irregularities in this case, that dispute supports discovery on this issue, as recognized in one of the cases cited in your letter. *See DelDebbio v. Walgreens Co.*, 2012 WL 707155, at *2 (N.D. Cal. Mar. 5, 2012) (allowing depositions in an ERISA denial-of-benefits case and explaining that "[w]here the nature of the procedural violations is unclear, discovery is allowed to determine the correct standard of review"). We reiterate our position that Defendants must produce the documents requested in RFP No. 14. Alternatively, given Defendants' overbreadth objections, we would be willing to consider a counterproposal from Defendants. Please let us know if you have such a proposal or if

you refuse to produce any responsive documents beyond the administrative record.

- **RFP No. 15** seeks "the agendas, minutes, and materials for each meeting of the Committee during the Relevant Period." In response, Defendants agreed to produce only "the administrative records for Plaintiffs' Claims and Appeal." My January 2 letter explained the relevance of the requested documents, and further explained that any privacy concerns could be addressed through a protective order. Your January 21 letter says that some responsive documents have now been produced (namely, minutes and materials from the Committee meetings in which Plaintiffs' appeals were discussed), but acknowledges that Defendants have not produced minutes or materials from "Committee meetings where Plaintiffs were not discussed and their appeals were not at issue." These minutes and materials are potentially also relevant and should be produced, to the extent they involve discussions about the Committee's process generally, even if they were not dedicated specifically to Plaintiffs' appeals. In addition, Plaintiffs allege that Musk's refusal to pay Plaintiffs their benefits is part of a larger pattern of refusing to pay Twitter's former employees the benefits they are due, and that ten former Twitter executives (including Plaintiffs) have submitted claims for benefits under the Plans, which have all been denied, providing further evidence that Defendants are manufacturing cause after the fact simply to avoid paying Plaintiffs what they are owed. *See* Dkt. 58, Compl. ¶¶ 127–129. Thus, any meetings discussing the claims of these executives – who have filed suit against Musk and X Corp. to recover their benefits – are also relevant. We ask Defendants to reconsider their response to RFP No. 15 and produce the agendas, minutes, and materials for each meeting of the Committee during the Relevant period. Otherwise, please identify all Committee meetings for which Defendants are withholding documents and the topics of those meetings.

- **RFP No. 23** seeks "[a]ll Documents Plaintiffs requested from X Corp. on June 28, 2023," including invoices and other specific documents or categories of documents relating to legal services fees in connection with the negotiation, litigation, and close of Musk's acquisition of Twitter. Plaintiffs specifically remember receiving or writing some of these documents while employed by Twitter. These documents refute Defendants' claim that Plaintiffs committed gross negligence or willful misconduct, and they should have been produced during the administrative process. Defendants' response remains insufficient.

    o **RFP No. 23(b)** requests an "October 2022 email from Ms. Gadde to outside counsel forwarding Elon Musk's demand of nonpayment letter for advice; and counsel's response." Your January 21 letter says that Defendants have been unable to locate any responsive email to date, but remain open to meeting and conferring. Please let us know what steps Defendants have taken and will take to locate and produce these documents.

    o **RFP No. 23(g)** requests "emails between Martin Korman and/or Twitter's outside counsel at Wilson Sonsini Goodrich & Rosati and Mr. Edgett regarding success fees for comparable deals from April 2022 through October 2022." Your

