# Exhibit H

# Morgan Lewis

February 4, 2025

**Christopher Boran**
Partner
+1.312.324.1146
christopher.boran@morganlewis.com

**VIA E-MAIL**

Caroline A. Wong
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
caroline.wong@sidley.com

Re:     *Agrawal v. Musk*, Case No. 3:24-cv-1304 (N.D. Cal.)
        <u>Response to Plaintiffs' January 27 Letter Regarding Defendants' Discovery Responses</u>

Dear Caroline:

We write in response to your January 27, 2025, letter ("Letter") addressing Defendants' responses to Plaintiffs' First Requests for Production of Documents to Defendants ("Request(s)" or "RFP(s)"), Plaintiffs' First Set of Interrogatories to Defendant X Corp. ("Interrogatories").

Based on your Letter, the parties have reached agreement on or resolved Request Nos. 1, 2, 11, 23(i), 27, and 29, and Interrogatory Nos. 2, 3 and 6, which were previously in dispute. The parties have also agreed on the relevant time period of January 31, 2022 – February 28, 2024 for producing documents responsive to the Requests. Below we address the Requests and Interrogatories that remain in dispute.

As indicated in our prior correspondence, Defendants' agreement to produce the documents addressed below (and in our formal responses to Plaintiffs' requests and earlier letter) remains subject to the parties reaching agreement on reasonable and appropriate ESI custodians and search terms, as the significant majority of documents Plaintiffs are seeking through the Requests will be ESI.  Although you contend these are two "separate issues," ESI search term discussions are part and parcel of the ESI review and production process, as recognized in the Court's ESI Guidelines. Not only do search terms define the scope of this process, but they bear on reasonableness and proportionality. The issues should not be considered in a vacuum without assessing one's impact on the other.

## Requests for Production

**Revised RFP No. 3:**  Plaintiffs have agreed to the list of directors and executives set forth in Defendants' January 21 letter. Plaintiffs continue to seek "all communications from January 31, 2022 to October 27, 2022 between Elon Musk" and these specific directors and executives "relating to any Plaintiff."

**Morgan, Lewis & Bockius LLP**

110 North Wacker Drive
Chicago, IL  60606-1511          +1.312.324.1000

Caroline A. Wong
February 4, 2025
Page 2

**Response:**  Although Defendants continue to believe that this Request is overbroad, subject to and without waiving our prior objections, Defendants agree to search for and produce, on a rolling basis, reasonably available communications within X Corp.'s possession, custody, and control dated January 31, 2022-October 27, 2022, between Mr. Musk and any of the specific directors and executives set forth in Defendants' January 21 letter that refer to any of the Plaintiffs, assuming that Plaintiffs agree to Defendants' narrowed RFP Nos. 4 and 5, discussed immediately below.

**RFP Nos. 4 and 5:**  Plaintiffs continue to seek "all communications to or from Musk regarding Plaintiffs' job performance at Twitter" and "all communications to or from Musk regarding Plaintiffs' terminations from Twitter."

**Response:**  Plaintiffs fail to explain how these two Requests are not duplicative or seek documents that will be captured by the searches Defendants have already agreed to conduct in response to other Requests. Instead, Plaintiffs attempt to justify propounding Request Nos. 4 and 5 by identifying specific individuals with whom they allege Musk communicated about Plaintiffs' job performance and terminations: Walter Isaacson, Alex Spiro, Antonio Gracias, Jared Birchall, Jehn Balajadia, and Jack Dorsey. Based on this additional information, it appears that these Requests are aimed at Mr. Musk's communications with these particular individuals, and in an effort to compromise, Defendants are willing to agree to narrowed requests focused on such communications. Thus, subject to and without waiving our prior objections, Defendants will agree to search for and produce, on a rolling basis, reasonably available non-privileged communications X Corp.'s possession, custody, and control between Musk and these six individuals relating to Plaintiffs' job performance at Twitter and Plaintiffs' terminations from Twitter.

**RFP No. 6:** Plaintiffs clarify that this Request, which seeks "all communications of Elon Musk and/or his counsel with Plaintiffs regarding disclosure of his ownership stake in Twitter with the Securities and Exchange Commission ('SEC')," relates to Plaintiff Gadde's communications with Mr. Musk's counsel regarding SEC disclosure requirements.

