David L. Anderson (SBN 149604)
dlanderson@sidley.com
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Nicole M. Ryan (SBN 175980)
nicole.ryan@sidley.com
Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
Chaddy Georges (SBN 335546)
cgeorges@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Caroline Wong (Admitted *pro hac vice*)
caroline.wong@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000

*Attorneys for Plaintiffs Parag Agrawal,
Ned Segal, Vijaya Gadde, and Sean Edgett*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PARAG AGRAWAL, NED SEGAL, VIJAYA GADDE, and SEAN EDGETT,<br><br>Plaintiffs,<br><br>vs.<br><br>ELON MUSK; X CORP., f/k/a TWITTER, INC.; TWITTER, INC. CHANGE OF CONTROL AND INVOLUNTARY TERMINATION PROTECTION POLICY; TWITTER, INC. CHANGE OF CONTROL SEVERANCE AND INVOLUNTARY TERMINATION PROTECTION POLICY; LINDSAY CHAPMAN; BRIAN BJELDE; AND DHRUV BATURA,<br><br>Defendants. | Case No. 3:24-cv-01304-MMC<br><br>**STIPULATION AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett, on the one hand, and Defendants Elon Musk, X Corp., the Twitter Inc. Change of Control and Involuntary Termination Protection Policy, the Twitter Inc. Change of Control Severance and Involuntary Termination Protection Policy, Lindsay Chapman, Brian Bjelde, and Dhruv Batura, on the other hand, stipulate as follows:

## I. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## II. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith

## III. LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## IV. GENERAL

1. The Parties shall take reasonable steps to comply with the procedures set forth in this Order.

2. This Order is intended to streamline production to promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

3. To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs.  The terms of this Order shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of

1  information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by
2  this Court.
3      4.     Except as specifically limited herein, this Order governs the production of
4  discoverable documents by the Parties during the litigation. In the event of transfer to other courts,
5  this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a
6  successor agreement. This Order shall not enlarge, reduce, or otherwise affect the scope of discovery
7  in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, and the
8  Court's orders, nor imply that discovery produced under the terms of this Order is properly
9  discoverable, relevant, or admissible in this or in any other litigation. Subject to this Order, the
10 Parties' objections and responses to requests for production of documents and interrogatories and
11 other discovery requests, and a binding Stipulated Protective Order ("Protective Order"), all
12 documents that are responsive to discovery requests and not designated as "privileged" shall be
13 produced in the manner provided herein. Nothing in this Order shall be interpreted to require
14 disclosure of materials that a Party contends are not discoverable or are protected from disclosure by
15 the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be
16 applicable. Additionally, nothing in this Order shall be deemed to waive or limit any Party's right to
17 object to the production of certain electronically stored information, or to move for an appropriate
18 order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not
19 reasonably accessible because of undue burden or cost or on the ground that there is good cause for
20 the documents' production.
21      5.     Consistent with their obligations under applicable Federal Rules of Civil Procedure,
22 the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes
23 regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking
24 relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek
25 Court intervention in accordance with the Court's procedures.
26 **V.     PRESERVATION**
27      1.     The Parties acknowledge that they have an obligation to take reasonable and
28 proportional steps to preserve discoverable information in the Party's possession, custody or control.

2.	The Parties agree that data, including Protected Material, as defined in the Protective Order, should be preserved for only the time for which this litigation is pending or is reasonably anticipated.

3.	The Parties agree to exchange contemporaneously a list of ESI sources in their possession, custody, or control that may contain relevant information.

