**SIDLEY**

SIDLEY AUSTIN LLP
555 CALIFORNIA STREET
SUITE 2000
SAN FRANCISCO, CA 94104

+1 415 772 1204
DLANDERSON@SIDLEY.COM

May 1, 2025

Magistrate Judge Laurel Beeler
San Francisco Courthouse
Courtroom B - 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

Re:   *Agrawal et al. v. Musk et al.*, N.D. Cal. 3:24-cv-01304-MMC-LB
      Joint Letter Brief – Discovery Disputes Regarding Elon Musk's Cellphone

Dear Judge Beeler:

The parties submit this Joint Letter Brief regarding disputes about: (1) generation and preservation of electronically stored information ("ESI") on Defendant Elon Musk's cellphone, and (2) search terms for the same. Lead trial counsel have conferred by Zoom and reached an impasse.

## Plaintiffs' Position

**Background.** When Musk bought Twitter, he immediately terminated Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett (Twitter's CEO, CFO, Chief Legal Officer, and General Counsel), purportedly "for cause." But Musk told his biographer his real intent was to deprive Plaintiffs of benefits under Twitter's severance plans, treating their benefits like money in his "cookie jar." Dkt. 58 ¶¶ 4–7. In November 2022, Plaintiffs submitted administrative claims for benefits under the plans. Despite Musk's admission of his real reason for terminating Plaintiffs, their claims were denied. Plaintiffs appealed to Twitter's Severance Administration Committee, whose members were appointed by Musk from his other companies. Adjudicated in a kangaroo court, the appeal was denied. *Id.* ¶¶ 70–74, 92–100.

Having exhausted the claims administration process, Plaintiffs filed this case. Their claims include claims for benefits under ERISA §502(a)(1)(B), and a claim for termination of Plaintiffs' employment in an unlawful effort to interfere with their severance benefits under ERISA §510. Discovery opened after the Court denied Defendants' partial motion to dismiss on 11/1/24. Dkt. 73. Plaintiffs propounded requests for production ("RFPs") on 11/8/24. Dkt. 89-2.

**ISSUE #1: Generation and Preservation of ESI on Musk's Cellphone.** In conferring about ESI sources pursuant to the parties' stipulated ESI Order (Dkt. 96, §VI.1.c), Defendants have refused to provide answers to two critical questions about Musk's cellphone.

***First***, Plaintiffs have repeatedly asked Defendants whether Musk ever generated relevant ESI on his cellphone other than SMS/MMS or iMessages, such as ESI from Signal, WhatsApp, or other messaging systems. Defendants have refused to answer.

This issue crystallized when defense counsel stated on 3/28/25 that Musk does not currently have "any relevant notes, sound recordings, voice memos, pictures, calendar entries, or other documents *or ESI* stored on his cellphone," and "did not ***generate*** on his cellphone any relevant notes, calendar entries, sound recordings, voice memos, pictures, or other documents." Ex. B at 2–3 (emphases added). "ESI" conspicuously is included in the first list, but not the second. So

Plaintiffs' counsel asked defense counsel on a Zoom meet-and-confer on 4/4/25, and in writing 3/31/25 and 4/15/25, to confirm whether Musk ever generated relevant ESI other than SMS/MMS or iMessages on his cellphone, such as ESI from Signal, WhatsApp, or other messaging systems. *Id.* at 1–2. Defendants have not given an answer. Instead, they replied on 4/18/25 to state only that unidentified "counsel" are not "aware" of Musk generating such ESI – another hedged response, which they repeat in their portion of this letter brief below. Ex. C, 4/18/25 Email Chain at 1.

**_Second_**, Plaintiffs have repeatedly asked when Musk began preserving potentially relevant ESI. Defendants have not answered this either. During a 2/4/25 meet-and-confer, defense counsel stated Musk has been preserving ESI since a hold notice was issued for this case – but when asked when the notice was sent, defense counsel did not answer. In a 4/4/25 Zoom meet-and-confer, Plaintiffs again asked when Musk began preserving ESI; again, defense counsel did not answer. Musk's obligation to preserve began "the moment that litigation [was] reasonably anticipated." *Apple v. Samsung Elecs.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012). Here, that means more than a year "prior to filing the complaint," *id.*, considering Plaintiffs' terminations in October 2022 and their claim submissions in November 2022.

