# Morgan Lewis

**Christopher Boran**
Partner
+1.312.324.1146
christopher.boran@morganlewis.com

May 1, 2025

Magistrate Judge Laurel Beeler
San Francisco Courthouse
Courtroom B - 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

Re:   *Agrawal et al. v. Musk et al.*, N.D. Cal. 3:24-cv-01304-MMC-LB
       Joint Letter Brief – Discovery Dispute

Dear Judge Beeler:

The Parties submit this Joint Letter Brief regarding a dispute as to whether Plaintiffs must provide information about their ESI search methods, including ESI search terms and hit reports, and whether they have provided it. Lead trial counsel have conferred by Zoom and have reached impasse, though Plaintiffs dispute whether impasse occurred before letter briefing commenced.

**Defendants' Position**: The Stipulated Order on Discovery of ESI requires the parties to work cooperatively on "[s]earch methodology … including, but not limited to, search terms." Dkt. 96 at 5. Plaintiffs have violated the Order. Plaintiffs have continually ignored Defendants' requests to engage meaningfully in negotiations concerning the search methodology for Plaintiffs' ESI, including by refusing to share or negotiate search terms and provide hit reports, or even explain why. Meanwhile, Defendants have done all of these things continuously for months. The Court should intervene to require that Plaintiffs abide by the same rules, rather than allow them to shirk their discovery obligations. The Court should not be distracted by Plaintiffs' belated effort—*only after* receiving Defendants' portion of this letter brief—to respond for the first time to Defendants' proposed search terms, while still refusing to provide any of the search terms they have used, hit reports, or other explanation for refusing to do so. Plaintiffs have used the letter-briefing process as a belated, half-measure in the hopes of creating the appearance of cooperation.

**Plaintiffs' Uncooperative Approach.** In Plaintiffs' own words, it is "improper for [a party] to refuse to disclose the search terms they plan to use for their collection and review of ESI in this matter." C. Wong Email (Feb. 12, 2025). And yet that is exactly what they have done for the past four months. Plaintiffs' conduct falls far short of their duty to engage cooperatively in discovery. *In re Soc. Media Adolescent Addiction*, 2024 WL 5190206, at *13 (N.D. Cal. Dec. 20, 2024) (ordering "transparent" methods used to produce ESI); *Wren v. Transam. Life Ins. Co.*, 2024 WL 5317297, at *5 (C.D. Cal. Nov. 13, 2024) (delayed search terms and a hit report was

Morgan, Lewis & Bockius LLP

110 North Wacker Drive
Chicago, IL 60606-1511         +1.312.324.1000
United States                  +1.312.324.1001

Page 2

"unacceptable" when the only excuse was unresolved scope disputes).[1]

On January 13, 2025, Defendants served 42 document requests. Although Plaintiffs continue to stand on improper scope objections, which are being addressed separately, they have nominally agreed to produce documents or ESI in response to 40 requests. Critically, however, Plaintiffs have steadfastly refused to provide any information about their ESI search methodology outside of the letter-briefing process. They have not provided ESI search terms or hit reports, despite multiple requests.[2] Plaintiffs likewise have not provided a hit report for the ESI search terms Defendants proposed back in March.  Indeed, Plaintiffs refused to respond to those search terms at all until April 18, after receiving the draft of this letter brief. Ex. A (3/14/25 Proposed Search Terms). Nor have Plaintiffs justified their refusal to negotiate search terms or provide hit reports, despite demanding the same of Defendants. There is no justification. And because this has dragged on too long, the Court should step in. *See, e.g., Tremblay v. OpenAI, Inc.*, 2024 WL 3638421, at *2 (N.D. Cal. July 31, 2024) (ordering disclosure of search terms); *Andersen v. Stability AI Ltd.*, 2025 WL 870358, at *5 (N.D. Cal. Mar. 19, 2025) ("requiring hit reports be provided as part of the meet and confer process regarding search terms"); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 3225904, at *4 (N.D. Cal. June 28, 2024) (same).

