# Morgan Lewis

**Christopher Boran**
Partner
+1.312.324.1146
christopher.boran@morganlewis.com

May 23, 2025

Magistrate Judge Laurel Beeler
San Francisco Courthouse
Courtroom B – 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

Re:   *Agrawal, et al. v. Musk, et al.*, N.D. Cal. 3:24-cv-01304-MMC-LB
       Joint Letter Brief – Discovery Dispute

Dear Judge Beeler:

The Parties submit this Joint Letter Brief regarding a dispute as to the scope and length of the depositions of three individual Defendants, although the parties have agreed on dates for the depositions. Lead trial counsel conferred by Teams and have reached impasse.

**Defendants' Position:** This is an ordinary ERISA benefit claim denial case, it just happens to involve Plaintiffs, four former Twitter executives who were terminated by Elon Musk after a high-profile acquisition. Plaintiffs seek to depose the three individuals ("Committee members") who decided Plaintiffs' claims for severance benefits under two Twitter Plans. Like all ERISA benefit cases, discovery on such claims is narrowly circumscribed, and depositions are an irregular occurrence. When a deposition is permitted, it must be limited to an alleged conflict or procedural irregularity in the administrative process. Yet Plaintiffs seek freewheeling depositions covering "any issue relevant" to Plaintiffs' lawsuit, including claims and events in which the Committee members are not even alleged to have been involved. Such unconstrained depositions are contrary to case law and should be appropriately limited as Defendants have proposed here: (1) no more than two hours per witness, and (2) limited to questioning about alleged conflicts of interest or procedural irregularities in the administrative process.

**Background.** After termination, Plaintiffs submitted claims for severance benefits under the Plans pursuant to the administrative process. The Plan Administrator, HR professional Lindsay Chapman, carefully considered their claims before issuing separate decisions thoroughly explaining her reasons for denying each one. Plaintiffs then submitted a consolidated appeal, which was considered by a duly-appointed Committee comprised of Dhruv Batura, Brian Bjelde, and Chapman. The Committee denied the appeal, agreeing unanimously with the Plan Administrator that Plaintiffs were terminated for "Cause" as defined by the Plans (collectively, the "Decisions").

Morgan, Lewis & Bockius LLP

110 North Wacker Drive
Chicago, IL  60606-1511          T +1.312.324.1000
United States                    F +1.312.324.1001

Page 2

Through this lawsuit, Plaintiffs assert ERISA § 502(a)(1)(B) claims seeking to overturn the Decisions. The Plans expressly provide that any designated "Administrator will have full discretion to administer and interpret the Plan[s]." Dkt. 1-1 at 5; Dkt. 1-2 at 6. Thus, the Decisions can be overturned only for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). Judge Chesney has already said as much, based upon her review of the Plan and *Abatie*. Dkt. 64 at 4 (the "enforceable discretionary clause" in the Plan warrants "discretionary review").

**Admissibility and Relevance of Extrinsic Evidence Beyond The Administrative Record Is Narrowly Limited.** Discovery relating to Plaintiffs' § 502(a)(1)(B) claims is limited to the administrative record; that is, the record that was before the Plan Administrator and Committee when rendering their Decisions. *Abatie*, 458 F.3d at 970.[1] The administrative record here constitutes over 20,000 pages of documents. Courts often preclude depositions entirely in cases involving § 502(a)(1)(B) claims.[2]

There are only two narrow exceptions where a court may, in its discretion, permit extrinsic evidence beyond the administrative record: an alleged conflict of interest or substantial procedural irregularities that prevented full development of the administrative record. *Abatie*, 458 F.3d at 970-71; *Walker v. AT&T Benefit Plan*, 338 F.R.D. 658, 662 (C.D. Cal. 2021). Even then, discovery "must be narrowly tailored to reveal the nature and extent of the conflict, and must not be a fishing expedition." *E.g.*, *Zewdu v. Citigroup Long Term Disability Plan*, 264 F.R.D. 622, 626 (N.D. Cal. 2010); *Walker v. Metro. Life Ins.*, 2008 WL 426068, at *1 (N.D. Cal. Feb. 14, 2008). In fact, the only two cases Plaintiffs identified likewise recognize this narrow scope. *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 901 (9th Cir. 2016) (noting failure to take deposition on alleged conflict of interest); *Fowler v. Aetna Life Ins.*, 615 F. Supp. 2d 1130, 1136 (N.D. Cal. 2009) (depositions limited to probing alleged conflict of interest).

