**SIDLEY**

SIDLEY AUSTIN LLP
555 CALIFORNIA STREET
SUITE 2000
SAN FRANCISCO, CA 94104

+1 415 772 7430
SARMBRUST@SIDLEY.COM

June 9, 2025

Magistrate Judge Laurel Beeler
San Francisco Courthouse
Courtroom B - 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

Re: *Agrawal et al. v. Musk et al.*, N.D. Cal. 3:24-cv-01304-MMC-LB
Joint Letter Brief – Discovery Dispute Regarding Production of *X Corp. v. Wachtell* Arbitration Award

Dear Judge Beeler:

The parties submit this Joint Letter Brief regarding a dispute as to whether Defendants must produce any award or decision issued in *X Corp. v. Wachtell, Lipton, Rosen & Katz*, No. CGC-23-607471 (Cal. Super. Ct., S.F. Cty.) and the related JAMS Arbitration Ref. No. 5100001599 ("*Wachtell*"). Lead trial counsel have conferred by Zoom and have reached an impasse.

## Plaintiffs' Position

Defendants improperly refuse to produce any decision issued by the arbitrator in *Wachtell*. *First,* Defendants waived all objections to production, because they failed to respond within 30 days. *Second,* Plaintiffs seek relevant documents because the issues in *Wachtell* overlap substantially with the issues in this case (*see* Ex. A, Excerpts of *Wachtell* Complaint), and any arbitrator's decision will be relevant to Plaintiffs' claims. *Third,* confidentiality considerations do not preclude production. The Court should order Defendants to produce any responsive decision.

**Background.** When Defendant Elon Musk bought Twitter in October 2022, he immediately terminated Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett, purportedly "for cause." One of Musk's and the Committee member Defendants' primary bases for finding "cause" related to the Twitter Board's decision to pay legal fees to Wachtell, which successfully represented Twitter in its merger litigation against Musk. However, Musk's real intent was to deprive Plaintiffs of benefits under Twitter's ERISA severance plans. *E.g.*, Dkt. 58 ¶¶ 4–7.

After Plaintiffs filed this case, Defendant X Corp. sued Wachtell to recover fees paid for work on the Twitter merger litigation. Wachtell compelled X Corp.'s lawsuit to arbitration. Musk was deposed, and two Plaintiffs in this case testified pursuant to subpoena at the *Wachtell* arbitration. In response to an earlier RFP, Defendants agreed to produce transcripts of the deposition and arbitration testimony, with exhibits, from *Wachtell*, designated confidential. At Defendants' request, the parties (and Wachtell) agreed that the production was "without prejudice to any Party's ability to subsequently seek additional documents from the *Wachtell* Arbitration." Ex. B ¶ 6. On April 18, 2025, Plaintiffs served their third request for production of documents, seeking "[a]ny interim or final award issued in connection with [*Wachtell*], including any written decision or statement of findings in connection any such interim or final award." On May 20, 2025, after the response deadline, Defendants served untimely responses refusing to produce any documents.

**Defendants Waived Any Objections to Production.** Defendants' failure to respond to the request for production by the May 19, 2025 deadline waives Defendants' objections thereto. FRCP

34(b)(2)(A); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.") (citation omitted). Defendants acknowledge that they failed to respond by the deadline. While some judges have, in their discretion, granted relief from waiver upon a showing of good cause, good cause must be shown. *See, e.g.*, *Lam v. City & Cty. of S.F.*, 2015 WL 4498747, at *2 (N.D. Cal. July 23, 2015) (Beeler, J.) (declining to excuse waiver).

Defendants have not shown *good cause* for missing the deadline; they simply say they failed to set up a reminder. But Defendants are represented by at least a dozen lawyers from a sophisticated law firm, the magnitude of production would be small (one or a handful of documents), compliance would be easy, and no privilege issues are implicated. Thus, the Court should not grant relief from waiver. *See, e.g.*, *Karr v. Napolitano*, 2012 WL 1965855, at *5 (N.D. Cal. May 31, 2012) (Beeler, J.) (identifying "the reason for the delay," "the nature of the request," and "the harshness of imposing the waiver" as relevant factors) (citation omitted); *Hardeman v. Amtrak/Caltrain R.R.*, 2006 WL 1156395, at *1 (N.D. Cal. May 2, 2006) (Illston, J.) (identifying magnitude of document production and difficulty of compliance as relevant factors).

