# Exhibit A

Marc Dworsky (SBN 157413)
**REID COLLINS & TSAI LLP**
920 Camino Viejo
Santa Barbara, CA 93108
Telephone: (626) 437-3117
Email: mdworsky@reidcollins.com

William T. Reid, IV*
Joshua J. Bruckerhoff*
Scott D. Saldaña*
Aaron Brown*
Julia Di Fiore*
**REID COLLINS & TSAI LLP**
1301 S. Capital of Texas Hwy, Ste. C300
Austin, TX 78746
Telephone: (512) 647-6100
Email: wreid@reidcollins.com
        jbruckerhoff@reidcollins.com
        ssaldana@reidcollins.com
        abrown@reidcollins.com
        jdifiore@reidcollins.com

* *Pro hac vice* application forthcoming

*Counsel for Plaintiff X Corp.*

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**07/05/2023**
**Clerk of the Court**
BY: MARK UDAN
Deputy Clerk

CGC-23-607461

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| X CORP., <br><br> Plaintiff, <br><br> v. <br><br> WACHTELL, LIPTON, ROSEN & KATZ, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR** <br><br> **(1) RESTITUTION (UNJUST ENRICHMENT)** <br> **(2) BREACH OF FIDUCIARY DUTY** <br> **(3) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY** <br> **(4) VIOLATION OF CAL. BUS. & PROF. CODE § 17200** |

COMPLAINT

Plaintiff X Corp., the successor-in-interest to Twitter, Inc. ("**Twitter**"), files this Original Complaint against Wachtell, Lipton, Rosen & Katz ("**Wachtell**"), and alleges as follows:

### NATURE OF THE ACTION

1. This action for equitable relief arises out of an effort by Wachtell to fundamentally alter its fee arrangement as litigation counsel in the twilight of its representation of Twitter to obtain an improper bonus payment in violation of its fiduciary and ethical obligations to its client. Wachtell exploited a corporate client left unprotected by lame duck fiduciaries who had lost their motivation to act in Twitter's best interest pending its imminent sale to Elon Musk and his entities, X Holdings I, Inc. and X Holdings II, Inc. (together, the "**Musk Parties**").

2. In the days and hours leading up to the closing of the sale of Twitter on October 27, 2022, Wachtell and its litigation department led by Bill Savitt were at the center of a spending spree by Twitter's departing executives who ran up the tab at Twitter by, among other things, facilitating the improper payment of substantial gifts to preferred law firms like Wachtell on top of the firms' full hourly billings by designating tens of millions of dollars in handouts to the firms as "success" or "project" fees. Despite having previously agreed to work on an hourly fee basis and subsequently charging millions in hourly fees under that arrangement, Wachtell disregarded both California law and its ethical and fiduciary duties in the final days of its four-month Twitter engagement to improperly solicit an unspecified—but clearly gargantuan—success fee, as part of a ***$90 million*** "total" fee that also purported to satisfy Wachtell's earlier invoices that totaled $17,943,567.49. The $90 million fee collected from Twitter for a few months of work on a single matter represented nearly 10% of Wachtell's gross revenue in 2022, and over $1 million per Wachtell partner.

3. Mere hours before the October 27 closing, Twitter's Chief Legal Officer Vijaya Gadde signed a new letter agreement that Wachtell had drafted (the "**Closing Day Letter Agreement**"), which purported to award Wachtell the success fee and required payment of the balance of the $90 million total fee on incredibly accelerated terms prior to closing. Fully aware that nobody with an economic interest in Twitter's financial well-being was minding the store, Wachtell arranged to effectively line its pockets with funds from the company cash register while the keys were being handed over to the Musk Parties. By this action, Twitter's successor-in-interest, X Corp., seeks to void the unconscionable Closing Day

1  Letter Agreement and disgorge the excess fees paid to Wachtell under the unenforceable contract and in
2  violation of Wachtell's, and Twitter's then-leadership's, fiduciary duties and California law.

3      4.     Back on June 21, 2022, Wachtell had signed a binding engagement letter (the "**June 21
4  Engagement Letter**") and agreed to represent Twitter on an hourly fee basis in a litigation to compel
5  specific performance of the Musk Parties' acquisition of Twitter pursuant to an Agreement and Plan of
6  Merger dated April 25, 2022 (the "**Merger Agreement**"). In negotiating the terms of its engagement
7  with Twitter, Wachtell sought and secured an exemption from Twitter's standard application of a
8  15% discount on outside counsel hourly fees. The June 21 Engagement Letter contained no mention
9  whatsoever of any additional success fees or other fees tied to results procured for Twitter. Both
10 California law and the applicable rules of professional conduct required that Wachtell procure a written
11 agreement for any success fee at the outset of the engagement if it hoped to receive a fee tied to results
12 obtained for its client Twitter in the litigation against the Musk Parties. At no point did Wachtell ever
13 obtain a valid success fee agreement that complied with California law or the rules of professional
14 conduct.

