# Morgan Lewis

**Christopher Boran**
Partner
+1.312.324.1146
christopher.boran@morganlewis.com

September 5, 2025

Magistrate Judge Laurel Beeler
San Francisco Courthouse, Courtroom B - 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

      Re:    *Agrawal, et al. v. Musk, et al.*, N.D. Cal. 3:24-cv-01304-MMC-LB
            Joint Letter Brief – Discovery Dispute Regarding Elon Musk Deposition

Dear Judge Beeler:

The Parties submit this Joint Letter Brief regarding a dispute as to whether Elon Musk's deposition should be conducted remotely or in person. Lead trial counsel have conferred and reached impasse.

**Defendants' Position.** Mr. Musk's deposition is scheduled for September 30. Given his near-constant travel, unpredictable schedule, and to help ensure his personal security, Defendants have proposed that the deposition be conducted remotely. Plaintiffs have refused, despite the ubiquity of remote depositions in modern litigation. They do not explain—much less show—why a remote deposition is prejudicial or otherwise insufficient. Plaintiffs merely insist that the deposition take place in person because Mr. Musk is a named party. Without more, there is no basis for refusing a request for a remote deposition, which courts in this district grant liberally. For these reasons, Defendants seek an order under Rule 30(b)(4) that Mr. Musk's deposition be conducted remotely.

**Leave For Mr. Musk's Remote Deposition Should Be "Granted Liberally."** Rule 30(b)(4) "provides courts with the authority to order a deposition to take place by . . . remote means, if the circumstances so warrant." *Hernandez v. Bobst Grp. N. Am.*, 2020 WL 6063143, at *2-3 (E.D. Cal. Oct. 14, 2020) (courts have "wide discretion in determining . . . whether [depositions] should take place by remote means."). "Generally, leave to take depositions by remote means ***should be granted liberally.***" *Id.* (emphasis added) (citing *Kaseberg v. Conaco, LLC*, 2016 WL 8729927, at *5 (S.D. Cal. Aug. 19, 2016); *Lopez v. CIT Bank, N.A.*, 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015)). Indeed, "courts have not required a showing of extraordinary circumstances before granting Rule 30(b)(4) motions." *Kaseberg*, 2016 WL 8729927, at *5. Instead, "[a]nalyzing whether to permit remote depositions consists of two steps": (1) "the proponent must advance a legitimate reason for seeking a remote deposition," and then (2) "the burden shifts to the opposing party to make a particularized showing that conducting the deposition by remote means would be prejudicial." *Hernandez*, 2020 WL 6063143, at *2; *see also Kaseberg*, 2016 WL 9729927, at *6 (ordering remote deposition where opposing party would "not be prejudiced . . . and [] there is no suggestion that such a method is inaccurate or untrustworthy.").

Morgan, Lewis & Bockius LLP

110 North Wacker Drive
Chicago, IL  60606-1511    +1.312.324.1000
United States    +1.312.324.1001

Page 2

A remote deposition is particularly appropriate when, as here, it involves "a high-level executive (a so-called 'apex' deposition)," in which circumstance "[v]irtually every court" has acknowledged "'a tremendous potential for abuse or harassment.'" *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (quoting *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). For that reason, courts often limit apex depositions by ordering they be conducted remotely to reduce the burden of an in-person appearance. *See, e.g.*, *DeSilva v. Allergan USA, Inc.*, 2020 WL 5947621, at *4 (C.D. Cal. Aug. 11, 2020) (acknowledging "the burden" of deposition" and ordering remote deposition of apex witness who "oversees thousands of employees and operations"). *See also Monster Energy Co. v. Vital Pharms., Inc.*, 2021 WL 4895216, at *4 (C.D. Cal. Oct. 12, 2021); *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 12048987, at *1 (C.D. Cal. Nov. 23, 2020).

Here, there is no dispute that Mr. Musk is the "quintessential" apex witness. *Apple*, 282 F.R.D. at 265.[1] He leads not only X Corp., but several other multibillion-dollar businesses, including serving as CEO of Tesla, a publicly traded company, and SpaceX, which closely coordinates with NASA and the U.S. Armed Forces on matters of national defense. Mr. Musk is responsible for overseeing thousands of employees and directing expansive business operations across multiple businesses impacting public and private interests on an international scale.