**SIDLEY**

January 27, 2025
Page 6 of 9

> January 21 letter says that Defendants are open to meeting and conferring to better understand what Plaintiffs are seeking. As Edgett explained in his sworn declaration in support of Plaintiffs' appeal, approximately one or two months prior to closing, he asked Marty Korman from Wilson Sonsini for information regarding success fees for deal counsel in comparable circumstances, and Korman emailed him the requested information. Edgett Decl. ¶¶ 38, 50. The request seeks these documents. Please let us know what steps Defendants have taken and will take to locate and produce them.
>
> o **RFP No. 23(h)** requests "2015 and 2016 emails from Martin Korman and/or Twitter's outside counsel Wilson Sonsini Goodrich & Rosati regarding success fees for deal counsel in potential sale of Twitter." Your January 21 letter says that Defendants do not understand the relevance of such documents and refuse to produce them. The documents are relevant because Defendants have claimed that Plaintiffs' terminations were justified by their approval of success fees to the law firms involved in the negotiation, litigation, and close of Musk's acquisition of Twitter, and these are specific documents that Edgett received and relied on in making his recommendation to the Transactions Committee regarding the challenged success fees, as detailed in his declaration. *See* Edgett Decl. ¶ 50. Please confirm whether Defendants maintain their refusal to produce these documents or whether Defendants will search for and produce them.
>
> In addition, your January 21 letter incorrectly states that the final transaction expenses spreadsheet circulated to the Twitter Board of Directors on October 27, 2022 was produced to Plaintiffs as part of the administrative process. It was not. As Plaintiffs explained during the administrative process, and again in their Complaint, Defendants failed to produce this spreadsheet despite Plaintiffs' specific request for the document and Defendant Lindsay Chapman's representation that it had been produced. Plaintiffs were forced to obtain a copy of the spreadsheet from a former Board member, whose sworn declaration attaching the document Plaintiffs submitted in connection with their appeal. *See* Dkt. 58, Compl. ¶ 146.

- **RFP No. 24** seeks "Documents and Communications concerning any reason Elon Musk, or the Committee, has given as cause for Plaintiffs' terminations from Twitter." In their response, Defendants said that they would produce only the administrative record. My January 2 letter explained that the requested documents are relevant to, among other things, the Section 510 claim, which turns on Musk's and X Corp.'s intent in terminating Plaintiffs' employment from Twitter, and on whether their asserted reasons for the terminations are pretextual. Your January 21 letter agrees to produce "documents relating to Plaintiffs' actions leading to their terminations for cause, as explained in Mr. Musk's January 10, 2024 declaration submitted during the administrative claim process." This is insufficient. RFP No. 24 seeks documents concerning any *reasons* Musk has given for Plaintiffs' terminations, not documents concerning Plaintiffs' actions. Please confirm

whether you will produce documents concerning any reasons Musk has given as cause for Plaintiffs' termination from Twitter.

- **RFP No. 31.** Defendants initially refused to produce any documents in response to RFP No. 31, which seeks deposition and arbitration testimony and documents produced by any Defendant in connection with *X Corp. v. Wachtell, Lipton, Rosen & Katz*, No. CGC-23-607461 (Cal. Super. Ct., S.F. Cty.) (the "*Wachtell* Proceedings"). As discussed during the parties' meet-and-confer and reiterated in my January 2 letter, these materials are clearly relevant, as the issues in the *Wachtell* Proceedings overlap substantially with the issues in this case, as is evident from the face of the complaint in those proceedings. Your January 21 letter states that Defendants agree to evaluate whether and to what extent documents and testimony from the *Wachtell* Proceedings may properly be produced in this case, and that "[a]fter completing that analysis, [Defendants] will be willing to meet and confer further on this topic." This is an insufficient response. Defendants have had more than two and a half months to evaluate this issue since Plaintiffs served their RFPs.

  The materials are plainly discoverable, and we ask that you produce them promptly. They are relevant to Plaintiffs' claims, and the existence of a confidentiality agreement in the *Wachtell* Proceedings does not bar their production. We expect that any such confidentiality agreement permits disclosure in response to a subpoena or other legal process; at a minimum, we ask that you promptly produce a copy of the confidentiality agreement. Moreover, even where a confidentiality agreement purports to prevent disclosure, courts have recognized third parties' right to discovery into arbitration materials. In *Gotham Holdings, LP v. Health Grades, Inc.*, for instance, the plaintiff moved to compel production of confidential arbitration documents. 580 F.3d 664, 665–66 (7th Cir. 2009). The court concluded that even if a confidentiality agreement blocked disclosure, such a provision would be ineffectual since "[c]ontracts bind only the parties." *Id*. at 665. "[N]o one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off," because a party's "preference for secrecy does not create a legal bar to disclosure." *Id.*; *see also Moser v. Health Ins. Innovations, Inc.*, 2019 WL 2996950, at *4–5 (S.D. Cal. July 8, 2019) (applying *Gotham*'s reasoning to require production of confidential settlement agreements); *In re Application of O'Keeffe*, 2016 WL 2771697, at *4 (D. Nev. Apr. 4, 2016) (citing multiple cases supporting that confidentiality agreements do not bar production of relevant information in response to legal process). If Defendants are concerned about confidentiality, they may designate materials from the *Wachtell* Proceedings as Confidential pursuant to the parties' Protective Order in this case.