**Response:**  Defendants continue to maintain that this Request is overbroad and seeks documents irrelevant to the parties' claims and defenses. In particular, Plaintiff Gadde asserted in her September 7, 2023 declaration that, in March and April 2022, she "spoke several times with Alex Spiro, Mr. Musk's lawyer" about filing disclosures with the SEC relating to Musk's holdings in Twitter. Ms. Gadde does not assert that she communicated directly with Mr. Musk about this topic—verbally or in writing—or that Mr. Musk or Mr. Spiro communicated with any other Plaintiff about this topic. Nor do the declarations submitted by the other three Plaintiffs contend that they communicated in any form with Mr. Musk or Mr. Spiro about this topic. Moreover, verbal conversations that allegedly occurred before Mr. Musk announced his intent to purchase Twitter do not shed any light on his decision to terminate Plaintiffs more than 7 months later. Accordingly, Defendants will not agree to produce documents in response to RFP No. 6.

**RFP Nos. 7 and 8:**  These Requests, seeking "Communications to or from Elon Musk Concerning Plaintiffs' benefits under the 2014 Plan and/or the 2017 Plan, Including Communications with Alex Spiro" and "Communications to or from any member(s) of the Committee Concerning Plaintiffs' benefits under the 2014 Plan and/or the 2017 Plan, Including Communications with Alex Spiro," necessarily encompass privileged documents.

**Response:**  The parties disagree on whether the Plan is a "top hat" plan exempt from ERISA's fiduciary provisions and, accordingly, exempt from the fiduciary exception to the attorney-client

Caroline A. Wong
February 4, 2025
Page 3

privilege, which bears on the privilege review process.  The parties also disagree on, even assuming (counter-factually) that the Plan were not a top hat plan, whether Mr. Musk acted in any fiduciary capacity with respect to the Plan, such that the fiduciary exception to privilege would be implicated in the communications Plaintiffs seek. Likewise, it is incorrect and overly-simplistic for Plaintiffs to suggest that any communication concerning Plaintiffs' benefits necessarily constitutes a discretionary act of Plan administration such that the fiduciary exception to attorney-client privilege would apply to such communications, even if the Plan were not a top-hat plan (which it is).

Plaintiffs clarified in their letter that they are not demanding that Defendants produce privileged documents responsive to these Requests without conducting a document-by-document privilege review. Even so, Plaintiffs propose that Defendants produce privileged documents that would otherwise be subject to the fiduciary exception if the Plan were not a top-hat plan (*i.e.*, documents that involve legal advice regarding discretionary acts of Plan administration) before the Court even considers the top-hat issue.[1]

Defendants previously agreed to produce (subject to certain safeguards) privileged documents that were part of the administrative record because it comprises the "core" documents relating to Plaintiffs' claims for benefits. However, through Request Nos. 7 and 8, Plaintiffs seek documents that are outside of the administrative record, which were not provided to or considered by the Plan Administrator or Committee in the course of determining Plaintiffs' claims for benefits and related appeal. Plaintiffs' proposal, which is an exception to the typical privilege review process, is not appropriate as to these documents. Thus, for privileged documents responsive to Request Nos. 7 and 8, Defendants do not agree to an arrangement "comparable" to the special agreement the parties reached regarding privileged documents in the administrative record.

**RFP No. 14:**    Plaintiffs again reiterate their request for "all Documents and Communications regarding Plaintiffs' claims or claim appeal," continuing to press for broad discovery beyond the administrative record.

**Response:**    Your Letter failed to explain how Request No. 14 is not duplicative of three other Requests for which Defendants have already agreed to search for and produce responsive documents. Your Letter also failed to rebut Defendants' argument that the documents sought by Request No. 14 have nothing do with the allegations in the Complaint that could arguably be construed as relating to a conflict or procedural irregularity. And although Defendants expressly asked Plaintiffs to identify the alleged conflict or procedural irregularity to which Request No. 14 is aimed, your Letter did not identify a single one.  You also failed to explain how any procedural irregularity prevented the development of the administrative record, despite case law recognizing that discovery beyond the administrative record is only permitted in that circumstance. *See DelDebbio v. Walgreens Co.*, 2012 WL 707155, at *2 (N.D. Cal. Mar. 5, 2012).[2]

Plaintiffs claim that *DelDebbio* supports discovery beyond the administrative record here. That is incorrect. *DelDebbio* makes clear that an alleged conflict and an alleged procedural irregularity should be addressed separately, unlike Plaintiffs' Letter, which lumps them together. The *DelDebbio* court

---

[1] Plaintiffs' suggested approach creates further risk for Defendants as Plaintiffs refused to agree to a "Highly Confidential" designation in the parties' protective order.