4.	The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of the following sources of ESI because they are either not reasonably accessible or not likely to contain additional relevant information from other sources whereby the associated burden and costs outweigh any benefit:

    a.	Data maintained or duplicated in any electronic backup system, unless unique, likely responsive data is unable to be collected in any of the agreed upon ESI data sources. If either Party believes backups are required for a particular data source, the Parties agree to meet and confer to discuss the costs, benefits, and proportionality of this potential collection.

    b.	Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives.

    c.	Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

    d.	On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

    e.	Data stored on photocopiers, scanners and fax machines.

    f.	Data in metadata fields that are frequently updated automatically, such as last-opened dates.

    g.	Server, system or network logs.

    h.	Logs of calls made from cellular or land-line phones including voicemails.

    i.	Legacy data or data remaining from systems no longer in use that is unintelligible on the systems in use.

    j.	Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

    k. Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business

**VI. IDENTIFICATION, COLLECTION, AND SEARCH OF DOCUMENTS**

  1. Except as otherwise agreed upon in this Order, the Parties will meet and confer in an effort to agree upon the following:

    a) List of records custodians;

    b) Search methodology to be applied, including, but not limited to, search terms and date restrictions; and

    c) Location of relevant data sources including custodial and non-custodial.

    d) Access to Protected Material and the means by which the Parties agree to preserve and collect relevant, unique, non-personal information.

  2. <u>Search Methodology:</u>

    a) Email and Non-Email: the Parties agree to search for and produce unique, responsive records from sources of accessible hard copy and ESI and such data is within the possession, custody or control of the Producing Party.

    b) The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.  Determinations of discoverability, responsiveness and privilege shall be made by the Producing Party.

    c) The Parties recognize the availability of a variety of search tools and methodologies, including but not limited to TAR or AI-based analytics tools. If the Producing Party intends to use TAR or similar advanced analytics for its review and production, the parties agree to meet and confer in good faith to attempt to reach agreement about the appropriate disclosures, technology and process that a Producing Party proposes to use to identify responsive ESI and a statistically sound methodology to assess the effectiveness of the tool and processes in identifying responsive documents.

  If the Parties cannot resolve any dispute regarding this section, consistent with The Sedona Conference Principles, Principle 6, the responding party is best suited to evaluate the procedures,

methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

## VII. PRODUCTION FORMAT – HARDCOPY

At the Producing Party's discretion, hardcopy documents should be scanned in as PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## VIII. PRODUCTION FORMAT – ELECTRONICALLY STORED INFORMATION

Unless specifically addressed elsewhere in this protocol, electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection. To the extent that metadata does not exist, is not reasonably accessible or available for any documents produced or would be burdensome to provide, nothing in this Order shall require any Party to extract, capture, collect or produce such data. The Parties agree that certain documents identified and collected as part of a targeted collection that originated as ESI may be produced without metadata but compliant with Section II. An .opt image cross-reference file should also be provided for all TIFF images. Specifications for the load files are listed in Appendix 2.

1  TIFF images should show any and all text and images which would be visible to the reader
2  using the native software that created the document. For example, TIFF images of e-mail messages
3  should include the BCC line. PowerPoint documents and Google Slides should be processed with
4  hidden slides and all speaker notes unhidden, and should be processed to show both the slide and
5  the speaker's notes on the TIFF/JPG image.

6  If a document is produced in native format[1], a single-page Bates-stamped TIFF image slip-
7  sheet containing the confidential designation and text stating the document has been produced in
8  native format should also be provided. No native ESI items will be produced for redacted items,
9  except when producing redacted TIFF images is not technically reasonable or for native
10 spreadsheets redacted using a native redaction tool. If documents requested in native format require
11 redactions and reasonably cannot be produced in TIFF, the Parties should meet and confer
12 regarding how to implement redactions while ensuring that proper formatting and usability are
13 maintained. Each native file should be named according to the Bates number it has been assigned,
14 and should be linked directly to its corresponding record in the load file using the NATIVELINK
15 field. To the extent that either Party believes that native files should be produced for a specific
16 document or class of documents not required to be produced in native format pursuant to this
17 paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured
18 data), the Parties should meet and confer in good faith.

19 Each Party reserves the right to request native versions of electronic documents as collected
20 (except for the file types identified herein which must be produced natively) or documents that
21 originated in color that are difficult to review or understand when produced in the format specified
22 herein. No Party will unreasonably deny any such request made according to the following protocol:

- The Requesting Party shall make any such request as soon as reasonably practicable after receiving a document production.

- The Requesting Party shall provide a list of Bates numbers of the documents and the reason that it is requesting to be produced in native format.