Defendants' refusal to answer these questions creates substantial concern that Musk failed to preserve relevant ESI – particularly given Musk's failure to preserve ESI in other litigation, and his counsel's concession here that his Signal messages from the time of Plaintiffs' termination "became unavailable" at some unspecified time. Ex. D at 3; *see also Twitter, Inc. v. Musk*, No. 2022-0613-KSJM, Letter Order (Del. Ch. Ct. Oct. 5, 2022) (court order finding that "Musk used Signal's automatic deletion feature" and that automatic deletion of Musk's "responsive Signal communications" "likely" occurred, and reserving ruling on sanctions until receiving post-trial briefing – which the court never received because Musk instead chose to settle).[1] To enable evaluation of this issue, Plaintiffs ask the Court to order Musk to confirm (i) whether he ever generated relevant ESI other than SMS/MMS or iMessages on his cellphone, such as ESI from Signal, WhatsApp, or other messaging systems, and (ii) when he began preserving relevant ESI.

**ISSUE #2: Search Terms for Musk's Cellphone.** Defendants have delayed searching Musk's cellphone for months. On 2/4/25, three months after Plaintiffs served RFPs, Defendants first disclosed that Musk's cellphone might contain "highly sensitive professional information" that "may implicate national security matters." Ex. D at 2. Given these concerns, Defendants claimed that Musk had an "inability to utilize Boolean search terms" (*i.e.*, terms using wildcards or connectors), and that his cellphone thus must be searched using "single-term searches." *Id.* at 3. After Plaintiffs' repeated requests, Defendants proposed single-term searches five weeks later.

Plaintiffs see no reason why Musk's personal cellphone (not a government-issued device) could reasonably contain information implicating national security matters. Nevertheless, in an effort to compromise, Plaintiffs agreed to a single-search term method and counter-proposed a total of 111 single-term search terms on 3/21/25. Defendants sent a revised single-term proposal on 3/25/25. Then, defense counsel stated on 4/4/25 that there "may be a way" to run Boolean searches of Musk's cellphone using a new technology, though they said their idea was only a "half-baked." They further stated on 4/6/25, for the first time, that the technology they had learned about was a new Cellebrite tool. Plaintiffs' counsel twice asked defense counsel to thus propose Boolean search terms. On Friday, 4/11/25, defense counsel stated that they would not be

---

[1] This order is available at: https://courts.delaware.gov/Opinions/Download.aspx?id=338770.

providing such terms that day, and asked Plaintiffs to instead send a proposal. Plaintiffs promptly sent a proposed set of 100 search terms on Monday, 4/14/25, shown in **Exhibit A**.

Defendants rejected Plaintiffs' proposal because certain terms are purportedly overbroad and irrelevant. Defendants are incorrect. Plaintiffs' proposal includes *fewer* search terms than their prior proposal – and, more importantly, Defendants have now offered to apply search terms electronically. That wholly changes the proportionality analysis, as using electronic discovery tools is vastly more efficient than manual review. *E.g.*, *In re Facebook, Inc.*, 2021 WL 10282172, at *26 (N.D. Cal. Oct. 11, 2021). Indeed, the incremental cost of adding any search term is now virtually zero. Moreover, Plaintiffs' proposal is appropriately tailored to identify relevant information, which "for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence." *Pizzuto v. Tewalt*, 131 F.4th 1070, 1082 (9th Cir. 2025). This standard is a "low bar," and Plaintiffs have cleared it. *Id*. Musk's ESI is critical: Plaintiffs' claims depend on evidence of his bias against them and his intent in terminating them, and his cellphone communications are highly probative of those issues.

Meanwhile, Defendants have not carried their burden to show that Plaintiffs' proposal is improper. *See La. Pac. v. Money Market*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). Without adequate explanation, Defendants rejected plainly relevant terms like "ERISA," and "Sean" and "Ned" (two Plaintiffs' first names), as well as other relevant terms. For example, Defendants object to "dragon," but in March 2022, Musk told his biographer that "[w]hat Twitter needs is a fire-breathing dragon," "and Parag is not that." Defendants have not demonstrated why any proposed terms are irrelevant or unduly burdensome – particularly given their proposal to now apply search terms electronically, instead of manually.