Indeed, only after Defendants indicated that they would be preparing this letter brief did Plaintiffs cobble together their first document production on April 11. But this small production was composed almost entirely of news articles, public filings in Twitter cases, SEC filings and other public documents underlying their complaint allegations, and a few text messages between Mr. Agrawal and Mr. Musk—in short, documents Defendants are aware of already. This meager and belated production—which contained no emails, text messages, or other ESI uniquely in Plaintiffs' possession—does not absolve Plaintiffs.[3] It remains the case that Plaintiffs have refused to engage meaningfully on search terms or provide *any* hit reports, effectively (and improperly) giving themselves discretion to decide what, and what not, to turn over in discovery.

The only explanation Plaintiffs now offer for their conduct is that they cannot chew gum and walk at the same time.  That is, they say it is okay for them to refuse to engage in any meaningful search term negotiations or share hit reports to facilitate negotiations, because the parties have not yet resolved disagreements about the scope of all of Defendants' RFPs.  Plaintiffs cite no authority for this rule, which apparently applies only to them, since Plaintiffs have insisted that Defendants negotiate search terms simultaneously with disputes over the scope of Plaintiffs' RFPs. Plaintiffs' suggestion that they don't have to provide hit reports while "the breadth of certain . . . requests [are] resolved" is "nonsense." *Wren*, 2024 WL 5317297, at *5.

**Plaintiffs' Nonreciprocal Approach Is Improper.** Defendants affirmatively proposed over 200 search terms for Defendants' email and Slack messages in December 2024. The Parties have since engaged in multiple rounds of negotiations over those terms, during which Defendants proposed

---

[1] Contrary to Plaintiffs' telling, *Wren* is on point. The failure to identify custodians in that case was merely one of several discovery violations, the others of which are present here.
[2] Hoping to downplay this failure, on April 30, Plaintiffs revised (for the third time) their portion of this letter brief (two weeks after first receiving it) to say *for the very first time* what they have never said before:  that they are willing to share hit reports someday.
[3] On April 22, Plaintiffs made a second production of 47 documents, including a handful of ESI communications from unidentified applications and in some cases unidentified persons.

Page 3

three sets of revised ESI search terms, incorporating some of Plaintiffs' search terms, and provided multiple sets of hit reports for Defendants' and Plaintiffs' proposed terms. Meanwhile, Defendants started reviewing tens of thousands of ESI documents long before any letter briefing and despite ongoing disputes about the scope of Plaintiffs' RFPs, made a supplemental production on April 22, and produced over 1,000 ESI documents on April 25 and expect to produce more in the near term.  Defendants have also engaged in discussions regarding search terms to apply to Mr. Musk's text messages, so far proposing *three sets of search terms* for that purpose. Plaintiffs have not even pretended to reciprocate in responding to Defendants' discovery, until after receiving this letter or otherwise explain why the same rules Defendants have followed should not apply to them. This "unreasonabl[e] refus[al] to provide reciprocal discovery" violates Plaintiffs' discovery obligations. *U.S. v. Swenson*, 298 F.R.D. 474, 478 (D. Idaho 2014).

**Defendants' Proposal**. Defendants respectfully request that the Court order Plaintiffs to (1) disclose the ESI custodians, search terms and related hit reports—or other search methodologies utilized—for Plaintiffs' April 11 and 22 productions; (2) provide hit reports for search terms Defendants proposed on March 14 and reflected in Exhibit A; and (3) on a going forward basis, engage in appropriate and good-faith discussions regarding searches for responsive ESI in Plaintiffs' possession, custody or control.

**Plaintiffs' Position:** Defendants did not allow Plaintiffs the opportunity to meet and confer on Defendants' purported issues before unilaterally declaring impasse. This letter brief is premature, and Defendants' portion is inaccurate because Plaintiffs *have* provided proposed ESI search terms and have told Defendants they are willing to provide hit counts.

**Background.** Elon Musk terminated Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett (Twitter's CEO, CFO, Chief Legal Officer, and General Counsel) to deprive them of payments under Twitter's benefit plans. His cherry-picked Severance Administration Committee ratified his decision. *E.g.*, Dkt. 58 ("Compl.") ¶¶ 4–7, 92–100. After exhausting the claims administration process, Plaintiffs filed this case. Discovery opened after the Court denied Defendants' partial motion to dismiss on November 1, 2024. Dkt. 73. Over two months later, Defendants propounded requests for production ("RFPs") to Plaintiffs, to which Plaintiffs timely responded. The Parties are actively meeting and conferring on the RFPs' scope, including via Zoom on April 21, 2025 and by emails on April 18 and April 22. Despite ongoing negotiations, and in a show of good faith, Plaintiffs have already begun producing responsive documents, starting with a rolling production on April 11 and a second production on April 22. In contrast, Defendants did not produce a single document outside the administrative record in response to Plaintiffs' RFPs – until recently, only *after* Plaintiffs sent them a draft of their portion of this letter.