**The Court Should Limit the Scope and Duration of The Committee Member Depositions.** Batura, Bjelde and Chapman have each agreed to a two-hour deposition on topics consistent with Ninth Circuit law—the alleged conflict of interest and procedural irregularities. This would provide Plaintiffs with 6 total hours of Committee testimony. Plaintiffs want more. They demand 7-hour depositions of each of the three Committee members covering "any issue relevant to" any of Plaintiffs' claims, refusing to appropriately limit the scope of these depositions. Ex. A. This is precisely the kind of fishing expedition that courts do not permit in the ERISA context.

Plaintiffs further intend to question the Committee members about "the determination that Plaintiffs' terminations were for 'Cause' under the Plans." *Id.* But binding precedent prohibits

---

[1] This comports with "the general rule that ERISA cases should be approached in a manner to produce a speedy, inexpensive and efficient resolution of the claim." *Jennifer A. v. United Healthcare Ins. Co.*, 2012 WL 748569, at *3 (C.D. Cal. Jan. 31, 2012).

[2] *E.g.*, *Jennifer*, 2012 WL 748569, at *3; *Harper v. Unum Life Ins. Co.*, 2007 WL 1792004, at *5 (E.D. Cal. June 19, 2007); *Leicht v. Sw. Carpenters Pension Plan*, 2012 WL 13020048, at *5 (C.D. Cal. Dec. 3, 2012); *Sheakalee v. Fortis Bens. Ins.*, 2008 WL 4279383, at *5-6 (E.D. Cal. Sept. 16, 2008); *Crawford v. Hartford Life & Accident Ins. Co.,* 2011 WL 5237826, at *2 (S.D. Miss. 2011) ("As a general rule, . . . depositions will not be approved in ERISA cases").

Page 3

discovery on the merits of the decisions. *Abatie*, 458 F.3d at 970 ("the decision on the merits ... must rest on the administrative record"); *see also, e.g.*, *Harper*, 2007 WL 1792004, at *5 ("Plaintiff may be entitled to discovery as to the structural conflict of interest issue, but is not entitled to discovery aimed at exposing how and why the decisions were made or whether the decision was 'correct.'"); *Sheakalee*, 2008 WL 4279382, at *6 (similar); *Anderson v. Pacificare of Nev., Inc.*, 2011 WL 13239243, at *9-11 (D. Nev. Mar. 30, 2011) (Rule 26(b) does not permit plaintiffs to seek "extra-record materials on the merits of the decision to deny benefits").

Plaintiffs try to justify their exceptional and improper request for broad-ranging depositions by arguing they assert a claim against *different Defendants* under ERISA § 510, which alleges Plaintiffs were terminated to prevent them from obtaining Plan benefits. This is a red herring. Plaintiffs have not alleged any facts (much less adduced any evidence) that the Committee members had a role in terminating Plaintiffs' employment on October 27, 2022, and they are not even Defendants to the § 510 claim. Compl. ¶¶ 174-76. The Committee members' involvement in the facts underlying this case was limited to deciding Plaintiffs' claims for benefits, as reflected in the administrative record. Indeed, the Committee members were appointed long after Plaintiffs were terminated, and they did not communicate with Musk about Plaintiffs, their claims for benefits, or Committee business. *See* Dkt. 99-3 at 2. Despite Plaintiffs' unsupported and conclusory assertions below, Defendants have produced a substantial portion of the Committee members' communications, and none indicates that Musk influenced the process.

Finally, the Committee members' depositions are not the only source of information regarding the discoverable topics. In addition to the ample administrative record, Defendants have produced or are producing relevant email and Slack communications with Committee members and other Committee materials relating to Plaintiffs. Defendants have also produced communications between counsel and Committee members concerning Plaintiffs' benefit claims, pursuant to an agreement that preserves Defendants' ability to assert privilege over the same. Defendants also responded to Plaintiffs' interrogatories relating to the Committee, providing information about the Committee's process and the Committee members themselves, including that none has a personal relationship with Musk. Further, Plaintiffs intend to depose Musk—who made the decision to terminate Plaintiffs' employment on October 27, 2022—in connection with Plaintiffs' ERISA § 510 claim. Plaintiffs should not be permitted to use that claim as a bootstrap to obtain impermissible discovery from the Committee members concerning the § 502(a)(1)(B) claims, which must be decided on the administrative record.