**Plaintiffs Seek Relevant Documents.** Plaintiffs seek documents that are relevant to Musk's decision, on behalf of X Corp., to terminate them for "cause" based in part on the Twitter Board's decision to pay success fees to Wachtell, a matter that also is central to *Wachtell*. Any decision by the *Wachtell* Arbitrator is relevant to this case, including to Plaintiffs' § 510 claim and Musk's bias in terminating Plaintiffs. Defendants contend the termination did not violate § 510 – and that Plaintiffs are not entitled to benefits under § 502(a)(3) – because of Plaintiffs' alleged wrongdoing, including their help carrying out the Board's directive to pay Wachtell's fees for its work in defeating Musk's unlawful bid to renege on his agreement to buy Twitter. *Wachtell* addresses the Board's decision to pay those very fees to Wachtell. Not only does X Corp. allege in *Wachtell* that the fees paid to Wachtell are excessive, but X Corp. specifically alleges that Plaintiffs engaged in a "spending spree" and violated their "fiduciary duties" to unjustly enrich Wachtell. Ex. A at 1–2.

Any findings and comments by the *Wachtell* Arbitrator on evidence developed in the arbitration thus bear directly on Plaintiffs' allegations that Defendants' purported reasons for "cause" are pretextual and invalid. For instance, the Arbitrator could have found that Wachtell's fees were justified, that Twitter appropriately approved the fees, and/or that Plaintiffs did not violate their fiduciary duties—issues that are directly relevant to, and support, Plaintiffs' claims in this case. Indeed, the Arbitrator's determinations may have preclusive effect against Defendants. *See, e.g.*, *In re Deerman*, 482 B.R. 344, 361 & n.10 (Bankr. D.N.M. 2012) (noting federal courts "have given arbitration awards preclusive effect in subsequent litigation, even in the absence of confirmation of the award"); *Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgmt., Inc.*, 2005 WL 1522783, at *4–5 (E.D.N.Y. June 28, 2005) (noting that arbitrator's decision may have preclusive effect under doctrine of non-mutual offensive collateral estoppel). X Corp. is a party to both proceedings, and Musk and the other Defendants are in privity with X. And, because Plaintiffs bring federal claims, federal law applies—and does not require that the award be confirmed to have preclusive effect. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found. et al.*, 402 U.S. 313, 324 n.12 (1971) (holding that federal res judicata law applies in federal-question cases); *TCL Comms. Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericcson*, 2016 WL 6662725, at *3 (C.D. Cal. May 26, 2016) (rejecting argument that unconfirmed arbitration awards cannot be the basis for issue preclusion under federal law); *O'Dell v. Aya Healthcare, Inc.*, 2025 WL 732086 (S.D.

Cal. Feb. 25, 2025) (applying collateral estoppel against defendant based on arbitrator's findings in separate action to which plaintiff was not a party).[1]

Defendants' argument that the discovery is irrelevant both mischaracterizes the scope of the *Wachtell* claims and contradicts their own litigation conduct. Defendants propounded broad discovery seeking, *inter alia*, "all documents and communications related to attorneys' fees paid to [Wachtell]" (RFP 34), and justified it by contending that all documents relating to the reasons for Plaintiffs' termination are relevant to the § 510 claim and must be produced.

**Confidentiality Considerations Do Not Preclude Production.** Any confidentiality concerns can be addressed by designating any responsive decision as confidential and do not justify withholding the decision. First, X Corp.'s arbitration agreement with Wachtell does not preclude production of the requested materials. *See, e.g., Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) (affirming decision compelling production of confidential documents from related arbitration and noting that parties to arbitration cannot "'agree' that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off"). Indeed, as Defendants concede, the agreement allows for production in response to a court order. Ex. C ¶ 15(b). Moreover, Defendants' cited case, *Fireman's Fund*, confirms the "public and private interest in affording a litigant the opportunity to broadly discover information in support of its case. An overzealous quest for ADR can distort the proper role of the court by suppressing admissible evidence in the name of confidentiality." 2005 WL 1522783, at *3.[2] The parties in this case and Wachtell already stipulated to a procedure to designate arbitration materials as confidential under the Protective Order in this case (Dkt. 87). Ex. B ¶¶ 1–6. Plaintiffs are willing to designate as confidential and file any arbitration decision under seal.[3] Thus, Plaintiffs' need for the materials clearly outweighs Defendants' confidentiality objections.

**DEFENDANTS' POSITION**:  The Court should not force production of any arbitration decision. **First**, as to waiver, the 12-hour delay in serving Defendants' objections was due to an inadvertent calendaring error—not bad faith—and it caused no prejudice to Plaintiffs. This Court and other courts have declined to find waiver based on much longer delays; the same result is appropriate here. **Second**, *Wachtell* concerns whether Twitter's former outside counsel violated California contract and fiduciary-duty law by securing an extra-contractual $90M fee for less than four months of legal work it performed for Twitter in 2022. An arbitration decision on those legal questions—none of which concern ERISA or Twitter's Severance Plans ("Plans")—will have no bearing on whether Plaintiffs here were terminated for cause under those Plans or in violation of ERISA. **Third**, Plaintiffs have not shown that the Court should override X Corp. and Wachtell's contractual promise and confidentiality interests by forcing the production of any confidential arbitration award that may be issued in *Wachtell*.