15     5.     During the first few months of its engagement, Wachtell submitted massive invoices to
16 Twitter that included millions of dollars in hourly billings by Wachtell partners with *completely blank*
17 time entry descriptions. Despite knowing that Wachtell's multimillion-dollar invoices did not comply
18 with Twitter's policies, Twitter's former executives—with reckless disregard for Twitter's interests—
19 ostensibly approved the two invoices that totaled nearly $18 million, including approximately
20 $15.6 million in hourly fees for only a few months of work.

21     6.     Then, on the eve of the October 27, 2022 merger closing, with the firm's work on the
22 merger litigation in the Delaware Chancery Court already concluded, and without any foreseeable need
23 for Twitter to utilize its services again, Wachtell and Savitt saw an opportunity to further exploit their
24 vulnerable client with the assistance of Twitter's lame duck fiduciaries. Wachtell and Twitter's directors
25 and officers understood that because Twitter's then-shareholders were already locked in at the $54.20
26 per-share purchase price under the Merger Agreement, the Musk Parties acquiring Twitter would
27 ultimately foot any fee paid to Wachtell. Wachtell and Twitter's directors and officers also knew that the
28 Merger Agreement contained a provision that, in the words of an expert retained by Wachtell in

connection with the merger litigation, was drafted to prohibit Twitter executives from agreeing to certain expenses prior to closing "outside the ordinary course of business in a manner that might ultimately harm the acquiror." And, finally, Wachtell fully expected that the Twitter executives who could funnel gratuitous payments to the firms would soon be terminated, and thus would have little to no motivation to look out for Twitter's interests only hours before their anticipated departure.

7. Notwithstanding all this knowledge, Wachtell proposed to fundamentally alter its arrangement with Twitter solely to secure compensation beyond the hourly-fee terms that had governed throughout the engagement. In breach of its fiduciary duties and ethical obligation to its client, and despite having failed to negotiate a written agreement for a success fee at the outset of its engagement, Wachtell pressured Twitter's fiduciaries to sign the Closing Day Letter Agreement and agree to pay Wachtell an unsubstantiated $90 million total fee that included an unspecified but enormous success fee.

8. In other words, Wachtell sought and obtained a success fee that resulted in a total fee nearly six times its $15.6 million in invoiced hourly fees for a few months' work, even though (1) it was not called for by any prior agreement with Twitter, and (2) the litigation in which Wachtell represented Twitter had been stayed for weeks in anticipation of dismissal following the closing.

9. A typical contingency fee compensates a lawyer for the risk of agreeing at the outset of an engagement to accept less than their normal hourly rates, with any compensation beyond those reduced guaranteed payments tied to the outcome for the client in the underlying matter. By contrast, Wachtell had negotiated at the outset of its engagement by Twitter to be compensated at Wachtell's full hourly rates regardless of the outcome in the merger litigation and therefore undertook absolutely no risk in obtaining its mammoth success fee—instead, the fee was entirely gratuitous. Additionally, a typical contingent success fee agreement states a specific formula or percentage by which the contingency fee amount is determined. The Closing Day Letter Agreement does not even specify the amount of the success fee, let alone any formula or percentage used to arrive at that figure.

10. What is more, on the morning of the October 27 closing, but *before* Wachtell's fee engagement was modified to add its gratuitous bonus, the Musk Parties, as Twitter's residual claimants, directed Twitter to suspend all outbound payments to third parties in anticipation of the imminent merger. Nonetheless, Twitter's former executives presented Wachtell's proposed new fee agreement to Twitter's

outgoing board of directors later that morning at their final board meeting. At that point, Twitter board members had already signed their resignation letters, which were being held pending the closing later that day.

11. In the middle of the board's final October 27 meeting, former Twitter general counsel Sean Edgett sent the chart of fees that the Twitter board was meeting to approve. Upon seeing the magnitude of the fees being presented for the board's approval, one former Twitter director immediately exclaimed in an email reply to Edgett:

> O
>
> My
>
> Freaking
>
> God

Despite any initial shock, Twitter's lame duck board members voted to approve Wachtell's excessive and unconscionable fee.