The consequences of Mr. Musk's substantial professional responsibilities and public profile provide the requisite "legitimate reason" for a remote deposition. Specifically, Mr. Musk's various businesses require him to travel on a near-constant basis around the country and the globe. Ex. A, Decl. of Adam Mehes ¶¶ 2-4. His travel plans frequently change based on the various demands of those businesses, making it difficult to predict where he will be physically located on a given day. *Id.* As a result, an in-person deposition significantly increases the risk that Mr. Musk might not be able to appear as scheduled, which, in turn, risks delaying the deposition for months due to his busy schedule. *Id.* ¶¶ 3-6. For example, Mr. Musk previously had to reschedule an in-person deposition in another matter because he was required to travel to Asia and could not fly back in time. *Id.* ¶ 6. And given the significance of Mr. Musk's business dealings, his public profile, and credible threats to his physical safety, his travel is not just expensive but requires the coordination of extensive security measures—comparable to those needed for a head of state—to ensure his and his team's safety. *Id.* ¶ 7. Thus, requiring Mr. Musk's in-person deposition poses many logistical difficulties that would make scheduling unduly complex, unnecessarily disrupt his business activities, and potentially delay the deposition.[2] *Id.* ¶¶ 3-7. Permitting his deposition to proceed remotely would resolve these issues and avoid substantial costs. *Id.* ¶ 8. Far from trying "to reorder the litigation to suit his convenience," as Plaintiffs contend below (*infra* at 3), Mr. Musk seeks the unremarkable and routine accommodation of remote deposition.[3] It is a modest ask.

---

[1] While litigants typically invoke the apex doctrine to preclude entirely the deposition of a non-party apex witness, the reasoning underlying the doctrine applies with equal force to Mr. Musk in his capacity as a Defendant, particularly where there will be no temporal or subject-matter limitations placed on his deposition, and he requests only that he be permitted to testify remotely.

[2] Though Rule 30(b)(4) only requires Defendants to establish a legitimate reason for conducting Mr. Musk's deposition remotely, the circumstances also establish good cause for a protective order to that effect under Rule 26(c)(1). Where "courts possess wide discretion to determine what constitutes a showing of good cause and to fashion a[n appropriate] protective order," this Court should order Mr. Musk's deposition be conducted remotely for the reasons discussed herein. *Hernandez*, 2020 WL 6063143, at *2, 4 ("Having shown legitimate reasons for" a remote deposition "and in the absence of a particularized showing of prejudice by Defendant . . . Plaintiffs have met their burden to support issuance of a protective order [under] Fed. R. Civ. P. 26(c)(1).").

[3] Nor does Mr. Musk "suggest" that he is "likely to violate the Court's order" and "cancel his deposition" or "flout his legal obligations" (*infra* at 4) by requesting a remote deposition. To the contrary, his request is reasonably made to avoid disruption of this litigation and his professional responsibilities, alike. Similarly, that Mr. Musk had to reschedule in-person depositions in two

Page 3

Plaintiffs, who are represented by experienced counsel who regularly conduct virtual depositions and legal proceedings, do not challenge the legitimacy of Mr. Musk's reasons for seeking a remote deposition. Nor do they make any showing—much less a "particularized showing"—of prejudice that would result. *Hernandez*, 2020 WL 6063143, at *2. Instead, Plaintiffs simply conclude they "would be prejudiced" by a remote deposition "because an in-person deposition is critical to evaluate and test Mr. Musk's credibility," but they do not explain why they cannot do so remotely over video.[4] And Plaintiffs already have transcripts from two depositions of Mr. Musk in other matters in which he was questioned about Plaintiffs' terminations and related events, which testimony will undoubtedly assist Plaintiffs' experienced counsel in assessing credibility during the upcoming deposition. Without more, "[t]o the extent that [Plaintiffs'] statement is intended to demonstrate prejudice, it fails." *Henry v. Tacoma Police Dep't*, 2023 WL 5530201, at *3 (W.D. Wash. Aug. 28, 2023) (declining to deny remote deposition based on credibility concerns where party did not assert other prejudice and "video conferencing has become a standard means of taking depositions" since the pandemic); *Snow Covered Cap., LLC v. Weidner*, 2020 WL 13539721, at *3 (D. Nev. July 22, 2020) (same where "many courts have held that remote videoconference depositions offer the deposing party a sufficient opportunity to evaluate a deponent's . . . overall credibility."). Plaintiffs can ask the same questions and observe the same responses with all recorded by a court reporter and videographer. "This court has repeatedly observed that remote videoconference depositions . . . tend to be effective and efficient." *Newirth v. Aegis Senior Communities LLC*, 2020 WL 4459120, at *1 (N.D. Cal. May 27, 2020); *Lopez*, 2015 WL 10374104, at *2; *Swenson v. GEICO Cas. Co.*, 336 F.R.D. 206, 209 (D. Nev. 2020).