  Please confirm whether you will produce the *Wachtell* Proceedings materials responsive to RFP No. 31.

- **Scope of January 21 Agreement.** In your January 21 letter, Defendants agree to produce additional documents in response to a number of RFPs, but say that their agreement to produce such documents "is subject to the parties reaching an agreement on reasonable

**SIDLEY**

January 27, 2025
Page 8 of 9

and appropriate ESI custodians and search terms." These are separate issues, and Defendants may not condition their agreement to produce documents on Plaintiffs' agreement to a specific list of search terms or custodians.

- **Privilege Log.** Your January 21 letter says that Defendants will provide a privilege log "within a reasonable time after we *complete* our ESI collection, review, and production process." This is not acceptable. Defendants must promptly produce – and log – responsive documents on a rolling basis as they are identified. This is necessary for the parties to identify, try to resolve, and, if necessary, seek judicial intervention regarding any privilege disputes – for instance, disputes over communications with Alex Spiro, which Plaintiffs believe are not privileged, including because privilege has been waived. Please confirm whether Defendants will promptly provide privilege logs on a rolling basis as responsive, privileged documents are identified.

**Interrogatories**

- **Interrogatory No. 4** seeks certain information regarding individuals associated with Twitter who also had associations with other companies founded or operated by Musk – namely, the identity of individuals from these other companies who were granted access to Twitter headquarters, received a Twitter or X Corp. email address, or received Twitter server credentials at any time between October 25, 2022 and December 31, 2022. Defendant X Corp. ("Defendant") refused to answer this interrogatory in its responses. My January 2 letter explained that the request is relevant to Plaintiffs' alter ego allegations and asked Defendant to respond to the interrogatory by January 10. Instead, in your January 21 letter, Defendant says it does not understand what Plaintiffs mean by "alter ego" and refuses to answer the interrogatory on this basis.

    Plaintiffs' Complaint contains an entire section on Plaintiffs' alter ego allegations, including that "[u]pon Musk's acquisition of Twitter, there was and continues to be such unity of interest and ownership between Twitter and Musk that there is no longer a separate corporate status among Musk, Twitter, and Twitter's successor X Corp. . . . Musk regularly uses employees of his other companies to conduct Twitter business and has granted them access to Twitter's systems and records . . . . It would be inequitable and unjust to prevent Plaintiffs from recovering benefits and other remedies from Musk, who is personally responsible for and will individually benefit from the acts of X. Corp." Dkt. 58, Compl. ¶¶ 14 –20. The information sought by Interrogatory No. 4 is directly relevant to these allegations.

    Please confirm whether Defendant maintains its refusal to answer this interrogatory or whether it will answer the interrogatory and, if so, by what date.

- **Interrogatory No. 9** asks Defendant to identify the hours billed, number of timekeepers, and total costs billed for each month from April through October 2022 for services rendered to Musk and/or X Corp. by outside law firms, including Skadden and Quinn

**SIDLEY**

January 27, 2025
Page 9 of 9

Emanuel, related to the merger and acquisition of Twitter. Defendant refused to answer the interrogatory, claiming that the legal expenses incurred by the buyers in connection with the acquisition are irrelevant. My January 2 letter explained that the information is relevant to the reasonableness of legal services fees and thus relates to one of the purported grounds for termination of Plaintiffs' employment from Twitter. Your January 21 letter maintains your objections but says that "Defendant X Corp. will amend its response to this Interrogatory," without stating how.

Please confirm whether Defendant will substantively answer this interrogatory by providing the information requested, and by what date.

Best regards,

*/s/ Caroline A. Wong*

Caroline A. Wong