[2] For these reasons, and those articulated in our original response and earlier letter, it is wrong for you to state that Defendants do "not dispute the relevance of the requested documents."

Caroline A. Wong
February 4, 2025
Page 4

found there was no conflict between the claims administrator and the plan sponsor. But because the defendant had already agreed to provide a witness to testify about the relationship, the court allowed the deposition to go forward. As for the alleged procedural irregularity, the court recognized that discovery outside the administrative record is warranted only "where there have been flagrant violations of ERISA procedure constituting substantive harm to the beneficiary, or where procedural violations have prevented the full development of the administrative record." That is precisely where Plaintiffs fall short, and why, as the court held in *DelDebbio*, Plaintiffs are "not entitled to discovery." *DelDebbio* does not support discovery beyond the administrative record here, and Plaintiffs cite no case law holding otherwise.

For these reasons, Defendants stand on their objections and do not agree to produce additional documents in response to Request No. 14 beyond those that will be produced in response to Request Nos. 1, 7 and 8.

**RFP No. 15:**  Plaintiffs reiterate their request for "agendas, minutes, and materials" for Committee meetings that did not involve discussion of Plaintiffs' claims or appeal and where Plaintiffs' benefits and appeals were not at issue.

**Response:**  Defendants explained that materials from Committee meetings addressing different claimants are not relevant to Plaintiffs' claims. In response, Plaintiffs contend there are two reasons such documents are relevant. First, such materials are "potentially relevant and should be produced, to the extent they involve discussions about the Committee's process generally." Second, you claim that meeting materials discussing other executives' claims show a "larger pattern of refusing to pay Twitter's former employees the benefits they are due." Your letter cites no case law supporting either, much less any decision in which a court ordered the production of other claimants' claims for benefits.

Defendants have already identified the number of claimants whose claims for benefits under the Plan were granted or denied. *See* X Corp.'s Response to Interrogatory Nos. 7 and 8. Defendants further identified all of the other lawsuits filed by claimants seeking benefits under the Plan. *See* X Corp.'s Response to Interrogatory No. 10. Defendants are withholding Committee meeting minutes and materials relating to claims for benefits under the Plan asserted by the plaintiffs in the lawsuits identified in Response to Interrogatory No. 10. Plaintiffs are not entitled to any further information about other claimants or their claims for benefits. *See, e.g.*, *Leicht v. Sw. Carpenters Pension Plan*, 2012 WL 13020048, at *6 (C.D. Cal. Dec. 3, 2012), *R&R adopted*, 2013 WL 12251167, at *5 (C.D. Cal. Jan. 22, 2013) ("such fishing expeditions should not be condoned"); *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 382 (C.D. Cal. 2009); *Bronner v. Unum Life Ins. Co. of Am.*, 2009 WL 248175, at *4 (N.D. Cal. Jan. 30, 2009).

**RFP No. 23:**  Plaintiffs continue to seek "all Documents Plaintiffs requested from X Corp. on June 28, 2023."

**Response:**  Plaintiffs' Letter confirms that such documents exceed the appropriate scope of discovery. You state that the requested documents "refute Defendants' claim that Plaintiffs committed gross negligence or willful misconduct" and thereby concede these documents have nothing to do with any alleged conflict or procedural irregularity in the administrative process. Plaintiffs are merely seeking broad discovery and ignoring the rule that discovery in benefits claims cases is limited to the administrative record save for the narrow exception of discovery relating to

Caroline A. Wong
February 4, 2025
Page 5

an alleged conflict or a procedural irregularity that prevented the development of the complete administrative record.