---

[1] The Parties agree that Google Slides are converted to Microsoft Office format upon ingestion in industry standard review tools, that any native production of these items will not be in the form of the original Slide, but that such natives include all data, metadata, and extracted text found in the originating document.

6

- Within seven (7) days of receiving such a request, the Producing Party will either (i) produce the requested native files to the extent reasonably practicable, or (ii) respond in writing, setting forth its position on the production of the requested documents.

- If the Parties are unable to agree as to the production of the requested documents in native or color format, either Party may submit the matter to the Court.

- Wholesale or categorical requests by category or file type are deemed invalid.

In no event shall such a request require a Party to provide direct access to native systems.

## IX. PREVIOUSLY COLLECTED AND PRODUCED DATA

The Parties agree that there is no obligation to recollect any prior collections or reproduce any prior productions collected or produced before the entry of this ESI Order. This includes not requiring either Party to reproduce productions in the production format outlined in this ESI Order.

## X. PRODUCTION FORMAT – STRUCTURED DATA

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

## XI. PRODUCTION FORMAT – SLACK MESSAGES

To the extent a response to a non-objectionable discovery request requires production of Slack messages, a Party shall take reasonable steps to produce such messages in TIFF image format in a manner that preserves the context of the communication by producing messages within the same 24 hour day.

## XII. PRODUCTION FORMAT – TEXT MESSAGES

Mobile text messages may be produced by capturing information through "screen shots" or "screen captures" and converting same into images along with corresponding extracted text or OCR, along with associated metadata (sender, recipient, date, and time); OR in a single excel document with the appropriate text and the following metadata fields:

- Service (iMessage / SMS)

7

- Direction (incoming / outgoing)
- Date
- Content
- Sender
- Participant
- Attachments (Count of Attachments)
- Date Read
- Date Delivered

**XIII. PRODUCTION FORMAT – MEDIA**

Documents shall be exchanged through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

**XIV. PROCESSING AND OTHER SPECIFICATIONS**

1. <u>Bates Numbering and Confidentiality Designations</u>: Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique, sequential and maintains a constant length across the entire document production. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

2. <u>ESI Date and Time Processing</u>: Each Party's ESI should be processed using a consistent Time Zone for all data. The Party shall share the Time Zone selected for processing of its data with the other Party.

3. <u>Global or Horizontal Deduplication</u>: Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or

differences in processing over time the hash values do not match). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Order.

   4. <u>Email Thread Suppression</u>:  Each Party may suppress e-mails in such a way as to eliminate earlier or incomplete chains of e-mails and redundant attachments and produce only the most complete iteration of an e-mail chain. Each Party shall preserve family relationships when engaging in email thread suppression. In instances where an earlier or incomplete email chain contains a unique attachment that earlier email chain and its unique attachment shall not be suppressed. For purposes of this paragraph, only email messages in which the parent document, senders and recipients, and all attachments are exactly the same will be considered duplicates.

   5. <u>Embedded Objects</u>:  Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Order.

   6. <u>Hyperlinked Google Workspace Documents</u>:  The Parties agree that hyperlinked documents are not attachments and will not be treated as such. If a receiving party determines that a hyperlinked document from a produced document is needed a request for the hyperlinked document may be made. The producing party will consider reasonable requests for hyperlinked documents within its Google Workspace and produce any non-privileged, responsive Google Workspace material in response.  The producing party will produce the version of these documents as they exist at the time they are collected, which is how they are stored in the ordinary course of business.

   The Parties agree that historical versions of Google Workspace documents are not easily accessed. If the receiving party believes that production of a historical version is required, the receiving party must meet and confer with the producing party, and must establish a specific reason why the

historical version is relevant to the claims or defenses in the case, and why the version as collected with its accompanying metadata is insufficient.

7. <u>Compressed Files</u>:  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

8. <u>Redactions:</u>  The Producing Party can redact documents for privilege or otherwise Protected Material, and "Personally Identifiable Information," "Sensitive Private Data," or "Nonpublic Personal Information" as these terms are defined under federal, state or foreign data protection laws. The Producing Party may also redact proprietary source code, if such code appears in any document to be produced, and identify those redactions as being for such code. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made.  If the issue cannot be resolved, the Parties will seek resolution from the Court.