The Court should therefore order Defendants to proceed with a search of Musk's text messages (specifically, SMS/MMS messages and iMessages), and any other ESI that may exist on his cellphone, using the search terms proposed by Plaintiffs on 4/14/25 as reflected in **Exhibit A**.

## Defendants' Position

**Background**. Musk terminated Plaintiffs' employment for cause and testified about the reasons he believed Plaintiffs were properly terminated, including: (1) Plaintiffs were dishonest in managing Twitter and communicating about spam and bots; (2) Plaintiffs plundered the company leading up to the merger closing, including greenlighting unjustified payments to law firms over his objections,[2] allowing improper retention bonuses, and adding participants to the Plan in violation of the merger agreement; and (3) Plaintiffs engaged in other gross mismanagement, ranging from uncontrolled expenditures to the mishandling of a high-ranking Twitter employee "whistleblower."[3]

Musk's termination decision, however, did not determine whether Plaintiffs would receive

---

[2] For example, Twitter paid its lead litigation counsel $90 million for just four months of work—more than double the amounts paid to Musk's litigation and deal counsel combined—and although Twitter had no obligation to pay anything close to that under its engagement letter. Twitter's executives simply gifted the company's money to the law firm on their way out the door.
[3] Plaintiffs try to brush these reasons away based on a cherry-picked quote attributed to Musk in a biography. Even that hearsay document states Musk believed his decision was "justified" based on his "conviction" about Plaintiffs' misconduct.



severance benefits. Rather, that determination was made through a separate administrative process in which Musk played no role. Ultimately, the Plan Administrator and the Committee determined Plaintiffs were ineligible for severance because they were terminated "for Cause," as defined in the Plan.

Potentially relevant messages on Musk's cellphone concern a narrow topic and time period: his decision to terminate Plaintiffs on October 27, 2022. Nevertheless, Defendants have agreed to apply search terms to his text messages for January 31, 2022-February 28, 2024.

**Musk's Cellphone ESI.** Plaintiffs are trying to manufacture a preservation issue. Contrary to Plaintiffs' assertion, Defendants have repeatedly explained—in writing and at conferences—that there is no potentially relevant ESI on Musk's cellphone other than text messages (iMessage and SMS messages), which have been preserved and we have already agreed to search. Exs. C, D.[4] Defendants reiterate it again here: Having conferred with Musk and reviewed his phone, counsel is not aware of any other potentially relevant ESI having been generated on his cellphone.

Plaintiffs claim Defendants have not said when Musk began preserving ESI on his phone for this matter. But there is no obligation to engage in "discovery on discovery" absent a showing that Defendants have been deficient in producing relevant material,[5] particularly given the extraordinarily broad ESI collection and review Defendants have agreed to undertake—and are undertaking—in this ERISA benefits case. *See RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2021 WL 10312431, *12 (C.D. Cal. Dec. 22, 2021); *Watkins v. Hireright, Inc.,* 2013 WL 10448882, at *3 (S.D. Cal. Nov. 18, 2013); Sedona Conference, 42, 118 (Sept. 2016) (party seeking discovery on discovery must show specific deficiency in other party's production). Plaintiffs' request for discovery on discovery is at best premature.

Plaintiffs suggest a failure "to preserve ESI" by mischaracterizing a letter from a state-court action involving different claims and circumstances. But the fact-finder did not determine that any messages were deleted while a preservation duty applied.[6] Unlike here, the issue in that case was taken up only *after* the plaintiffs identified apparent gaps in production.

**Search Terms**. Defendants have always been willing to search Musk's text messages and repeatedly proposed terms for doing so; the issue is Plaintiffs' overbroad terms. Musk's private cellphone contains personal information and highly-sensitive business information, warranting a targeted search approach. *See In re Soc. Media Adolescent Addiction Prods. Liab. Litig*., 2024 WL 3498235, at *3 (N.D. Cal. July 19, 2024). Musk is CEO of SpaceX, which coordinates with NASA and the Armed Forces on matters of national defense, and he plays an active role in the Presidential administration. Ex. D. Although Musk takes seriously his obligations regarding sensitive national security information, an individual with national security clearance must conduct any search/collection from his phone as a precautionary measure. Plaintiffs do not contend that this process is unreasonable.