Now, Defendants attempt to obfuscate their own egregious discovery conduct by calling Plaintiffs' first rolling ESI production "meager and belated" (even though Defendants only just began their own ESI production) and demanding the filing of this premature letter brief with their spurious revisionist history of the Parties' discovery conduct (even though Plaintiffs have already agreed to provide the search terms and hit counts that Defendants seek through this brief). Meanwhile, Defendants have stonewalled search term negotiations over Plaintiffs' RFPs, which will be the subject of a forthcoming brief. The Court should reject Defendants' hypocritical demands and order Defendants to continue meeting and conferring, including by responding to Plaintiffs' proposed revisions to Defendants' proposed search terms.

Page 4

**Defendants Unilaterally Declared Impasse.** The stipulated ESI Order requires parties to meet and confer on "[s]earch methodology to be applied including, but not limited to, search terms[.]" Dkt. 96 at 5. That is precisely what the Parties were doing until Defendants declared impasse on a Sunday morning, less than 48 hours after the parties first met and conferred on this topic. *See* Ex. C (4/6/25 Email Chain). Plaintiffs promptly responded to reiterate that they had not refused to share the information Defendants requested. *Id*. Plaintiffs simply asked that, as is ordinarily done, the parties negotiate the scope of discovery, then consider search terms and (if needed) provide hit counts.[4] And Plaintiffs proposed search terms on April 18 and reiterated repeatedly that they have not refused to provide hit counts. *See, e.g.*, *id.* ("Plaintiffs are **not** refusing to share search terms or hit reports, but rather that we will evaluate Defendants' requests regarding those items in light of the positions you took on the April 4 meet-and-confer and will follow up in due course.").

Defendants' assertions to the contrary are inaccurate, and their declaration of impasse on a Sunday morning was inappropriate, including because (1) Plaintiffs had not yet had sufficient time to evaluate Defendants' position, and (2) Plaintiffs had not yet received Defendants' promised case law supporting Defendants' Friday, April 4 positions on the scope of discovery. *Id*. Nevertheless, in another attempt to manufacture cause, Defendants declared impasse that Sunday night.

Defendants' caselaw does not help them. Two of their cases concern negotiation of an ESI protocol and are irrelevant. Here, the Parties spent months negotiating an ESI protocol. At no point in those negotiations did Defendants request hit reports that they request now. *Wren v. Transam. Life Ins. Co.*, 2024 WL 5317297 (C.D. Cal. Nov. 13, 2024), involves a defendant who failed to identify custodians – also irrelevant here. Defendants' only other case on this point supports Plaintiffs: In *Doe v. Kaiser Foundation Health Plan, Inc.*, the court ordered ESI directives only after counsel had been "so uncooperative that neither side even tried to propose any search terms to start the negotiations." 2024 WL 3225904, at *3–4 (N.D. Cal. June 28, 2024). The court thus ordered a hit report to assess the reasonableness of searches covering document requests the Parties had already agreed to produce. *Id*. Here, by contrast, Plaintiffs have proposed search terms.

Defendants' efforts to declare impasse are also premature considering the following:

*First*, Plaintiffs have never refused to disclose the search terms they plan to use. Defendants cite nothing supporting this assertion. To the contrary, after meeting and conferring on the proper scope of discovery, Plaintiffs promptly proposed search terms to Defendants on April 18, incorporating most of Defendants' search terms and suggested edits to certain others. *See* Ex. A & B (Defs.' and Pls.' Search Term Proposals). Defendants say above that the Court should not be "distracted" by Plaintiffs' proposal – but it is Defendants who are creating a distraction with this letter brief. Rather than engage in a counterproposal, Defendants unilaterally declared impasse and have insisted on filing this instead. *Id*. That is improper. *See Doe*, 2024 WL 3225904, at *3–4 (admonishing counsel who "failed to negotiate reasonably and work in good faith in resolving discovery disputes" when they "were unable to propose and negotiate search terms for these documents").