**Defendants' Proposal:** Defendants respectfully request that the Court limit the Committee members' depositions as to duration and substance: (1) no more than two hours, (2) limited to questions concerning allegations of conflict of interest or procedural irregularities.

**Plaintiffs' Position:** This obviously is no ordinary ERISA case. The parties have been engaged in mutual, extensive discovery beyond the administrative record – including as ordered by this Court. Dkt. 121. Defendants' request to limit three Defendants' depositions should be denied. Plaintiffs should be allowed to depose those Defendants about "any nonprivileged matter that is relevant to any party's claim or defense" under Rule 26(b)(1), for the full duration under Rule 30(d)(1).

**Background.** Plaintiffs are the former CEO, CFO, Chief Legal Officer, and General Counsel of Twitter. Defendant Musk purported to terminate them "for cause" when he bought Twitter, but

Page 4

admitted his real intent was to deprive them of benefits under Twitter's severance plans. Dkt. 58 ¶¶ 4–7. Plaintiffs submitted administrative claims for benefits, which were denied by Defendant Chapman. Plaintiffs then appealed to a Severance Administration Committee, consisting of Defendants Chapman, Bjelde, and Batura. Musk appointed all three, and all three are employees of Musk's other companies. *Id.* ¶¶ 70–74, 92–100. They denied the appeal.

This suit followed. Plaintiffs bring three types of claims: (i) claims for benefits under ERISA Section 502(a)(1)(B) against all Defendants; (ii) a claim for termination of employment in an unlawful effort to interfere with their severance benefits under ERISA Section 510 against Musk and X Corp.; and (iii) a claim for failure to provide documents against Defendants Musk and Chapman. *Id.* ¶¶ 157–83. Discovery began in November 2024, after the Court denied Defendants' partial motion to dismiss. Dkt. 73. Each side has propounded dozens of document requests, along with interrogatories. On April 18, 2025, Plaintiffs noticed the depositions of each individual Defendant, including the Committee members. Defendants have noticed the depositions of all four Plaintiffs, with no time or scope limitations beyond those in the Federal Rules.

**Discovery Is Proceeding Well Beyond The Administrative Record.** Contrary to Defendants' assertion, discovery in this case is not limited to the administrative record. Indeed, Defendants have already conceded that discovery here is broader.

As to the Section 502 claims, Plaintiffs may obtain discovery on procedural irregularities and the Committee members' conflicts of interests and bias under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc). Moreover, contrary to Defendants' assertion, the abuse-of-discretion standard does *not* necessarily apply to review of plan administrators' decisions. Rather, evidence of procedural irregularities, conflicts of interest, or bias can warrant review that is "tempered by skepticism," or even "de novo review." *Id.* at 968–72; *see also, e.g.*, *Nolan v. Heald College*, 551 F.3d 1148, 1153–54 (9th Cir. 2009) (considering evidence of bias and conflict of interest outside the administrative record because it "bore directly on the contours of the abuse of discretion standard"); *Stephen v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 930 (9th Cir. 2012) (courts "should consider *any* relevant evidence about [defendant's] history of biased decisionmaking[,] and *any* evidence that its decisionmaking was biased") (emphases added). Contrary to Defendants' suggestion, Judge Chesney has not yet decided what standard should be used, but rather has noted a dispute here over "how much scrutiny [the Court] should apply" under *Abatie*. Dkt. 64 at 4. Defendants thus have already agreed to document discovery on these issues. For example, they have agreed to search for and produce responsive documents beyond the administrative record from the three Committee members' X Corp. or Twitter email accounts and Slack data, as well as two Committee members' SpaceX email accounts.

As to the Section 510 claim, Plaintiffs are entitled to discovery regarding Musk's and X Corp.'s intent and purported reasons for terminating Plaintiffs. Judge Chesney already denied Defendants motion to dismiss that claim, Dkt. 73, and thus Plaintiffs are entitled to full discovery on this claim. Indeed, in opposing a motion to open discovery while that partial motion to dismiss was pending, Defendants acknowledged that there was "no serious question that the Court's resolution of Defendants' Motion to Dismiss will impact the scope of discovery." Dkt. 71 at 8.