---

[1] *Cornet v. Twitter*, cited by Defendants, does not address discoverability or preclusive effect of arbitration awards. The court merely found they did not affect whether the plaintiff stated a claim.
[2] The defendant had already produced the arbitrator's *liability* award, and thus the court found no need for the damages amount to be produced too.
[3] Plaintiffs' counsel has informed counsel for Wachtell about Plaintiffs' document request. Wachtell takes no position regarding Plaintiffs' discovery request.

**SIDLEY**

Page 4

**1. Waiver.** The 12-hour delay in serving Defendants' objections was caused by an inadvertent calendaring error.[4] There is no dispute that this brief delay involved no bad faith and caused no prejudice. Further, finding waiver would be unduly harsh and impact confidentiality interests and duties beyond this litigation. Applying these same "good cause" factors, this Court rejected a similar "waiver" argument where a "simple calendaring error" resulted in a much longer delay. *Karr v. Napolitano*, 2012 WL 1965855, at *6 (N.D. Cal. May 31, 2012). Defendants are aware of no case finding waiver for such a brief delay as here, and instead courts consistently reject waiver arguments despite much longer delays.[5] There is no reason for a different result here.

Further, Plaintiffs have long known Defendants' objections to producing *Wachtell* materials. Defendants previously objected to doing so, but ultimately agreed, following a negotiated stipulation with Plaintiffs and Wachtell, to make a limited production of some *evidentiary* material from the arbitration. This agreement excluded any potential arbitration award, and Plaintiffs promised that they would not use the stipulation to seek other *Wachtell* materials. Ex. B ¶ 3. Considering all of the above circumstances, the Court should reject Plaintiffs' waiver argument.

**2. Relevance.** Plaintiffs say any award in *Wachtell* is relevant because of "overlaps" between the "[e]vidence developed" there and Plaintiffs' allegations here. This argument fails. To start, while some evidence in *Wachtell* may "overlap," the parties and Wachtell already stipulated to a limited production of those materials. But there is no reason to conclude that any separate arbitration *award*—which neither Wachtell nor Defendants have agreed to share—would be independently relevant, let alone so critical as to negate the important interests counseling against its forced production. *See Cornet v. Twitter*, 2025 WL 1158350, at *1 (D. Del. Apr. 18, 2025) ("[W]hat a factfinder has done in an entirely, separate, non-judicial action says nothing about the legal sufficiency" of claims in federal court.); *infra* at 5. Indeed, any arbitration decision will *not* be relevant. The arbitrator must decide whether Wachtell violated California law when it secured an extra-contractual fee of $90M for less than four months of legal work in 2022. That decision will be based on an evidentiary record and hearing that took place in late 2024. The arbitration did not involve ERISA, the Plans, Musk, or the Committee. In short, any arbitration award concerning *the Wachtell firm's* conduct under *state law*, will have no relevance—let alone preclusive effect—on Plaintiffs' ERISA claims here.

*First*, the § 510 claim concerns whether Mr. Musk (not a party in *Wachtell*) terminated Plaintiffs on October 27, 2022 for the purpose of interfering with potential benefits under the Plans. One of several lawful reasons for that decision was Plaintiffs' approval and decision to *expedite* payments of over ***$150 million*** in legal fees to *several* law firms (not just Wachtell) immediately before the Twitter merger closed. Not only had Mr. Musk timely objected in advance to these payments, but they were ***four times more*** than what he had paid his own lawyers for similar legal work. Mr. Musk's decision did not concern whether the Wachtell firm conducted itself appropriately, nor was it based on the same information presented ***years later*** to the *Wachtell* arbitrator. Thus, any

---

[4] The May 19 deadline was mistakenly calendared as "non-alert," so counsel did not receive the usual "reminder" to effect service. When this was discovered the next day, Defendants promptly e-served their (previously finalized) response at 12:02 p.m. on May 20—about 12-hours late.

[5] *E.g.*, *Rutherford v. PaloVerde Health Care Dist.*, 2015 WL 12864243, at *2 (C.D. Cal. Mar. 4, 2015) (11 days); *Batts v. Cnty. of Santa Clara*, 2010 WL 1027990, at *1 (N.D. Cal. Mar. 18, 2010) (two weeks). Plaintiffs' cases (*Richmark*, *Lam*) involved unexplained multi-month delays.

arbitration decision will have no bearing on whether Mr. Musk "honestly believed" Plaintiffs were properly terminated for cause based on different information in October 2022. *E.g.*, *Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 778 n.6 (8th Cir. 2004).