12. Immediately following the Twitter board's rubber-stamp approval, Gadde signed Wachtell's letter agreement. Then, to ensure that the eleventh-hour fee payment went through before the Musk Parties (Twitter's new owners) could learn about the massive gift included in that fee, Edgett expedited the wire payment on the invoice for the balance ($84,294,962.97) of the $90 million total fee that Wachtell had submitted to Twitter the day before. Twitter's $84 million wire to Wachtell was posted only ten minutes before Gadde and Edgett were terminated upon the closing of the merger.

13. In sum, having previously negotiated and signed an engagement letter for an hourly fee representation and having failed to obtain a written agreement for any fee tied to the results of the underlying case, Wachtell apparently believed that it—unlike other law firms bound by ethical and fiduciary obligations—was free to solicit a handout, aid and abet corporate waste by former Twitter executives in the death throes of their fiduciary roles, and walk away with a total fee that made it $90 million richer. To the contrary, Twitter is entitled to restitution and disgorgement of fees charged by Wachtell under the void Closing Day Letter Agreement for the reasons set forth below.

and related Closing Day Letter Agreement were unconscionable based on all the surrounding facts and circumstances, as alleged above at ¶¶ 71–84, *supra*, and elsewhere herein.

100. Wachtell's breaches of its fiduciary duties to Twitter caused injury and harm to Twitter and resulted in a windfall to Wachtell, which Wachtell received at Twitter's expense. Specifically, Twitter would not have paid anywhere close to $90 million in total fees to Wachtell had it not been for (1) Wachtell seeking the unconscionable success fee and procuring the Closing Day Letter Agreement at the eleventh hour, (2) Wachtell's failure to procure any written agreement providing for a success fee at the outset of the litigation (at which point Twitter's board never would have agreed to such an outrageous sum when there was risk that the deal might not close), and (3) Wachtell's fundamentally self-serving and misleading October 20, 2022 "memo" seeking to justify an excessive fee. Wachtell's actions were a substantial factor in bringing about the injury and harm Twitter suffered in depleting its cash to pay a grossly excessive and unconscionable success fee as part of the $90 million total fee collected by Wachtell.

101. Plaintiffs seek equitable remedies of: (a) forfeiture and restitution of the excess fees that Wachtell received from Twitter as a result of egregiously and willfully breaching its fiduciary duties and professional duties; and/or (b) disgorgement of all profits that Wachtell received as a result of the grossly excessive and unconscionable success fee it received from breaching its fiduciary duties.

**COUNT 3: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

102. Plaintiff re-alleges and incorporates by reference all of the allegations set forth above.

103. Twitter's former officers and directors owed fiduciary duties to both Twitter and its shareholders.

104. Twitter's former officers and directors breached their fiduciary duties to Twitter when they approved the last-minute modification to Wachtell's fee in the Closing Day Letter Agreement. The Closing Day Letter Agreement and purported success fee paid to Wachtell provided no value to Twitter or its shareholders. The success fee paid to Wachtell amounted to a huge cash gift that was so one-sided that no businessperson of ordinary, sound judgment could conclude that Twitter received adequate consideration for it. Wachtell had already received payments for its hourly fees that had been invoiced

and become due and payable, and there was a pre-existing agreement—the June 21 Engagement Letter—which required Twitter to pay Wachtell for any not-yet-invoiced work.

105. There was no good-faith judgment by either Twitter's former officers or directors that the last-minute Closing Day Letter Agreement provided any value to Twitter. There was a pre-existing agreement governing the fees to which Wachtell was entitled, Wachtell had already performed the required services for Twitter, and the firm was not reasonably being considered for future work. Not only was there a complete lack of good faith surrounding the approval of the gift to Wachtell in the form of the success fee, but Twitter's directors and officers, knowing that their positions would soon be terminated, acted with bad faith in approving the Closing Day Letter Agreement and related success fee. These directors and officers knew that the Musk Parties, not Twitter's current shareholders, would effectively be picking up the tab for the gift to Wachtell.

106. Further, when Twitter's former officers presented the Closing Day Letter Agreement to the board of directors, they failed to provide those directors with all material facts concerning the agreement and the proposed success fee to Wachtell. Twitter's former directors, for their part, simply rubber-stamped the agreement, despite recognizing that the fee amount was on its face absurd. Thus, Twitter's former officers breached their fiduciary duties of care and candor to the board.