**Defendants' Proposal**: The Court should permit Mr. Musk to attend his deposition remotely.

**Plaintiffs' Position.** As alleged in the Complaint, Defendant Elon Musk terminated Plaintiffs without cause for the purpose of depriving them of benefits under Twitter's ERISA plans. Dkt. 115 at 1. Mr. Musk personally made the decision to fire Plaintiffs, and his subjective intent is a key issue for Plaintiffs' claims. Although he admitted to his official biographer that his intent in firing Plaintiffs was to cheat them out of their severance benefits and save himself $200 million, Dkt. 58 ¶¶ 4–7, in this litigation Mr. Musk has denied making these admissions. His credibility is central to the case, and Plaintiffs are entitled to depose him in person to test it.

Defendants' cases are readily distinguishable. Of course parties taking depositions may do so remotely, but no court has held that they should be "liberally" forced to do so. As far as "apex doctrine" is concerned, Mr. Musk is not a distant executive lacking in personal knowledge. He is

---

unrelated cases (*Pampena* and *SEC v. Musk*, *infra* at 4-5) does not support conducting his deposition in-person here. To the contrary, the purpose of Mr. Musk's request for a remote deposition is to decrease chance that the deposition will need to be rescheduled. If anything, granting Mr. Musk's request should alleviate Plaintiffs' concerns about a cancellation.

[4] Plaintiffs cite several cases ordering in-person depositions based on evidence and circumstances not present here. *See Juul Labs*, 2022 WL 2165411, at *4-6 (ordering in-person depositions "[b]ased on Plaintiff's specific showing" substantiating "credibility concern" based on "Defendants' misleading sworn statement about dissipating assets, in violation of the TRO and preliminary injunction"); *Nutiva, Inc.*, 2017 WL 3412302, at *2 (denying plaintiff's request for remote deposition in lieu of in person deposition in forum state selected by plaintiff); *Richardson*, 2025 WL 843768, at *3 (same); *Approximately $57,378 in U.S. Currency*, 2010 WL 4347889, at *1 (ordering in-person deposition because telephone deposition would not permit party to observe witness to evaluate credibility and video deposition was "impracticable" because managing "multiple exhibits" was "a particular concern because Sims is representing herself and her English is limited"); *County of Merced*, 2022 WL 229865, at *2-4 (no cause for remote deposition where party had not timely objected to deposition notice on grounds that he had left country with "no plans to return to return . . . particularly during the recent COVID-19 surge" and parties still had months to prepare COVID precautions for in-person deposition).

Page 4

a key actor who personally initiated the sequence of events resulting in this litigation. At bottom, Mr. Musk's argument, in this and other cases, is that he is too busy and important to face the litigation consequences of his own conduct, and that he possesses a unique entitlement to reorder the litigation to suit his convenience. The Court should reject this argument, as it has been rejected in other cases.

"A party may unilaterally choose the place for deposing the opposing party, subject to the granting of a protective order under Fed. R. Civ. P. 26(c)(2)." *Monolithic Power Sys., Inc. v. Dong*, 2023 WL 350400, at *9 (N.D. Cal. Jan. 20, 2023). Nonetheless, Plaintiffs have done everything reasonably within their power to accommodate Mr. Musk's claims of inconvenience. Despite having the right to notice Mr. Musk's deposition for the Bay Area, where Plaintiffs and their counsel are located and X Corp. has offices, Plaintiffs noticed it for one of Mr. Musk's counsel's offices in Texas, where Plaintiffs understand Mr. Musk lives. Plaintiffs have also repeatedly informed counsel since April they would travel to Mr. Musk at an alternative location if more convenient.