**Subpart 23(b):** Plaintiffs seek an "October 2022 email from Ms. Gadde to outside counsel forwarding Elon Musk's demand of nonpayment letter for advice; and counsel's response."

**Response:** Despite Plaintiffs' failure to provide more information about the requested document, Defendants reviewed Plaintiff Gadde's declaration for more detail. Based on the declaration, we believe this Request refers to a letter from Alex Spiro dated October 27, 2022 regarding outbound payments and an apparent email from Ms. Gadde forwarding that letter to attorneys at Wilson Sonsini and Wachtell. Assuming our understanding is correct, and subject to and without waiving our prior objections and those above, Defendants will agree to conduct a reasonable search for Ms. Gadde's October 27, 2022 email to attorneys at Wilson Sonsini and Wachtell referencing the above letter.

**Subpart 23(g):** Plaintiffs seek "emails between Martin Korman and/or Twitter's outside counsel at Wilson Sonsini Goodrich & Rosati and Mr. Edgett regarding success fees for comparable deals from April 2022 through October 2022."

**Response:** In response to Defendants' request for additional information about the documents sought by this Request, your Letter directed us to paragraph 38 of Plaintiff Edgett's September 7, 2023 declaration, which discussed emails purportedly exchanged "approximately one or two months prior to closing" between Mr. Edgett and Mr. Korman of Wilson Sonsini addressing success fees. Subject to and without waiving our prior objections and those above, Defendants agree to conduct a reasonable search for the emails identified in paragraph 38 of Mr. Edgett's declaration.

**Subpart (h):** Plaintiffs seek "2015 and 2016 emails from Martin Korman and/or Twitter's outside counsel Wilson Sonsini Goodrich & Rosati regarding success fees for deal counsel in potential sale of Twitter."

**Response:** In response to Defendants' request for additional information, your Letter directed us to paragraph 50 of Plaintiff Edgett's September 7, 2023 declaration, which addressed "discussions" in 2015 or 2016 among Mr. Edgett, Ms. Gadde, and Mr. Korman when "Twitter was considering a potential sale." With the benefit of this additional information clarifying the documents sought by RFP No. 23(h), and subject to and without waiving our prior objections and those above, Defendants agree to conduct a reasonable search for communications to or from Plaintiff Edgett generated during the relevant time period that refer to discussions with Mr. Korman in 2015 or 2016 about success fees.

**RFP No. 24:** Plaintiffs confirm this Request seeks "all documents concerning *any* reasons Musk has given as cause for Plaintiffs' terminations from Twitter."[3]

**Response:** Defendants offered a compromise by agreeing to search for documents relating to Plaintiffs' actions leading to their terminations for cause, as explained in Mr. Musk's January 10, 2024

---

[3] Plaintiffs' Letter confirms that Plaintiffs no longer pursue documents concerning reasons that the Committee has given as cause for Plaintiffs' terminations.

Caroline A. Wong
February 4, 2025
Page 6

declaration. Unsatisfied, Plaintiffs are demanding "all documents concerning *any* reasons Musk has given as cause for Plaintiffs' terminations from Twitter."[4] But we are aware of no additional reasons beyond those identified in Mr. Musk's declaration. Thus, subject to and without waiving our prior objections, Defendants are willing to conduct a reasonable search for, and produce on a rolling basis, non-privileged documents relating to Plaintiffs' actions leading to their terminations for cause, as explained in Mr. Musk's January 10, 2024 declaration.

**RFP No. 31:** Plaintiffs reiterate their request for "all documents produced by any Defendant, and all deposition and arbitration testimony, in connection with the proceedings in *X Corp. v. Wachtell, Lipton, Rosen & Katz*, No. CGC-23-607461 (Cal. Super. Ct., S.F. Cty.), including arbitration proceedings for JAMS Arbitration Ref. No. 5100001599, from July 5, 2023, to the Present."