When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the Parties (e.g., if a native document that requires redaction is difficult to convert to TIFF or is not reasonably usable when converted to TIFF format, the Producing Party can redact in native format). The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction. For redacted items that were originally ESI, non-redacted metadata fields will be provided.

If during the course of litigation, a data subject with privacy rights pursuant to the Data Protection Laws identified in the Protective Order exercises his or her right to erasure of personal data contained within the previously produced Protected Material, the Producing Party shall furnish newly redacted versions of the Protected Material within a reasonable time.  The Requesting Party will promptly destroy the original version of the Protected Material and replace it with the redacted version.  The Producing Party may also require the entire document destroyed and replaced with a slip-sheet indicating the Protected Material is subject to erasure pursuant to the applicable Data Protection Law.

9. <u>No Designation of Discovery Requests</u>:  Production of hard copy documents and ESI in the reasonably usable form set out in this Order need not include any reference to the requests to which a document or ESI may be responsive.

10. <u>Foreign Language Documents</u>: To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language documents and ESI in the original language.  The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

## XV. PRIVILEGE AND PRIVILEGE LOGS

1. If a party withholds material as privileged, see Fed. R. Civ. P. 26(b)(5), it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified.

2. Privilege logs must contain the following:

    a) the title and description of the document, the number of pages, and the Bates-number range, if any;

    b) the subject matter or general nature of the communication (without disclosing its contents);

    c) the identity and position of its author;

    d) the date of the communication;

    e) the identity and position of the recipients of the communication;

    f) the location where the document was found;

    g) the specific basis for the assertion that the document is privileged or protected (including a brief summary of any supporting facts); and

    h) the steps taken to ensure the confidentiality of the communication, including an affirmation that no unauthorized persons received the communication.

## XVI. THIRD PARTY DOCUMENTS

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to the litigation have requested that third Parties produce ESI, if any, in accordance with the specifications set forth herein where reasonably practicable.  The

1  Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the
2  opposing Party.  Nothing in this Order is intended or may be interpreted to narrow, expand, or
3  otherwise affect the rights of the Parties or third parties to object to a subpoena.  Nor is this Order
4  intended to suggest that a non-Party has, should, or will provide ESI.

5  **XVII.  GOOD FAITH**

6  The Parties shall make their best efforts to comply with and resolve any differences
7  concerning compliance with this Order.  If a Producing Party cannot comply with any material
8  aspect of this Order, such Party shall inform the Requesting Party as to why compliance with the
9  Order was unreasonable or not possible within ten (10) days after so learning.  No Party may seek
10 relief from the Court concerning compliance with the Order unless it has conferred with other
11 affected Parties to the action.

12 **XVIII.  NO EFFECT ON DISCOVERY OR ADMISSIBILITY**

13 This Order does not address, limit, or determine the relevance, discoverability, agreement to
14 produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and the
15 Parties are not waiving any objections to specific discovery requests.  Nothing in this Order shall be
16 interpreted to require disclosure of materials that a Party contends are not discoverable or are
17 protected from disclosure by the attorney-client privilege, the work product doctrine, or any other
18 privilege that may be applicable.  Nothing in this Order shall be construed to affect the admissibility
19 of any document or data.  All objections to the admissibility of any document or data, except as to
20 the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved
21 and may be asserted at any time.

22 **XIX.  COSTS AND BURDEN**

23 The Parties agree that the burdens placed on them during this litigation, including during
24 discovery, must be proportional to the litigation itself, including the nature of the claims and the
25 amount in controversy.  *See* Fed. R. Civ. P. 1, Fed. R. Civ. P. 26(b)(2)(C).  All Parties reserve the
26 right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in
27 appropriate circumstances.

28 **XX.  AUTHENTICITY**

1    A document produced in this litigation shall be presumed to be authentic if offered as
2 evidence against the Party that produced it unless the Party (a) gave notice at the time of production
3 that the authenticity of the document may be challenged, including the reasons for such a challenge;
4 or (b) shows good cause for its failure to give such notice at the time of production.