---

[4] Plaintiffs claim Defendants "conspicuously" omitted the term "ESI" from one sentence in an email. Ex. B at 2. Defendants were merely responding to the enumerated list of documents Plaintiffs raised in the previous email. *Id.* at 3.
[5] Plaintiffs have not served any discovery request seeking this information.
[6] Even if it did, the discovery obligations there do not extend to this separate litigation. *E.g., Rockman Co. v. Nong Shim Co.*, 229 F. Supp. 3d 1109, 1111 (N.D. Cal. 2017); *Erwine v. Churchill Cnty*., 2021 WL 4066982, at *6 (D. Nev. Sept. 7, 2021).

When the parties began conferring, Defendants explained the search would require using single terms, proposing 27 such terms. Plaintiffs responded with 84 more terms (totaling 111), the majority facially irrelevant or overbroad. Defendants proposed compromise search terms representing a combination of both sides' proposals. Plaintiffs refused to budge.

The day before the parties' 4/4 conference to discuss search terms, defense counsel learned of a technological upgrade (a new version of a Cellebrite tool and other licensed software) X Corp.'s information security team was acquiring to allow for Boolean and proximity search capability, unlike before. Although Defendants promptly raised it at the conference (Exs. E-F) and Plaintiffs' counsel agreed to meet on 4/7 to discuss it further, Plaintiffs changed their mind hours later by declaring impasse on 4/4, only to change course a week later by ostensibly agreeing to negotiate Boolean searches after all.

Plaintiffs then proposed 100 of the same 111 terms from before, but inexplicably *broadened them* by adding wildcard symbols to the prior single-word terms. Plaintiffs refused to narrow or refine other search terms Defendants identified as overbroad and/or irrelevant, including the names of Musk's lawyers, which improperly target privileged communications. Even so, Defendants once again offered another compromise set of terms, which Plaintiffs rejected within hours, opting to proceed with this brief.

Plaintiffs ask the Court to compel Defendants to apply **100** search terms, the majority of which are neither reasonable nor proportional. *E.g.*, *In re Soc. Media*, 2024 WL 3498235, at *1; 19 Sedona Conf. J. 1, 165 (2018) Comment 11.a.[7] Their list is replete with irrelevant and overbroad terms. For example, "Fork w/5 road" references an email Twitter sent rank-and-file employees *after* Plaintiffs were terminated; Plaintiffs did not receive it, it does not concern them, and it has no connection to this case. Generic terms like "tweet*" and "Twitter" will result in false positives, as Musk was an active Twitter user and "Twitter" encompasses any reference to the company. Similarly, "Dragon" is unnecessary because the terms "Parag" and "Agrawal" would locate any "fire-breathing dragon" comment.

**Plaintiffs Ignore Defendants' Extensive Efforts To Collect And Search ESI Sources.**
Defendants have agreed to search email and Slack messages for eight custodians, including Musk. Defendants are diligently reviewing tens of thousands of potentially responsive ESI documents based upon their proposed compromise search terms. Plaintiffs have also pressed Defendants to search Musk's email accounts at non-party companies. In compromise, Defendants contacted Tesla, SpaceX, and Excession to coordinate the application of 242 search terms to Musk's email and are producing responsive documents. Defendants have already produced over 40,000 pages of documents (including thousands outside the administrative record).

**Defendants' Proposal**. Defendants respectfully request the Court order the search of Musk's text messages be limited to the 45 search terms Defendants proposed on 4/23, a reasonable compromise of both parties' terms.

---

[7] Plaintiffs' assertion that their terms will "identify information reasonably calculated to lead to the discovery of admissible evidence" is not the standard for discoverability. *Gordoa v. Apple, Inc.*, 2024 WL 1541268, at *1-2 (N.D. Cal. Apr. 8, 2024).

| | |
|---|---|
| Date: May 1, 2025 | SIDLEY AUSTIN LLP<br>By: */s/ David L. Anderson*<br>   David L. Anderson<br>   Sheila A.G. Armbrust<br><br>*Attorneys for Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett* |
| Date: May 1, 2025 | MORGAN LEWIS & BOCKIUS LLP<br>By: */s/ Christopher Boran*<br>   Christopher Boran<br>   Abbey M. Glenn<br><br>*Attorneys for Defendants Elon Musk, X Corp., Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy, Lindsay Chapman, Brian Bjelde, and Dhruv Batura* |