---

[4] Plaintiffs have consistently taken this position in this litigation. Defendants' assertion otherwise above is blatantly false. As is documented in correspondence and will be reflected in the above-mentioned forthcoming brief, it is **Defendants** who insisted on simultaneous negotiation of scope and search terms; Plaintiffs made clear that they disagreed with that approach but would nevertheless negotiate those two separate issues in parallel, in the spirit of compromise.

Page 5

*Second*, it is puzzling that Defendants have concerns that Plaintiffs started producing documents on April 11. Plaintiffs' production cover letter clearly states this is the first of Plaintiffs' rolling productions. Plaintiffs are honoring their discovery obligations, even while the Parties negotiate Plaintiffs' objections to Defendants' RFPs. It is unclear why Defendants would object to a production of relevant documents that the Parties agree are properly within the scope of discovery. To the extent Defendants seek information about Plaintiffs' search methods for their April 11 production, Plaintiffs respond as follows: Plaintiffs searched for Mr. Agrawal's text messages from the relevant time period and filtered for messages in which Mr. Musk was a participant. Plaintiffs produced all resulting messages and their family members. Plaintiffs did not withhold any messages on the basis of privilege. The remaining documents included in the production came from the administrative record in this case or from third parties in response to subpoenas, and Plaintiffs did not conduct any ESI search to identify those documents.

It is also bold for Defendants to call Plaintiffs' first production "meager and belated" when they only last week began producing documents, even in response to requests that Defendants agreed to in December 2024. And that production consisted of documents from Defendants' arbitration with the Wachtell Lipton law firm, which Defendants could and should have already produced.

As to Plaintiffs' April 22 production, Plaintiffs began identifying additional ESI responsive to Defendants' RFPs and within the scope of discovery that the Parties are separately negotiating. Plaintiffs identified these documents by beginning to search their text messages for communications concerning the reasons Musk has given for purportedly terminating them, which the Parties have agreed should be produced. This was Plaintiffs' second rolling production, and Plaintiffs will continue to search for and produce responsive documents as the Parties continue to negotiate search terms and the relevant scope of discovery.

**The Parties Are Still Negotiating the Scope of Discovery.** Additionally, Defendants are putting the cart before the horse: they demand the Court order Plaintiffs to produce hit reports for Defendants' proposed search terms while the Parties are still conferring on the proper scope of discovery to Defendants RFPs by emails dated as recently as April 22.

Defendants do not and cannot claim that the Parties have reached impasse on that issue (they have not). In fact, on April 21 – after Defendants provided their draft of this letter brief – the Parties conferred on a number of issues, including Plaintiffs' position on Defendants' requests. By email dated April 22, Defendants continued that discussion. Clearly, the negotiations over scope are ongoing. Yet, Defendants demand that Plaintiffs provide hit reports for Defendants' overbroad, unilaterally-imposed search terms. Without agreement on the categories of documents Plaintiffs should search, there is no utility in running hit reports for search terms that are subject to change as the negotiations continue, especially in the absence at this time of undue burden objections.

The nature of Defendants' request to the Court highlights this tension. Tellingly, Defendants have not asked the Court to compel Plaintiffs to run certain search terms, nor have they asked the Court to address the scope of Defendants' requests for documents. This is because the Parties are still actively meeting and conferring on those issues. Defendants' request for hit reports are thus premature and improper, and reflect their own hypocritical discovery conduct.

**Plaintiffs' Proposal.** Plaintiffs respectfully request that the Court direct the Parties to continue negotiating via meet-and-confer pursuant to your Standing Orders.

| | |
|---|---|
| Date: May 1, 2025 | MORGAN LEWIS & BOCKIUS LLP<br>By: */s/ Christopher Boran*<br>    Christopher Boran<br><br>By: */s/ Abbey M. Glenn*<br>    Abbey M. Glenn<br><br>*Attorneys for Defendants Elon Musk, X Corp., Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy, Lindsay Chapman, Brian Bjelde, and Dhruv Batura* |
| Date: May 1, 2025 | SIDLEY AUSTIN LLP<br>By: */s/ David L. Anderson*<br>    David L. Anderson<br><br>By: */s/ Sheila A.G. Armbrust*<br>    Sheila A.G. Armbrust<br><br>*Attorneys for Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett* |