**Defendants' Depositions Should Not Be Limited.** Plaintiffs are entitled to depose the Defendant Committee members about the same topics for which they have been taking document discovery,

Page 5

for both the Section 502 and 510 claims. The Court should not limit those depositions further than the default limitations under the Federal Rules.

First, the Committee members are Defendants. The default rule under Rule 30(d)(1) is that Plaintiffs are entitled to depose each Defendant for up to 7 hours. Moreover, Rule 26(b)(1) limits the scope of Defendants' depositions to "nonprivileged matter[s] that [are] relevant to any party's claim or defense," ensuring that depositions do not turn into the kind of "fishing expedition" that Defendants express concern about wanting to avoid. *See, e.g.*, *Detoy v. City & Cnty. of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) ("the scope of the deposition is determined solely by relevance under Rule 26, that is, that the evidence sought may lead to the discovery of admissible evidence"). There is no reason to deviate from those default rules here.

Defendants say that the scope of the Committee members' depositions should be limited because the Committee members "were appointed long after Plaintiffs were terminated," had "limited" involvement in the underlying facts, and "did not communicate with Musk about Plaintiffs, their claims for benefits, or Committee business." *Supra*, p. 3. But for those propositions, Defendants cite only an email from defense counsel, and no actual evidence. Plaintiffs should not be forced to rely on defense counsel's say-so about facts. Rather, Plaintiffs should have opportunity to depose the Committee members on these topics – all of which are relevant both to procedural irregularity and conflict of interest for the Section 502 claims, as well as Musk's intent and motives for the Section 510 claim.[3] Indeed, Defendants previously identified each Committee member as knowledgeable about "the allegations and claims asserted in the Complaint," including "the determination that Plaintiffs were terminated 'for cause,'" before later amending their initial disclosures to remove that language. Ex. B, Defs.' 1/7/25 Initial Disclosures at 3–4.

The cases that Defendants cite do not support them. For example, *Harper v. Unum Life Ins. Co.*, 2007 WL 1792004, at *5 (E.D. Cal. June 19, 2007), did not involve depositions of any defendant, but rather nine in-house medical personnel who reviewed the plaintiff's medical records. Courts have allowed depositions in many ERISA Section 502 or 510 cases. *See, e.g.*, *Donan v. IBM Corp. LTD Plan,* 835 F.3d 893 (9th Cir. 2016); *Fowler v. Aetna Life Ins. Co.*, 615 F. Supp. 2d 1130, 1136 (N.D. Cal. 2009).

Second, Plaintiffs should be permitted to take all 7 hours permitted under Rule 30(d)(1) for each Defendant's deposition because Plaintiffs likely require that time to explore procedural irregularities, conflicts of interests, and bias. To give only a few examples, the documentary record so far indicates that Musk hand-picked employees from his other companies to serve as Committee members and that the Committee members ignored evidence in support of Plaintiffs' appeal, failed to conduct a meaningful independent investigation, and rubber-stamped Musk's improperly-motivated terminations of Plaintiffs (and every other claimant covered under the Plans). Plaintiffs should be permitted to explore these topics in the Committee members' depositions.

**Plaintiffs' Proposal:** Plaintiffs respectfully request that the Court deny Defendants' request to limit the scope and duration of the Committee member Defendants' depositions.

---

[3] Defendants' exaggerated assertion that discovery on the decisions' is "prohibit[ed]" is not supported by the cases they cite, none of which involved Section 510 claims.

Page 6

| | |
|---|---|
| Date: May 23, 2025 | MORGAN LEWIS & BOCKIUS LLP<br>By: */s/ Christopher J. Boran*<br>    Christopher J. Boran<br>    Abbey M. Glenn<br><br>*Attorneys for Defendants Elon Musk, X Corp., Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy, Lindsay Chapman, Brian Bjelde, and Dhruv Batura* |
| Date: May 23, 2025 | SIDLEY AUSTIN LLP<br>By: */s/ Sheila A.G. Armbrust*<br>    David L. Anderson<br>    Sheila A.G. Armbrust<br><br>*Attorneys for Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett* |