***Second***, Plaintiffs' § 502(a)(1)(B) benefit claims are equally far afield. There, the Court must decide whether the Committee (not a party or even a witness in *Wachtell*) unreasonably concluded in January 2024 that Plaintiffs were terminated "for Cause" under the Plans based on several categories of misconduct—only one of which concerned, in part, Wachtell fees. Dkt. 46-1. The Committee's decision was based on an extensive administrative record, and the Court's decision on the "merits" of Plaintiffs' § 502 claims here "must rest on the [same] administrative record." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006). Thus, any arbitration award in *Wachtell* is irrelevant in assessing the merits of Plaintiffs § 502(a)(1)(B) claims.

***Third***, the arbitrator's decision can have no preclusive effect. Plaintiffs are incorrect that federal law controls. While that is true where an award is "confirmed by a federal court" and the arbitration involved "federal statutory claims," here there is no confirmed award and the arbitration involved state law (California) claims. *Hansen v. Musk*, 122 F.4th 1162, 1169 n.2 (9th Cir. 2024); *see also In re Rosendahl*, 307 B.R. 199, 208 (Bankr. D. Or. 2004) (applying state preclusion law to an arbitration decision on state law claims).[6] Under California law, "a private arbitration award, even if judicially confirmed, can have no collateral estoppel effect in favor of third persons unless the arbitral parties agreed" otherwise. *Vandenberg v. Superior Ct.*, 21 Cal. 4th 815, 824 (1999). Moreover, even under federal principles, the absence of a confirmed arbitration award properly bars collateral estoppel. *Chang v. US Global Sys.*, 2025 WL 7325484, at *9 (C.D. Cal. Feb. 21, 2025) (collecting cases). And, in all events, collateral estoppel has no place here because there was no "full and fair opportunity" to litigate the "identical" ERISA issues in the *Wachtell* arbitration. *Cnty. of Monterey v. Blue Cross of California*, 2020 WL 709308, at *7 (N.D. Cal. Feb. 12, 2020) (arbitration award had no preclusive effect on ERISA § 502(a)(1)(B) claims because the arbitral issues were not "'identical' to the issues of whether [defendant] abused its discretion"); *SEC v. Stuart Frost*, 2021 WL 6103552, at *5 (C.D. Cal. Oct. 12, 2021) (no "full and fair opportunity" where, as here, arbitration award cannot be appealed on the *merits*).

**3. Confidentiality.** Courts have correctly declined to compel confidential production arbitration materials based on the "important policy interest involved in protecting the expectations of confidentiality belonging to parties who have chosen" arbitration. *E.g.*, *Fireman's Fund*, 2005 WL 1522783, at *3. Here, no "extraordinary circumstances or a compelling need . . . outweigh[s] the privacy interests" of the arbitration parties. *Id.* at *4. Plaintiffs already have agreed-upon evidentiary materials from *Wachtell*, and they have shown no compelling need or relevance for any award that may be issued in the arbitration. Under the governing arbitration agreement, Defendants may not disclose any arbitration award issued in *Wachtell* absent a court order forcing it to do so. Ex. C ¶ 15(b). For all of the reasons set forth above, Defendants respectfully submit that such an order is not appropriate here.

---

[6] The cases Plaintiffs cite don't hold otherwise. *Blonder-Tongue Labs* involved no arbitration and concerned a *federal court* decision applying *federal* law; it did not suggest that courts in federal question cases must *always* apply federal preclusion law regardless of the underlying claim or forum. *Cf. Marrese v. Am. Academy of Ortho. Surgeons*, 470 U.S. 373, 380 (1985) (state preclusion law applied to state court decision). Meanwhile, *O'Dell* involved *identical* legal issues in *federal-court* confirmed arbitration awards. And *TCL* did not even consider the choice of law question.



Page 6

| | |
|---|---|
| Date:  June 9, 2025 | SIDLEY AUSTIN LLP |
| | By: */s/ Sheila A.G. Armbrust* |
| | Sheila A.G. Armbrust |
| | *Attorneys for Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett* |
| Date:  June 9, 2025 | MORGAN LEWIS & BOCKIUS LLP |
| | By: */s/ Christopher Boran* |
| | Christopher Boran |
| | *Attorneys for Defendants Elon Musk, X Corp., Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy, Lindsay Chapman, Brian Bjelde, and Dhruv Batura* |