107. Finally, Twitter's directors separately breached their fiduciary duty of care in approving the success fee to Wachtell as part of the $90 million total fee under the Closing Day Letter Agreement. The former directors' duty of care required them to act prudently to maximize value for Twitter and to engage in informed, deliberative decision-making based on all material information reasonably available. The directors breached their fiduciary duty of care in not acting on an informed basis and instead hurriedly approving the Closing Day Letter Agreement and success fee to Wachtell on the day of the closing. Setting aside Wachtell's unethical, unreasonable, and excessive billing practices, there was no reason to pay any more to Wachtell than the maximum amount it billed pursuant to the pre-existing contractual arrangement between Wachtell and Twitter memorialized in the June 21 Engagement Letter, especially when it was readily apparent that no future services would be needed from Wachtell (given that the litigation had concluded and the merger was set to close later that same day). Yet the directors approved payment of Wachtell's requested success fee on the same day they were asked to after a single board

meeting and hasty discussion with management. Moreover, Twitter's directors summarily approved the success fee and the whopping $90 million total fee to Wachtell even though Twitter had not received any Wachtell hourly billing details for September or October 2022, even though Wachtell had only invoiced approximately $15.6 million in hourly fees at that point, and even though the directors were not presented with any data or analysis indicating that such a grossly excessive fee was remotely reasonable. The amount of Wachtell's success fee was never disclosed to the directors and could not have been calculated using the information they were provided. The amount of fees Wachtell sought was not even disclosed to most of the directors until the October 27, 2022 board meeting was already underway. Twitter's directors thus failed to inform themselves or engage in a deliberative decision-making process, and instead acted recklessly and grossly negligently in approving the success fee as part of the $90 million total fee to Wachtell despite having done no due diligence surrounding the reasonableness of the included success fee under the surrounding circumstances.

108. Wachtell knew of this corporate waste and the breaches of fiduciary duty, including the Twitter board's violations of the duty of care, because the firm instigated the breaches by asking for the unlawful modification to its fees, drafting the Closing Day Letter Agreement, and inducing Twitter's fiduciaries to approve and enter into it.

109. Wachtell's actions in soliciting the unlawful fees (and its related lack of candor and misleading statements to Twitter regarding the propriety of the fees), drafting the Closing Day Letter Agreement, and ensuring that it received payment prior to closing of the merger constitute substantial assistance and encouragement to Twitter's former officers and directors to breach their fiduciary duties to Plaintiff and was a substantial factor in harming Plaintiff because it cost Plaintiff tens of millions of dollars.

110. Because Wachtell aided and abetted the breaches of fiduciary duty by Twitter's former officers and directors, Plaintiff is entitled to the equitable remedies of unjust enrichment and disgorgement of excess fees paid to Wachtell in connection with the Closing Day Letter Agreement.

### COUNT 4: VIOLATION OF CAL. BUS. & PROF. CODE § 17200

111. Plaintiff re-alleges and incorporates by reference all of the allegations set forth above.

**PRAYER FOR RELIEF**

In this Complaint, Plaintiff respectfully does not seek any compensatory damages but rather seeks the equitable remedies of restitution, fee forfeiture, and disgorgement of legal fees. Specifically, Plaintiff respectfully asks the Court to enter judgment awarding the following specific relief:

a. voiding the Closing Day Letter Agreement and any associated excess fee payment made thereunder;

b. restitution, forfeiture, and/or disgorgement of fees charged by Wachtell in connection with the Closing Day Letter Agreement;

c. attorneys' fees and costs, in the Court's discretion;

d. pre- and post-judgment interest as Plaintiff may be justly entitled to; and

e. other equitable relief as may be deemed just or proper.

DATED: July 5, 2023

Respectfully submitted,

**REID COLLINS & TSAI LLP**

By: */s/ Marc S T Dworsky*
Marc S T Dworsky (State Bar No. 157413)
920 Camino Viejo
Santa Barbara, CA 93108
Telephone: (626) 437-3117
Email: mdworsky@reidcollins.com

William T. Reid, IV*
Joshua J. Bruckerhoff*
Scott D. Saldaña*
Aaron Brown*
Julia Di Fiore*
1301 S. Capital of Texas Hwy, Ste. C300
Austin, TX 78746
Telephone: (512) 647-6100
Facsimile: (512) 647-6129
Email: wreid@reidcollins.com
       jbruckerhoff@reidcollins.com
       ssaldana@reidcollins.com
       abrown@reidcollins.com
       jdifiore@reidcollins.com

*\* Pro hac vice* application forthcoming

*Counsel for Plaintiff X Corp.*