Mr. Musk has rejected all these overtures, instead insisting he will only be deposed remotely. It is not a question of burden or cost, as Plaintiffs have offered to travel to any reasonable location for his deposition. *See SEC v. Musk*, No. 3:23-mc-80253-JSC/LB (N.D. Cal.), Dkt. 37 at 8 (Feb. 10, 2024) & Dkt. 48 at 5 (May 14, 2024) (ordering Musk to appear for deposition in person, noting that "any challenge to the location of the deposition was addressed by the SEC's offer to host the testimony in Texas"). Mr. Musk will be *somewhere* on September 30 for his deposition, and having Plaintiffs' counsel in the same location does not increase the security concerns. Indeed, the Mehes Declaration contends Mr. Musk travels "multiple times a week," across the globe, with little notice, including for "meetings with world leaders and [CEOs]" (Ex. A ¶¶ 2–4), posing much more challenging security and logistical issues he chooses to deal with on a daily basis. Merely having a busy or unpredictable schedule does not excuse Mr. Musk from complying with his legal obligations. As required by the federal rules and the Court's scheduling order, Mr. Musk has committed to an all-day deposition on September 30. Dkt. 119 at 3; Fed. R. Civ. P. 30(d)(1). Mr. Musk's suggestion he is more likely to violate the Court's order and cancel his deposition if in person rather than remote is outrageous. Sadly, it is true that Mr. Musk has failed to show up for depositions in multiple other cases, thus necessitating court intervention to secure his compliance, but Mr. Musk's propensity to flout his legal obligations is all the more reason to require an in-person deposition, not an excuse for avoiding one. *See, e.g.*, *Pruco Life Ins. Co. v. Cal. Energy Dev. Inc.*, 2021 WL 5043289, at *3 (S.D. Cal. Oct. 29, 2021) ("exceedingly high level of distrust among all parties" and accusations of bad faith support requiring in-person depositions).

Mr. Musk's suggestion that he is more likely to cancel an in-person deposition is also illogical. He gives an example of being in China unexpectedly and being unable to fly back in time for an in-person deposition the next day in another case. Ex. A ¶ 6. But the deposition's location must be set in advance; even if remote, the deposition is deemed taken where the witness is located, the oath must be administered by a person qualified to administer oaths in that jurisdiction, and that jurisdiction must allow depositions. *See* Fed. R. Civ. P. 30(b)(4)–(5). Mainland China, for instance, does not allow foreign depositions, precluding both in-person and remote depositions from being conducted there. *Monolithic Power Sys.*, 2023 WL 350400, at *9. And, contrary to the Mehes Declaration, Musk has been deposed in person numerous times – and has improperly canceled in-person depositions for reasons that apply equally to remote depositions. In *Pampena v. Musk*, No. 3:22-cv-05937-CRB-DMR (N.D. Cal.), Mr. Musk failed to show up for his court-ordered deposition in Washington, D.C. due to "health issues." Dkt. 202 at 1 (May 12, 2025). Mr. Musk was then deposed in person in San Francisco, but in the middle of the deposition, he walked out "due to illness." *Id.* at 1–2. In *SEC v. Musk*, Mr. Musk was deposed in person. After he failed to appear for his third, court-ordered deposition because of claimed "urgent[] travel to the East Coast" due to his "obligations as Chief Technology Officer of SpaceX," the court "found that Mr. Musk violated the deposition order." Dkt. 62 at 1, 3 (Nov. 22, 2024).

Page 5

Mr. Musk has direct, unique personal knowledge of matters central to this case. Thus, the apex doctrine does not even apply, and certainly does not excuse him from being deposed in person. In *JUUL Labs Inc. v. Chou*, 2022 WL 2165411, at *4–7 (C.D. Cal. Feb. 11, 2022), the court ordered the individual defendant, who was the owner and CEO of the corporate defendants, to appear for deposition in person. In so doing, the court summarily rejected defendants' arguments premised on the apex doctrine, holding that "[b]ecause Mr. Chou's knowledge is directly at issue, the Court sees no reason to apply the Apex doctrine." *Id.* at *7. Mr. Musk cites no case where the court required a party with direct personal knowledge to be deposed remotely pursuant to the apex doctrine. The doctrine's purpose is to prevent harassment of high-level executives with little if any connection to the case, which Mr. Musk indisputably is not. In short, Mr. Musk has not established a legitimate reason, much less good cause, for Plaintiffs to forgo an in-person deposition.