**Response:** In our prior letter, Defendants agreed (subject to and without waiving their prior objections) to evaluate whether and to what extent documents and testimony from the confidential *Wachtell* arbitration may properly be produced in this case. In your Letter, Plaintiffs contend that these materials "are relevant to Plaintiffs' claims," but fail to specify which claims or the basis for relevancy. The *Wachtell* arbitration materials are not part of the administrative record, and thus are irrelevant to Plaintiffs' ERISA § 502(a)(1)(B) claims. Plaintiffs have not explained how materials from a separate litigation alleging that Wachtell violated the California Business and Professions Code are relevant to their ERISA § 510 claim, which challenges Mr. Musk's specific decision to terminate Plaintiffs on October 27, 2022. Rather, this appears to be another attempt by Plaintiffs to obtain sweeping discovery—including "all documents produced" and "all deposition and arbitration testimony" in an entirely separate litigation—that far exceeds the bounds of what is appropriate and permissible in this benefits case. Moreover, Defendants are obligated to comply with a binding protective order limiting the use and disclosure of confidential material for purposes of that arbitration (copy attached), and we cannot waive the confidentiality designations made by another party. *See, e.g.*, *Palmer v. Cognizant Tech. Sols. Corp.*, 2022 WL 22871443, at *8 (C.D. Cal. July 21, 2022); *Sandoval v. Cnty. of Sonoma*, 2015 WL 163544, at *2 (N.D. Cal. Jan. 12, 2015). Defendants therefore do not agree to produce any documents or testimony from the *Wachtell* arbitration.

**Privilege Log**

In an effort to compromise, Defendants agree to Plaintiffs' request to provide privilege logs on a rolling basis.

**Interrogatories**

**Interrogatory No. 4:** Interrogatory No. 4 asks X Corp. to "identify any and all individuals who were granted access to the headquarters of Twitter, received a Twitter or X Corp. email address, or received Twitter server credentials at any time between October 25, 2022 and December 31, 2022 who were concurrently employees of Tesla; X Corp.; The Boring Company; Excession, LLC; Neuralink Corp.; Space Exploration Technologies Corp. ('SpaceX'); X.AI Corp.; or any other company founded and/or operated by Elon Musk."

---

[4] Plaintiffs' Letter confirms that Plaintiffs no longer pursue documents concerning reasons that the Committee has given as cause for Plaintiffs' terminations.

Caroline A. Wong
February 4, 2025
Page 7

**Response:** Plaintiffs contend this Interrogatory is relevant to Plaintiffs' alter ego allegations regarding an alleged "unity of interest and ownership between Twitter and Musk." It is unclear what such allegations have to do with Plaintiffs' benefit claims or ERISA § 510 claim, which relate to a discrete decision Mr. Musk made to terminate Plaintiffs on October 27, 2022, and the separate determinations reached by the Plan Administrator and Committee long after the October 25, 2022-December 31, 2022 timeframe covered by Interrogatory No. 4. Moreover, Defendants have identified relevant witnesses in their Amended Initial Disclosures and responded to Plaintiffs' interrogatories regarding who was involved in the decision to terminate their employment. We see no reason for Plaintiffs' bizarre demand that Defendants produce the identities of all individuals who ever accessed Twitter headquarters, had a Twitter or X email address, or received Twitter server credentials who also worked for other companies during the period identified, when they had nothing to do with Plaintiffs' terminations or claims for benefits. Therefore Defendant X Corp. stands on its prior objections and those above and will not answer this Interrogatory.

**Interrogatory No. 9:**  X Corp. previously agreed (subject to and without waiving its objections) to amend its response to this Interrogatory, which seeks information about the costs "billed for each month from April through October 2022, inclusive, for services rendered to Elon Musk and/or X Corp. by outside law firms, including Skadden, Arps, Slate, Meagher & Flom and Quinn, Emanuel, Urquhart & Sullivan, related to the merger and acquisition of Twitter by X Corp." Despite Plaintiffs' demand in the Letter, X Corp. is not required to state in correspondence how it will amend its response. We are actively working to locate the information and to resolve confidentiality protections and will serve an amended response as soon as feasible.

Regards,

*/s/ Christopher Boran*

Christopher Boran


c:      Sheila A.G. Armbrust (sarmbrust@sidley.com)
        David L. Anderson (dlanderson@sidley.com)
        Nicole M. Ryan (nicole.ryan@sidley.com)
        Sarah E. Gallo (sgallo@sidley.com)
        Chaddy Georges (cgeorges@sidley.com)