5    When documents produced in accordance with this Order are used in any proceeding herein,
6 including depositions, hearings, or trial, the image copy of documents shall be the copy used.
7 Extracted text files shall not be used in any proceeding as a substitute for the image of any
8 document.  This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits
9 or summary demonstratives.

## XXI.  PROTECTIVE ORDER

Nothing in this Order shall be deemed to limit, modify, or override any provision of the Protective Order.

## XXII.  ROLLING PRODUCTIONS

The Parties understand that this Order contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations prescribed in the Federal Rules of Civil Procedure, or the Parties' 502(d) obligations, and other obligations pursuant to the Agreed Protective Order entered in this case.

## XII.  DISCOVERY DEFICIENCY

If the Requesting Party has good cause to believe that the Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

1. As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some concrete evidence of a deficiency in the Producing Party's discovery process and explain their reasons for believing that additional efforts are reasonable and proportional.

2. Upon a showing of good cause, the Parties will meet and confer to consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, or to identify additional production criteria to cure the deficiency.

3. If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties will submit the dispute to the Court in the form of a joint discovery letter.

## XXIII. MODIFICATION

This Order may be modified by mutual agreement of the Parties.

**IT IS SO STIPULATED, through Counsel of Record.**

Dated:                                           */s/ Sheila A.G. Armbrust*
                                                    Sheila A.G. Armbrust
                                                    Counsel for Plaintiffs

Dated:                                           */s/ Abbey M. Glenn*
                                                    Abbey M. Glenn
                                                   Counsel for Defendants

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated:

                                    UNITED STATES DISTRICT/MAGISTRATE JUDGE

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the foregoing Stipulation and [Proposed] Order re: Discovery of Electronically Stored Information in compliance with Civil Local Rule 5-1(i)(3).

Date: April 4, 2025

SIDLEY AUSTIN LLP

By: */s/ Sheila A.G. Armbrust*
    Sheila A.G. Armbrust (SBN 265998)
    sarmbrust@sidley.com
    SIDLEY AUSTIN LLP
    555 California Street, Suite 2000
    San Francisco, CA 94104
    Telephone: (415) 772-1200

# APPENDIX 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document. |
| DESIGNATION | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be populated with the designation the native file should |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDDATE | MM/DD/YYYY | The date the document was created.<br><br>*Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of |
| CREATETIME | HH:MM | The time the document was created.<br><br>*Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of |
| LASTMODDAT | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| RECEIVEDDAT | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| FILEPATH | i.e. John Smith/E-mail/Inbox | Location of the original document. The source should be the start of |

| AUTHOR | Jsmith | The author of a document from extracted metadata.  *Parties acknowledge that the Author field may not actually reflect |
|---|---|---|
| LASTEDITEDBY | Jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |
| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| EMAIL CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers.  If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for their own benefit). |

| | | |
|---|---|---|
| SLACK_CONVERSATION ID | C8FQGF54N | Unique Slack Conversation ID. |
| SLACK_CONVERSATION NAME | slack-channel; OR jsmith, tjones | Slack Conversation Name/Title |
| SLACK_DM PARTICIPANTS | jsmith; tjones | Participants in Conversation Message |
| SLACK_DM SENDERS | jsmith | Senders from Conversation Message |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

** Same is true with all DATE and TIME Fields. These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

## Appendix 2: Load File Formats

**Image Load Files**

- Every document referenced in a production image load file must have all corresponding images, text and metadata.
- The name of the image load file must mirror the name of the delivery volume and should have a .LFP, or .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the documents.
- The load file must contain one line per image.
- Every image in the delivery volume must be contained in the image load file. The image key must be named the same as the Bates number of the image.
- Load files must not span across media.

**Metadata Load Files**

- The metadata load file must use the following delimiters: Column delimiter:
    - ASCII 020
    - Text qualifier: ASCII 254
    - New line:  ASCII 174
- Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.
- The first record must contain the field names in the order of the data set forth in Appendix 1.
- All date/time fields must be produced in "MM/DD/YYYY  HH:MM:SS AM/PM (UTC)" format, null dates will be blank
- A carriage-return line-feed must be used to indicate the start of the next document. Load files must not span across media.
- The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).