Moreover, Plaintiffs would be prejudiced if forced to depose Mr. Musk remotely because an in-person deposition is critical to evaluate and test Mr. Musk's credibility. Courts routinely order in-person depositions for precisely this reason, over much stronger objections than Mr. Musk's and in situations where the witness's intent is far less central than Mr. Musk's here. In *Jones v. Nutiva, Inc.*, 2017 WL 3412302, at *1–3 (N.D. Cal. Aug. 9, 2017), for instance, the Court denied the plaintiff's request to appear for his deposition remotely, despite his objections due to his medical condition and need to care for his mother. As the court recognized, "Defendants are allowed to evaluate the credibility of the named plaintiffs through in-person depositions." *Id.* at *2. The court noted that *allowing* the noticing party to take a deposition remotely is entirely different from *forcing* the noticing party to take a deposition remotely, and that case law supporting the former – which the plaintiff cited in *Jones* and Mr. Musk cites here – does not support the latter. Similarly, in *Richardson v. Grey*, the court ordered plaintiffs to appear in person for their depositions, despite objections of financial constraints and logistical difficulties. As the court explained, "[c]ourts have consistently recognized the importance of in-person testimony, particularly in cases allowing subjective or emotional testimony." 2025 WL 843768, at *2 (citing cases). And in *JUUL Labs*, the court ordered the individual defendant and other defense witnesses to appear for deposition in person, despite health concerns and the fact they resided in China, given plaintiffs' need to assess the deponents' credibility in person and defendants' prior conduct. 2022 WL 2165411, at *4–7; *see also United States v. Approximately $57,538 in U.S. Currency*, 2010 WL 4347889, at *1 (N.D. Cal. Oct. 27, 2010) (denying defendant's request to be deposed remotely "because the Government will use Sims' deposition to examine her credibility [and] needs an in-person opportunity to observe Sims' demeanor, ask follow-up questions, and confront Sims with prior inconsistent statements she has made"); *SEC v. Chen*, 2023 WL 7346193, at *2 (N.D. Cal. Nov. 6, 2023) (holding "[t]he SEC is entitled to an in-person deposition" and ordering defendant to travel to San Francisco for her deposition); *SEC v. Musk*, Dkt. 48 at 5 (ordering Musk to appear in person because "in-person testimony will more easily allow for assessment of Musk's demeanor and be more efficient"); *D.M. v. County of Merced*, 2022 WL 229865, at *4 (E.D. Cal. Jan. 26, 2022) (denying defendant's request to be deposed remotely because "[i]n-person depositions are crucial to assessing a witness's potential presentation at trial, veracity, and credibility").[5]

**Plaintiffs' Requested Relief:** The Court should order Mr. Musk to appear in person for his September 30 deposition at the noticed location in Texas or at such other mutually agreeable location that Defendants identify within three days of the Court's order.

---

[5] Mr. Musk's cited cases are plainly distinguishable. In *Henry*, the deponent could not afford to travel across the country for his deposition and the noticing party "d[id] not argue that they will suffer prejudice as a result of a remote deposition." 2023 WL 5530201, at *2–3. In *Snow*, the deposition occurred during the height of the Covid-19 pandemic, the deponent and his counsel were subject to "heightened health risks of the pandemic," and the noticing party had previously agreed to the deposition occurring remotely. 2020 WL 13539721, at *1–3. In addition, the receipt of written deposition transcripts from a different case in no way obviates the need for Plaintiffs to depose Mr. Musk in person to assess his credibility and demeanor.

Page 6

| | |
|---|---|
| Date: September 5, 2025 | MORGAN LEWIS & BOCKIUS LLP<br>By: */s/ Christopher Boran*<br>　　Christopher Boran<br><br>*Attorneys for Defendants Elon Musk, X Corp., Twitter, Inc. Change of Control and Involuntary Termination Protection Policy, Twitter, Inc. Change of Control Severance and Involuntary Termination Protection Policy, Lindsay Chapman, Brian Bjelde, and Dhruv Batura* |
| Date: September 5, 2025 | SIDLEY AUSTIN LLP<br>By: */s/ Sheila A.G. Armbrust*<br>　　Sheila A.G. Armbrust<br><br>*Attorneys for Plaintiffs Parag Agrawal, Ned Segal, Vijaya Gadde, and Sean Edgett* |